Laurence M. Rosen, Esq. (SBN 219683)
**THE ROSEN LAW FIRM, P.A.**
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

*[Proposed] Lead Counsel for Lead Plaintiff and Class*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAMUEL BLAKE, Individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> CANOO INC., TONY AQUILA, ULRICH KRANZ, and PAUL BALCIUNAS, <br><br> Defendants. | Case No. 2:21-cv-02873-FMO-JPR <br><br> **MEMORANDUM OF POINTS AND AUTHORITIES OF JAMES BABER IN OPPOSITION TO COMPETING LEAD PLAINTIFF MOTIONS** <br><br> <u>CLASS ACTION</u> <br><br> JUDGE: Fernando M. Olguin <br> Hearing Date: July 1, 2021 <br> Time: 10:00 a.m. <br> CTRM: 6D – First Street Courthouse |

[Additional captions on next page]

MEMORANDUM OF POINTS AND AUTHORITIES OF JAMES BABER IN
OPPOSITION TO COMPETING LEAD PLAINTIFF MOTIONS
Case No. 2:21-cv-02873-FMO-JPR

| JUSTIN KOJAK, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CANOO INC. f/k/a HENNESSY CAPITAL ACQUISITION CORP. IV, ULRICH KRANZ, TONY AQUILA, DANIEL J. HENNESSY, NICHOLAS A. PETRUSKA, BRADLEY BELL, PETER SHEA, RICHARD BURNS, JAMES F. O'NEIL III, JUAN CARLOS MAS, GRETCHEN W. MCCLAIN, and GREG ETHRIDGE,<br><br>Defendants. | Case No. 2:21-cv-02879-FMO-JPR<br><br>CLASS ACTION<br><br>JUDGE: Fernando M. Olguin |
| --- | --- |
| JEFF TYLER, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CANOO INC., TONY AQUILA, ULRICH KRANZ, and PAUL BALCIUNAS,<br><br>Defendants. | Case No. 2:21-cv-03080-FMO-JPR<br><br>CLASS ACTION<br><br>JUDGE: Fernando M. Olguin |

MEMORANDUM OF POINTS AND AUTHORITIES OF JAMES BABER IN OPPOSITION TO COMPETING LEAD PLAINTIFF MOTIONS
Case No. 2:21-cv-02873-FMO-JPR

## MEMORANDUM OF POINTS AND AUTHORITIES

Movant James Baber ("Mr. Baber" or "Movant") respectfully submits this memorandum of points and authorities in opposition to the competing motions seeking appointment as lead plaintiff and approval of their choice of lead counsel. (Dkt. Nos. 27, 37, 41, 44, 48).[1]

Mr. Baber, as explained in his opening brief, is a sophisticated investor in Georgia with over 30 years of investing experience.  (Dkt. No. 24 at 7).  Mr. Baber lost $215,339.97. (Dkt. No. 25-3).

Four movants claim a larger financial interest than Mr. Baber:

- Vladi Shaulov ("Mr. Shaulov") ($5,596,559 in losses) represented by two law firms;
- Mohammad Waheed Rana and Yevhen Stasiv ("Mr. Rana and Mr. Stasiv") ($392,810.05 in losses), a pair of unrelated individuals from Long Island and Toronto;
- Jeffrey Paljevic ("Mr. Paljevic") ($364,680.68 in losses); and
- Jose Santacruz ("Mr. Santacruz") ($271,460.13 in losses).

However, none of the competing movants listed above have made the initial showing of Rule 23 adequacy and typicality required to trigger the most adequate plaintiff presumption under the PSLRA. 15 U.S.C. § 78u-4(a)(3)(B)(iii).  It is

---

[1] On June 9, 2021, Mr. Rana and Mr. Stasiv filed a notice of non-opposition to competing lead plaintiff motions.  (Dkt. No. 53).  Since Mr. Rana and Mr. Stasiv's motion was not withdrawn, Mr. Baber addresses their motion herein. On June 10, 2021, competing movants Carl Shupe and Lannie Weng filed a notice of non-opposition to competing lead plaintiff motions.  (Dkt. No. 54).  On June 10, competing movant Bruce Nawrocki filed a notice of non-opposition to competing lead plaintiff motions.  (Dkt. No. 55).

1

MEMORANDUM OF POINTS AND AUTHORITIES OF JAMES BABER IN
OPPOSITION TO COMPETING LEAD PLAINTIFF MOTIONS
Case No. 2:21-cv-02873-FMO-JPR

critical to note that courts determining the most adequate lead plaintiff do not merely perform a rote mathematical calculation of comparing alleged losses. Numerical loss is only the first step in the process. The second step is analyzing a proposed lead plaintiff's typicality and adequacy under Rule 23.  The movants claiming a larger financial interest than Mr. Baber have either exaggerated their financial interest and/or are inadequate and atypical.

## I.      MR. SHAULOV IS ATYPICAL AND INADEQUATE

Mr. Shaulov is inadequate for three reasons: first, his signed certification is deficient; second, he fails to provide substantive information about himself, raising doubt as to his adequacy to represent the class; and finally, he is represented by two law firms seeking co-lead counsel status, but no client-driven reason is provided as to why two law firms are required to represent him.

## A.      Mr. Shaulov's Certification Is Defective

Mr. Shaulov lives in Cyprus (Dkt. No. 50-4), and his certification is redacted as to where it was signed.  (Dkt. No. 50-3).  The certification was presumably signed outside of the U.S., in which case the certification should have been signed "under the penalty of perjury under the laws of the United States of America."  28 U.S.C.A. § 1746(1).  That the certification lacks the clause "under the laws of the United States of America" renders the certification defective. *Nasin v. Hongli Clean Energy Techs. Corp.*, 2017 WL 5598214, at *3 (D.N.J. Nov. 21, 2017) (Court refusing to appoint lead plaintiff that did not have proper "under penalty of perjury" language).

In addition, Mr. Shaulov's certification states, "Plaintiff has reviewed the initial complaint filed in this action." However, the certification was signed on April 1, 2021, whereas the first filed complaints in this case were filed on April 2,

2

MEMORANDUM OF POINTS AND AUTHORITIES OF JAMES BABER IN OPPOSITION TO COMPETING LEAD PLAINTIFF MOTIONS
Case No. 2:21-cv-02873-FMO-JPR

2021 by counsel other than Mr. Shaulov's.  Mr. Shaulov never filed a complaint. Thus, this raises questions as to what complaint, if any, Mr. Shaulov reviewed since no lawsuit had been filed when Mr. Shaulov signed his certification.

Additionally, Mr. Shaulov's certification contains unexplained redactions. Transaction information on the certification is redacted and refers to a different schedule of transactions.  Why were they redacted?  Was the transaction information incorrect?  Was the client unwilling to sign a revised certification? And, as discussed above, the certification redacts the location of where it was signed.

Courts have not hesitated to disqualify lead plaintiff movants that have submitted inaccurate certifications.  *See Camp v. Qualcomm Inc.*, 2019 WL 277360, at *4 (S.D. Cal. Jan. 22, 2019) (finding movant with largest loss did not qualify to be appointed as lead plaintiff because of, *inter alia*, errors in reported trades in submitted certification); *Tomaszewski v. Trevena, Inc.*, 383 F. Supp. 3d 409, 414 (E.D. Pa. 2019) (disqualifying movant with the largest loss when errors in sworn certification demonstrated a "substantial degree of carelessness and raise[d] doubt as to whether he will fairly and adequately represent the best interests of the class"); *Steamfitters Local 449 Pension Fund v. Central European Distribution Corp.*, 2012 WL 3638629, at *12 (D.N.J. Aug. 22, 2012) (Rejecting lead plaintiff movants for failing to timely submit valid certifications); *Nager v. Websecure, Inc.*, 1997 WL 773717, at *1 n.1 (D. Mass. Nov. 26, 1997) (explaining that while the "inaccuracy" of the certifications "may be explainable," these oversights "cast[] sufficient doubt on [the movant's] adequacy as a representative plaintiff that he should be excluded from the group appointed to serve as lead plaintiffs").

MEMORANDUM OF POINTS AND AUTHORITIES OF JAMES BABER IN OPPOSITION TO COMPETING LEAD PLAINTIFF MOTIONS
Case No. 2:21-cv-02873-FMO-JPR

### B.    Mr. Shaulov Provides No Substantive Background Information

Mr. Shaulov fails to provide any background information about himself other than the fact he lives in Cyprus.  This makes it impossible for the Court to vet Mr. Shaulov's adequacy and typicality.  Courts have held that movants who provide such sparse information about themselves are inadequate to represent the class.  *See*, *e.g.*, *Camp*, 2019 WL 277360, at *3 (S.D. Cal. Jan. 22, 2019); *Perez v. HEXO Corp.*, 2020 WL 905753, at *2-3 (S.D.N.Y. Feb. 25, 2020), *reconsideration denied sub nom. In re HEXO Corp. Sec. Litig.*, 2020 WL 5503634 (S.D.N.Y. Sept. 11, 2020); *In re Boeing Co. Aircraft Sec. Litig.*, 2019 WL 6052399, at *5 (N.D. Ill. Nov. 15, 2019), *reconsideration denied*, 2020 WL 476658 (N.D. Ill. Jan. 28, 2020).

As counsel for Mr. Shaulov argued in a prior case, Cyprus is "known to be a nexus" of money laundering.[2]  Additionally, Mr. Shaulov claims to have bought over $17 million of Canoo stock and lost over $5.5 million.  He provides no further background information about himself, such as his occupation, his education, or his investing experience.  *See*, *In re Boeing*, 2019 WL 6052399, at *5 (N.D. Ill. Nov. 15, 2019) (disqualifying related movants who bought over $40

---

[2] *Gross v. AT&T Inc., et al.*, Case No. 1:19-cv-02892-VEC, Dkt. No. 43 at 2 (S.D.N.Y. June 10, 2019); *see also*, "Cyprus 'golden passports' scheme a laundering risk, says watchdog", Reuters, Feb. 11, 2020 (available at https://www.reuters.com/article/us-cyprus-citizenship-watchdog/cyprus-golden-passports-scheme-a-laundering-risk-says-watchdog-idUSKBN2052T2, accessed on June 10, 2021); "U.S. Takes on Russia's Favorite Money Haven: Cyprus", Sept. 30, 2018 (available at https://www.wsj.com/articles/u-s-takes-on-russias-favorite-money-haven-cyprus-1538316001, accessed on June 10, 2021)

4

MEMORANDUM OF POINTS AND AUTHORITIES OF JAMES BABER IN
OPPOSITION TO COMPETING LEAD PLAINTIFF MOTIONS
Case No. 2:21-cv-02873-FMO-JPR

million in Boeing stock and claimed $4.7 million in losses but provided no information regarding the source of their wealth).

Taken together, the lack of transparency casts doubt on the typicality and adequacy of Mr. Shaulov's ability to represent the interests of the class.

### C. Mr. Shaulov Seeks Representation by Co-Lead Counsel

Mr. Shaulov seeks to appoint two firms as co-lead counsel in his motion. (Dkt. Nos. 48-50). No client-driven explanation is provided as to why two co-lead counsel are necessary to represent him. *In re Gemstar-TV Guide Int'l, Inc. Sec. Litig.*, 209 F.R.D. 447, 452 (C.D. Cal. 2002) ("The sheer number of attorneys seeking to represent [movants] suggests that counsel, rather than [movants], would control this litigation, in contravention of the PSLRA's intent."); *In re Pfizer Inc. Sec. Litig.*, 2005 WL 8153373, at *4 (S.D.N.Y. Oct. 21, 2005) ("I do not see the need for two law firms. This avoids the danger of unnecessarily duplicative attorney work and, ultimately, a lower recovery for the class.").

## II. MR. RANA AND MR. STASIV ARE AN IMPROPER GROUP

"Although the PSLRA allows groups to serve as lead plaintiffs, 'courts have uniformly refused to appoint as lead plaintiff groups of unrelated individuals, brought together for the sole purpose of aggregating their claims in an effort to become the presumptive lead plaintiff.'" *Tsirekidze v. Syntax-Brillian Corp.*, 2008 WL 942273, at *3 (D. Ariz. Apr. 7, 2008) (quoting *In re Gemstar,* 209 F.R.D. at 451 (C.D. Cal. 2002)); *see also In re Cloudera, Inc. Sec. Litig.*, 2019 WL 6842021, at *6 (N.D. Cal. Dec. 16, 2019); *Eichenholtz v. Verifone Holdings, Inc.*, 2008 WL 3925289, at *7 (N.D. Cal. Aug. 22, 2008).

Courts require members of a group to make "an evidentiary showing that unrelated members of a group will be able to function cohesively and to

5

effectively manage the litigation apart from their lawyers before its members will be designated as presumptive lead plaintiffs." *Kniffin v. Micron Tech., Inc.,* 379 F. Supp. 3d 259, 262 (S.D.N.Y. 2019). Courts evaluate evidence of:

> (1) the existence of a pre-litigation relationship between group members; (2) involvement of the group members in the litigation thus far; (3) plans for cooperation; (4) the sophistication of its members; and (5) whether the members chose outside counsel, and not vice versa.

*See id*.; *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 391 (S.D.N.Y. 2008).

While Mr. Rana and Mr. Stasiv submitted a joint declaration in an effort to meet this burden, their boilerplate declarations do not demonstrate their ability to effectively manage the litigation. *Jakobsen v. Aphria, Inc.*, 2019 WL 1522598, at *2 (S.D.N.Y. Mar. 27, 2019) (Vague plans for cooperation and "boilerplate assurances" are insufficient to show that unrelated investors will be able to manage the litigation efficiently). Furthermore, the joint declaration explicitly states that they only came to learn about one another through their counsel, thus lacking any pre-litigation relationship. (Dkt. No. 39-3 at 6).

In addition, Mr. Rana and Mr. Stasiv's request to be considered individually evinces a lack of cohesion. "The willingness to abandon the group only suggests how loosely it was put together." *Tsirekidze*, 2008 WL 942273, at *4 (D.Az. Apr. 7, 2008). In addition, because neither Mr. Rana nor Mr. Stasiv submitted motions for individual consideration as lead plaintiff, their request as stated on their joint declaration should not be granted. *Jakobsen v. Aphria, Inc.*, 2019 WL 1522598, at *4 n.3 (S.D.N.Y. Mar. 27, 2019) ("There are *no separate motions to appoint any member of the Wan Group as lead plaintiff on an individual basis*. As such, this

6

MEMORANDUM OF POINTS AND AUTHORITIES OF JAMES BABER IN OPPOSITION TO COMPETING LEAD PLAINTIFF MOTIONS
Case No. 2:21-cv-02873-FMO-JPR

Court does not consider whether each individual member of the Wan Group could be appointed as lead plaintiff.").  And even if the Court were to consider their motions individually, neither Mr. Rana (loss of $198,382.17) nor Mr. Stasiv (loss of $194,427.88) individually suffered greater losses than Mr. Baber.

## III.  MR. PALJEVIC IS ATYPICAL AND INADEQUATE

Mr. Paljevic engaged in high frequency trading.   He conducted thousands of trades during a two-month period.  (Dkt. No. 27-4).  Day traders are routinely precluded from serving as a lead plaintiff.  *Eichenholtz*, 2008 WL 3925289, at *11 (N.D. Cal. Aug. 22, 2008) (finding a day trader atypical from the class "because the class's damages stem from reliance upon the company's financial statements, not upon daily market volatility"); *Tsirekidze*, WL 942273, at *4 (D. Ariz. Apr. 7, 2008) (finding day trader atypical because such trading "belies any true reliance on company reports or even on the integrity of the stock price itself"); *In re Opnext, Inc. Sec. Litig.,* 2008 WL 3285732, at *3 (D.N.J. Aug. 7, 2008) (finding movant atypical because "[d]ay trading is not commensurate with the manner in which the typical class member sustained alleged losses").

## IV.  MR. SANTACRUZ INFLATED HIS LOSSES

Mr. Santacruz inflated his losses by crediting losses on sales he made prior to the March 29, 2021 corrective disclosure.  As the Supreme Court explained in *Dura*, "If [. . .] the purchaser sells the shares quickly before the relevant truth begins to leak out, the misrepresentation will not have led to any loss."  *Dura Pharm., Inc. v. Broudo,* 544 U.S. 336, 342 (2005); *see also*, *Hurst v. Enphase Energy, Inc.*, 2020 WL 7025085, at *3-4 (N.D. Cal. Nov. 30, 2020) (holding that, at the lead plaintiff stage, courts do not credit sales made prior to corrective disclosure in loss calculation).

MEMORANDUM OF POINTS AND AUTHORITIES OF JAMES BABER IN OPPOSITION TO COMPETING LEAD PLAINTIFF MOTIONS
Case No. 2:21-cv-02873-FMO-JPR

Mr. Santacruz sold the majority of his shares before the March 29, 2021 corrective disclosure.  (Dkt. No. 46 at 12-13).  When accounting only for his recoverable losses, i.e., shares held through or sold after the March 29, 2021 corrective disclosure, Mr. Santacruz's LIFO[3] losses are $98,480.06.  *See*, Ex. 1 attached hereto.  Therefore, Mr. Santacruz does not have greater losses than Mr. Baber, who lost $215,339.97.  (Dkt. No. 25-3).

## V.    MR. BABER SHOULD BE APPOINTED LEAD PLAINTIFF

In contrast to the competing movants, Mr. Baber has a large financial interest and is the only movant that has made the requisite showing of his adequacy and typicality.

Mr. Baber is a sophisticated investor in Georgia with over 30 years of investing experience. (Dkt. No. 24 at 7).  Mr. Baber lost $215,339.97. (Dkt. No. 25-3).  He has submitted a correct and accurate certification.  He bought his shares during the class period and held them all through the March 29, 2021 corrective disclosure. He has agreed to serve as lead plaintiff and to appear as a witness during deposition and trial.  Mr. Baber is the presumptive lead plaintiff, and his motion should be granted.

---

[3] Courts in this circuit use the Last In First Out ("LIFO") method to calculate largest financial interest.  *Richardson v. TVIA*, 2007 WL 1129344 at * 4 (N.D. Cal. Apr. 16, 2007) (citing cases); *Ferreira v. Funko, Inc.*, 2020 WL 3246328, at *5 (C.D. Cal. June 11, 2020) ("Courts in the Ninth Circuit tend to employ [. . .] a 'last in, first out ('LIFO') methodology.' ") (citations omitted); *In re Cheetah Mobile, Inc. Securities Litigation*, 2021 WL 99635, at * 3 (C.D. Cal. Jan. 12, 2021) (Giving LIFO the greatest weight in calculating largest financial interest).

MEMORANDUM OF POINTS AND AUTHORITIES OF JAMES BABER IN OPPOSITION TO COMPETING LEAD PLAINTIFF MOTIONS
Case No. 2:21-cv-02873-FMO-JPR

## VI.    MR. BABER'S CHOICE OF COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to court approval.  15 U.S.C. § 78u-4(a)(3)(B)(v).  The Court should interfere with the lead plaintiff's selection of counsel only when necessary "to protect the interests of the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).

Mr. Baber has selected and retained the Rosen Law Firm, P.A. as lead counsel.  As demonstrated in Mr. Baber's opening papers, the Rosen Law Firm, P.A. has extensive experience prosecuting complex securities class actions, such as this one, and is well qualified to represent the Class.  Consequently, the Court should approve Mr. Baber's selection of the Rosen Law Firm, P.A. as lead counsel.

## VII.    CONCLUSION

For the foregoing reasons, Mr. Baber respectfully requests that the Court issue an Order appointing him as Lead Plaintiff for the class, approving The Rosen Law Firm P.A. as Lead Counsel, denying the competing Lead Plaintiff Motions, and granting such other relief as the Court may deem to be just and proper.

Dated:  June 10, 2021                    Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**
/s/ Laurence M. Rosen
Laurence M. Rosen, Esq. (SBN 219683)
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

9

MEMORANDUM OF POINTS AND AUTHORITIES OF JAMES BABER IN OPPOSITION TO COMPETING LEAD PLAINTIFF MOTIONS
Case No. 2:21-cv-02873-FMO-JPR

*[Proposed] Lead Counsel for Lead
Plaintiff and Class*

10

MEMORANDUM OF POINTS AND AUTHORITIES OF JAMES BABER IN
OPPOSITION TO COMPETING LEAD PLAINTIFF MOTIONS
Case No. 2:21-cv-02873-FMO-JPR

## CERTIFICATE OF SERVICE

I, Laurence M. Rosen, hereby declare under penalty of perjury as follows:

I am the managing partner of the Rosen Law Firm, P.A., with offices at 355 South Grand Avenue, Suite 2450, Los Angeles, California.  I am over the age of eighteen.

On June 10, 2021, I electronically filed the following **MEMORANDUM OF POINTS AND AUTHORITIES OF JAMES BABER IN OPPOSITION TO COMPETING LEAD PLAINTIFF MOTIONS** with the Clerk of the Court using the CM/ECF system which sent notification of such filing to counsel of record.

Executed on June 10, 2021.


/s/ Laurence Rosen
Laurence M. Rosen

11

MEMORANDUM OF POINTS AND AUTHORITIES OF JAMES BABER IN
OPPOSITION TO COMPETING LEAD PLAINTIFF MOTIONS
Case No. 2:21-cv-02873-FMO-JPR