1  Reed R. Kathrein (139304)
2  Lucas E. Gilmore (250893)
   HAGENS BERMAN SOBOL SHAPIRO LLP
3  715 Hearst Avenue, Suite 202
   Berkeley, CA  94710
4  Telephone: (510) 725-3000
   Facsimile:  (510) 725-3001
5  reed@hbsslaw.com
6  lucasg@hbsslaw.com

7  *Attorneys for [Proposed] Lead Plaintiff Jose Santacruz*

8  [Additional counsel on signature page]

9

10         **UNITED STATES DISTRICT COURT**
11         **CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| 12  SAMUEL BLAKE, Individually and on Behalf of All Others Similarly Situated, | No. 2:21-cv-02873-FMO-JPR |
| 13 | |
| 14 | <u>CLASS ACTION</u> |
| 15                    Plaintiff, | **REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF MOTION FOR CONSOLIDATION OF RELATED ACTIONS, APPOINTMENT OF JOSE SANTACRUZ AS LEAD PLAINTIFF, AND APPROVAL OF SELECTION OF LEAD COUNSEL** |
| 16       v. | |
| 17  CANOO INC., TONY AQUILA, ULRICH KRANZ, and PAUL BALCIUNAS | |
| 18 | |
| 19 | |
| 20                    Defendants. | |
| 21 | Date:        July 1, 2021 |
| 22 | Time:       10:00 a.m. |
| 23 | Courtroom: 6D, 6th Floor |
|    | Judge:      Hon. Fernando M. Olguin |
| 24 | |

25  [Caption continued on the next page.]

26

27

28

011018-11/1563475 V1

|   |   |   |
|---|---|---|
| 1 | JUSTIN KOJAK, Individually and On Behalf of All Others Similarly Situated, | No. 2:21-cv-02879-DSF-PVC |
| 2 | | |
| 3 | Plaintiff, | <u>CLASS ACTION</u> |
| 4 | | |
| 5 | v. | |
| 6 | CANOO INC. f/k/a HENNESSY CAPITAL ACQUISITION CORP. IV, ULRICH KRANZ, TONY AQUILA, DANIEL J. HENNESSY, NICHOLAS A. PETRUSKA, BRADLEY BELL, PETER SHEA, RICHARD BURNS, JAMES F. O'NEIL III, JUAN CARLOS MAS, GRETCHEN W. MCCLAIN, and GREG ETHRIDGE, | |
| 7 | | |
| 8 | | |
| 9 | | |
| 10 | | |
| 11 | | |
| 12 | | |
| 13 | Defendants. | |
| 14 | JEFF TYLER, Individually and on Behalf of All Others Similarly Situated, | No. 2:21-cv-03080-FMO-JPR |
| 15 | | <u>CLASS ACTION</u> |
| 16 | Plaintiff, | |
| 17 | v. | |
| 18 | CANOO INC., TONY AQUILA, ULRICH KRANZ, and PAUL BALCIUNAS, | |
| 19 | | |
| 20 | | |
| 21 | Defendants. | |
| 22 | | |
| 23 | | |
| 24 | | |
| 25 | | |
| 26 | | |
| 27 | | |
| 28 | | |

011018-11/1563475 V1

Movant Jose Santacruz ("Movant") submits this reply in response to the three competing motions of movants Messrs. Shaulov, Paljevic, and Baber in the above-captioned actions for appointment as lead plaintiff under the Private Securities Litigation Reform Act of 1995 ("PSLRA").[1] All other movants have filed notices of non-opposition stating that they do not have the largest financial interest in the relief sought. *See* ECF Nos. 53, 54, 55 and 61.

As explained in Movant's opening (ECF No. 44) and opposition brief (ECF No. 59), he is the movant "most capable of adequately representing the interests of the class members . . . ." 15 U.S.C. § 78u-4(a)(3)(B)(i)). Movant has the largest financial interest in this case after Messrs. Shaulov and Paljevic. But unlike Messrs. Shaulov and Paljevic, Movant has made a *prima facie* showing of his adequacy and typicality. Movant also demonstrates, through a detailed declaration, not only his background which makes him suitable (he is a Business Manager with a Computer Science degree and has over 5 years of experience managing his own investments) but that he actually understands his responsibilities as a Lead Plaintiff, and is "motivated to litigate vigorously, efficiently, and to the best of [his] ability to maximize the potential recovery for [him]self and the Class [he] seek[s] to represent. ECF No. 46, Ex. D.

---

[1] The defined terms in Movant's opening brief (ECF No. 44) and opposition brief (ECF No. 59) shall have the same meaning herein.

REPLY IFSO MOT. TO CONSOL. REL. ACTIONS, APPOINT LEAD PL., AND APPROVE SELECTION OF COUNSEL - 1
Case No.: 2:21-cv-02873-FMO-JPR
011018-11/1563475 V1

**Mr. Shaulov** on the other hand, who claims to have suffered the largest loss, has not met the adequacy requirements of Rule 23.

Mr. Shaulov submitted a false and defective certification, and in his moving papers, he failed to provide the Court with any of the most basic information about himself needed for the Court to make its determination. He did not provide his age, educational background, profession, or anything suggesting he is capable of leading a complex securities class action. There is not even any evidence he has ever talked to an attorney and understands that he is leading, as opposed to just joining an action.

Worse yet, after the filing of one of the oppositions, Mr. Shaulov's counsel rushed to put together the most basic declaration that provides no evidence that he even knows he is moving to be a lead plaintiff or what a lead plaintiff does. He does not state he has any degrees (only that he has an "academic background . . . in business and entrepreneurship" – words anyone could use – and that he is the CEO of some *unnamed* "cybersecurity and software company" – words that would describe any hacker.

His opaqueness above, and the fact that he resides in Cyprus, makes matters worse. In December 2019, The Council of Europe, Committee of Experts on the Evaluation of Anti-Money Laundering Measures and the Financing of Terrorism (Moneyval)[2] issued its Fifth Round Mutual Evaluation Report on Cyrus entitled, "Anti-

---

[2] Moneyval is a permanent monitoring body of the Council of Europe entrusted with the task of assessing compliance with the principal international standards to counter money laundering and the financing of terrorism and the effectiveness of their implementation, as well as with the task of making recommendations to national

money laundering and counter-terrorist financing measures."[3] In that report, Moneyval finds that Cyprus:

> As an international financial centre (IFC), Cyprus is primarily exposed to external money laundering (ML) threats as non-residents may seek to transfer criminal proceeds to or through Cyprus, particularly through the Cypriot banking system or may seek to use trust and company service providers, known in Cyprus as administrative service providers (ASPs), to facilitate their aims. The Cyprus Investment Programme (CIP) is inherently vulnerable to abuse for ML purposes, as is real estate, both in general and as the apparent preferred investment to acquire citizenship. Although the terrorism threat is considered to be low in Cyprus, the authorities rate terrorist financing (TF).

The report further concludes that there are major shortcomings which hinder the effectiveness of the Cypriot anti-money laundering and the and countering the financing of terrorism regime, including "competent authorities are not yet sufficiently pursuing money laundering from criminal proceeds generated outside of Cyprus" and "Cyprus has not conducted a formal assessment of risks posed by legal persons, despite having a developed company formation and administration business. This has reduced the authorities' ability to implement more targeted mitigating measures to ensure the transparency of legal persons." Had Mr. Shaulov been more transparent as to who he is

---

authorities in respect of necessary improvements to their systems. MONEYVAL in brief, COUNCIL OF EUROPE (last visited June 17, 2021), https://www.coe.int/en/web/moneyval/moneyval-brief.

[3] *Anti-money laundering and counter-terrorist financing measures, Cyprus: Fifth Round Mutual Evaluation Report*, COUNCIL OF EUROPE (Dec. 2019), https://rm.coe.int/anti-money-laundering-and-counter-terrorist-financing-measures-cyprus-/16809c3c47.

REPLY IFSO MOT. TO CONSOL. REL. ACTIONS, APPOINT LEAD PL., AND APPROVE SELECTION OF COUNSEL - 3
Case No.: 2:21-cv-02873-FMO-JPR
011018-11/1563475 V1

and what he does, our position on his adequacy may have been different. But as is, even his claim that he have never been convicted of a crime is impossible to verify.

Finally, although Mr. Shaulov claimed to be providing the Court with a "supplemental declaration" with "additional information about himself, including his educational and professional backgrounds and his investment experience," (ECF No. 57, p. 4) he cavalierly did so days later – just yesterday (ECF No. 60). Even then courts routinely reject new background information and new declarations provided for the first time in a response.[4] Moreover, additional declaration still fails to show Mr. Shaulov's adequacy. The declaration barely provides any more information than was previously submitted. For instance, it conclusively states that Mr. Shaulov "understand[s] the requirements and duties imposed by the PSLRA," but does not note any of the actual duties he would have to undertake as a lead plaintiff (ECF No. 62-1, ¶ 1).[5]

---

[4] *See Miller v. Dyadic Int'l, Inc.*, 2008 WL 2465286, at *5 (S.D. Fla. Apr. 18, 2008) ("[T]o allow supplementation after the expiration of the sixty (60) day period would be inconsistent with both the language and purposes of the PSLRA."); *Steamfitters Loc. 449 Pension Fund v. Cent. Eur. Distribution Corp.*, 2012 WL 3638629, at *13 (D.N.J. Aug. 22, 2012), (finding that because a movant is subject to unique defenses regarding an untimely filing and lack of a valid certification, "their appointment would not be in the class' best interest; the Court must look to the other movant."); *Perez v. Hexo Corp.*, 2020 U.S. Dist. LEXIS 32381, at *7 (S.D.N.Y. Feb. 25, 2020) (rejecting movant with largest financial interest, despite supplemental information in responding briefs, due to movant's "failure to provide *any* information regarding his experience in his preliminary motion.").

[5] That Mr. Shaulov also seeks to have two sets of attorneys appointed as co-lead counsel– without any justification like the complexity of the case – further suggests he does not understand his responsibilities or is simply controlled by counsel here.

REPLY IFSO MOT. TO CONSOL. REL. ACTIONS, APPOINT LEAD PL., AND APPROVE SELECTION OF COUNSEL - 4
Case No.: 2:21-cv-02873-FMO-JPR
011018-11/1563475 V1

**Mr. Paljevic**, who claims to have suffered the next largest loss ($364,680 compared to Movant's $271,460.13) of the remaining movants, has also demonstrated that he is both atypical and inadequate under Rule 23.

Unlike typical members of the Class, Mr. Paljevic made over 1,800 trades during the class period, often buying and selling the same shares in hundreds of trades on the same day (ECF No. 27-3). For example, for December 22, 2020, Mr. Paljevic lists six pages of about 45 buys and sales per page or about 270 trades in one day (ECF No. 27-3, pp. 5-11). So too, for February 4, 2021, Mr. Paljevic lists 12 pages of buys and sales or about 540 trades in one day (ECF No. 27-1, pp. 32-44). These patterns suggest that Mr. Paljevic is a day trader who traded based on technical indicators rather than statements by the Company or analyst reports, and he is therefore subject to unique defenses making him atypical.[6] If so, Defendants would likely knock him out as a class representative at the class certification stage, making it necessary to find a new lead plaintiff. *Compare Hurst v. Enphase Energy*, 2020 U.S. Dist. LEXIS 223696, at *8 (N.D. Cal. Nov. 30, 2020) (extensive discussion of most recent Ninth Circuit cases and finding day-traders suffer from unique defenses).

Mr. Paljevic's adequacy is also lacking as he provided very little information about himself, and no employment other than calling himself "a professional investor."

---

[6] *See also* Movant's Opposition at 9-10. [ECF No. 59]. *See also e.g.*, *Tsirekidze v. Syntax-Brillian Corp.*, 2008 U.S. Dist. LEXIS 118562, at *18 (D. Ariz. Apr. 4, 2008) (denying motion of lead plaintiff movant with "unusually active" trades).

REPLY IFSO MOT. TO CONSOL. REL. ACTIONS, APPOINT LEAD PL., AND APPROVE SELECTION OF COUNSEL - 5
Case No.: 2:21-cv-02873-FMO-JPR
011018-11/1563475 V1

Mr. Paljevic does not provide a declaration or any information to suggest that he understands what a lead plaintiff is or its duties. And there is nothing to indicate he ever talked to an attorney, or believes he is doing anything other than joining the action. An investigation by Mr. Santacruz's counsel further indicates that he is 24 years old and confirms no verifiable employment. As such, Mr. Paljevic has not demonstrated his adequacy.

Finally, **Mr. Baber,** claims he should be considered next above Movant. Mr. Baber, however, lists claimed losses of $215,339.97 (or about $56,120 less than Movant's losses of $271,460.13) (ECF No. 25-3) and does not submit any declaration showing that he understands his duties as a lead plaintiff or that he is even moving to be a lead plaintiff, claims that he should be considered next in line – and not Movant. Rather, to get to his claim that he has larger losses, Mr. Baber switches damage calculation methodologies from his original calculation and then misapplies his new methodology to Movant's trades to artificially lower Movant's losses. Mr. Baber's methodology is not what he claims it is, and is completely untethered to economic or accounting reality.

First, Mr. Baber did not claim in his moving papers that any particular methodology should be used. Both calculations submitted by Mr. Baber and Movant,

were net calculations.[7] The losses are simply the difference between the price paid for shares bought in the Class Period and sold during the Class Period, or if held at the end of the Class Period, the price at which it was later sold limited to the 90-day look-back provisions of the PSLRA.[8] On this basis there is no disagreement that Mr. Baber's losses of $215,339.97 are $56,120.16 less than Movant's. Based on the same methodology, Movant has the larger financial interest.

Rather, Mr. Baber now argues, for the first time, that a LIFO (Last In, First Out) analysis (accepted by some courts when an investor with ***class period prior holdings*** generally sells more shares in a class period than it purchased) is required.[9] But what he trying to accomplish is not required and the method he applies is not LIFO.

First, the application of LIFO loss calculations are only necessary when a movant enters the class period holding shares purchased prior to the Class Period and one needs to account for the gains and losses from those sales during the Class Period.[10] Movant

---

[7] No other movant has contested Movant's loss calculations. *See* ECF No. 57, p. 2 (Mr. Shaulov's loss chart); ECF No. 56, p. 7 (Mr. Paljevic's loss chart).

[8] *Compare In re Fastly Sec. Litig.*, 2021 U.S. Dist. LEXIS 25739, at *12 (N.D. Cal. Feb. 10, 2021) (rejecting LIFO and applying calculation off of retained shares and gains and losses from shares sold during the class period). This is a net calculation.

[9] *See Id.* (where movant "failed to propose a particular metric or method to determine his financial interest" court rejected argument that competing movant "failed to accurately calculate his losses under the LIFO method").

[10] *See* Catherine J. Galley et al., *Limiting Rule 10b-5 Damages Claims*, CORNERSTONE RESEARCH (2014), pp. 5, 13-15, filed concurrently herewith as Ex. A to the Declaration of Reed Kathrein ("Kathrein Decl.").

REPLY IFSO MOT. TO CONSOL. REL. ACTIONS, APPOINT LEAD PL., AND APPROVE SELECTION OF COUNSEL - 7
Case No.: 2:21-cv-02873-FMO-JPR
011018-11/1563475 V1

did not have any pre-class period holdings and therefore none were sold during the Class Period. Worse, even if LIFO were to be applied to intra-class period trades (and they are not), Mr. Baber's loss calculations are not a correct application of LIFO.

On a LIFO share accounting basis, each sale must be matched with the most recent purchase prior to that sale. If done correctly, all of Movant's Nov. 20, 2020 and Nov. 24, 2020 purchases (a total of 40,000 shares) would be sold on Nov. 23, 2020 and Nov. 27, 2020 (a total of 40,000 shares). But under Mr. Baber's novel analysis, there are 10,000 shares being sold on Nov. 23 2020, which are being matched with purchases that didn't even occur until Nov. 24, 2020 at the earliest.

What Mr. Baber is trying to do is find the shares for which Movant paid the lowest price, and exclude all others. This is wonderfully creative, but wrong.

At this point in the litigation, picking and choosing shares to keep in or exclude (all within the Class Period) to value retained shares at the end, makes no economic sense and is grounded in speculation. Likely, in this case, the fraud grew over time during the class period and the shares purchased latter in the class period were damaged more than those purchased earlier. Indeed the operative complaint alleges fraudulent statements on Nov. 27, 2020, Dec. 4, 2020, Dec. 21, 2020, and Jan. 13, 2021, where with each statement one would expect the fraud to grow along with the inflation premium. *Kojak* ECF. No. 1 ¶¶ 29-33. Under Mr. Baber's novel approach, Movant could only recover for shares he purchased before those fraudulent statements (at a lower

price) and would be prohibited from recovering for losses on the shares he bought after each of those allegedly fraudulent announcements, with his purchases on Nov. 30, 2020, Dec. 10, 2020, Jan. 8, 2021, and Jan. 13, 2021. Mr. Baber offers no explanation why that should be done here.

More importantly, under the proper application of LIFO, Movant's losses are *still* greater than Mr. Baber's. Movant hired an outside consultant to run a LIFO analysis on his trades and the result of a proper LIFO calculation reduces Movant's losses only about $5,000, from $271,460.13 to $266,072.39.[11] This is still well above Mr. Baber's $215,339.97 (or $50,732.42 less than Movant's losses).

But the Court need not even reach the issue of Mr. Baber's exotic loss calculations. Like Messrs. Shaulov and Paljevic, Mr. Baber does not submit any evidence that he knows what his duties are, that he ***actually talked to any attorney***, or that he knows that he is even moving to be a lead plaintiff and what that entails. Unlike Movant, and like Messrs. Shaulov and Paljevic, Mr. Baber did not file any declaration to demonstrate that he knows he is seeking to lead this litigation, that he is motivated to perform his duties, or that he used any consideration in choosing the attorney to lead the case. Accordingly, Mr. Baber has failed to demonstrate his adequacy.[12]

---

[11] *See* Third party consultant's Last-In First-Out ("LIFO") Share Accounting Gain (Loss) Analysis filed concurrently herewith as Ex. B. to Kathrein Decl.

[12] *See Thompson v. Shaw Grp., Inc.*, 2004 U.S. Dist. LEXIS 25641, at *15 (E.D. La. Dec. 13, 2004) (declining to "choose definitively among [loss] methodologies" when competing movant may be eliminated on alternative grounds).

REPLY IFSO MOT. TO CONSOL. REL. ACTIONS, APPOINT LEAD PL., AND APPROVE SELECTION OF COUNSEL - 9
Case No.: 2:21-cv-02873-FMO-JPR
011018-11/1563475 V1

In conclusion, Movant does not suffer from any of the deficiencies that affect Messrs. Shaulov and Paljevic, and no evidence exists to rebut the presumption that Movant now stands as the most adequate plaintiff. And unlike Messrs. Shaulov and Paljevic, Movant fully apprised the Court of his background, experience, his discussions with counsel, and his understanding of his role as a lead plaintiff in a timely manner. ECF No. 46, Ex. D.

For all of the foregoing reasons, and for the reasons set forth in his opening and opposition briefs, Movant respectfully requests that the Court grant his motion for consolidation and appointment of lead plaintiff and lead counsel, and deny all competing motions.

                                                Respectfully submitted,

DATED: June 17, 2021        HAGENS BERMAN SOBOL SHAPIRO LLP

                                          *s/ Danielle Smith*
                                                DANIELLE SMITH

                                          Reed R. Kathrein (139304)
                                          Lucas E. Gilmore (250893)
                                          Danielle Smith (291237)
                                          Wesley A. Wong (314652)
                                          715 Hearst Avenue, Suite 202
                                          Berkeley, CA 94710
                                          Telephone: (510) 725-3000
                                          Facsimile: (510) 725-3001
                                          reed@hbsslaw.com
                                          lucasg@hbsslaw.com
                                          danielles@hbsslaw.com
                                          wesleyw@hbsslaw.com

| | |
|---|---|
| 1 | Steve W. Berman |
| 2 | HAGENS BERMAN SOBOL SHAPIRO LLP |
| | 1301 Second Avenue, Suite 2000 |
| 3 | Seattle, WA 98101 |
| 4 | Telephone: (206) 623-7292 |
| | Facsimile:  (206) 623-0594 |
| 5 | steve@hbsslaw.com |

*Attorneys for [Proposed] Lead Plaintiff Jose Santacruz*

REPLY IFSO MOT. TO CONSOL. REL. ACTIONS, APPOINT LEAD PL., AND APPROVE SELECTION OF COUNSEL - 11
Case No.: 2:21-cv-02873-FMO-JPR
011018-11/1563475 V1