

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

SAMUEL BLAKE,

             Plaintiff,

      v.

CANOO INC., et al,

             Defendants.

Case No. CV 21-2873 FMO (JPRx)
Case No. CV 21-2879 FMO (JPRx)
Case No. CV 21-3080 FMO (JPRx)

**ORDER RE: MOTIONS FOR CONSOLIDATION OF RELATED ACTIONS; APPOINTMENT OF LEAD PLAINTIFF; AND APPROVAL OF SELECTION OF COUNSEL**

The court has reviewed and considered all the briefing filed with respect to the motions for consolidation, appointment of lead plaintiff, and approval of selection of counsel filed by: (1) James Baber ("Baber"); (2) Jeffrey Paljevic ("Paljevic"); (3) Carl Shupe and Lannie Weng ("Shupe and Weng"); (4) Bruce Nawrocki ("Nawrocki"); (5) Mohammad Waheed Rana and Yevhen Stasiv ("Rana and Stasiv"); (6) Samuel Blake ("Blake"); (7) Jose Santacruz ("Santacruz"); and (8) Vladi Shaulov ("Shaulov"), (Dkts. 23, 27, 29, 33, 37, 41, 44 & 48),[1] and concludes that oral argument is not necessary to resolve the motions. See Fed. R. Civ. P. 78(b); Local Rule 7-15; Willis v. Pac. Mar. Ass'n, 244 F.3d 675, 684 n. 2 (9th Cir. 2001).

## BACKGROUND

This case concerns three putative securities class actions filed by plaintiff Blake, Case No. CV 21-2873 ("Blake Complaint"), plaintiff Justin Kojak, Case No. CV 21-2879 ("Kojak Complaint"),

---

[1] All "Dkt." references refer to the docket in Samuel Blake v. Canoo Inc., et al., Case No. CV 21-2873.

and plaintiff Jeff Tyler, Case No. CV 21-3080 ("Tyler Complaint"). The Complaints in the three actions are nearly identical.

Each complaint alleges claims against the same corporate defendant and senior officials: Canoo, Inc. ("Canoo"), formerly known as Hennessy Capital Acquisition Corp. IV ("Hennessy Capital"), Canoo's CEO, Ulrich Kranz, and Canoo's Executive Chairman and Director, Anthony Aquila.[2] (Compare Blake Complaint at ¶¶ 7-8 & 10 with Kojak Complaint at ¶¶ 13-15 with Tyler Complaint at ¶¶ 7-8 & 10). Each Complaint is filed on behalf of a putative class comprising "all [] persons and entities who purchased or otherwise acquired publicly-traded Canoo common stock and/or warrants from August 18, 2020, through and including March 29, 2021[.]" (Compare Blake Complaint at ¶ 1 with Kojak Complaint at ¶ 1 with Tyler Complaint at ¶ 1). Each Complaint alleges that defendants made materially false or misleading statements or omissions regarding defendants' engineering services line. (Compare Blake Complaint at ¶¶ 21-45 with Kojak Complaint at ¶¶ 28-43 with Tyler Complaint at ¶¶ 21-45). Each Complaint states that defendants' purportedly false statements or omissions were made in violation of: (1) § 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder; and (2) § 20(a) of the Exchange Act. (Compare Blake Complaint at ¶¶ 52-65 with Kojak Complaint at ¶¶ 63-77 and Tyler Complaint at ¶¶ 52-65). When the truth was purportedly revealed on March 29, 2021, each Complaint alleges that "shares of Canoo fell $2.50 (or $21.2%) from a March 29, 2021 close of $11.80 per share to close at $9.30 per share on March 30, 2021, on heavy volume." (Compare Blake Complaint at ¶ 46 with Kojak Complaint at ¶ 44 with Tyler Complaint at ¶ 46).

Eight motions were filed to consolidate the actions, appoint lead plaintiff, and approve the selection of counsel. The first motion was filed by Baber. (See Dkt. 23, Motion of James Baber to Consolidate Related Actions, for Appointment as Lead Counsel, and Approval of Choice of

---

[2] The Blake Complaint and Tyler Complaint also allege claims against Canoo's CFO Paul Balciunas. (See Blake Complaint at ¶ 9); (Tyler Complaint at ¶ 9). The Kojak Complaint alleges claims against Hennessy Capital's former CEO and Board Chair, Daniel J. Hennessy, former Executive Vice President and CFO, Nicholas A. Petruska, and former directors Bradley Bell, Peter Shea, Richard Burns, James F. O'Neil III, Juan Carlos Mas, Gretchen W. McClain, and Greg Ethridge. (See Kojak Complaint at ¶¶ 16-24).

Counsel ("Baber Mot.")). The second motion was filed by Paljevic. (See Dkt. 27, Motion of Jeffrey Paljevic for Consolidation of the Actions, Appointment as Lead Plaintiff, and Approval of Selection of Counsel ("Paljevic Mot.")). The third motion was filed by Shupe and Weng. (See Dkt. 29, Motion of Carl Shupe and Lannie Weng for Consolidation of Actions, Appointment as Lead Plaintiff, and Approval of Selection of Counsel ("Shupe and Weng Mot.")). The fourth motion was filed by Nawrocki. (See Dkt. 33, Motion of Bruce Nawrocki for Consolidation of Related Actions, Appointment as Lead Plaintiff, and Approval of Lead Counsel ("Nawrocki Mot.")). The fifth motion was filed by Rana and Stasiv. (See Dkt. 37, Motion of Mohammad Waheed Rana and Yevhen Stasiv for Consolidation of the Related Actions, Appointment as Lead Plaintiffs, and Approval of Counsel [] ("Rana and Stasiv Mot.")). The sixth motion was filed by Blake. (See Dkt. 41, Motion of Samuel Blake to Consolidate Cases, for Appointment as Lead Plaintiff, and for Approval of his Selection of Lead Counsel ("Blake Mot.")). The seventh motion was filed by Santacruz. (See Dkt. 44, Motion of Jose Santacruz for Consolidation of Related Actions, Appointment as Lead Plaintiff and Approval of Selection of Lead Counsel ("Santacruz Mot.")). The eighth motion was filed by Shaulov. (See Dkt. 48, Motion of Vladi Shaulov for Consolidation, Appointment as Lead Plaintiff, and Approval of Co-Lead Counsel ("Shaulov Mot.")). Following the filing of the eight motions, Rana and Stasiv, Shupe and Weng, Paljevic, and Blake each filed a notice of non-opposition. (See Dkt. 53, Notice of Non-Opposition [by Rana and Stasiv]); (Dkt. 54, Notice of Non-Opposition [by Shupe and Weng]); (Dkt. 55, Notice of Non-Opposition of Bruce Nawrocki []); (Dkt. 61, Notice of Non-Opposition of Lead Plaintiff Movant Samuel Blake []).

## DISCUSSION

I.      CONSOLIDATION OF THE ACTIONS.

Under the Private Securities Litigation Reform Act ("PSLRA"), the court's inquiry must begin by considering whether the putative securities class actions should be consolidated. See 15 U.S.C. § 78u-4(a)(3)(B)(ii) (If "any party has sought to consolidate [related] actions for pretrial purposes or for trial, the court shall not make the determination [appointing lead plaintiff] until after the decision on the motion to consolidate is rendered."); Fed. R. Civ. P. 42(a)(2) ("If actions before the court involve a common question of law or fact, the court may . . . consolidate the actions[.]").

The court "weighs the saving of time and effort consolidation would produce against any inconvenience, delay, or expense that it would cause." Huene v. United States, 743 F.2d 703, 704 (9th Cir.1984), rev'd on reh'g, 753 F.2d 1081 (9th Cir. 1984). "A district court generally has 'broad' discretion to consolidate actions[.]" Pierce v. Cty. of Orange, 526 F.3d 1190, 1203 (9th Cir. 2008).

Here, no party opposes consolidation. Nor could they, as the Blake, Kojak, and Tyler Complaints involve identical claims for relief against Canoo and certain senior officers, and identical allegations that defendants made allegedly false and misleading statements or omissions regarding their engineering services line. (Compare Blake Complaint at ¶¶ 7-8, 10, 21-45 with Kojak Complaint at ¶¶ 13-15, 28-43 with Tyler Complaint at ¶¶ 7-8, 10, 21-45). Consolidating the matters would save time and effort and would result in little, if any, inconvenience, delay, or expense. Thus, the court will consolidate Case Nos. CV 21-2873, CV 21-2879, and CV 21-3080.

II.      APPOINTMENT OF LEAD PLAINTIFF.

The court "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members[.]" 15 U.S.C. § 78u-4(a)(3)(B)(i). The PSLRA provides a three-step process for determining who should be appointed as lead plaintiff. See In re Cavanaugh, 306 F.3d 726, 729 (9th Cir. 2002) ("Cavanaugh"). "The first step consists of publicizing the pendency of the action, the claims made and the purported class period." Id. (citing 15 U.S.C. § 78u-4(a)(3)(A)).

The second step requires the court to "adopt a presumption that the most adequate plaintiff in any private action . . . is the person or group of persons that – (aa) has either filed the complaint or made a motion in response to a notice [not later than 60 days after the date on which the notice is published]; (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure."[3] 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); see Cavanaugh, 306 F.3d at 730. The PSLRA presumes that the person or group suffering the largest financial loss has the greatest

---

[3] Unless otherwise indicated, all "Rule" references are to the Federal Rules of Civil Procedure.

incentive to recoup that loss, thus "ensuring vigorous advocacy" for the class as a whole. Tanne v. Autobytel, Inc., 226 F.R.D. 659, 668 (C.D. Cal. 2005).

During the second step, "all that is required is a 'preliminary showing' that the lead plaintiff group will satisfy the 'typicality' and 'adequacy' requirements" of Rule 23 of the Federal Rules of Civil Procedure. Erikson v. Cornerstone Propane Partners LP, 2003 WL 22232387, *3 (N.D. Cal. 2003); see Puente v. Chinacast Educ. Corp., 2012 WL 3731822, *3 (C.D. Cal. 2012) (same). Typicality requires a showing that "the claims or defenses of the representative parties are typical of the claims or defenses of the class[.]" Fed. R. Civ. P. 23(a)(3). The purpose of this requirement "is to assure that the interest of the named representative aligns with the interests of the class." Wolin v. Jaguar Land Rover N. Am., LLC, 617 F.3d 1168, 1175 (9th Cir. 2010) (internal quotation marks omitted). "The requirement is permissive, such that representative claims are typical if they are reasonably coextensive with those of absent class members; they need not be substantially identical." Just Film, Inc. v. Buono, 847 F.3d 1108, 1116 (9th Cir. 2017) (internal quotation marks omitted). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." Wolin, 617 F.3d at 1175 (internal quotation marks omitted); see B.K. by next friend Tinsley v. Snyder, 922 F.3d 957, 969-70 (9th Cir. 2019) ("The named plaintiff's representative claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical.") (internal quotation marks omitted).

Under Rule 23(a)(4), the representative parties must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The Ninth Circuit uses a two-prong test to determine whether the representative parties meet this standard: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" Ellis v. Costco Wholesale Corp., 657 F.3d 970, 985 (9th Cir. 2011) (internal quotation marks omitted). "Adequate representation depends on, among other factors, an absence of antagonism between representatives and absentees, and a sharing of interest between representatives and absentees."

Id. The adequacy of counsel is also considered under Rule 23(g).

After the second step identifies a presumptively adequate plaintiff, the third step gives members of the proposed class an opportunity to rebut that presumption. That presumption may be rebutted "only upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff – (aa) will not fairly and adequately protect the interests of the class; or (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II); see Cavanaugh, 306 F.3d at 730.

A.      Publication of the Pendency of the Actions.

Here, the first step has been satisfied as the pendency of the action was published in Newswire on April 2, 2021. (See, e.g, Dkt. 50, Declaration of Jennifer Pafiti in Support of [Shaulov Mot.] ("Pafiti Decl.") at ¶ 2); (Dkt. 50-2, Pafiti Decl., Exh. B (Newswire Press Release)).

B.      Presumptive Lead Plaintiff.

Turning to the second step, the court preliminarily notes that each of the competing motions to be appointed lead plaintiff were filed within the 60-day period prescripted by the PSLRA. (See Dkt. 23, Baber Mot.); (Dkt. 27, Paljevic Mot.); (Dkt. 29, Shupe and Weng Mot.); (Dkt. 33, Nawrocki Mot.); (Dkt. 37, Rana and Stasiv Mot.); (Dkt. 41, Blake Mot.); (Dkt. 44, Santacruz Mot.); (Dkt. 48, Shaulov Mot.).

1.      Financial Interest

Next, the court determines which competing movant has the largest "financial interest" in the action. See 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); Cavanaugh, 306 F.3d at 729-30. Shaulov alleges that he has suffered approximately $5,596,559 in losses from his purchase of 710,199 shares of Canoo stock. (See Dkt. 49, Memorandum of Points and Authorities in Support of [Shaulov Mot.] ("Shaulov Memo.") at 9); (Dkt. 50-1, Pafiti Decl., Exh. A (Loss Chart)). Baber alleges that he has suffered approximately $215,339.97 in losses from his purchase of 35,000 shares of Canoo stock. (See Dkt. 24, Memorandum of Points and Authorities in Support of [Baber Mot.] at 5); (Dkt. 25-3, Declaration of Laurence M. Rosen in Support of [Baber Mot.] ("Rosen Decl."), Exh. 3 (Loss Chart)). Paljevic alleges that he has suffered approximately $364,680.68 in losses from his purchase of 53,986 shares of Canoo stock. (See Dkt. 27-1, Memorandum of Law

in Support of [Paljevic Mot.] at 6); (Dkt. 27-4, Declaration of Adam M. Apton in Support of [Paljevic Mot.] ("Apton Decl."), Exh. B (Loss Chart)).  Santacruz alleges that he has suffered approximately $271,460 in losses from his purchase of 29,215 shares of Canoo stock.  (See Dkt. 45, Memorandum of Points and Authorities in Support of [Santacruz Mot.] at 2); (Dkt. 46, Declaration of Lucas E. Gilmore in Support of the [Santacruz Mot.] ("Gilmore Decl."), Exh. C (Loss Chart)).  Finally, Rana and Stasiv, Shupe and Weng, Paljevic, and Blake all agree that other movants have a larger financial interest.  (See Dkt. 53, Notice of Non-Opposition [by Rana and Stasiv] at 1); (Dkt. 54, Notice of Non-Opposition [by Shupe and Weng] at 1); (Dkt. 55, Notice of Non-Opposition of Bruce Nawrocki [] at 1); (Dkt. 61, Notice of Non-Opposition of Lead Plaintiff Movant Samuel Blake [] at 1).

Thus, Shaulov appears to have the largest financial interest and the greatest incentive to vigorously advocate for the class as a whole.  See, e.g., Tanne, 226 F.R.D. at 668 ("Kurtz is an 'adequate' plaintiff because he has suffered the greatest financial loss, ensuring vigorous advocacy[.]").

### 2.    Adequacy and Typicality

"[B]ased on the information [Shaulov] has provided in his pleadings and declarations, [the court turns to] whether he satisfies the requirements of Rule 23(a), in particular those of 'typicality' and 'adequacy.'" Cavanaugh, 306 F.3d at 730; see id. at 732 ("Once it determines which plaintiff has the biggest stake, the court must appoint that plaintiff as lead, unless it finds that he does not satisfy the typicality or adequacy requirements.").  "The district court has latitude as to what information it will consider in determining typicality and adequacy." In re Mersho, 6 F.4th 891, 900 (9th Cir. 2021) (quoting Cavanaugh, 306 F.3d at 732).

Here, Shaulov alleges that, like the proposed class, he purchased Canoo stock and suffered damages as a result of defendants' false or misleading statements or omissions. (See Dkt. 49, Shaulov Memo. at 11).  The court agrees that, at this preliminary stage, Shaulov's claims are "co-extensive" with the class and thus satisfies the typicality requirement of Rule 23(a).  See Hanlon v. Chrysler Corp., 150 F.3d 1011, 1020 (9th Cir. 1998), overruled in part on other grounds by Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 131 S.Ct. 2541 (2011), ("representative claims

are 'typical' if they are reasonably co-extensive with those of absent class members").

The court also agrees that Shaulov has satisfied Rule 23's adequacy requirement. See Tanne, 226 F.R.D. at 667 ("In evaluating whether a class representative is adequate, courts assess whether he has interests antagonistic to the class, and whether his counsel have the necessary capabilities and qualifications."); 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(bb) (lead plaintiff lacks adequacy if he is "subject to unique defenses"). There is no indication of conflicts between Shaulov and other class members. (See Dkt. 49, Shaulov Memo. at 11-12); (Dkt. 63, Reply Memorandum of Points and Authorities [] ("Shaulov Reply") at 2-3). Further, as explained above, Shaulov has a significant stake in the outcome of the instant action such that it is likely that he will vigorously prosecute the claims. See, e.g., Miami Police Relief & Pension Fund v. Fusion-io, Inc., 2014 WL 2604991, *5 (N.D. Cal. 2014) (appointing lead plaintiff in a securities class action where there was no evidence of conflicts and the presumptive lead plaintiff had a large stake in the litigation). Shaulov submitted a sworn certification, stating that he is "willing to serve as a representative party on behalf of the class in this action[,]" (Dkt. 50-3, Pafiti Decl., Shaulov Initial Certification); (see also Dkt. 63-3, Shaulov Revised Certification); (Dkt. 63-4, Shaulov Unredacted Initial Certification), and a sworn declaration stating that he is "informed of and understand[s] the requirements and duties imposed by the PSLRA." (Dkt. 50-4, Pafiti Decl., Declaration in Support of Lead Plaintiff Motion ("Shaulov Decl.") at ¶ 1); (see also Dkt. 62-1, Declaration in Further Support of lead Plaintiff Motion ("Shaulov Supp. Decl.) at ¶ 1). Also, Shaulov has hired counsel with experience in the prosecution of securities class actions. (See Dkt. 50-5, Pafiti Decl., Exh. E, Firm Resume of Pomerantz LLP); (Dkt. 50-6, Pafiti Decl., Exh. F, Firm Resume of Holzer & Holzer, LLC); Philips v. Ford Motor Co., 2016 WL 7428810, *12 (N.D. Cal. 2016) (finding adequacy at class action certification partly because "Plaintiffs' counsel has experience in prosecuting consumer protection actions involving claims similar to those in the instant case.").

The competing movants raise several arguments challenging Shaulov's appointment as lead plaintiff. (See Dkt. 56, Jeffrey Paljevic's Memorandum of Law in Opposition [] ("Paljevic Opp.") at 3-5); (Dkt. 58, Memorandum of Points and Authorities of James Baber [] ("Baber Opp.") at 2-5); (Dkt. 59, Jose Santacruz Memorandum in Opposition [] ("Santacruz Opp.") at 4-7); (Dkt.

64, Reply Memorandum of Points and Authorities in Further Support of [Baber Mot.] ("Baber Reply") at 1-2); (Dkt. 65, Jeffrey Paljevic's Reply [] ("Paljevic Reply") at 6); (Dkt. 66, Reply Memorandum of Points and Authorities in Further Support of [Santacruz Mot.] ("Santacruz Reply") at 2-4).   First, all three competing movants contend that Shaulov did not provide sufficient background information in his moving papers to assess his adequacy and typicality.  (See Dkt. 56, Paljevic Opp. at 3-5); (Dkt. 58, Baber Opp. at 4-5); (Dkt. 59, Santacruz Opp. at 4-7); see Hessefort v. Super Micro Computer, Inc., 317 F.Supp.3d 1056, 1060-61 (N.D. Cal. 2018) ( "Once a movant has demonstrated that it has the largest financial interest, [he or she] need only make a prima facie showing of its typicality and adequacy.").   However, even if Shaulov's initial submission lacked sufficient information to make this determination, he submitted a supplemental declaration providing information regarding his age, investment experience, educational background, and occupation, (see Dkt. 62-1, Exh. A, Shaulov Supp. Decl. at 1), which is the information the competing movants contend is necessary.  (See Dkt. 63, Shaulov Reply at 7).

The competing movants rely on cases that are distinguishable because they involve significant concerns beyond the lack of detailed background information in plaintiff's initial motion. See, e.g., Karp v. Diebold Nixdorf, Inc., 2019 WL 5587148, *6 (S.D.N.Y. 2019) (finding that a movant who "provided the Court with little to go on with respect to their alleged capacity to manage this litigation" had also "exaggerated loss totals" by "some 34%" in their initial submission and delayed filing a correction); In re Boeing Co. Aircraft Sec. Litig., 2020 WL 476658, *2 (N.D. Ill. 2020) (noting that joint movants "provided virtually no information about" themselves, but also "revealed a curious trading history with regard to [defendant's] shares that the [movants'] 'pleadings and declarations' did nothing to explain"); Camp v. Qualcomm Inc., 2019 WL 277360, *3 (S.D. Cal.  2019) (finding that a movant who "failed to include any basic details about himself" in his motion also had "significant errors in the transaction records and loss calculations accompanying [his] motion") (internal quotation marks omitted).[4]  In any event, it is worth noting

_____

[4] In another case cited by competing movants, Perez v. HEXO Corp., 2020 WL 905753 (S.D.N.Y. 2020), the court expressed skepticism that a movant who "fail[ed] to provide any information regarding his experience in his preliminary motion" could "meaningfully oversee and

that the competing movants provided, at best, similar information to what is available in Shaulov's supplemental declaration. (See Dkt. 25-2, Rosen Decl., Exh. 2, Baber Certification); (Dkt. 27-3, Apton Decl., Exh. A, Paljevic Certification); (Dkt. 46, Gilmore Decl., Exh. B, Santacruz Certification); (id., Exh. D, Declaration of Jose Santacruz [] ("Santacruz Decl."). Based on the record here, the court is satisfied that Shaulov provided sufficient information to find that he made a sufficient showing of typicality and adequacy at this stage.

The second argument raised by Baber and Santacruz is that Shaulov's initial certification is defective because it contained redactions, did not include the clause "under the laws of the United States" in the attestation that it was signed under penalty of perjury, and stated that Shaulov had "reviewed the complaint filed in this action," even though the Blake Complaint had not yet been filed at the time Shaulov signed the certification. (See Dkt. 58, Baber Opp. at 2-3); (Dkt. 59, Santacruz Opp. at 2); (Dkt. 64, Baber Reply at 1). As an initial matter, the PSLRA's text is ambiguous as to whether it requires a party moving for appointment as lead counsel to file a formal certification. See 7 Newberg on Class Actions § 22:49 at 335-36 (5th ed. 2017) ("There is no doubt that a putative class representative *filing a complaint* must comply with this certification requirement. However, it is sometimes the case that plaintiffs 'seeking to serve as a representative party on behalf of a class' have not filed complaints. . . . It is less immediately obvious that such movants must file this certification in conjunction with their application to serve in those positions.") (emphasis in original); Aronson v. McKesson HBOC, Inc., 79 F.Supp.2d 1146, 1155 (N.D. Cal. 1999) (noting that "[i]t seems strained to recast the words 'filed with the complaint' to mean 'filed with the complaint or motion'"); Andrade v. Am. Apparel, Inc., 2011 WL 13130706, *12 (C.D. Cal. 2011) ("[S]ince it is unsettled whether a candidate for lead plaintiff who has not filed a complaint is even required to submit [ ] a certificate, at this stage of the litigation, the adequacy of the certificate should not be the determinative factor in selecting the lead plaintiff") (quoting Bhojwani v. Pistiolis, 2007 WL 2197836, *8 (S.D.N.Y. 2007) (brackets in original).

---

control the prosecution of [the] consolidated class action." Id. at *3 (emphasis in original). "By contrast," the court noted, the movants "who [were] next in line to become lead plaintiff . . . [had] submitted a joint declaration that offer[ed] detailed information in support of their adequacy[.]" Id.

With respect to the redactions in Shaulov's initial certification, (see Dkt. 50-3, Pafiti Decl., Exh. C, Shaulov Initial Certification at ECF 818-19), he responds that it was "merely a formatting choice" and that the "same transaction information was presented on the accompanying Schedule A" attached to his certification. (Dkt. 63, Shaulov Reply at 5). Shaulov also states that "the location at which [he] executed his Certification was redacted for the sake of [his] privacy." (Id.).

In any event, Shaulov submitted an unredacted version of his initial certification, (see Dkt. 63-4, Shaulov Unredacted Initial Certification), as well as a revised certification without any redactions. (See Dkt. 63-3, Shaulov Revised Certification). Courts may consider amended certifications when competing movants challenge alleged defects in the original certification. See, e.g., Tai Jan Bao v. SolarCity Corp., 2014 WL 3945879, *4 (N.D. Cal. 2014) (finding that despite "errors in [movant's] sworn certification" and inaccuracies in his loss calculations, movant's "amended certification [was] sufficient to make a prima facie showing of typicality and adequacy, which is all that is required for [the movant] to be anointed the presumptively most adequate plaintiff"); In re Silver Wheaton Corp. Sec. Litig., 2017 WL 2039171, *10 (C.D. Cal. 2017) (finding that "the plaintiffs have offered reasonable explanations for what amount to clerical errors in their prior certifications"); In re Lyft Sec. Litig., 2020 WL 1043628, *6 (N.D. Cal. 2020) (accepting a movant's amended certification that "identifie[d] each of the sales that [a competing movant] argue[d] were not included" in the initial certification). The court is unpersuaded that the redactions in Shaulov's initial certification should disqualify him from being appointed lead plaintiff, especially in light of his subsequent filing of an unredacted copy and a revised certification.

As to the absence of the words, "under the laws of the United States," in Shaulov's attestation that he submitted the certification under penalty of perjury, (see Dkt. 50-3, Pafiti Decl., Exh. C, Shaulov Initial Certification at ECF 819); (see also Dkt. 58, Baber Opp. at 2), Shaulov also corrected that error in his revised certification. (See Dkt. 63-3, Shaulov Revised Certification at ECF 1013); see also In re Lyft Sec. Litig., 2020 WL 1043628, at *6 (concluding that an "inadvertent clerical error does not preclude the Court from considering the amended certification"); Malriat v. QuantumScape Corp., 2021 WL 1550454, *5 (N.D. Cal. 2021) ("Even if there were some technical violation, courts generally do not find that immaterial or clerical mistakes render a movant

inadequate without more.") (collecting cases).

The competing movants also note that Shaulov's initial certification stated that he had "reviewed the initial complaint filed in this action[,]" even though the certification was dated one day prior to Blake filing the complaint that initiated this action. (See Dkt. 50-3, Pafiti Decl., Exh. C, Shaulov Initial Certification at ECF 818-19); (see also Dkt. 58, Baber Opp. at 2-3); (Dk. 59, Santacruz Opp. at 5). In response, Shaulov contends that when he signed the initial certification on April 1, 2021, he had "authorized the filing of a complaint that he and his counsel anticipated would be the first-filed[,]" and thus he was referring to the complaint he expected would be filed in this action. (Dkt. 63, Shaulov Reply at 4). One of Shaulov's attorneys filed a declaration stating that on that date, he had sent Shaulov a draft complaint that "contained substantially similar allegations to the complaint that was shortly thereafter filed in the Blake action." (Dkt. 63-2, Declaration of Marshall P. Dees [] ("Dees Decl.") at ¶ 2). After Blake filed his complaint, Shaulov "opted instead to file a motion seeking appointment as Lead Plaintiff" rather than file the draft complaint he had reviewed. (Id. at ¶ 3). Absent evidence that Shaulov's erroneous statement that he "reviewed the initial complaint filed in this action" was "done in bad faith or was intentionally misleading," Malriat, 2021 WL 1550454, at *5, the court is unpersuaded that it renders Shaulov inadequate to serve as lead plaintiff. See In re Solar City Corp. Sec. Litig., 2017 WL 363274, *6 (N.D. Cal. 2017) (noting that despite inaccuracies regarding losses in the motion for appointment as lead plaintiff, there was "no indication that [the movant's] error was caused by anything but an oversight"); Niederklein v. PCS EdventuresA.com, Inc., 2011 WL 759553, *11 (D. Idaho 2011) (noting that "minor or inadvertent mistakes made in a sworn certification do not strike at the heart of Rule 23's adequacy requirement" in a case where the movant's certification erroneously stated he "authorized" the filing of a complaint that was instead filed by another plaintiff). In addition, Shaulov corrected this error in his revised certification. (See Dkt. 63-3, Exh. B, Shaulov Revised Certification at ECF 1012) ("I have reviewed a Complaint against [Canoo] and authorize the filing of a comparable complaint on my behalf.").

In short, Shaulov's errors in his certification do not preclude a finding that, at this stage, he has met his prima facie burden of showing adequacy and typicality. See, e.g., In re Silver

Wheaton Corp. Sec. Litig., 2017 WL 2039171, at *10 ("Although the plaintiffs' errors in their trade certifications may demonstrate carelessness, they are not the types of errors that would normally preclude a finding of adequacy to represent the Class.  The errors do not demonstrate a conflict with the Class, nor do they make plaintiff's claims atypical of the Class."); In re Solar City Corp. Sec. Litig., 2017 WL 363274, at *6 ("While the Court finds the error in [movant's] claimed damages to be troubling, those errors do not rebut the presumption that [the movant] is lead plaintiff. Multiple district courts have held that minor or inadvertent mistakes made in a sworn certification do not strike at the heart of Rule 23's adequacy requirement.") (internal quotation marks omitted) (collecting cases).

Finally, Baber and Santacruz briefly object to Shaulov's request to have two firms appointed as co-lead counsel (See Dkt. 58, Baber Opp. at 5) ("No client-driven explanation is provided as to why two co-lead counsel are necessary to represent him."); (Dkt. 66, Santacruz Reply at 4 n. 5) (arguing that Shaulov's request, "without any justification like the complexity of the case[, ] further suggests he does not understand his responsibilities or is simply controlled by counsel here.").  Courts in this district routinely appoint two firms as co-lead counsel in PSLRA actions without requiring a special showing or justification.  See, e.g., In re Cheetah Mobile, Inc. Sec. Litig., 2021 WL 99635, *4 (C.D. Cal. 2021) (appointing two "well qualified" firms as co-lead counsel).  Moreover, Baber's cited authorities are inapposite. See In re Gemstar-TV Guide Int'l, Inc. Sec. Litig., 209 F.R.D. 447, 452 (C.D. Cal. 2002) (expressing concern about a request to appoint four law firms); In re Pfizer Inc. Sec. Litig., 2005 WL 8153373, *4 (S.D.N.Y. 2005) (declining to appoint two law firms as co-lead counsel where one of the joint movants requesting the firms withdrew its application).

In short, the court finds that Shaulov is presumptively qualified to serve as lead plaintiff in this case.  See 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); Cavanaugh, 306 F.3d at 730.

C.       Rebutting the Appointment of the Presumptive Lead Plaintiff.

The competing movants appear to argue only that Shaulov failed to make a prima facie showing rather than attempt to rebut the presumption that he should be appointed lead plaintiff. (See, generally, Dkt. 56, Paljevic Opp.); (Dkt. 58, Baber Opp. at 2-5); (Dkt. 59, Santacruz Opp.

13

at 4-7); (Dkt. 64, Baber Reply at 1-2); (Dkt. 65, Paljevic Reply at 6); (Dkt. 66, Santacruz Reply at 2-4). ). Moreover, they primarily rely on cases in which the court determined that the movant with the largest financial interest had failed to make an initial showing of adequacy and typicality. See, e.g., Camp, 2019 WL 3554798, at *2 (explaining that "the Court never found [movant] was the presumptive lead plaintiff, [and] thus there was no need for an evidentiary rebuttal"); Tomaszewski v. Trevena, Inc., 383 F.Supp.3d 409, 415 (E.D. Pa. 2019) (finding that "errors . . . made at the outset of the case . . cause[d] the Court to doubt whether [the movant with the largest financial interest] possesse[d] the necessary adequacy and sophistication to be lead plaintiff"). In any event, no proof has been submitted that Shaulov "will not fairly and adequately protect the interests of the class[.]" 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

To the extent any of the competing movants have presented rebuttal evidence, Baber points to two social media posts on what appears to be Shaulov's Twitter account, although Shaulov did not have an opportunity to respond because Baber raised this argument for the first time in his Reply. First, Baber highlights the following tweet on April 1, 2021: "At this moment, there are 2 class-action lawsuits from 2 large legal firms, and I see no reason why I shouldn't join in for the lawsuit against you and claim my funds back." (Dkt. 64, Baber Reply at 2) (internal quotation marks omitted). Baber implies this undercuts Shaulov's adequacy because "no such lawsuits were filed at the time." (Id.). But it is unclear whether that tweet was intended to state that two lawsuits against defendants had already been filed by April 1, 2021. If so, the court is unconvinced this inaccurate statement rebuts Shaulov's presumptive lead plaintiff's status. And two lawsuits were, in fact, filed the next day. (See Blake Complaint and Kojak Complaint).

In the second message Baber highlights, Shaulov apparently tweeted that he was "holding 770k shares" of Canoo on April 21, 2021, which is higher than the number of shares he reported in his initial certification signed on April 1, 2021. (See Dkt. 64, Baber Reply at 2-3). Baber contends that this renders him atypical or inadequate because, if true, Shaulov "purchase[d] significant amount of stock after the fraud has been disclosed." (Id. at 3). At the end of the class period, Shaulov reported 710,199 shares retained. (See Dkt. 50-1, Pafiti Decl., Exh. A, Shaulov Loss Chart); (Dkt. 57, Shaulov Opp. at 2). If the tweet Baber highlights accurately states the

number of shares Shaulov held at that time, it is a relatively small increase in shares compared with the presumptive lead plaintiff in Erickson v. Snap, Inc., 2017 WL 11592635 (C.D. Cal. 2017). In Erickson, the court declined to appoint the plaintiff with the largest financial loss as lead plaintiff because he had "significantly increased his purchase of Snap stock by purchasing 150,000 shares – out of his total 250,000 shares – after" the alleged corrective disclosure, which "might expose [him] to unique defenses[.]" Id. at *3. The court noted that "post-disclosure purchases can defeat the typicality requirement for class certification when plaintiffs made a disproportionately large percentage of their purchases post-disclosure." Id. at *4 (internal quotation marks omitted). Here, the court is unpersuaded that the relatively small post-disclosure increase in Shaulov's holdings, if it in fact occurred, renders Shaulov atypical or inadequate.

For the foregoing reasons, the court finds that Baber has failed to rebut the presumption that Shaulov is the most adequate lead plaintiff.

III.    SELECTION OF LEAD COUNSEL.

The PSLRA states that "[t]he most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v). "While the appointment of counsel is made subject to the approval of the court, the [PSLRA] clearly leaves the choice of class counsel in the hands of the lead plaintiff." Cavanaugh, 306 F.3d at 734. "Selecting a lawyer in whom a litigant has confidence is an important client prerogative and [courts] will not lightly infer that Congress meant to take away this prerogative from securities plaintiffs." Id. "[T]he district court should not reject a lead plaintiff's proposed counsel merely because it would have chosen differently." Cohen v. U.S. Dist. Court, 586 F.3d 703, 711 (9th Cir. 2009). "[I]f the lead plaintiff has made a reasonable choice of counsel, the district court should generally defer to that choice." Id. at 712.

Here, Shaulov has selected Pomerantz LLP and Holzer & Holzer LLC as his co-lead counsel for the class. (See Dkt. 49, Shaulov Memo. at 13-14). The court has reviewed the resumes of counsel, (see Dkt. 50-5, Pafiti Decl., Exh. E, Firm Resume of Pomerantz LLP); (Dkt. 50-6, Pafiti Decl., Exh. F, Firm Resume of Holzer & Holzer, LLC), and is satisfied that Shaulov has made a reasonable choice of counsel and will defer to that choice.

**This order is not intended for publication.  Nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

**CONCLUSION**

Based on the foregoing, IT IS SO ORDERED that:

1.  Vladi Shaulov's Motion for Consolidation, Appointment as Lead Plaintiff, and Approval of Co-Lead Counsel (**Document No. 48**) is **granted**.  The motions filed by James Baber, Jeffrey Paljevic, Carl Shupe and Lannie Weng, Bruce Nawrocki, Mohammad Waheed Rana and Yevhen Stasiv, and Samuel Blake (**Documents Nos. 23, 27, 29, 33, 37, 41, 44**) are **granted** as to the request to consolidate the actions and **denied** in all other respects.

2.  Blake v. Canoo Inc., et al, Case No. CV 21-2873 FMO (JPRx), Kojak v. Canoo Inc., et al., Case No. 21-2879 FMO (JPRx), and Tyler v. Canoo Inc., et al., Case No. CV 21-0380 FMO (JPRx) are consolidated for all purposes.  The Clerk shall consolidate these actions such that Case No. CV 21-2873 FMO (JPRx) shall be the lead case.  All future filings shall be filed in Case No. CV 21-2873 FMO (JPRx) until further notice from the court.  The Clerk shall administratively close Case No. 21-2879 FMO (JPRx) and Case No. CV 21-0380 FMO (JPRx) pending further order of the court.

3.  Vladi Shaulov is hereby appointed as lead plaintiff for the proposed class.

4.  Vladi Shaulov's choice of counsel is approved, and accordingly, Pomerantz LLP and Holzer & Holzer LLC are hereby appointed co-lead counsel for the proposed class.

5.  Pomerantz LLP and Holzer & Holzer LLC shall file a Consolidated First Amended Complaint by no later than **March 4, 2022.**

Dated this 18th day of February, 2022.

                                                    /s/
                                        Fernando M. Olguin
                                        United States District Judge

16