Mark C. Holscher (SBN 139582)
mark.holscher@kirkland.com
KIRKLAND & ELLIS LLP
555 South Flower Street
Los Angeles, CA  90071
Telephone:  (213) 680-8400
Facsimile:  (213) 680-8500

David A. Klein (SBN 273925)
david.klein@kirkland.com
KIRKLAND & ELLIS LLP
2049 Century Park East
Los Angeles, CA  90067
Telephone:  (310) 552-4200
Facsimile:  (310) 552-5900

*Attorneys for Defendants Canoo Inc.,
Tony Aquila, Ulrich Kranz, and Paul
Balciunas*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SAMUEL BLAKE, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiffs, <br> v. <br><br> CANOO INC., TONY AQUILA, ULRICH KRANZ, and PAUL BALCIUNAS, <br><br> Defendants. | Case No. 2:21-CV-02873-FMO-JPR <br><br> **(Consolidated)** <br><br> Case No. 2:21-CV-02879-FMO-JPR <br><br> Case No. 2:21-CV-03080-FMO-JPR <br><br> **DEFENDANTS CANOO INC., TONY AQUILA, ULRICH KRANZ, AND PAUL BALCIUNAS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS LEAD PLAINTIFF'S CONSOLIDATED AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** <br><br> Hearing Date: July 28, 2022 (Pursuant to Briefing Schedule, *see* Dkt. 73) <br><br> Time: 10:00 a.m. <br><br> Judge: Hon. Fernando M. Olguin <br><br> Courtroom.: 6D |

## **TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................1

ARGUMENT .............................................................................................................2

I.    THE OPPOSITION CONFIRMS THAT THE AC DOES NOT ALLEGE ANY ACTIONABLE FALSE OR MISLEADING STATEMENTS ...........2

    A.    Alleged Omissions Do Not Render Challenged Statements Misleading ....................................................................................2

        1.    Canoo disclosed its engineering services revenue ..................2

        2.    Canoo disclosed the status of its work for Hyundai ...............3

        3.    Engineering Services Statements referred to potential projects ...............................................................................5

        4.    Subscription Statements did not refer to capital requirements 7

    B.    Decisions Made After the Challenged Statements Are Not Actionable ........................................................................8

        1.    The AC does not allege facts showing Canoo had de-emphasized engineering services at the time of the challenged statements ...............................................................8

        2.    The AC does not allege admissions that Engineering Services Statements were misleading ....................................10

        3.    The Subscription Statements are not actionable ....................13

    C.    The Opposition Confirms Alleged CWs Are Unreliable ..................15

    D.    Challenged Statements Are Non-Actionable Puffery and Opinions ...........................................................................16

    E.    Forward-Looking Statements Are Not Actionable ..........................18

II.   THE AC FAILS TO ALLEGE A STRONG INFERENCE OF SCIENTER .........................................................................................19

    A.    Plaintiff Fails to Allege Defendants Acted with Scienter ................19

    B.    The Closing of the Merger Is Insufficient to Plead Scienter ...........21

    C.    Plaintiff's Additional Allegations Do Not Establish Scienter ..........22

        1.    An ongoing SEC investigation and resignations are insufficient ..............................................................................22

        2.    Temporal proximity is insufficient .......................................23

i

III. PLAINTIFF FAILS TO ALLEGE THAT THE INDIVIDUAL DEFENDANTS "MADE" ACTIONABLE FALSE STATEMENTS .......24

IV. THE AC FAILS TO STATE RULE 10b-5(a), 10b-5(c) OR § 20(a) CLAIMS .......................................................................................25

CONCLUSION.................................................................................................25

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)...................................................................................9

*Asher v. Baxter Int'l Inc.*,
  377 F.3d 727 (7th Cir. 2004) .................................................................19

*Berg v. Popham*,
  412 F.3d 1122 (9th Cir. 2005) ...............................................................10

*Bodri v. GoPro, Inc.*,
  252 F. Supp. 3d 912 (N.D. Cal. 2017)......................................................6

*Bricklayers & Masons Loc. Union No. 5 Ohio Pension Fund v.*
  *Transocean Ltd.*,
  866 F. Supp. 2d 223 (S.D.N.Y.2012) ......................................................17

*Casella v. Webb*,
  883 F.2d 805 (9th Cir. 1989) .................................................................17

*Cholla Ready Mix, Inc. v. Civish*,
  382 F.3d 969 (9th Cir. 2004*)* ...............................................................10

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech.,*
  *Inc.*,
  856 F.3d 605 (9th Cir. 2017) .................................................................17

*Costanzo v. DXC Tech. Co.*,
  2021 WL 5908385 (N.D. Cal. Dec. 14, 2021) .......................................17

*Curry v. Hansen Med., Inc.*,
  2011 WL 3741238 (N.D. Cal. Aug. 25, 2011).......................................25

*Cutler v. Rancher Energy Corp.*,
  2014 WL 1153054 (C.D. Cal. Mar. 11, 2014) .......................................17

*Employees' Retirement System of Government of the Virgin Islands v.*
  *Blanford*,
  794 F.3d 297 (2d Cir. 2015) ..................................................................16

*Fecht v. Price Co.*,
 70 F.3d 1078 (9th Cir. 1995) ................................................................................15

*Feyko v. Yuhe Int'l, Inc.*,
 2013 WL 816409 (C.D. Cal. Mar. 5, 2013) ...........................................................15

*Flynn v. Sientra*,
 2016 WL 3360676 (C.D. Cal. June 9, 2016)..........................................................21

*Friedman v. Endo Int'l PLC*,
 2018 WL 446189 (S.D.N.Y. Jan. 16, 2018)......................................................14, 15

*Garcia v. J2 Glob., Inc.*,
 2021 WL 1558331 (C.D. Cal. Mar. 5, 2021) .........................................................12

*Hefler v. Wells Fargo & Co.*,
 2018 WL 1070116 (N.D. Cal. Feb. 27, 2018).......................................................24

*Howard v. Everex Sys., Inc.*,
 228 F.3d 1057 (9th Cir. 2000) .............................................................................19

*In re Accuray, Inc. S'holder Derivative Litig.*,
 757 F. Supp. 2d 919 (N.D. Cal. 2010 ..................................................................23

*In re Banc of Cal. Sec. Litig.*,
 2017 WL 3972456 (C.D. Cal. Sep. 6, 2017) .........................................................23

*In re Cadence Design Sys., Inc. Sec. Litig.*,
 692 F. Supp. 2d at 1189.....................................................................................20

*In re Century 21-RE/MAX Real Est. Advert. Claims Litig.*,
 882 F. Supp. 915 (C.D. Cal. 1994)......................................................................17

*In re ChinaCast Educ. Corp. Sec. Litig.*,
 809 F.3d 471 (9th Cir. 2015) ..............................................................................20

*In re Daou Systems, Inc.*,
 411 F.3d 1006 (9th Cir. 2005) .............................................................................16

*In re Fusion-io, Inc. Sec. Litig.*,
 2015 WL 661869 (N.D. Cal. Feb. 12, 2015). Dkt. 93 ........................................11

*In re Hansen Nat. Corp. Sec. Litig.*,
 527 F. Supp. 2d 1142 (C.D. Cal. 2007)...............................................................22

*In re Immune Response Sec. Litig.*,
   375 F. Supp. 2d 983 (S.D. Cal. 2005) ..................................................................19

*In re Netflix, Inc., Sec. Litig.*,
   923 F. Supp. 2d 1214 (N.D. Cal. 2013)................................................................19

*In re NVIDIA Corp. Sec. Litig.*,
   768 F.3d 1046 (9th Cir. 2014) ..............................................................................20

*In re Quality Sys., Inc. Sec. Litig.*,
   865 F.3d 1130 (9th Cir. 2017) ..............................................................................18

*In re REMEC Inc. Sec. Litig.*,
   702 F. Supp. 2d 1202 (S.D. Cal. 2010) ................................................................19

*In re Rigel Pharms., Inc. Sec. Litig.*,
   697 F.3d 869 (9th Cir. 2012) ..................................................................................3

*In re Silicon Graphics Inc. Sec. Litig.*,
   183 F.3d 970 (9th Cir. 1999) ..........................................................................21, 25

*In re Sona Nanotech, Inc. Sec. Litig.*,
   562 F. Supp. 3d 715 (C.D. Cal. 2021)..................................................................2, 3

*In re UTStarcom, Inc. Sec. Litig.*,
   617 F. Supp. 2d 964 (N.D. Cal. 2009)...................................................................23

*In re Vaxart, Inc. Sec. Litig.*,
   2021 WL 6061518 (N.D. Cal. Dec. 22, 2021) ........................................................7

*In re VeriFone Holdings, Inc. Sec. Litig.*,
   704 F.3d 694 (9th Cir. 2012) ................................................................................19

*In re VeriFone Sec. Litig.*,
   11 F.3d 865 (9th Cir. 1993) ..................................................................................25

*In re Wells Fargo & Co. S'holder Derivative Litig.*,
   282 F. Supp. 3d 1074 (N.D. Cal. 2017)................................................................24

*In re Wet Seal, Inc. Sec. Litig.*,
   518 F. Supp. 2d 1148 (C.D. Cal. 2007).................................................................25

*Kovtun v. VIVUS, Inc.*,
   2012 WL 4477647 (N.D. Cal. Sept. 27, 2012)......................................................13

v

*Lipton v. Pathogenesis Corp.*,
 284 F.3d 1027 (9th Cir. 2002) ...............................................................21

*Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*,
 416 F.3d 940 (9th Cir. 2005) .................................................................19

*Longo v. OSI Sys., Inc.*,
 2021 WL 1232678 (C.D. Cal. Mar. 31, 2021) .......................................20

*M & M Hart Living Tr. v. Glob. Eagle Ent., Inc.*,
 2017 WL 5635424 (C.D. Cal. Aug. 20, 2017) .......................................20

*Miller v. Thane Int'l, Inc.*,
 519 F.3d 879 (9th Cir. 2008) ...................................................................7

*Mulderrig v. Amyris, Inc.*,
 492 F. Supp. 3d 999 (N.D. Cal. 2020)....................................................19

*Mulligan v. Impax Lab'ys, Inc.*,
 36 F. Supp. 3d 942 (N.D. Cal. 2014)......................................................17

*Nguyen v. Endologix, Inc.*,
 962 F.3d 405 (9th Cir. 2020) ..............................................................3, 21

*No. 84 Employer-Teamster Joint Council Pension Tr. Fund v. Am. West Holding Corp.*,
 320 F.3d 920 (9th Cir. 2003) .................................................................21

*Or. Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*,
 774 F. 3d 598 (9th Cir. 2014) ...........................................................17, 20

*Patterson v. Hennessy*,
 2022 WL 2208893 (D. Del. June 21, 2022) ...........................1, 8, 9, 10

*Reed v. Amira Nature Foods Ltd.*,
 2016 WL 6571281 (C.D. Cal. July 18, 2016) ........................................24

*Ret. Sys. v. Sterling Fin. Corp.*,
 963 F. Supp. 2d 1092 (E.D. Wash. 2013), *aff'd*, 691 F. App'x 393 (9th Cir. 2017) ...............................................................................................23

*Rihn v. Acadia Pharma. Inc.*,
 2016 WL 5076147 (S.D. Cal. Sept. 19, 2016) ..................................23, 24

*S. Ferry LP #2 v. Killinger*,
  687 F. Supp. 2d 1248 (W.D. Wash. 2009) Dkt. 93 ..............................................20

*SEB Inv. Mgmt. AB v. Align Tech.*,
  485 F. Supp. 3d 113 (N.D. Cal. 2020)...............................................................10

*SEC v. Mozilo*,
  2009 WL 3807124 (C.D. Cal. Nov. 3, 2009) .......................................................10

*Slayton v. Am. Express Co.*,
  604 F.3d 758 (2d Cir. 2010) .............................................................................18

*Turocy v. El Pollo Loco Holdings, Inc.*,
  2016 WL 4056209 (C.D. Cal. July 25, 2016) ....................................................17

*Weston Fam. P'ship LLLP v. Twitter, Inc.*,
  29 F.4th 611 (9th Cir. 2022) .......................................................................17, 18

*Yourish v. Cal. Amplifier*,
  191 F.3d 983 (9th Cir. 1999) .............................................................11, 13, 23, 24

*Zucco Partners, LLC v. Digimarc Corp.*,
  552 F. 3d 981 (9th Cir. 2009) ...........................................................................23

**Statutes**

15 U.S.C. § 78u-5 ................................................................................................18

**Rules**

Fed. R. P. 9(b) ...............................................................................................23, 24

17 C.F.R. § 10b-5...............................................................................................25

Fed. R. Civ. P. 12(b)(6) .......................................................................................9

**Other Authorities**

*Just*, MERRIAM WEBSTER, https://www.merriam-
  webster.com/dictionary/just...............................................................................5

**INTRODUCTION**

Plaintiff's Opposition confirms the AC is based on a fraud-by-hindsight theory prohibited by bedrock law and unsupported by any meaningful scienter allegations.[1] Defendants' Motion argued, among other things, that: (1) alleged omissions do not render challenged statements misleading, including because Canoo disclosed its engineering services revenue and the status of its work for Hyundai; (2) Plaintiff does not allege any contemporaneous facts that contradict the challenged statements; (3) alleged statements by purported CWs do not contradict any of the challenged statements; (4) many challenged statements are non-actionable puffery, statements of opinion, and protected forward-looking statements; and (5) "Lock-Up Agreements" preventing stock trades at prices allegedly inflated by omissions negate any inference of scienter. The Opposition offers little substantive response to these grounds for dismissal.

Plaintiff ignores most of Defendants' arguments and authority, mischaracterizes the statements in Canoo's SEC filings and March 29, 2021 earnings call, and abandons the scienter theory alleged in his AC. Plaintiff then asks the Court to draw from these mischaracterizations unwarranted inferences that Canoo had de-emphasized its engineering services business and subscription model by the time of the challenged statements. But these are the types of inferences that a court has already rejected in a related stockholder derivative action based on the same allegations Plaintiff makes here. *See Patterson v. Hennessy*, 2022 WL 2208893, at \*\*3-4 (D. Del. June 21, 2022) (recommending dismissal of complaint alleging Canoo had abandoned engineering services at the time of challenged statements).

The motion to dismiss should be granted.

---

[1] Undefined capitalized terms are defined in Defendants' Memorandum of Points and Authorities in Support of Defendants' Motion to Dismiss ("Mot."), Dkt. 89-1. All emphasis is supplied and quotations are omitted from citations unless otherwise indicated.

## ARGUMENT

**I. THE OPPOSITION CONFIRMS THAT THE AC DOES NOT ALLEGE ANY ACTIONABLE FALSE OR MISLEADING STATEMENTS**

**A. Alleged Omissions Do Not Render Challenged Statements Misleading**

Plaintiff concedes his claims are premised on an omission theory. The Opposition, however, offers no defense for the AC alleging 14 statements were misleading (Dkts. 85, AC, § V; 90-1, Ex. 1) by repeating conclusory allegations that the same four omissions made Engineering Services Statements misleading and the same three omissions made Subscription Statements misleading. *See, e.g.*, Dkt. 93, Opp'n, at 8-14. Plaintiff's pleading strategy fails as a matter of law and his claims should be dismissed on this basis alone. *See, e.g.*, *In re Sona Nanotech, Inc. Sec. Litig.*, 562 F. Supp. 3d 715, 724 (C.D. Cal. 2021) ("by giving the duplicative misrepresentation explanations for sixteen different statements" Plaintiffs "fail to *specifically* allege why each statement constitutes a misrepresentation"). The alleged omissions do not render the challenged statements misleading in any event.

**1. Canoo disclosed its engineering services revenue**

Plaintiff concedes that the AC falsely alleged that Canoo did not disclose until March 31, 2021 that its 2020 engineering services revenue resulted from a single performance obligation completed in July 2020. Dkts. 85, AC, ¶¶ 79, 88, 94, 96, 122; 93, Opp'n, at 9. As early as November 27, 2020, Canoo disclosed this fact in an SEC filing. Plaintiff also does not dispute that Canoo disclosed this fact in three more SEC filings in December 2020 and January 2021. Dkt. 89-1, Mot. at 7 (citing Dkts. 90-9, Ex. 9, at F-33; 90-10, Ex. 10, at F-33; 90-2, Ex. 2, at F-33; 90-11, Ex. 11, at F-33). Instead, Plaintiff argues that the alleged omission of the information renders only Engineering Services Statements made before November 27, 2020 misleading. Dkt. 93, Opp'n, at 9 (citing Dkt. 85, AC, ¶¶ 76, 85, 87). Plaintiff's argument fails. The fact that Canoo's revenue derived from a performance obligation completed in July 2020 is consistent with the Engineering Statements made on August 18, 2020, September 18,

2020, and October 23, 2020.[2]  The "subsequent release of more extensive information" that "was not inconsistent with . . . initial statements" cannot make the earlier statements misleading.  *In re Rigel Pharms., Inc. Sec. Litig.*, 697 F.3d 869, 881 (9th Cir. 2012).  Plaintiff also does not—and cannot—allege that Defendants "deliberately sat on . . . information before delayed public disclosure" or "hid the information for a long time."  *In re Sona Nanotech, Inc. Sec. Litig.*, 562 F. Supp. 3d 715, 726 (C.D. Cal. 2021).[3]

On the contrary, Canoo disclosed the information when it included its financial statements through Q3 2020 (September 30, 2020) in an SEC filing less than two months after the first allegedly misleading statement on August 18, 2020.  Plaintiff's suggestion that Canoo was hiding negative information about its revenue also does not make sense.  The fact that it generated $2.55 million from an engineering services performance obligation completed in July 2020 ***supported***, rather than undermined, its statements that its engineering services business "offer[ed] a unique opportunity to generate immediate revenues."  Dkts. 85, AC, ¶¶ 85, 87; 90-1, Ex. 1, at No. 8.

### 2.    Canoo disclosed the status of its work for Hyundai

Likewise, Plaintiff's claim that the Engineering Services Statements were false or misleading because Defendants failed to disclose that, during the Class Period, Canoo

---

[2]  During an August 18, 2020 investor conference, Kranz stated that Canoo's engineering services revenue stream already existed and Canoo was "already making money" from the revenue stream.  Dkts. 85, AC, ¶ 76; 90-1, Ex. 1, at No. 2.  HCAC IV's September 18, 2020 S-4 and October 23, 2021 amended S-4 stated:  Canoo's engineering services business offered a unique "opportunity" for "projected" 2021 revenue; Canoo's engineering services agreement with Hyundai exemplified OEM interest in Canoo's technology; and Canoo was "in discussions with a number of other partners and expect[ed] to be in a position to announce many more partnerships in due course."  Dkts. 85, AC, ¶¶ 85, 87; 90-1, Ex. 1, at No. 8.  None of these statements is inconsistent with Canoo's 2020 revenue resulting from an engineering services performance obligation completed in July 2020.

[3]  In *In re Sona Nanotech, Inc. Securities Litigation*, the court found that Ninth Circuit precedent indicates that omission-based securities fraud claims predicated on a defendant making a public disclosure after initial statements could be foreclosed entirely, and any such claim—even if potentially cognizable—would at a minimum require an allegation that the defendant "hid the information for a long time and only released the negative information after investors would have made investment decisions."  *Id.* (citing *Nguyen v. Endologix, Inc.*, 962 F.3d 405, 416 (9th Cir. 2020); *In re Rigel Pharms*, 697 F.3d at 881)).  Plaintiff cannot make that allegation here.

3

"did not work 'with or for Hyundai'" lacks any merit. Dkt. 93, Opp'n, at 8-10. Plaintiff contends Canoo completed work for Hyundai in July 2020, *id.* at 10, evidently relying on the same SEC filings that disclosed Canoo recognized 2020 engineering services after completing an engineering services performance obligation in July 2020. Dkts. 90-2, Ex. 2, 90-9-11, Exs. 9-11, at F-33.[4] But if Canoo publicly disclosed in SEC filings that it completed work for Hyundai in July 2020, as Plaintiff contends, then this is not an omission that can support Plaintiff's claim. *See* Mot. at 8 (citing cases).

Plaintiff also fails to refute that Balciunas explained in an August 18, 2020 conference that Canoo's Hyundai partnership only had the "potential opportunity to move forward into future phases." Dkts. 89-1, Mot., at 7; 90-12, Ex. 12, at 8. Plaintiff bases his argument that Defendants "expressly stated Canoo was working for Hyundai during the Class Period" on distortions of Balciunas' and Kranz's statements during the August 18, 2020 conference. Dkt. 93, Opp'n, at 10.[5] Plaintiff tellingly does not address that the presentation accompanying their statements noted that descriptions of Canoo's partnership with Hyundai were "subject to negotiation and execution of definitive agreements . . . which have not been completed . . . and remain subject to change." Dkt. 90-13, Ex. 13, at 2. Nor does Plaintiff address that in the same presentation, Balciunas stated that Canoo projected revenue in 2021, not 2020, based on contracts under active

---

[4]  These filings also explained that under GAAP, Canoo recognized revenue only when it "satisfie[d] the performance obligations" of an engineering services project. *Id.*

[5]  Plaintiff selectively quotes Balciunas' statement that Canoo's Hyundai partnership was "a multiple-phase partnership . . . currently . . . in the first phase," *see* Opp'n at 10, omitting the part explaining that it only had the "potential opportunity to move forward into future phases." *See* Dkt. 90-12, Ex. 12, at 8. Recognizing Balciunas' statement did not say that Canoo was performing work for Hyundai at the specific moment he was speaking, Plaintiff notably never alleged in the AC that Balciunas' statement was false or misleading. *See generally* Dkt. 85, AC, § V (identifying purportedly misleading statements but omitting Balciunas' August 18, 2020 statement). Plaintiff similarly takes out of context Kranz's statement that Canoo had "three phases of revenue streams" and the "Engineering Services . . . phase . . . already exists today" (Dkts. 85, AC, ¶ 76; 90-1, Ex. 1, at 2) to suggest Kranz referred to potential phases of the Hyundai partnership. Dkt. 93, Opp'n, at 10. Kranz's statement said nothing about the Hyundai partnership. In fact, he referred to the engineering service business in relation to Canoo's EV revenue phases, which did not yet exist. *Compare* Dkt. 93, Opp'n, at 10 *with* Dkt. 90-13, Ex. 12, at 4.

negotiation.  Dkt. 90-12, Ex. 12, at 8.

Plaintiff similarly cannot refute that Balciunas' statements at a public December 2, 2020 conference explained that Canoo completed a first phase of the Hyundai partnership and was only in discussions with Hyundai for potential additional work. Dkts. 89-1, Mot. at 7; 90-14, Ex. 14, at 12.  Plaintiff argues Balciunas' December 2, 2020 statement omitted that "Canoo was not actively working with or for Hyundai." Dkt. 93, Opp'n, at 10.  But that is precisely what he conveyed:  "So, on the Hyundai side, . . . what we've done is concept engineering today . . . . *We hope that this relationship will continue into, call it a Phase 2 and Phase 3. . . . But we're not there yet.  Right now, we've just completed Phase 1 and we're currently in Phase 2 discussions*."  Dkt. 90-14, Ex. 14, at 12.  Plaintiff also mischaracterizes Balciunas' reference to "just" completing Phase 1 as referring to when Canoo completed Phase 1. Dkt. 93, Opp'n, at 10.  Read in context, he clearly meant Canoo had "only" completed Phase 1 (*i.e.*, was not yet engaged in work on Phase 2).  *Just*, MERRIAM WEBSTER, https://www.merriam-webster.com/dictionary/just ("only, simply").

Plaintiff makes no effort to explain how statements that Canoo's agreement with Hyundai validated Canoo's technology could be misleading.  Dkt. 93, Opp'n, at 8.  He concedes that Canoo had the agreement under which its engineering team worked on developing an EV platform based on Canoo's technology.  The statements are true, regardless of whether it was performing work for Hyundai at the time of the statements.

**3.  Engineering Services Statements referred to potential projects**

The Opposition does not identify any misstatement that Canoo was performing engineering services work for another company when it was not.  Plaintiff argues that "Canoo's disclosure that 3Q 2020 revenue had been earned in July 2020 did not reveal that no work was being done with or for third parties at the time of the statements" and "nothing in [Balciunas'] statements conveyed the larger context . . . that no revenue was being generated by working with any third-party, at the time."  Dkt. 93, Opp'n, at 9-10. But in his Opposition, Plaintiff does not come to grips with Canoo's repeated statements

that it had "potential" engineering services opportunities with "prospective" partners that were just still in "negotiation" or "discussions." *See* Dkt. 89-1, Mot., at 9. n.7 (collecting statements); *see also* Dkts. 85, AC, ¶¶ 93, 100; 90-1, Ex. 1, at No. 11. These statements did not trigger a duty to say more as they did not say Canoo was performing engineering services work for other companies at the time of the statements. Plaintiff bases his claim on blatant mischaracterizations of the Engineering Services Statements.[6]

Plaintiff's reliance on Kranz's statement during the August 18, 2020 investor conference that "we are working for companies and we are already making money" from contract engineering is insufficient. *See* Dkts. 93, Opp'n, at 8; 85, AC, ¶ 76; 90-1, Ex. 1, at No. 2. Kranz's statement must be viewed in context. *Bodri v. GoPro, Inc.*, 252 F. Supp. 3d 912, 924 (N.D. Cal. 2017) ("A statement is misleading only if a reasonable investor, reading the statement fairly and ***in context***, would be misled."). His statement merely contrasted Canoo's engineering services business, which was already generating revenue, with Canoo's planned revenue streams from EV vehicles, which were not yet generating revenue. Dkts. 85, AC, ¶ 76; 90-1, Ex. 1, at No. 2. Just weeks before his statement, Canoo had completed a performance obligation on an engineering services project that generated $2.55 million of revenue. *See* Dkt. 90-9,

---

[6] For example, Plaintiff asserts that Defendants claimed that Canoo's "engineering work ***would generate*** immediate revenues . . . ." Dkt. 93, Opp'n, at 8 (citing Dkt. 85, AC, ¶¶ 10, 74, 85, 93, 95). Plaintiff distorts this statement to include the word "would" when it in fact stated that Canoo's engineering services business "***offers a unique opportunity to generate*** immediate revenues . . ." Dkts. 85, AC, ¶¶ 85, 95; 90-1, Ex. 1, at Nos. 8, 12. The other statements Plaintiff cites in support of this mischaracterization stated that: Canoo's "technology . . . has . . . been validated by . . . partnerships such as with Hyundai" (Dkts. 85, AC, ¶ 74; 90-1, Ex. 1 at No. 1); Canoo's technology "experience and advanced progress have garnered the attention of ***prospective collaboration partners*** . . ." (Dkts. 85, AC, ¶ 93; 90-1, Ex. 1, at 11); "[i]n February 2020, [Canoo] entered into an agreement with Hyundai Motor Group to co-develop a future EV platform based on [its] modular and scalable skateboard technology, providing further validation of [its] technical leadership" (*id.*); and it was "in discussions with a number of other partners and expect[ed] to be in a position to announce many more partnerships in due course" (Dkts. 85, AC, ¶ 95; 90-1, Ex. 1, at 13). Plaintiff similarly asserts that "Defendants claimed that Canoo would take advantage of existing relationships to advance its operations, but they knew the relationships were not as described." Dkt. 93, Opp'n, at 1. Plaintiff does not—and cannot—cite any statement that says that.

Ex. 9, at F-33.[7]   And during the same conference, Balciunas stated that Canoo projected revenue in 2021 based on contracts under negotiation, not that Canoo was performing work under engineering services contracts at the time.  *See* Dkt. 90-12, Ex. 12, at 8 ("Currently in our pipeline, we have $120 million of projected revenue in 2021, which consists of a couple of projects that are in the advanced stages of negotiation.").[8]

### 4.    Subscription Statements did not refer to capital requirements

The Opposition also fails to explain how any alleged omission regarding the capital Canoo's subscription model would require made Subscription Statements misleading.  *See* Dkts. 85, AC, ¶¶ 78, 83, 91, 99, 101.  Plaintiff ignores that none of these statements, such as statements about consumer preferences, addressed the model's capital requirements.  Dkt. 89-1, Mot., at 12.[9]  Plaintiff instead relies on a highly misleading distortion of a challenged statement in an SEC filing.  Plaintiff asserts that

[7]   Plaintiff's reliance on *In re Vaxart, Inc. Sec. Litig.*, 2021 WL 6061518 (N.D. Cal. Dec. 22, 2021) does not change this analysis as it is easily distinguishable.  There the defendant issued a press release announcing that it entered into an agreement "Enabling Production of a Billion or More COVID-19 Vaccine Doses Per Year" when it lacked FDA certifications and resources to produce a single dose.  *Id.* at **1-2.  The next day, the defendant issued another press release with a false headline that it had been selected for Operation Warp Speed (the federal government's COVID-19 vaccine funding program) when the government had not selected it for funding under the program.  *Id.* at *2.  As reflected in small print, the defendant was only selected to participate in a study organized by Operation Warp Speed.  *Id.* at **2-3.  Although it was true that the defendant had entered into the agreement and been selected for the study, the Court found the statements misleading.  In stark contrast, Plaintiff here cannot identify any false statement that made Defendants' accurate statements misleading.  Nor can Plaintiff point to anything contradicting Canoo's statements that its agreement with Hyundai validated Canoo's technology and Canoo was engaged in discussions for potential engineering services projects.

[8]   Plaintiff's reliance on *Miller v. Thane Int'l, Inc.*, 519 F.3d 879, 886 (9th Cir. 2008) does not help him either.  In *Miller*, the court held that true statements implying the defendant expected to have its shares "approved for quotation" on NASDAQ were misleading because the context surrounding the statements suggested "nothing short of actual listing on the NASDAQ."  *Id.* at 886-88.  Here, the context surrounding challenged statements consistently reflected that Canoo had potential engineering services opportunities with other companies that were just still "in discussions," not that Canoo was engaged in engineering services work at the time of the statements.

[9]   Plaintiff's footnote arguing Aquila's March 29, 2021 earnings call statements "unequivocally address the subscription model's capital requirements" misses the point that challenged Subscription Statements do not.  Dkt. 93, Opp'n, at 13 n. 5.

7

in the January 13, 2021 S-1, Defendants "told investors the 'innovative' subscription model would 'significantly reduce [Canoo's] upfront capital investment and eliminate reoccurring fixed costs and overhead that would be required for us[] to own and operate our own assembly facility.'"  Dkt. 93, Opp'n, at 12 (citing Dkt. 85, AC, ¶ 97); *see also* Dkt. 90-1, Ex. 1, at No. 13.  In fact, the statement in the S-1 referred to Canoo's ***manufacturing plan***, not its subscription model, reducing its capital investment.  *See* Dkt. 90-2, Ex. 2, at 57.[10]  The statement is about outsourcing direct vehicle production operations, not offering vehicles to consumers via a subscription service.  *Id.*  Plaintiff also fails to reconcile the alleged capital requirements omission with Canoo's repeated disclosures that its "business plans require a significant amount of capital."  Dkts. 90-2, Ex. 2, 90-11, Ex. 11 at 7, 10; 90-9-10, Exs. 9-10, at 41; 90-15-16, Exs. 15-16, at 39.

**B.    Decisions Made After the Challenged Statements Are Not Actionable**

The Opposition confirms Plaintiff cannot adequately allege any challenged statements were misleading when made.  It focuses entirely on the March 29, 2021 earnings call announcing that Canoo's Board approved de-emphasizing engineering services and subscription ***months later***.  This is insufficient as a matter of law.

**1.    The AC does not allege facts showing Canoo had de-emphasized engineering services at the time of the challenged statements**

Plaintiff asks the Court to draw an inference that "Canoo had, in practice, de-emphasized contract engineering prior to the [challenged] statements."  Dkt. 93, Opp'n, at 9.  This is precisely the inference that a court rejected in *Patterson*, 2022 WL 2208893, (D. Del. June 21, 2022), a related Canoo stockholder derivative action.

The court's Report and Recommendation that the related stockholder derivative complaint be dismissed is instructive.  *Id.* at *1.  The plaintiff in *Patterson* alleged

---

[10]  The actual statement reads:  "We plan to utilize an asset-light, flexible ***manufacturing strategy*** by outsourcing our direct vehicle production operations to a . . . contract manufacturing partner for our initial vehicle programs.  In doing so, we will significantly reduce our up-front capital investment and eliminate the recurring fixed costs and overhead that would be required for us to own and operate our own assembly facility."  Dkts. 90-2, Ex. 2, at 57; 90-1, Ex. 1, at No. 13.

8

among other claims that defendants, including Kranz, Balciunas, and Aquila, violated fiduciary duties and Sections 14(a) and 20(a) of the Exchange Act by knowingly making the same purported misleading statements about Canoo's engineering services business that Plaintiff relies on here.  *Id.* at **1, 3; Dkt. 90-1, Ex. 1, at Nos. 1-3, 8, 10-12.  The plaintiff in *Patterson*, like Plaintiff here, contended that those statements were false and misleading when made because Canoo had already abandoned or was in the process of abandoning its engineering services business.  *Id.* at *4.  The court concluded that "Plaintiff's complaint does not contain factual content that allows the Court to draw that inference" as Rule 12(b)(6) "asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.* *4 n.32 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  The plaintiff in *Patterson*, like Plaintiff here, relied on the March 29, 2021 earnings call announcing that Canoo "had decided to 'de-emphasiz[e]' its engineering . . . services business and that its agreement with Hyundai was 'on hold.'"  *Id.* at *4.  The court found "that doesn't suggest either of those things had been decided before the S-1 was filed in January 2021."  *Id.*  The Court should reach the same conclusions here.

Plaintiff argues in a footnote that "Defendants never expressly state when the Board approved the plan to de-emphasize the model[,]" citing Aquila's March 29, 2021 announcement that "it was decided by our Board to de-emphasize the originally stated contract engineering services line."  Dkt. 93, Opp'n, at 11 n.4; Dkt. 85, AC, ¶ 107.  But the only inference to draw from this statement is that the Board decided to de-emphasize engineering services in late March 2021.  Indeed, two members on the Board as of March 29, 2021—the Board Aquila would have referenced—did not join the Board until shortly before the March 29, 2021 earnings call.[11]  Here, as in *Patterson*, there are no "allegations suggesting that the board had discussed at any time prior to the S-1 the de-emphasis of the engineering services business or putting the relationship with

---

[11]  *Compare* Suppl. Decl. of David A. Klein, Ex. 2, at 105 (directors after merger) *with id.*, Ex. 3, at 124 (two additional directors in March 2021).  And a majority of the directors did not join the Board until the merger closed on December 21, 2021.  *Id.* Exs. 1, at 227, 2, at 105; *see also Patterson*, 2022 WL 2208893, at *3.

Hyundai on hold." *Id.* at \*4.[12]

Plaintiff also asks the Court to draw an inference that Defendants possessed unspecified "adverse information" at the time of the Engineering Services Statements from the fact that Canoo did not report engineering services revenue after July 2020. Dkt. 93, Opp'n, at 12. The court in *Patterson* rejected that inference too. 2022 WL 2208893, at \*4. Specifically, the court found that while Canoo "stated that its engineering and technology services business was 'supportive of a projected $120 million of revenue in 2021' there was nothing to suggest that Canoo was expecting to record revenue in that business in Q4 2020." *Id.* The court specifically rejected that "the fact that Canoo recorded zero revenue in Q4 after booking revenue in the first three quarters leads to a plausible inference that the company had 'abandoned' that business prior to Q4." *Id.* The court found that "[c]ontrary to the picture Plaintiff is trying to paint, this is not a situation where a company had a steady flow of cash coming in the door for a particular business that abruptly stopped." *Id.* at \*4. The Court should reject the same requested inference here for the same reasons.[13]

### 2. The AC does not allege admissions that Engineering Services Statements were misleading

Plaintiff argues that Aquila's remarks in the March 29, 2021 earnings call

---

[12] Plaintiff argues that the timing of the Board's decision to de-emphasize engineering services "amounts to a dispute about materiality, which should not be resolved on this record." Dkt. 93, Opp'n, at 11 (citing Dkt. 89-1, Mot., at 8). The Court should reject this argument out of hand. Defendants argued that the AC fails to adequately allege the challenged statements *were false or misleading when made*. Dkt. 89-1, Mot., at 8. For purposes of the Motion only, Defendants did not argue that challenged statements were immaterial. *Id.* The case Plaintiff cites in support of his argument, *SEC v. Mozilo*, 2009 WL 3807124, at \*9 (C.D. Cal. Nov. 3, 2009), is thus inapposite as the defendant there argued misstatements were not material.

[13] In support of his requested inference, Plaintiff cites two cases for the proposition that allegations should be viewed in the light most favorable to plaintiff in deciding a motion to dismiss. Dkt. 93, Opp'n, at 12 (citing *SEB Inv. Mgmt. AB v. Align Tech.*, 485 F. Supp. 3d 113, 1131-32 (N.D. Cal. 2020); *Berg v. Popham*, 412 F.3d 1122, 1125 (9th Cir. 2005)). The Court need not, however, "accept as true allegations that are merely conclusory, unwarranted deductions of fact or unreasonable inferences." *Cholla Ready Mix, Inc. v. Civish,* 382 F.3d 969, 973 (9th Cir. 2004).

constitute admissions that he knew the Engineering Services Statements were false when made. Dkt. 93, Opp'n, at 9, 11. This argument is meritless. Plaintiff relies on *Yourish v. Cal. Amplifier*, 191 F.3d 983, 996 (9th Cir. 1999), for the proposition that a complaint can establish that a statement was false when made by alleging a later statement by the defendant along the lines of "I knew it all along." But in *Yourish* the Ninth Circuit affirmed dismissal of a complaint, finding that the alleged later statement did not approach an "I knew it all along" admission, and emphasized that "it is clearly insufficient for plaintiffs to say that a later sobering revelation makes an earlier, cheerier statement a falsehood." *Id.* at 996-97. Plaintiff here fails to identify any statements by Aquila that come close to an admission that he knew Engineering Services Statements were misleading when made. *See* Dkt. 93, Opp'n, at 8-9, 13.

Plaintiff's selective summary of Aquila's statements during the March 29, 2021 earnings call is an attempt to plead fraud by hindsight. Aquila did not say in the earnings call that Canoo had de-emphasized engineering services for the reasons stated in the March 29, 2021 call or ceased negotiating engineering services contracts when the Engineering Statements were made months earlier. *See* Dkt. 90-3, Ex. 3, at 17. To the contrary, Aquila said he thought Canoo "had the opportunities" for engineering services partnerships, a "partnership . . . can make sense" and Canoo would "continue to look at things." *Id.* at 17. In context, Aquila stated that in hindsight it was presumptuous for Canoo to announce engineering services opportunities before executed contracts. *Id.*[14]

According to the Opposition, Aquila stated that "the way Canoo discussed engineering contracts had been 'dangerous' and 'somewhat misleading.'" Dkt. 93,

---

[14] Plaintiff fails to distinguish *In re Fusion-io, Inc. Sec. Litig.*, 2015 WL 661869, at *18 (N.D. Cal. Feb. 12, 2015). Dkt. 93, Opp'n, at 9 n.3. Plaintiff argues that, unlike the plaintiff in *In re Fusion-io*, he relies on more than events after the challenged statements to state a claim. *Id.* In support, however, Plaintiff only cites allegations regarding Aquila's March 29, 2021 earnings call statements and CWs. *See* Dkt. 93, Opp'n, at 9 n.3 (citing Dkt. 85, AC, ¶¶ 113, 168-174). None of those allegations identifies contemporaneous facts that contradict any of the challenged statements. *Infra* §§ I.B. 2-3. Plaintiff makes no other effort to distinguish nine cases cited by Defendants, which articulate the well-settled rule that liability for securities fraud cannot be imposed on the basis of subsequent events. Dkt. 89-1, Mot., at 8-10.

Opp'n, at 9 (citing Dkt. 85, AC, ¶ 114).  But this is another out-of-context distortion of what Aquila said.  Aquila's statement cautioned against making future statements of revenue projections based on reservations for vehicle purchases.  He did not refer to Canoo's past engineering services revenue projections.  *See* Dkts. 85, AC, ¶ 114; 90-3, Ex. 3, at 10 ("[W]e will be step-by-step building this and we will be delivering information as it is known and contracted, not based on light rev reservation models.  I think that's dangerous.  I think it could be somewhat misleading.").

Plaintiff also relies on Aquila's statement during the earnings call that he had "concerns" about the engineering services business line and started "analysis" at some unspecified point after becoming Chairman on October 19, 2020.  Dkts. 93, Opp'n, at 11; 90-3, Ex. 3, at 9; 90-2, Ex. 2, at 105; 85, AC, ¶ 31.  But this statement does not mean that the Board decided to de-emphasize engineering services at the time of the Engineering Statements months before the earnings call.  Indeed, Plaintiff challenges Engineering Services Statements as early as August 18, 2020—two months **before** Aquila joined Canoo.  *See* Dkts. 85, AC, ¶¶ 74, 76-77, 80-82; 90-1, Ex. 1, at Nos. 1-6.  Moreover, Aquila's statement does not come close to meeting the particularized pleading standards that govern Plaintiff's claims. [15]  The AC does not allege any specific contemporaneous facts regarding the referenced "analysis" or a single contemporaneous fact contradicting Canoo's statements that it was in discussions with a number of potential engineering services partners and its pipeline was supportive of projected engineering services revenue in 2021.  *See* Mot. 19 (collecting cases).  Nor does the AC allege any particularized factual allegations regarding the Individual

---

[15] Plaintiff cites a single case, *Garcia v. J2 Glob., Inc.*, 2021 WL 1558331, at *16 (C.D. Cal. Mar. 5, 2021), in support of his conclusory assertion that "Aquila's 'analysis' made him and the other Defendants' [sic] 'aware of undisclosed facts tending seriously to undermine' the accuracy of their other positive statements regarding the benefits of their engineering business model but failed to disclose this information to investors [sic]."  Dkt. 93, Opp'n, at 11.  *Garcia* does not help Plaintiff.  There the court found the plaintiff failed to plead particularized facts showing that the defendants "knew of undisclosed facts that would undermine" alleged misstatements.  *See* 2021 WL 1558331, at *16.  So too here.

12

Defendants' knowledge.

### 3. The Subscription Statements are not actionable

For the same reasons, Plaintiff fails to plead that the Subscription Statements were false or misleading when made. Plaintiff cites Aquila's statements during the March 29, 2021 earnings call explaining Canoo's decision to de-emphasize its subscription model, but these statements do not suggest that Defendants knew the model was financially unsustainable or infeasible at the time of the challenged statements. Dkt. 93, Opp'n, at 12-13. Plaintiff only cites Aquila's statements in the earnings call explaining that when he "took [his] role, [Canoo] spent a lot of money analyzing the weight that [subscription would] have on the balance sheet." Dkts. 93, Opp'n, at 13 (citing Dkt. 85, AC, ¶ 113); 90-3, Ex. 3, at 14. But this does not constitute an admission that Aquila knew any challenged statements were misleading when made as Plaintiff appears to argue. *See* Dkt. 93, Opp'n, at 13 (citing *Yourish*, 191 F.3d at 996). Indeed, the Opposition only cites Subscription Statements made on August 18, 2020—two months **before** Aquila assumed his role as Canoo's Executive Chairman. Dkt. 93, Opp'n, at 12.[16] And internal analysis or debate after Aquila assumed his role does not state a securities fraud claim.[17]

In support of his argument, Plaintiff offers yet another distortion of Aquila's earnings call statements. Plaintiff asserts that "Aquila acknowledged 'without a doubt' he would have changed the model 'based on [his] experience' if he had been 'more

---

[16] Plaintiff also cites an alleged December 22, 2020 statement by Aquila that Canoo was "committed" to its "go-to-market opportunities." *See* Dkt. 93, Opp'n, at 12 (citing Dkt. 85, AC, ¶ 72). This statement, however, says nothing about the subscription model, and is inactionable puffery. *See* Dkt. 89-1, Mot., at 15-16; *infra* § I.D.

[17] Plaintiff's attempt to distinguish *Kovtun v. VIVUS, Inc.*, 2012 WL 4477647, at *18 (N.D. Cal. Sept. 27, 2012) fails. Dkt. 93, Opp'n, at 14 n.7. Plaintiff argues that the internal debate there involved employees whereas here "top executives" had "substantial doubt" about the "viability" of Canoo's business model. Plaintiff, however, does not allege any facts to support his argument. Rather, Plaintiff alleges a single executive, Aquila, said months after the challenged statements that Canoo analyzed the subscription model at some point after he took his role. *See id.* at 13.

involved earlier.'" Dkt. 93, Opp'n, at 13 (citing Dkt. 85, AC, ¶¶ 110, 113). This mischaracterizes Aquila's statement that he would "have changed the sequence of top hats and use cases . . . based on [his] experience without a doubt . . . ." Dkt. 85, AC, ¶ 113. His statement referred to Canoo's EV designs, not its subscription model.

Plaintiff also relies on allegations regarding CW-2. Dkt. 93, Opp'n, at 13. But CW-2 left Canoo **over a year before** the challenged statements and Aquila's involvement with Canoo, and CW-2 only stated that its subscription model plan changed during his or her employment. Dkt. 85, AC, ¶ 172-174. CW-2's alleged statements thus do not suggest any challenged statements misstated the subscription model or reflect anything about Canoo's analysis of the subscription model after CW-2 left the company. Plaintiff cannot identify any particularized allegations in the AC to support his argument that "Defendants misled investors by concealing internal concern about the fundamental viability of the model." Dkt. 93, Opp'n, at 13 (quoting *Friedman v. Endo Int'l PLC*, 2018 WL 446189, at *6 (S.D.N.Y. Jan. 16, 2018)).[18]

There is nothing in the AC that suggests Canoo had decided to de-emphasize the subscription model when the challenged Subscription Statements were made. Further, the only challenged Subscription Statement made after Aquila assumed his role as Chairman stated that Canoo's EVs "**are initially intended** to be made available to consumers via an innovative subscription business model." Dkts. 85, AC, ¶¶ 97, 100;

---

[18] Plaintiff cites a single out-of-circuit case to support this argument, but *Friedman* strongly supports dismissal. The *Friedman* court dismissed the complaint, finding the plaintiff's allegations that an executive's statements describing changes to a business after purported misstatements came "nowhere near suggesting, let alone proving, that . . . the defendant company had a secret plan to fundamentally and drastically change" the business. 2018 WL 446189, at *6. The court concluded that the plaintiff's allegations, like Plaintiff's allegations here, reflected a "fraud by hindsight" pleading approach that is counter to black-letter law. On this basis alone, the court held that the complaint should be dismissed. *Id.* The court noted that in any event, "it is well established that a company has no . . . duty to disclose changes to its business plans . . . ." *Id.* The court also noted that to state a securities fraud claim based on a narrow exception, "a plaintiff must allege facts plausibly establishing that a company had stated its intention to adhere exclusively to a particular strategy and then changed its strategy without informing investors." *Id.* The court found plaintiff's failure to allege such a statement was another ground for dismissal.

14

90-1, Ex. 1, at No. 13.  This statement does not imply subscription would be an exclusive method of offering vehicles to consumers forever and Canoo would not consider alternatives.  The statement implies that it reflected Canoo's existing plan.[19]

Plaintiff's final argument regarding the Subscription Statements resides in a conclusory sentence stating that the "Court should decline Defendants' invitation to determine materiality at this stage."  Dkt. 93, Opp'n, at 14.  This is a non-sequitur.  For purposes of the Motion only, Defendants did not argue that the Subscription Statements were immaterial.  Plaintiff's failure to allege any facts showing contemporaneous knowledge of allegedly adverse facts undermining the subscription model or a decision to de-emphasize the model by the time of the challenged statements is a failure to plead that the statements were false or misleading when made.[20]

### C.    The Opposition Confirms Alleged CWs Are Unreliable

The Opposition's defense of Plaintiff's allegations regarding CWs fails.  Plaintiff does not dispute that the AC fails to identify CW-1's job, and thus cannot demonstrate that CW-1's job duties related to engineering services.  *See* Dkt. 93, Opp'n, at 24.  Plaintiff argues that Aquila's statements during the March 29, 2021 earnings call corroborate CW-1's statements that "during his/her tenure at Canoo, he/she never worked 'with or for' Hyundai . . . and that there was no outside engineering work." *Id.*

---

[19]  The Opposition focuses on alleged statements during Canoo's August 18, 2020 investor conference two months before Aquila assumed his role as Executive Chairman (Dkt. 93, Opp'n, at 12) to apparently argue that Canoo "hyped a specific plan, thereby inducing investors to believe that alternative plans were excluded." *Id.* at 13 (quoting *Friedman*, 2018 WL 446189, at *6).  Tellingly, with the exception of a single statement, the AC did not identify those alleged statements as allegedly misleading statements.  *See* Dkt. 85, AC, § V (omitting *id.* ¶¶ 151, 152).  Those alleged statements do not help Plaintiff state a claim, given the statements were made before Aquila assumed his executive role and Canoo engaged in the analysis he referenced in the March 29, 2021 earnings call.  Accordingly, even under Plaintiff's theory, he would not be able to identify purported omissions about the viability of the model that made the August 18, 2020 statements misleading when made.

[20]  The two cases Plaintiff cites in support of this argument are inapposite.  Unlike Defendants' Motion, they addressed the materiality of the allegedly false statements. Dkt. 93, Opp'n, at 14 (citing *Fecht v. Price Co.*, 70 F.3d 1078, 1080 (9th Cir. 1995); *Feyko v. Yuhe Int'l, Inc.*, 2013 WL 816409, at *5 (C.D. Cal. Mar. 5, 2013)).

Plaintiff bases his argument on Aquila's purported acknowledgment that "Canoo would pursue only its own engineering projects." For starters, Aquila did not say that. He said that the Board approved "de-emphasizing" (not abandoning) engineering services, but partnerships could make sense and the company would look into projects in the future. *See* Dkt. 90-3, Ex. 3, at 17. In any event, Aquila's statements about Canoo's plans concerning engineering services in the future cannot corroborate CW-1's statements about engineering services in the past. Plaintiff likewise offers no response to the dispositive point that CW-1 does not help Plaintiff plead falsity since Plaintiff does not identify any alleged misstatement that Canoo was performing engineering services work for another company during CW-1's tenure. *See* Dkt. 93, Opp'n, at 23-25.

Plaintiff does not engage with the deficiencies in his allegations about CW-2. *Id.* He offers no response to the critical points: CW-2's job duties had nothing to do with Canoo's sales model; CW-2 left Canoo before any of the alleged misleading statements; and whether Canoo's subscription model changed before the challenged statements is irrelevant to whether the Subscription Statements were misleading when made.[21]

### D.    Challenged Statements Are Non-Actionable Puffery and Opinions

Many of the challenged statements are not actionable for the additional reason that they are puffery or opinions. *See* Dkt. 89-1, Mot., at 14-16. Plaintiff appears to argue that the statements cited in the Motion as inactionable puffery are actionable because they are purportedly anchored in misrepresentations of existing facts and based

---

[21] The cases Plaintiff cites to argue the AC alleges foundation for CW-1 and CW-2 are readily distinguishable. Dkt. 93, Opp'n, at 23-24. Unlike the plaintiffs in *In re Daou Systems, Inc.*, Plaintiff here failed to describe the job titles and responsibilities of his witnesses. *Compare* 411 F.3d 1006, 1016 (9th Cir. 2005) (identifying one witness as a former "Regional Vice President of Sales" who was "responsible for reporting weekly or bi-weekly sales information, such as sales status/backlog and forecast/pipeline information") *with, e.g.*, Dkt. 85, AC, ¶ 168 ("[CW 1] . . . was a head executive for a department at Canoo . . ."). And unlike the confidential witnesses in *Employees' Retirement System of Government of the Virgin Islands v. Blanford*, CW-2 did not merely neglect to "link" his or her statements to "specific quarters," 794 F.3d 297, 307 (2d Cir. 2015), but rather was not employed by Canoo during the Class Period and thus cannot comment on its business during that period. *See* Dkt. 85, AC, ¶ 172.

16

on detail and specificity. *See* Dkt. 93, Opp'n, at 17. But the statements at issue are textbook examples of puffery and Plaintiff makes no serious attempt to argue that these statements are combined with any misrepresentation of specific material facts. *Compare* Dkt. 89-1, Mot., at 15 (identifying Dkt. 85, AC, ¶¶ 84, 86, 90 as puffery); *with* Dkt. 93, Opp'n, at 17 (omitting any citations to Dkt. 85, AC, ¶¶ 84, 86, 90).[22] Under Ninth Circuit law, puffery is inactionable—period. *Weston Fam. P'ship LLLP v. Twitter, Inc.*, 29 F.4th 611, 619 (9th Cir. 2022); *Or. Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*, 774 F. 3d 598, 606 (9th Cir. 2014).

Plaintiff identifies a series of statements of opinion that Defendants did not argue were puffery. *See* Dkt. 93, Opp'n, at 17. To base a securities fraud claim on a statement of opinion, however, a plaintiff relying on an omission theory (as Plaintiff is here) must allege "facts going to the basis for the issuer's opinion . . . whose omission makes the opinion statement at issue misleading to a reasonable person reading the statement fairly and in context." *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 615 (9th Cir. 2017). Plaintiff ignores this test in the Opposition and alleges no such facts. *See* Dkt. 93, Opp'n, at 17. Therefore, challenged statements that are corporate puffery or expressions of opinion are not actionable. *See*

[22] Unlike the statements Defendants identified as puffery, the cases Plaintiff cites involved definitive, specific statements of fact or statements integral to a misrepresentation of specific material facts. *Compare* Dkt. 85, AC, ¶¶ 84 ("uniquely positioned"), 86 ("positive factors"), 90 ("excited about our go-to-market opportunities") *with Casella v. Webb*, 883 F.2d 805, 808 (9th Cir. 1989) (statement that an investment was a "sure thing" made with "specific misrepresentations of fact as to the future profitability of . . . the investment[.]"); *Cutler v. Rancher Energy Corp.*, 2014 WL 1153054, at *7 (C.D. Cal. Mar. 11, 2014) (statement that company had received Goldman Sachs financing); *Bricklayers & Masons Loc. Union No. 5 Ohio Pension Fund v. Transocean Ltd.*, 866 F. Supp. 2d 223, 243 (S.D.N.Y.2012) (statement that defendant oil drilling company "conducted 'extensive' training and safety programs"); *In re Century 21-RE/MAX Real Est. Advert. Claims Litig.*, 882 F. Supp. 915, 926 (C.D. Cal. 1994) (statement that real estate agents "out sell other real estate agents 3 to 1" could support false advertising, not a securities fraud, claim); *Mulligan v. Impax Lab'ys, Inc.*, 36 F. Supp. 3d 942, 966-67 & n.2 (N.D. Cal. 2014) (statement that defendant responded to an FDA inquiry was not puffery, but statement that defendant was "confident" in its response to inquiry was puffery) *Turocy v. El Pollo Loco Holdings, Inc.*, 2016 WL 4056209, at *9 (C.D. Cal. July 25, 2016) (statement that lower store sales was due to New Year's holiday was not puffery, but statement that menu offers 'great value'" was puffery).

Dkts. 85, AC, ¶¶ 81-82, 84, 86, 90, 98; 90-1, Ex. 1, at Nos. 5-7, 9-10, 14.

### E.    Forward-Looking Statements Are Not Actionable

Many challenged statements are also not actionable for the independent reason that they are forward-looking.  Plaintiff incorrectly claims that only five challenged statements are forward looking.  *See* Dkt. 93, Opp'n, at 14.  In fact, 11 out of 14 challenged statements are forward-looking and do not address present operations.  *See* Dkts. 85, AC, ¶¶ 76-77, 80-82, 84-85, 87, 90, 95, 97-98, 100; 90-1, Ex. 1, at Nos. 2-8, 10, 12-14.[23]  Plaintiff argues the PSLRA's safe-harbor does not protect the challenged forward-looking statements because Defendants were aware of facts at the time of the statements that seriously undermined the accuracy of the statements.  *See* Dkt. 93, Opp'n, at 15.  Plaintiff, however, fails to allege any particularized facts Defendants knew at the time of the statement that caused Defendants to believe the subscription model was not viable or that Canoo would not meet projections for engineering services revenue.  *Supra* §§ I.B-C.[24] The forward-looking statements are thus not actionable under the safe-harbor.  *Twitter*, 29 F.4th at 620; 15 U.S.C. § 78u-5.

The forward-looking statements are inactionable under the safe-harbor for the independent reason that meaningful cautionary language accompanied the statements.  Plaintiff's argument to the contrary lacks merit.  *See* Dkt. 93, Opp'n, at 16.  Plaintiff argues the cautionary statements did not advise investors that Aquila had "significant doubts about the fundamental viability of the business model and was actively working to de-emphasize it." *Id.*  But the AC does not contain any well-pled facts showing that

[23]  In Ex. 1, Kranz's August 18, 2020 statement is not identified as forward-looking, but the portion stating that the "consumer vehicle . . . ***will be*** on subscription" is forward-looking.  *See* Dkts. 85, AC, ¶ 76; 90-1, Ex. 1, at No. 2.

[24]  Plaintiff cites *In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130, 1142 (9th Cir. 2017) for the proposition that the safe-harbor does not protect knowingly false or misleading statements about current or past facts, but the case is not on point as Plaintiff fails to plead with particularity that Defendants knowingly made false or misleading statements. Another case Plaintiff cites, *Slayton v. Am. Express Co.*, 604 F.3d 758, 772-73 (2d Cir. 2010), does not help him as the court there dismissed plaintiff's claim for failure to plead particular facts demonstrating that a misleading statement was knowingly made.

at the time of the statements, Aquila was actively working to de-emphasize it.  And the cautionary statements directly relate to the reasons he cited for de-emphasizing subscription (executing the model with capital).  Canoo's disclosures that its plans required significant capital were not limited to the January 2021 S-1.  Dkts. 93, Opp'n, 16; 90-9, Ex. 9, at 41; 90-15-16, Exs. 15-16, at 39.  Plaintiff's claim that Canoo did not caution that the subscription model required capital cannot hold up against repeated disclosures of this as a risk factor. The cautionary statements likewise directly relate to Canoo's engineering services revenue projection.  Dkt. 89-1, Mot., at 16 n.10.[25]

## II.    THE AC FAILS TO ALLEGE A STRONG INFERENCE OF SCIENTER

### A.    Plaintiff Fails to Allege Defendants Acted with Scienter

The Court should dismiss the AC for the independent reason that it fails to adequately plead scienter.  Rather than point to any facts showing that Defendants deliberately made allegedly misleading statements, Plaintiff asserts that scienter and falsity may be combined into a single inquiry and recycles his flawed falsity arguments. Dkt. 93, Opp'n, at 18-19.[26]  Thus, for the same reasons that Plaintiff fails to allege any

---

[25] The cases Plaintiff cites are distinguishable as they involve statements regarding current, not future, business conditions and cautionary language that did not fully address the risks associated with the forward-looking statements.  *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 954 (9th Cir. 2005) (cash increase was misleadingly referred to as a "fact" that already occurred); *Asher v. Baxter Int'l Inc.*, 377 F.3d 727, 734-35 (7th Cir. 2004) ("[t]he major risks [Defendant] objectively faced when it made its forecasts were exactly those that, according to the complaint, came to pass, yet the cautionary statement mentioned none of them"); *Mulderrig v. Amyris, Inc.*, 492 F. Supp. 3d 999, 1019 (N.D. Cal. 2020) (forward looking aspects of the challenged statements were premised on alleged false representations of current revenues); *In re REMEC Inc. Sec. Litig.*, 702 F. Supp. 2d 1202, 1228 (S.D. Cal. 2010) (statement that "the relocation of [the defendant']s manufacturing to China was 'on plan'" described a current business condition).

[26] In support of his argument that Defendants allegedly made misstatements with deliberate recklessness, Plaintiff cites inapposite cases involving allegations that established statements were false and showed defendants' knowledge that statements were false. Dkt. 93, Opp'n at 18 (citing *Howard v. Everex Sys., Inc.*, 228 F.3d 1057, 1064 (9th Cir. 2000); *In re Immune Response Sec. Litig.*, 375 F. Supp. 2d 983, 1023 (S.D. Cal. 2005); *In re VeriFone Holdings, Inc. Sec. Litig.*, 704 F.3d 694, 698 (9th Cir. 2012)).  The only other case Plaintiff cites, *In re Netflix, Inc., Sec. Litig.*, 923 F. Supp. 2d 1214, 1219 (N.D. Cal. 2013), found the plaintiff, like Plaintiff here, failed to allege a statement that was false or misleading when made.

misleading statement, his scienter arguments fail. *Supra* § I.B; Dkt. 93, Opp'n, at 19.

Recognizing that his insufficient falsity arguments centered solely on Aquila's March 29, 2021 statements, Plaintiff also argues that by virtue of their executive roles, Balciunas and Kranz "had a part in shaping, or at the least have been fully informed of, . . . changes to Canoo's operations." *See* Dkt. 93, Opp'n, at 19-20.[27]  Plaintiff's argument fails in the absence of any particularized factual allegations showing Canoo had made changes at the time of challenged statements. *Supra* §§ 1.B-C.  The argument also fails as a matter of law, given that Plaintiff does not allege any specific facts showing what role Aquila, Kranz, or Balciunas played in allegedly shaping changes or what they knew and when about the alleged changes.  Having failed to establish scienter as to any Individual Defendant, Plaintiff may not impute scienter to Canoo.[28]  To the extent Plaintiff argues in a footnote with no analysis that he may impute scienter from Canoo to Individual Defendants, the argument has no merit.  Dkt. 93, Opp'n, at 20 n.9.[29]

[27]  The two cases Plaintiff cites in support of his argument, Dkt. 93, Opp'n, at 19-20, contained detailed allegations of knowledge missing here.  *In re Cadence Design Sys., Inc. Sec. Litig.*, 692 F. Supp. 2d 1181, 1189-90 (N.D. Cal. 2010) (finding specifc facts showing officer was involved in contract negotiation and knew at the time of the alleged misstatements that the company had reframed contract revenue in a way that violated accounting principles); *S. Ferry LP #2 v. Killinger*, 687 F. Supp. 2d 1248, 1259-62 (W.D. Wash. 2009) (on remand finding scienter only for executives who had themselves stated that they knew about the contested facts and not for executives who had no access to the relevant data) Dkt. 93, Opp'n, at 19-20.

[28]  *See In re ChinaCast Educ. Corp. Sec. Litig.*, 809 F.3d 471, 475 (9th Cir. 2015) (Because "a corporation 'can only act through its employees and agents,'" it can "only have scienter through them."); *In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1063 (9th Cir. 2014) (finding failure to plead scienter as to any individual was also a failure to plead scienter as to the corporate defendant); *Cf. Longo v. OSI Sys., Inc.*, 2021 WL 1232678, at *8 (C.D. Cal. Mar. 31, 2021) (finding scienter when detailed pleadings established senior officer was directly involved in negotiations for contract obtained by corruption but did not reveal such information to the market).

[29]  The cases cited in the footnote refer to imputing scienter to individuals where "a company's public statements [are] so important and so dramatically false that they would create a strong inference that at least *some* corporate officials knew of the falsity upon publication." *Apollo*, 774 F.3d at 607-08 (citing *Glazer Capital Mgmt., LP*, 549 F.3d 736, 744 (9th Cir. 2008)); *M & M Hart Living Tr. v. Glob. Eagle Ent., Inc.*, 2017 WL 5635424, at *12 (C.D. Cal. Aug. 20, 2017)).  Plaintiff does not come close to making that showing here given his failure to plead any false statements, let alone "dramatically false" statements, and the cases he cites found no such a showing.

**B.    The Closing of the Merger Is Insufficient to Plead Scienter**

Plaintiff effectively concedes that he cannot plead any insider trading in the face of Lock-Up Agreements precluding trades at allegedly inflated prices. *See* Dkt. 89-1, Mot., at 20-22. Thus, Plaintiff mostly abandons the theory alleged in the AC that the Individual Defendants engaged in a scheme intended to artificially inflate the price of Canoo's stock. *See* Dkt. 93, Opp'n, at 21. Plaintiff tellingly does not attempt to distinguish the recent on point Ninth Circuit decision Defendants cited at length, *Nguyen v. Endologix, Inc.* In *Nguyen*, the Ninth Circuit found a similar theory wholly illogical due to the absence of any allegations defendants sought to profit from the scheme. 962 F.3d at 415.[30] Plaintiff offers a new theory not alleged in the AC that is as illogical as the abandoned theory. Dkt. 93, Opp'n, at 21.

Under Plaintiff's new theory, Defendants allegedly made misleading statements to solicit a deadline extension to complete the merger and obtain shareholder approval of the merger. *Id.* This new theory fails because Plaintiff does not allege any particular facts to support it. *Lipton v. Pathogenesis Corp.*, 284 F.3d 1027, 1038 (9th Cir. 2002) ("These generalized assertions of motive, without more, are inadequate to meet the heightened pleading requirements of *Silicon Graphics*."). Instead, the facts alleged in the AC contradict the theory. Plaintiff alleges Defendants made the same allegedly misleading statements in the January 2021 S-1 ***after the merger closed***. *See* Dkt. 93, Opp'n, at 21 (citing Dkt. 85, AC, ¶¶ 55-56, 68-73). Why would Defendants continue

---

[30] Plaintiff cites *No. 84 Employer-Teamster Joint Council Pension Tr. Fund v. Am. West Holding Corp.*, 320 F.3d 920, 944 (9th Cir. 2003), for the proposition that insider trading is not necessary to plead scienter. But there, unlike here, the court found defendants engaged in insider trading and officers who did not trade stock received stock options due to stock price performance before the stock price dropped. *Id.* at 940, 944. Plaintiff also cites *Flynn v. Sientra*, 2016 WL 3360676, at *15 (C.D. Cal. June 9, 2016). There, unlike here, the plaintiff alleged with particularity that defendants knew about manufacturing problems, but did not disclose the problems to complete a stock offering to preserve the value of their shares and raise capital to avoid a default on loans. *Id.* Unlike Canoo's voluntary disclosure concerning the de-emphasis of engineering services and subscription, the defendants in *Flynn* only disclosed the manufacturing problems after regulatory action at manufacturing facilities became public. *Id.* at *3.

21

to make allegedly misleading statements after the purported purpose of making the allegedly misleading statements had been fulfilled, and when they knew the allegedly withheld information would become known to the investing public only a short time later?

The only purported "indicia" of scienter alleged in the AC that the Opposition regurgitates are alleged stock incentive awards ("Earnout Shares") in the Individual Defendants' employment contracts contingent on Canoo's stock price reaching certain prices for defined periods. Dkt. 93, Opp'n, at 21 (citing Dkt. 85, AC, ¶¶ 201-05). Plaintiff, however, concedes that the Individual Defendants never received Earnout Shares before the drop in Canoo's stock price in March and early April 2021 because the price never rose to meet the conditions for Earnout Shares. *Id.* Plaintiff does not— and cannot—explain why the Individual Defendants would engage in a scheme to "inflate" Canoo's stock price and then make "shocking revelations" (Dkt. 85, AC, ¶ 106) they allegedly knew would negatively affect the stock price before they could ever profit from the allegedly "inflated" price.

### C.   Plaintiff's Additional Allegations Do Not Establish Scienter

#### 1.   An ongoing SEC investigation and resignations are insufficient

Next, Plaintiff argues that an ongoing SEC investigation contributes to an inference of scienter. *See* Dkt. 93, Opp'n, at 22. But "[t]he mere existence of an investigation cannot support any inferences of wrongdoing or fraudulent scienter on the part of a company or its senior management." *In re Hansen Nat. Corp. Sec. Litig.*, 527 F. Supp. 2d 1142, 1162 (C.D. Cal. 2007) (cleaned up).

Plaintiff further argues that the resignations of Kranz and Balciunas within the same period as the SEC investigation support an inference of scienter. *See* Dkt. 93, Opp'n, at 22. But they resigned in April 2021, months after the allegedly misleading statements and before the SEC investigation. *See* Dkt. 85, AC, ¶¶ 105, 268, 176. Unlike the cases Plaintiff cites in support of his argument, Plaintiff does not allege any facts here showing that the resignations occurred under suspicious circumstances.

22

Under Ninth Circuit precedent, "a plaintiff must allege sufficient information to differentiate between a suspicious change in personnel and a benign one." *Zucco Partners, LLC v. Digimarc Corp.*, 552 F. 3d 981, 1002 (9th Cir. 2009). "Mere conclusory allegations that a financial manager resigns or retires during the class period or shortly before the corporation issues its restatement, without more, cannot support a strong inference of scienter." *Id.*; *see also City of Roseville Emps.' Ret. Sys. v. Sterling Fin. Corp.*, 963 F. Supp. 2d 1092, 1138 (E.D. Wash. 2013), *aff'd*, 691 F. App'x 393 (9th Cir. 2017) (allegation of "sudden and 'forced'" departure was not enough to establish scienter, even when the company announced a cease-and-desist order from the FDIC the next day, as there were no facts to suggest that the departures were "the result of wrongdoing or fraudulent conduct"); *In re Accuray, Inc. S'holder Derivative Litig.*, 757 F. Supp. 2d 919, 932 (N.D. Cal. 2010) ("[T]here is nothing suspicious about the timing of his resignation, even though it occurred weeks after Accuray's August, 2008 backlog revision."). Plaintiff makes no showing that the resignations were not benign.[31]

### 2.    Temporal proximity is insufficient

Plaintiff also argues that the temporal proximity between the alleged false statements and the purported corrective disclosures "bolsters" the allegations of fraud. Dkt. 93, Opp'n, at 22 (citing *Yourish*, 191 F.3d at 997; *Rihn v. Acadia Pharma. Inc.*, 2016 WL 5076147, at *9 (S.D. Cal. Sept. 19, 2016)). But temporal proximity cannot on its own establish a strong inference on scienter. *Yourish*, 191 F.3d at 997 ("[W]e have never allowed the temporal proximity between the two, *without more*, to satisfy the requirements of Rule 9(b)."). In *Yourish*, the Ninth Circuit affirmed the dismissal of a complaint because there were "no other adequately pleaded allegations for the

---

[31] *Cf. In re Banc of Cal. Sec. Litig.*, 2017 WL 3972456, at *8 (C.D. Cal. Sep. 6, 2017) (alleging facts that the SEC investigation and the resignation occurred on "the very same day"); *In re UTStarcom, Inc. Sec. Litig.*, 617 F. Supp. 2d 964, 975-76 (N.D. Cal. 2009) (alleging that resignations were contemporaneous with "the Company's financial restatements and the initiation of internal and SEC investigations" such that "the timing of Defendants' departures might suggest that the Company believed Defendants had been involved in wrongdoing with respect to corporate finances").

23

temporal proximity to bolster." *Id.* Here, as in *Yourish*, there are no adequately pled scienter allegations that alleged temporal proximity could bolster.[32] Plaintiff's focus on Aquila's apology during the March 2021 earnings call as a purported indication of scienter reflects the absence of any meaningful scienter allegations in the AC. *See* Dkt. 93, Opp'n, at 23. Plaintiff cites no authority to support the proposition that an apology for refocusing previously announced business plans is an indication of scienter.

## III. PLAINTIFF FAILS TO ALLEGE THAT THE INDIVIDUAL DEFENDANTS "MADE" ACTIONABLE FALSE STATEMENTS

By failing to argue otherwise, Plaintiff effectively concedes he does not allege facts showing Individual Defendants had "ultimate authority" over statements they did not make or were in corporate SEC filings. *See* Dkt. 93, Opp'n, at 18-20. Plaintiff argues the AC's identification of at least one allegedly misleading statement attributable to each Individual Defendant somehow permits group pleading for all the allegedly misleading statements in corporate SEC filings.[33] Plaintiff's fails to distinguish Plaintiff's group pleading from the group pleading that the court rejected in *Hefler v. Wells Fargo & Co.*, 2018 WL 1070116 (N.D. Cal. Feb. 27, 2018). *See* Dkt. 93, Opp'n, at 20 & n.8. In *Wells Fargo*, the court found that the Plaintiff failed to plead "specific facts" that individual defendants "had ultimate authority over the alleged misstatements" in the defendant's releases and SEC filings. *See* 2018 WL 1070116, at *9. The same is true here. Courts within the Ninth Circuit have largely concluded that group pleading is not compatible with the PSLRA's requirements. "The Central District of California, in particular, appears to be unanimous in this conclusion." *Reed v. Amira*

---

[32] By contrast, in *Rihn*, the court found temporal proximity bolstered other allegations that employees were aware of roadblocks in the certification for the company's most important product. *Rihn*, 2016 WL 5076147, at *9 (S.D. Cal. Sept. 19, 2016).

[33] The case the Opposition cites for this incorrect proposition is inapposite as the plaintiff in that case alleged defendants signed documents and served on committees whose responsibilities would have afforded knowledge about statements in public filings. Opp'n at 20 (citing *In re Wells Fargo & Co. S'holder Derivative Litig.*, 282 F. Supp. 3d 1074, 1095 (N.D. Cal. 2017)).

24

*Nature Foods Ltd.*, 2016 WL 6571281, at \*10 (C.D. Cal. July 18, 2016).

## IV.   THE AC FAILS TO STATE RULE 10b-5(a), 10b-5(c) or § 20(a) CLAIMS

Plaintiff argues that he stated claims for violations of Rules 10b-5(a), 10b-5(c), and Section 20(a) based on alleged misstatements issued to complete the merger. *See* Dkt. 93, Opp'n, at 25. Accordingly, because Plaintiff has failed to adequately allege that Defendants made any misstatements or scienter, *see supra* §§ I-II, Plaintiff's claims under Rules 10b-5(a), 10b-5(c) fall with his Rule 10b-5(b) claim. Absent a primary violation under Section 10(b) or adequate allegations that the Individual Defendants were "controlling persons," Plaintiff's Section 20(a) should be dismissed as well.[34]

## CONCLUSION

For the foregoing reasons, Defendants respectfully submit that the AC fails to state a claim and should be dismissed with prejudice.

DATED:  July 8, 2022

Respectfully submitted,

Kirkland & Ellis LLP

*/s/ David A. Klein*

David A. Klein

*Attorneys for Defendants*

---

[34] The Court should grant the Motion with prejudice. Plaintiff's one-sentence footnote requesting leave to amend does not identify any proposed amendment, much less explain how any amendment would cure the AC's deficiencies. Opp'n at 25 n.10. The Ninth Circuit has recognized that "dismissal with prejudice was appropriate" for a complaint that had not been previously amended where the plaintiff "failed to set forth any facts which he could add to save his complaint." *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 991 (9th Cir. 1999), *superseded by statute on other grounds as recognized in Burbrink v. Campbell*, 734 F. App'x 416, 418 (9th Cir. 2018); *see also In re VeriFone Sec. Litig.*, 11 F.3d 865, 872 (9th Cir. 1993) (similar). Moreover, Plaintiff filed the AC after consolidation and requesting additional time to do so, yet failed to cure deficiencies. *See In re Wet Seal, Inc. Sec. Litig.*, 518 F. Supp. 2d 1148, 1181 (C.D. Cal. 2007) (treating pre-consolidation complaints as prior complaints when determining whether leave to amend is warranted). Thus, unlike the sole case Plaintiff cites to support his request for leave to amend, there is ample basis here to find "amendment would be futile," and therefore "dismissal may be ordered with prejudice." *Curry v. Hansen Med., Inc.*, 2011 WL 3741238, at \*2 (N.D. Cal. Aug. 25, 2011).