# Exhibit 1

Filed pursuant to Rule 424(b)(3)
Registration No. 333-248923

# HENNESSY CAPITAL ACQUISITION CORP. IV

**3415 N. Pines Way, Suite 204**
**Wilson, Wyoming 83014**

Dear Hennessy Capital Acquisition Corp. IV Stockholders:

On August, 17, 2020, Hennessy Capital Acquisition Corp. IV, a Delaware corporation ("Hennessy Capital"), two of its wholly owned subsidiaries and Canoo Holdings Ltd., an exempted company incorporated with limited liability in the Cayman Islands ("Canoo"), entered into a Merger Agreement and Plan of Reorganization (the "Merger Agreement"), pursuant to which Canoo would become a wholly owned subsidiary of Hennessy through a series of mergers (such mergers collectively with the other transactions described in the Merger Agreement, the "Business Combination"). The aggregate merger consideration payable to equity holders of Canoo upon closing of the Business Combination (the "Closing") consists of 175 million newly issued shares of Hennessy Capital common stock valued at $10.00 per share and up to an additional 15 million shares of Hennessy Capital common stock if certain share price thresholds are achieved within five years after the Closing. See the section entitled "*The Business Combination*" on page 101 of the accompanying proxy statement/prospectus for further information on the consideration payable to equity holders of Canoo.

Concurrently with the execution of the Merger Agreement, Hennessy Capital entered into separate subscription agreements with a number of investors (the "PIPE Investors"), pursuant to which the PIPE Investors have agreed to purchase an aggregate of 32,325,000 shares of Hennessy Capital common stock, for a purchase price of $10.00 per share and at an aggregate purchase price of $323,250,000, in a private placement (the "PIPE Financing").

Hennessy Capital units, Class A common stock and public warrants are currently listed on the Nasdaq Capital Market, under the symbols "HCACU," "HCAC," and "HCACW," respectively. Hennessy Capital has applied for listing of its common stock and warrants on the Nasdaq Global Select Market under the symbols "GOEV" and "GOEVW", respectively, upon the Closing. At the Closing, each unit will separate into its components consisting of one share of common stock and three-quarters of one warrant and, as a result, will no longer trade as a separate security.

Hennessy Capital cordially invites you to attend a special meeting of its stockholders in lieu of the 2020 annual meeting (the "special meeting") to consider matters related to the proposed Business Combination. The special meeting will be held on December 21, 2020, at 10:00 a.m., Eastern time, via a virtual meeting.

Hennessy Capital and Canoo cannot complete the Mergers unless Hennessy Capital's stockholders consent to the approval of the Merger Agreement and the transactions contemplated thereby, including the issuance of Hennessy Capital common stock to be issued as the merger consideration. Hennessy Capital is providing the accompanying proxy statement/prospectus and proxy card to you in connection with the solicitation of proxies to be voted at the special meeting and at any adjournments or postponements thereof.

After careful consideration, the Hennessy Capital board of directors has unanimously approved the Merger Agreement and the other proposals described in the accompanying proxy statement/prospectus, and the Hennessy Capital board of directors has determined that it is advisable to consummate the Business Combination. **The Hennessy Capital Board of Directors recommends that you vote "FOR" each of the proposals described in this proxy statement/prospectus**.

More information about Hennessy Capital, Canoo and the Business Combination is contained in this proxy statement/prospectus. Hennessy Capital and Canoo urge you to read the accompanying proxy statement/prospectus, including the financial statements and annexes and other documents referred to herein, carefully and in their entirety. **In particular, you should carefully consider the matters discussed under "Risk Factors" beginning on page 39 of this proxy statement/prospectus.**

On behalf of our board of directors, I thank you for your support and look forward to the successful completion of the Business Combination.

|  | Sincerely, |
| --- | --- |
| December 4, 2020 | /s/ Daniel J. Hennessy |
|  | Daniel J. Hennessy<br>Chairman of the Board and Chief Executive Officer |

This proxy statement/prospectus is dated December 4, 2020 and is first being mailed to the stockholders of Hennessy Capital on or about December 4, 2020.

**NEITHER THE U.S. SECURITIES AND EXCHANGE COMMISSION NOR ANY STATE SECURITIES REGULATORY AGENCY HAS APPROVED OR DISAPPROVED THE TRANSACTIONS DESCRIBED IN THIS PROXY STATEMENT/PROSPECTUS OR ANY OF THE SECURITIES TO BE ISSUED IN THE BUSINESS COMBINATION, PASSED UPON THE MERITS OR FAIRNESS OF THE BUSINESS COMBINATION OR RELATED TRANSACTIONS OR PASSED UPON THE ADEQUACY OR ACCURACY OF THE DISCLOSURE IN THIS PROXY STATEMENT/PROSPECTUS. ANY REPRESENTATION TO THE CONTRARY CONSTITUTES A CRIMINAL OFFENSE.**

Table of Contents

Canoo has been determined to be the accounting acquirer based on evaluation of the following facts and circumstances:

- Canoo's business will comprise the ongoing operations of the combined company immediately following the consummation of the Business Combination, which we refer to herein as "New Canoo;"

- Canoo's senior management will serve as senior management of New Canoo;

- Canoo's existing shareholders will have the greatest voting interest in New Canoo and a majority interest under both the no redemption and maximum redemption scenarios (holding approximately 71.5% and 81.5% of the total shares outstanding of New Canoo under the no redemption and maximum redemption scenarios, respectively);

- Canoo's existing directors and individuals designated by, or representing, Canoo's existing shareholders will constitute at least five of the six members of the initial New Canoo Board following the consummation of the Business Combination;

- Canoo's existing shareholders will have the ability to control decisions regarding election and removal of directors from the New Canoo Board; and

- New Canoo will continue to operate under the Canoo tradename and the headquarters of New Canoo will be Canoo's existing headquarters.

Other factors were considered, including the purpose and intent of the Business Combination, noting that the preponderance of evidence as described above is indicative that Canoo is the accounting acquirer in the Business Combination.

**Sources and Uses of Funds**

The following table summarizes the sources and uses for funding the Business Combination assuming no redemptions of any Public Shares and approximately $306.6 million of cash remaining in our Trust Account:

| Sources: | | | Uses: | | |
|---|---|---|---|---|---|
| ($ in millions) | | | | | |
| Proceeds from Trust Account | $ | 307 | Equity Consideration to Canoo equity holders | $ | 1,750 |
| Proceeds from PIPE Financing | $ | 323 | Cash to Canoo Balance Sheet | $ | 609 |
| Hennessy Capital Equity Consideration | $ | 1,750 | Estimated Total Fees and Expenses | $ | 41 |
| Cash from Canoo Balance Sheet (for Canoo Fees and Expenses) | $ | 20 | | | |
| **Total Sources** | **$** | **2,400** | **Total Uses** | **$** | **2,400** |

The following table summarizes the sources and uses for funding the Business Combination assuming that all 29,803,439 shares of HCAC Class A Common Stock are redeemed for an aggregate payment of approximately $306.6 million (based on the estimated per share redemption price of approximately $10.29 per share based on the fair value of marketable securities held in the Trust Account as of September 30, 2020 of approximately $306.6 million) from the Trust Account:

| Sources: | | | Uses: | | |
|---|---|---|---|---|---|
| ($ in millions) | | | | | |
| Proceeds from Trust Account | $ | 0 | Equity Consideration to Canoo equity holders | $ | 1,750 |
| Proceeds from PIPE Financing | $ | 323 | Cash to Canoo Balance Sheet | $ | 303 |
| Hennessy Capital Equity Consideration | $ | 1,750 | Estimated Total Fees and Expenses | $ | 41 |
| Cash from Canoo Balance Sheet (for Canoo Fees and Expenses) | $ | 20 | | | |
| **Total Sources** | **$** | **2,093** | **Total Uses** | | **$  2,093*** |

---

\*      Figures have been rounded for ease of presentation and may not sum due to rounding.

117

Table of Contents

All of the sources and uses above are for illustrative purposes only. Where actual amounts are not known or knowable, the figures above represent Hennessy Capital's good faith estimate of such amounts.

### Satisfaction of 80% Test

Nasdaq rules require that an initial business combination must be with one or more target businesses that together have a fair market value equal to at least 80% of the balance in the Trust Account (less any deferred underwriting commissions and taxes payable on interest earned) at the time of signing a definitive agreement in connection with an initial business combination. The HCAC Board has determined that the fair market value of the Business Combination meets this test. In making such determination, the HCAC Board considered, among other factors, the implied valuation of Canoo based on the market valuation of comparable companies (as discussed in the section of this proxy statement/prospectus entitled "Hennessy Capital's Board of Directors' Reasons for the Approval of the Business Combination") and the price per share of HCAC Class A Common Stock to be paid by PIPE Investors in the PIPE Financing. As a result, the HCAC Board concluded that the fair market value of Canoo was significantly in excess of 80% of the funds held in the Trust Account (less any deferred underwriting commissions and taxes payable on interest earned).

### Name; Headquarters of New Canoo

The name of the combined company after the Business Combination will be Canoo Inc., and our headquarters will be located at 19951 Mariner Avenue, Torrance, California 90503 and our phone number will be (424) 271-2144.

### Board of New Canoo following the Business Combination

Upon the Closing, we anticipate that the New Canoo Board will consist of six members, reclassified into three separate classes, with each class serving a three-year term; except with respect to the election of directors at the special meeting pursuant to Proposal No. 6 — The Election of Directors Proposal, the Class I directors will be elected to an initial one-year term (and three-year terms subsequently), the Class II directors will be elected to an initial two-year term (and three-year terms subsequently) and the Class III directors will be elected to an initial three-year term (and three-year terms subsequently). All of our existing directors of Hennessy Capital, except for Greg Ethridge, our President, Chief Operating Officer and director, have informed us that they will resign from our board of directors upon Closing.

Our board of directors has nominated the following individuals for election at our special meeting pursuant to Proposal No. 6 — The Election of Directors Proposal:

- *Class I Directors:* Foster Chiang and Greg Ethridge;

- *Class II Directors:* Thomas Dattilo and Rainer Schmueckle; and

- *Class III Directors:* Josette Sheeran and Tony Aquila.

For additional details, see the sections of this proxy statement/prospectus entitled "*Proposal No. 6 — The Election of Directors Proposal*" and "*Management After the Business Combination.*"

### Redemption Rights

Pursuant to our Existing Charter, holders of Public Shares may elect to have their Public Shares redeemed for cash at the applicable redemption price per share calculated in accordance with our Existing Charter. For illustrative purposes, based on funds in the Trust Account of approximately $306.6 million on October 27, 2020, the estimated per share redemption price would have been approximately $10.29. If a Public Stockholder exercises its redemption rights, then such Public Stockholder will be exchanging its shares of our HCAC Class A Common Stock for cash and will no longer own shares of Hennessy Capital. Such a holder will be entitled to receive cash for its Public Shares only if it properly demands redemption and delivers its shares (either physically or electronically) to our transfer agent in accordance with the procedures described herein. Each redemption of Public Shares by our Public Stockholders will decrease the amount in our Trust Account, which holds approximately $306.6 million on October 27, 2020 (net of taxes payable). See the section entitled "*Special Meeting in Lieu of 2020 Annual Meeting of Hennessy Capital Stockholders — Redemption Rights*" for the procedures to be followed if you wish to redeem your shares for cash.

118

Table of Contents

**Appraisal Rights**

There are no appraisal rights available to our stockholders or warrantholders in connection with the Business Combination.

**Ownership of New Canoo After the Closing**

It is anticipated that, upon the completion of the Business Combination, the ownership of New Canoo will be as follows:

| | Assuming No Redemption | | Assuming Maximum Redemption | |
| --- | --- | --- | --- | --- |
| | Number of shares of New Canoo Common Stock | % | Number of shares of New Canoo Common Stock | % |
| Current Canoo Equityholders[1] | 175,000,000 | 71.5% | 175,000,000 | 81.5% |
| PIPE Investors | 32,325,000 | 13.2% | 32,325,000 | 15.0% |
| Current Hennessy Capital Stockholders[2] | 37,307,189 | 15.3% | 7,503,750 | 3.5% |
| Total | 244,632,189 | | 214,828,750 | |

--------

(1)    Excludes 3,525,000 PIPE Shares to be issued in the aggregate to certain current Canoo equity holders, which are included in "PIPE Investors" total.

(2)    Excludes 1,100,000 PIPE Shares to be issued in the aggregate to an entity controlled by the Anchor Investor and an entity controlled by Daniel J. Hennessy, the Chairman and CEO of Hennessy Capital and nominee for the New Canoo Board, which are included in the "PIPE Investors" total.

The numbers of shares of New Canoo Common Stock Assuming No Redemption set forth above assumes that no Public Stockholders elect to have their Public Shares redeemed, and the numbers of shares of New Canoo Common Stock Assuming Maximum Redemption set forth above assumes that 100% of the Public Shares (i.e., 29,803,439 shares) are redeemed. The numbers of shares and percentage interests set forth above are based on a number of additional assumptions, including that (i) there are no other equity issuances by New Canoo, (ii) the vesting of all shares of New Canoo Common Stock received in respect of the Canoo Restricted Shares, (iii) the vesting and exercise of all Converted Options for shares of New Canoo Common Stock, and (iv) the vesting of all Converted RSU Awards and the issuance of shares of New Canoo Common Stock in respect thereof. If the actual facts differ from our assumptions, the numbers of shares and percentage interests set forth above will be different. In addition, the numbers of shares and percentage interests set forth above do not take into account (i) potential future exercises of HCAC Warrants and (ii) the Earnout Shares.

For example, if we assume that (i) all of the 22,511,250 Public Warrants and 1,842,106 Private Placement Warrants that will remain outstanding post-Business Combination were exercisable and exercised following completion of the Business Combination and (ii) all of the 15,000,000 Earnout Shares become issuable in accordance with their terms, then the anticipated ownership of New Canoo at the Closing would be as follows:

| | Assuming No Redemption | | Assuming Maximum Redemption | |
| --- | --- | --- | --- | --- |
| | Number of shares of New Canoo Common Stock | % | Number of shares of New Canoo Common Stock | % |
| Current Canoo Equityholders[1] | 190,000,000 | 66.9% | 190,000,000 | 74.7% |
| PIPE Investors | 32,325,000 | 11.4% | 32,325,000 | 12.7% |
| Current Hennessy Capital Equityholders[2] | 61,660,545 | 21.7% | 31,857,106 | 12.5% |
| Total | 283,985,545 | | 254,182,106 | |

--------

(1)    Excludes 3,525,000 PIPE Shares to be issued in the aggregate to certain current Canoo equity holders, which are included in "PIPE Investors" total.

(2)    Excludes 1,100,000 PIPE Shares to be issued in the aggregate to an entity controlled by the Anchor Investor and an entity controlled by Daniel J. Hennessy, the Chairman and CEO of Hennessy Capital and nominee for the New Canoo Board, which are included in the "PIPE Investors" total.

119

Table of Contents

unlawful (potentially due to the imposition of legal proceedings that a party may bring or due to other circumstances that are currently unknown), then pursuant to Section 174 of the DGCL, the statute of limitations for claims of creditors could then be six years after the unlawful redemption distribution, instead of three years, as in the case of a liquidating distribution. If we are unable to complete our initial business combination by December 31, 2020, we will: (i) cease all operations except for the purpose of winding up, (ii) as promptly as reasonably possible but not more than ten business days thereafter, redeem the Public Shares, at a per-share price, payable in cash, equal to the aggregate amount then on deposit in the Trust Account including interest earned on the funds held in the Trust Account and not previously released to us to pay our taxes (less up to $100,000 of interest to pay dissolution expenses), divided by the number of then outstanding Public Shares, which redemption will completely extinguish Public Stockholders' rights as stockholders (including the right to receive further liquidating distributions, if any), subject to applicable law, and (iii) as promptly as reasonably possible following such redemption, subject to the approval of our remaining stockholders and our board of directors, dissolve and liquidate, subject in each case to our obligations under Delaware law to provide for claims of creditors and the requirements of other applicable law. Accordingly, it is our intention to redeem our Public Shares as soon as reasonably possible following December 31, 2020 and, therefore, we do not intend to comply with those procedures. As such, our stockholders could potentially be liable for any claims to the extent of distributions received by them (but no more) and any liability of our stockholders may extend well beyond the third anniversary of such date.

Because we will not be complying with Section 280, Section 281(b) of the DGCL requires us to adopt a plan, based on facts known to us at such time that will provide for our payment of all existing and pending claims or claims that may be potentially brought against us within the subsequent 10 years. However, because we are a blank check company, rather than an operating company, and our operations are limited to searching for prospective target businesses to acquire, the only likely claims to arise would be from our vendors (such as lawyers, investment banker, etc.) or prospective target businesses. As described above, pursuant to the obligation contained in our underwriting agreement, we have sought and will continue to seek to have all vendors, service providers, prospective target businesses or other entities with which we do business (except our independent registered accounting firm) execute agreements with us waiving any right, title, interest or claim of any kind in or to any monies held in the Trust Account. As a result of this obligation, the claims that could be made against us are significantly limited and the likelihood that any claim that would result in any liability extending to the Trust Account is remote. Further, our Sponsor may be liable only to the extent necessary to ensure that the amounts in the Trust Account are not reduced below (i) $10.10 per public share or (ii) such lesser amount per public share held in the Trust Account as of the date of the liquidation of the Trust Account, due to reductions in value of the trust assets, in each case net of the amount of interest withdrawn to pay taxes and will not be liable as to any claims under our indemnity of the underwriters of our IPO against certain liabilities, including liabilities under the Securities Act. In the event that an executed waiver is deemed to be unenforceable against a third-party, our Sponsor will not be responsible to the extent of any liability for such third-party claims.

If we file a bankruptcy petition or an involuntary bankruptcy petition is filed against us that is not dismissed, the proceeds held in the Trust Account could be subject to applicable bankruptcy law, and may be included in our bankruptcy estate and subject to the claims of third parties with priority over the claims of our stockholders. To the extent any bankruptcy claims deplete the Trust Account, there is no assurance that we will be able to return $10.10 per share to our Public Stockholders. Additionally, if we file a bankruptcy petition or an involuntary bankruptcy petition is filed against us that is not dismissed, any distributions received by stockholders could be viewed under applicable debtor/creditor and/or bankruptcy laws as either a "preferential transfer" or a "fraudulent conveyance." As a result, a bankruptcy court could seek to recover some or all amounts received by our stockholders. Furthermore, our board of directors may be viewed as having breached its fiduciary duty to our creditors and/or may have acted in bad faith, thereby exposing itself and our company to claims of punitive damages, by paying Public Stockholders from the Trust Account prior to addressing the claims of creditors. There is no assurance that claims will not be brought against us for these reasons.

Our Public Stockholders will be entitled to receive funds from the Trust Account only upon the earlier to occur of: (i) the completion of our initial business combination, (ii) the redemption of any Public Shares properly tendered in connection with a stockholder vote to amend any provisions of our Existing Charter (A) to modify the substance or timing of our obligation to redeem 100% of our Public Shares if we do not complete our initial business combination by December 31, 2020 or (B) with respect to any other provision relating to stockholders' rights or pre-initial business combination activity, and (iii) the redemption of all of our Public Shares if we are unable to complete our business combination by December 31, 2020, subject to applicable law. In no other circumstances will a stockholder have any right or interest of any kind to or in the Trust Account. In the event we seek stockholder approval in connection with our initial business combination, a stockholder's voting in connection with the initial business combination alone

226

will not result in a stockholder's redeeming its shares to us for an applicable pro rata share of the Trust Account. Such stockholder must have also exercised its redemption rights as described above. These provisions of our Existing Charter, like all provisions of our Existing Charter, may be amended with a stockholder vote.

### Facilities

We do not own any real estate or other physical properties materially important to our operation. We currently maintain our principal executive offices at 3415 N. Pines Way, Suite 204, Wilson, Wyoming 83014. The cost for this space is included in the $15,000 per-month aggregate fee our Sponsor charges us for general and administrative services. We consider our current office space, combined with the other office space otherwise available to our executive officers, adequate for our current operations.

### Employees

We currently have three officers (including our President and Chief Operating Officer). These individuals are not obligated to devote any specific number of hours to our matters but they devote as much of their time as they deem necessary to our affairs and intend to continue doing so until we have completed our initial business combination. The amount of time they devote in any time period may vary based on whether a target business has been selected for our initial business combination and the stage of the initial business combination process we are in, but Mr. Hennessy devotes a substantial portion of his professional time to our affairs. We do not intend to have any full-time employees prior to the completion of our initial business combination.

### Directors and Executive Officers

The following table sets forth the name, age and position of each of our current directors and executive officers as of October 27, 2020.

| Name | Age | Position |
|---|---|---|
| Daniel J. Hennessy | 62 | Chairman of the Board of Directors and Chief Executive Officer |
| Greg Ethridge | 44 | President and Chief Operating Officer and Director |
| Nicholas A. Petruska | 34 | Executive Vice President, Chief Financial Officer and Secretary |
| Bradley Bell | 68 | Director |
| Richard Burns | 67 | Director |
| Juan Carlos Mas | 54 | Director |
| Gretchen W. McClain | 58 | Director |
| James F. O'Neil III | 62 | Director |
| Peter K. Shea | 69 | Director |

**Daniel J. Hennessy,** our Chairman and Chief Executive Officer since our formation, is also the Managing Member of Hennessy Capital LLC, an alternative investment firm he established in 2013 that focuses on sustainable industrial technology and infrastructure sectors. From September 2013 to February 2015, Mr. Hennessy served as Chairman of the Board and Chief Executive Officer of Hennessy I, which merged with School Bus Holdings Inc. in February 2015 and is now known as Blue Bird Corporation (NASDAQ: BLBD), and previously served as a director from September 2013 to April 2019. From April 2015 to February 2017, Mr. Hennessy served as Chairman of the Board and Chief Executive Officer of Hennessy Capital Acquisition Corp. II ("Hennessy II"), which merged with Daseke in February 2017 and is now known as Daseke, Inc. (NASDAQ: DSKE), and has served as Vice Chairman since February 2017. Since August 2018, Mr. Hennessy has served as a director of SIRVA Worldwide Relocation & Moving. From January 2017 to October 2018, Mr. Hennessy served as Chairman of the Board and Chief Executive Officer of Hennessy Capital Acquisition Corp. III ("Hennessy III"), which merged with NRC Group Holdings, LLC, a global provider of comprehensive environmental, compliance and waste management services, and is currently a wholly-owned subsidiary of US Ecology, Inc. (NASDAQ: ECOL) and served as a director from January 2017 to October 2019. From 1988 to 2016, Mr. Hennessy served as a Partner at Code Hennessy & Simmons LLC (n/k/a CHS Capital or "CHS"), a middle-market private equity investment firm he co-founded in 1988. Prior to forming CHS, Mr. Hennessy was employed by Citicorp from 1984 to 1988 as head of the Midwest Region for Citicorp Mezzanine Investments and Vice President and Team Leader with Citicorp Leveraged Capital Group. He began his career in 1981 in the oil and gas lending group at Continental Illinois National Bank (now Bank of America) where he was a Banking Officer. Mr. Hennessy holds a B.A. degree, magna cum laude, from Boston College and an M.B.A. from

227

Table of Contents

the University of Michigan Ross School of Business. Mr. Hennessy is well qualified to serve as director due to his experience in private equity and public and private company board governance, as well as his background in finance and his experience with Hennessy I, Hennessy II and Hennessy III.

**Greg Ethridge,** our President, Chief Operating Officer and director as of the date hereof, has served as Chairman of Motorsports Aftermarket Group, a designer, manufacturer, marketer and distributor of aftermarket parts, apparel and accessories for the motorcycle and power sports industry since June 2019. He served as President of Matlin & Partners Acquisition Corporation from January 2017 to November 2018, at which time it merged with USWS Holdings LLC, a growth- and technology-oriented oilfield service company focused exclusively on hydraulic fracturing for oil and natural gas exploration and production companies and is now known as U.S. Well Services, Inc. (NASDAQ: USWS). He served as Senior Partner of MatlinPatterson Global Advisers LLC ("MatlinPatterson")from 2009 to 2020 and prior to joining MatlinPatterson in 2009, Mr. Ethridge was a principal in the Recapitalization and Restructuring group at Gleacher and Company (f/k/a Broadpoint Capital, Inc.) where he moved his team from Imperial Capital LLC, from 2008 to 2009. In 2006, Mr. Ethridge was a founding member of the corporate finance advisory practice for Imperial Capital LLC in New York. From 2005 to 2006, Mr. Ethridge was a principal investor at Parallel Investment Partners LP (formerly part of Saunders, Karp and Megrue), executing recapitalizations, buyouts and growth equity investments for middle market companies. From 2001 to 2005, Mr. Ethridge was an associate in the Recapitalization and Restructuring Group at Jefferies and Company, Inc. where he executed corporate restructurings and leveraged finance transactions and was a crisis manager at Conway, Del Genio, Gries & Co. in New York from 2000 to 2001. Mr. Ethridge served a director of Palmetto Bluff Company, LLC, formerly a multi-asset class real estate developer known as Crescent Communities, LLC, a multi-class real estate developer, from 2010 to 2020. From 2009 until 2017, Mr. Ethridge served on the board of directors of FXI Holdings Inc., a foam and foam products manufacturer and served as its chairman from February 2012 until 2017. Mr. Ethridge has also served on the board of directors of Advantix Systems Ltd. and Advantix Systems, Inc., HVAC equipment manufacturers, from August 2013 until 2015 (for Advantix Systems, Inc.) and until 2018 (for Advantix Systems Ltd.). Mr. Ethridge holds a BBA and a Masters in Accounting from The University of Texas at Austin. Mr. Ethridge is well-qualified to serve as director due to his experience in the private equity and the special purpose acquisition company industries.

**Nicholas A. Petruska**, our Executive Vice President, Chief Financial Officer and Secretary since our formation, has served as the Vice President of Hennessy Capital LLC, the managing member of our Sponsor, since November 2013, in which position he advised Hennessy I, which merged with School Bus Holdings Inc. in February 2015 and is now known as Blue Bird Corporation (NASDAQ: BLBD), in connection with its initial public offering in January 2014. In addition, he worked closely with Hennessy I's CEO and COO on transaction origination and initial assessments of potential target companies and led the due diligence assessment and transaction execution for Hennessy 1's business combination, which was consummated in February 2015. From April 2015 to February 2017, Mr. Petruska served as Chief Financial Officer of Hennessy II, which merged with Daseke in February 2017 and is now known as Daseke Inc. (NASDAQ: DSKE). From March 2017 to October 2018, Mr. Petruska served as Executive Vice President, Chief Financial Officer and Secretary of Hennessy III, which merged with NRC Group Holdings, LLC, a global provider of comprehensive environmental, compliance and waste management services, and is currently a wholly-owned subsidiary of US Ecology, Inc. (NASDAQ: ECOL). From July 2012 to July 2014, Mr. Petruska served as an associate at CHS Capital, a Chicago-based middle market private equity investment firm, where he evaluated leveraged buyouts and structured equity investments across multiple sectors and monitored certain portfolio companies of CHS. From January 2010 to July 2012, Mr. Petruska served as an investment banking analyst for Morgan Stanley (NYSE: MS) in the mergers and acquisitions and corporate finance groups with a focus on diversified industrials and consumer retail. He holds a B.S. degree, summa cum laude, from Miami University with majors in Finance and Decision Sciences.

**Bradley Bell** has served as a member of our board of directors and as the chairman of our audit committee since our initial public offering. From January 2014 to February 2015, Mr. Bell served as a director and chairman of the Audit Committee of Hennessy I, which merged with School Bus Holdings Inc. in February 2015 and is now known as Blue Bird Corporation (NASDAQ: BLBD). From July 2015 to February 2017, Mr. Bell served as a director and chairman of the Audit Committee of Hennessy II, which merged with Daseke in February 2017 and is now known as Daseke, Inc. (NASDAQ: DSKE). From June 2017 to October 2018, Mr. Bell served as a director and chairman of the audit committee of Hennessy III, which merged with NRC Group Holdings, LLC, a global provider of comprehensive environmental, compliance and waste management services, and is currently a wholly-owned subsidiary of US Ecology, Inc. (NASDAQ: ECOL). Mr. Bell served as a director of MPM Holdings, Inc., a global manufacturer of silicones and quartz products, where he has been Non-Executive Chair from December 2014 to May 2019. Since July 2015, Mr. Bell has served as a director and Chairman of the Audit Committee of The Chemours Company LLC (NYSE: CC), a chemical solutions company. From 2001 through 2015, he served as a director of IDEX Corporation

228