Mark C. Holscher (SBN 139582)
mark.holscher@kirkland.com
KIRKLAND & ELLIS LLP
555 South Flower Street
Los Angeles, CA 90071
Telephone: (213) 680-8400
Facsimile: (213) 680-8500

David A. Klein (SBN 273925)
david.klein@kirkland.com
KIRKLAND & ELLIS LLP
2049 Century Park East
Los Angeles, CA 90067
Telephone: (310) 552-4200
Facsimile: (310) 552-5900

*Attorneys for Defendants Canoo Inc., Tony Aquila, Ulrich Kranz, and Paul Balciunas*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SAMUEL BLAKE, Individually and on Behalf of All Others Similarly Situated,<br><br>   Plaintiffs,<br> v.<br><br><br>CANOO INC., TONY AQUILA, ULRICH KRANZ, and PAUL BALCIUNAS,<br><br>   Defendants. | Case No. 2:21-CV-02873-FMO-JPR<br><br>**(Consolidated)**<br><br>Case No. 2:21-CV-02879-FMO-JPR<br><br>Case No. 2:21-CV-03080-FMO-JPR<br><br>**DEFENDANTS CANOO INC., TONY AQUILA, ULRICH KRANZ, AND PAUL BALCIUNAS' REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF THEIR MOTION TO DISMISS LEAD PLAINTIFF'S CONSOLIDATED AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>Hearing Date: September 8, 2022 (First available hearing date more than 28 days from filing of motion)<br>Time: 10:00 a.m.<br>Judge: Hon. Fernando M. Olguin<br>Courtroom: 6D |

# TABLE OF CONTENTS

**Page**

INTRODUCTION .................................................................................................1

LEGAL STANDARD...........................................................................................2

ARGUMENT .......................................................................................................3

I.      EXHIBITS 1-13 ARE INCORPORATED BY REFERENCE IN THE AC AS THEY ARE EXTENSIVELY REFERENCED AND FORM THE BASIS OF PLAINTIFF'S CLAIMS..............................................................3

II.     THE COURT SHOULD TAKE JUDICIAL NOTICE OF THE FACT THAT CANOO'S STOCK PRICE NEVER ROSE TO MEET THE CONDITIONS FOR EARNOUT SHARES .................................................5

CONCLUSION.....................................................................................................6

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................................................................................2

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....................................................................................2

*Bodri v. GoPro, Inc.*,
252 F. Supp. 3d 912 (N.D. Cal. 2017)......................................................3

*Cholla Ready Mix, Inc. v. Civish*,
382 F.3d 969 (9th Cir. 2004) ....................................................................2

*City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*,
880 F. Supp. 2d 1045 (N.D. Cal. 2012)....................................................5

*In re Eventbrite, Inc. Sec. Litig.*,
2020 WL 2042078 (N.D. Cal. Apr. 28, 2020)..........................................3

*In re Facebook, Inc. Sec. Litig.*,
405 F. Supp. 3d 809 (N.D. Cal. 2019)......................................................5

*Garcia v. J2 Global, Inc.*, 2021 WL 1558331,
2021 WL 1558331 (C.D. Cal. Mar. 3, 2021) ..........................................6

*In re Stac Elecs. Sec. Litig.*,
89 F.3d 1399 (9th Cir. 1996) ....................................................................3

*In re Twitter Inc. Sec. Litig.*,
506 F. Supp. 3d 867 (N.D. Cal. 2020)......................................................5

*Khoja v. Orexigen Therapeutics*,
99 F.3d 988 (9th Cir. 2018) ......................................................................3

*Metzler Inv. GMBH v. Corinthian Colls., Inc.*,
540 F.3d 1049 (9th Cir. 2008) ..................................................................6

*Oklahoma Firefighters Pension & Ret. Sys. v. IXIA*,
50 F. Supp. 3d 1328 (C.D. Cal. 2014)..................................................2, 6

*ScripsAmerica, Inc. v. Ironridge Glob. LLC*,
   119 F. Supp. 3d 1213 (C.D. Cal. 2015)......................................................2

*Sprewell v. Golden State Warriors*,
   266 F.3d 979 (9th Cir. 2001) ....................................................................2

*Steckman v. Hart Brewing Inc.*,
   143 F.3d 1293 (9th Cir. 1998) ..................................................................2

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007)..................................................................................2

*United States v. Ritchie*,
   342 F.3d 903 (9th Cir. 2003) ....................................................................2

*Weston Fam. P'ship LLLP v. Twitter, Inc.*,
   29 F.4th 611 (9th Cir. 2022) .................................................................3, 5

**Statutes**

15 U.S.C. § 78u-4(b)(3)(B)...............................................................................2

15 U.S.C. § 78u-5 .............................................................................................5

15 U.S.C. § 78u-4(b)(3)(B)...............................................................................4

**Rules**

Fed. R. Evid. 201 ...............................................................................2, 3, 5, 6

Fed. R. Civ. P. 12(b)(6) ..........................................................................2, 4, 5

**INTRODUCTION**

The Court has already determined that it will take judicial notice of Exhibits 1-13 attached to the concurrently filed Declaration of David A. Klein in support of Defendants' Motion to Dismiss Lead Plaintiff's Consolidated Amended Complaint for their existence and contents, although not for the truth of the information contained in the Exhibits.[1] Dkt. 100, Order, at 2-3 ("Order"). Defendants hereby renew their request that the Court take judicial notice of these Exhibits, which are excerpts of publicly available SEC filings and a copy of Canoo's March 29, 2021 quarterly earnings call transcript referenced in the AC, for the fact that statements in the Exhibits were made and context consistent with the Court's Order. An appendix identifying the specific facts within the Exhibits that the Court should judicially notice is included here.

In addition, Defendants request that the Court take judicial notice of the fact that Canoo's stock price has not reached or exceeded $18 per share for any 20 trading days within any consecutive 30 trading-day period since August 17, 2020. Canoo's stock price never rose to levels to meet conditions for Defendants Tony Aquila, Ulrich Kranz, and Paul Balciunas (the "Individual Defendants") to receive stock incentive awards ("Earnout Shares") alleged in the AC. AC ¶¶ 201-205. The fact that Canoo's stock price never rose to meet these conditions for Earnout Shares is judicially noticeable as it can be readily determined from publicly available stock price information available on the internet supplied here. Further, Plaintiff does not object to judicial notice of this fact. Rather, Plaintiff's counsel agree that paragraph 205 of the AC contains a typographical error. To that end, Plaintiff's counsel confirmed that Plaintiff's intent was to allege in paragraph 205 of the AC that Canoo's stock price "***did not*** meet the conditions." Klein Decl. ¶ 15; AC ¶ 205.

---

[1] Citations to "Ex." and "Exhibits" refer to Exhibits to the concurrently filed Declaration of David A. Klein ("Klein Decl.") in Support of Defendants' Motion to Dismiss. Citations to "AC" refer to Lead Plaintiff's Consolidated Amended Complaint, Dkt. 85. All emphasis is added to and quotations are omitted from citations unless otherwise indicated.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) is generally directed to whether the complaint, as pleaded, assuming its non-conclusory allegations to be true, states a plausible claim for relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A court may, however, consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). The Court need not "accept as true allegations that are merely conclusory, unwarranted deductions of fact or unreasonable inferences." *Cholla Ready Mix, Inc. v. Civish,* 382 F.3d 969, 973 (9th Cir. 2004). Additionally, the court is "not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint." *Oklahoma Firefighters Pension & Ret. Sys. v. IXIA*, 50 F. Supp. 3d 1328, 1348 (C.D. Cal. 2014) (quoting *Steckman v. Hart Brewing Inc.*, 143 F.3d 1293, 1295 (9th Cir. 1998)). Likewise, a "court need not . . . accept as true allegations that contradict matters properly subject to judicial notice[.]" *ScripsAmerica, Inc. v. Ironridge Glob. LLC*, 119 F. Supp. 3d 1213, 1243 n.112 (C.D. Cal. 2015) (quoting *Sprewell v. Golden State Warriors,* 266 F.3d 979, 988 (9th Cir. 2001)).

The incorporation-by-reference doctrine and judicial notice under Federal Rule of Evidence 201 have particular importance in motions to dismiss claims governed by the Private Securities Litigation Reform Act ("PSLRA"). The PSLRA stays discovery during the pendency of a motion to dismiss. 15 U.S.C. § 78u-4(b)(3)(B). In a case such as this one, U.S. Supreme Court precedent instructs that "courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). Recent Ninth Circuit precedent reaffirms that in ruling on a motion to dismiss claims subject to the PSLRA,

2

"[t]he court may consider all materials incorporated into the complaint by reference, as well as evidence properly subject to judicial notice." *Weston Fam. P'ship LLLP v. Twitter, Inc.*, 29 F.4th 611, 617 (9th Cir. 2022).

## ARGUMENT

The incorporation by reference doctrine "prevents plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims." *Khoja v. Orexigen Therapeutics*, 99 F.3d 988, 1002 (9th Cir. 2018). *Khoja* "does not prevent a defendant from using the doctrines of judicial notice or incorporation by reference [on a motion to dismiss] to create factual disputes with a plaintiff's *conclusory* allegations." *In re Eventbrite, Inc. Sec. Litig.*, 2020 WL 2042078, at *7 (N.D. Cal. Apr. 28, 2020) (emphasis in original). "Moreover, nothing in *Khoja* prevents this Court from analyzing an alleged false statement in context . . . . *Khoja* thus did not eradicate the rule that alleged false statements 'must be analyzed in context.'" *Id.* (quoting *In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1408 (9th Cir. 1996); citing *Khoja*, 899 F.3d at 1002)); *see also Bodri v. GoPro, Inc.*, 252 F. Supp. 3d 912, 924 (N.D. Cal. 2017) ("A statement is misleading only if a reasonable investor, reading the statement fairly and ***in context***, would be misled."). Defendants hereby provide notice that in addition to being subject to judicial notice under Federal Rule of Evidence 201, all of the Exhibits are incorporated by reference in the AC. Defendants, however, only request that the Court consider the Exhibits consistent with the Order. Assuming the truth of the information in the Exhibits is not necessary for the resolution of Defendants' Motion to Dismiss.

## I.   EXHIBITS 1-13 ARE INCORPORATED BY REFERENCE IN THE AC AS THEY ARE EXTENSIVELY REFERENCED AND FORM THE BASIS OF PLAINTIFF'S CLAIMS

Exhibits 1 and 4-13, excerpts of publicly available SEC filings, are incorporated by reference in the AC as they are extensively referenced and quoted in the AC and are

3

alleged to contain misleading statements that form the basis of Plaintiff's claims.[2] Exhibit 2 is the transcript of Canoo's March 29, 2021 Earnings Release Call.  Klein Decl. ¶ 3, Ex. 2.  As the Court found, the AC "also quotes from and relies upon the March 29, 2021 quarterly earnings call transcript to support plaintiff's corrective disclosure allegations."  Order at 3 n.1.  Exhibit 3 is an excerpt of Canoo's Form 10-Q publicly filed with the SEC on May 17, 2021.  Klein Decl. ¶ 4, Ex. 3.  The AC includes a truncated quotation from Exhibit 3 in the AC (AC, ¶¶ 175-176), and Plaintiff has argued that the quoted disclosure in the filing contributes to an inference of scienter.  The Exhibits are thus appropriately considered for a Rule 12(b)(6) motion to dismiss Plaintiff's claims governed by the PSLRA.[3]

Exhibits 1 and 4-13 provide the context in which alleged misleading statements must be analyzed.  And Defendants' argument in their motion to dismiss properly relies on all the Exhibits to contradict the AC's conclusory allegations that:  (i) statements in Exhibits 1 and 4-13 were false and misleading because Defendants failed to disclose information (*supra* n.2); (ii) "disclosures in [Exhibit 2] revealed to investors that at all times prior to March 29, 2021 Defendants knew but had failed to disclose material

---

[2] *Compare* Klein Decl. ¶ 2, Ex. 1 (1/13/2021 S-1) *with* AC ¶¶ 93-99, 101, 148; *compare* Klein Decl. ¶ 5, Ex. 4 (8/18/2020 Tr.) *with* AC ¶¶ 76, 78-80, 83, 144, 151-152; *compare* Klein Decl. ¶ 6, Ex. 5 (8/18/2020 Presentation) *with* AC ¶¶ 81, 77-83; *compare* Klein Decl. ¶ 7, Ex. 6 (9/18/2020 Form S-4) *with* AC, ¶¶ 64-66, 85-86, 88, 146, 155-157, 160-161; *compare* Klein Decl. ¶ 8, Ex. 7 (10/23/2020 Am. No. 1 to Form S-1) *with* AC ¶¶ 67, 85-88, 146-147; *compare* Klein Decl. ¶ 9, Ex. 8 (11/25/2020 Am. No. 2 to Form S-4) *with* AC ¶¶ 68, 85-88, 146-147, 191-192; *compare* Klein Decl. ¶ 10, Ex. 9 (12/4/2020 Prospectus) *with* AC ¶¶ 69, 85-88; *compare* Klein Decl. ¶ 11, Ex. 10 (1/25/2021 Prospectus) *with* AC ¶¶ 93-98, 99, 101; *compare* Klein Decl. ¶ 12, Ex. 11 (8/25/2020 Rule 425 Release) *with* AC § V, ¶ 84; *compare* Klein Decl. ¶ 13, Ex. 12 (12/21/2021 Form 8-K Release) *with* AC ¶¶ 90-91; *compare* Klein Decl. ¶ 14, Ex. 13 (8/18/2020 Form 8-K Release) *with* AC ¶¶ 74-75.

[3] Respectfully, the volume and number of Exhibits here is a product of Plaintiff's pleading strategy.  The AC alleges 14 statements were misleading by repeating conclusory allegations that the same four omissions made statements regarding Canoo's engineering services business misleading and the same three omissions made statements regarding Canoo's subscription model misleading.  *See* AC § V. And after quoting an alleged misleading statement in one SEC filing, Plaintiff includes conclusory allegations that the same allegedly misleading statements were made in multiple other SEC filings.  *See* AC ¶¶ 85-87, 93, 95, 97-98, 100.

4

adverse facts about the Company business, operations, and prospects" (AC ¶ 120); and (iii) Defendants engaged in a "scheme . . . intended to . . . artificially inflate and maintain the market price of [Canoo's] securities." (*id.* ¶ 237).

Defendants also rely on Exhibits 1 and 4-12 for the identification of forward-looking statements and cautionary language that make challenged statements in these Exhibits inactionable under the PSLRA's safe harbor for forward-looking statements. *See* Exs. 1 at iii-iv, 4-5, 7-40; 4 at 17; 5 at 2; 6-7 at 35-80; 8-9 at 37-83; 11 at 3; 10 at iii-iv, 5, 7-40; 12 at pgs. 6-7; *Twitter*, 29 F.4th at 620; 15 U.S.C. § 78u-5. Courts routinely consider SEC filings submitted with a Rule 12(b)(6) motion to dismiss to determine whether the PSLRA's safe-harbor renders alleged misleading statements inactionable, without converting the motion to a motion for summary judgment. *See, e.g.*, *In re Twitter Inc. Sec. Litig.*, 506 F. Supp. 3d 867, 874 n.1, 881-82 (N.D. Cal. 2020) (judicially noticing SEC filings as "incorporated into the complaint by reference" and finding statements in SEC filing were inactionable under the PSLRA's safe harbor), *aff'd Twitter*, 29 F.4th at 623 (affirming dismissal under Rule 12(b)(6) because, among other reasons, challenged statements fell within the PSLRA's safe harbor provision).[4]

## II.   THE COURT SHOULD TAKE JUDICIAL NOTICE OF THE FACT THAT CANOO'S STOCK PRICE NEVER ROSE TO MEET THE CONDITIONS FOR EARNOUT SHARES

The Federal Rules of Evidence permit the Court to take judicial notice of facts that are "not subject to reasonable dispute" because they are either "(1) generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R.

---

[4] *See also City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*, 880 F. Supp. 2d 1045, 1058-59, 1061-62 (N.D. Cal. 2012) (granting request for judicial notice, applying both the judicial notice and incorporation by reference doctrines, and finding statements made during investor conference calls and in SEC filings were inactionable under the PSLRA's safe harbor); *see also In re Facebook, Inc. Sec. Litig.*, 405 F. Supp. 3d 809, 835 (N.D. Cal. 2019) (finding inactionable forward-looking statement based on cautionary language in conference call transcript submitted in support of motion to dismiss).

5

Evid. 201(b).   If a party requests judicial notice and "supplie[s] the necessary information," judicial notice "must" be taken.  Fed. R. Evid. 201(c)(2).  Courts routinely take judicial notice of a company's publicly available stock prices in ruling on a motion to dismiss alleged securities fraud claims.  *See, e.g.*, *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1046 n.7 (9th Cir. 2008) (finding judicial notice of reported stock price history "proper"); *Oklahoma Firefighters Pension & Ret. Sys.*, 50 F. Supp. 3d at 1349 ("Because publically [sic] traded companies historical stock prices can be readily ascertained and those prices are not subject to reasonable dispute, courts routinely take judicial notice of them."); *Garcia v. J2 Global, Inc.*, 2021 WL 1558331, at *9 (C.D. Cal. Mar. 3, 2021) (same).

Defendants request that the Court take judicial notice of the fact that Canoo's stock price has not reached or exceeded $18 per share for any 20 trading days within any consecutive 30 trading-day period since August 17, 2020, and accordingly never rose to meet the conditions for the Individual Defendants to receive stock incentive awards ("Earnout Shares") described in the AC.  AC ¶¶ 201-205.  This fact can be accurately and readily determined from a link to Google's publicly available stock price data copied here[5] or from any of the numerous other websites that provide historical stock price data, such Yahoo! Finance.  The AC's allegation that "the price did remain above the price points for the required number of days for Earnout shares to vest" (AC ¶ 205) is an obvious typographical error and should say the "price did not remain above the price points . . . ."   Klein Decl. ¶ 15.  Plaintiff's counsel confirmed this is a typographical error and Plaintiff does not object to judicial notice of this fact.  *Id.*

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court take judicial notice of the Exhibits consistent with the Court's Order and also take judicial

---

[5] https://www.google.com/finance/quote/GOEV:NASDAQ?sa=X&ved=2ahUKEwj45oWTg5_5AhWoIUQIHbKsCeAQ3ecFegQIGRAY&window=5Y.

notice of the fact that Canoo's stock price has not reached or exceeded $18 per share for any 20 trading days within any consecutive 30 trading-day period since August 17, 2020, and therefore never rose to meet the conditions for the Individual Defendants to receive stock incentive awards ("Earnout Shares") described in the AC.

DATED:  August 2, 2022

Respectfully submitted,

Kirkland & Ellis LLP

*/s/ David A. Klein*

David A. Klein

*Attorneys for Defendants*

**APPENDIX OF STATEMENTS IN EXHIBITS SUBJECT TO JUDICIAL NOTICE FOR THE FACT THAT THE STATEMENTS WERE MADE**

| Exhibit Nos. | Statements |
|---|---|
| Ex. 1 (January 13, 2021 Form S-1)<br><br>Ex. 10 (January 25, 2021 2021 Form 424(b)(3) Prospectus) | • Canoo "applies Accounting Standards Codification ('ASC') 606, Revenue from Contracts with Customers ('ASC 606') which governs how the Company recognizes revenue." Under these accounting standards, Canoo recognized revenue only when it "satisfies the performance obligations." Exs. 1 & 10 at F-33.<br><br>• "During 2020, [Canoo's] revenue had been derived from the provision of engineering, development and design consulting services on a project basis." Exs. 1 & 10 at 60.<br><br>• "During 2020, the Company's revenue was derived from the provision of consulting services on a project basis. The Company's fixed price contracts related to these services contain a single performance obligation, which was satisfied in July 2020 when the Company provided the final report to the customer. Revenue for these services was recognized at a point in time, when the project was delivered." Exs. 1 & 10 at F-33.<br><br>• Defendant Ulrich Kranz had over 30 years of automobile industry experience, including leading BMW's EV division, when he founded Canoo. Ex. 1 at 105.<br><br>• Defendant Paul Balciunas held financial positions related to the automobile industry, including as Vice President, Global Automotive Investment Banking, at Deutsche Bank. *Id.* at 106.<br><br>• Defendant Tony Aquila founded the publicly traded, global technology company Solera Holdings Inc., and led it as Chairman and CEO. *Id.* at 105.<br><br>• Canoo's directors as of December 31, 2020 were Tony Aquila, Foster Chiang, Greg Ethridge, Josette Sheeran, Thomas Dattilo, Rainer Schmueckle, and Debra von Storch. *Id.* at 105. |

| Exhibit Nos. | Statements |
|---|---|
| | • Exhibit 1 contains the statements in the sections in Exhibits 1 titled "Cautionary Note Regarding Forward-Looking Statements," "Risks Associated with Our Business," and "Risk Factors." Ex. 1 at iii-iv, 4-5, 7-40. |
| | • Exhibit 10 contains the statements in the sections in Exhibit 10 titled "Cautionary Note Regarding Forward-Looking Statements," "Risks Associated with Our Business," and "Risk Factors." Ex. 10 at iii-iv, 5, 7-40. |
| | • The "Cautionary Note Regarding Forward-Looking Statements" sections in Exhibits 1 and 10 state "any statements that refer to projections, forecasts or other characterizations of future events or circumstances, including any underlying assumptions, are forward-looking statements." The sections also state that words such as "expect", "project", and "potential" identify forward-looking statements, and that forward-looking statements are subject to numerous "risks and uncertainties" and that "factors that could cause actual results to differ include . . . the ability of Canoo to execute its business model . . . ." Exs. 1 & 10 at iii-iv. |
| | • The "Risk Factors" sections in Exhibits 1 and 10 state that Canoo "currently expects to add . . . contract engineering revenue in 2021 and 2022, which may occur later or not at all." Exs. 1 at 8, 14; 10 at 14. |
| | • The "Risks Associated with Our Business" section in Exhibit 1 states that Canoo's "business plans require a significant amount of capital." Ex. 1 at 4. |
| | • The "Risk Factors" sections in Exhibits 1 and 10 include the statement that Canoo's "business plans require a significant amount of capital" under the heading "Summary of Risks," Exs. 1 & 10 at 7, as well as under the heading "Risks Related to Our Business and Industry." Exs. 1 & 10 at 10. |
| | • The "Risks Associated with Our Business" and "Risk Factors" sections in Exhibits 1 and 10 state the subscription |

9

| Exhibit Nos. | Statements |
|---|---|
| | model "may never achieve the level of market acceptance necessary to achieve profitability."  Ex. 1 & 10 at 5, 8, 17. |
| Ex. 2 (March 29, 2021 FQ4 Earnings Call Tr.) | • Exhibit 2 contains the statements said during Canoo's March 29, 2021 earnings call including the following made by Tony Aquila:<br><br>• "First, we built out a world-class Board of Directors and are now building out our C-suite . . . Today, we announced that Renato Giger, who I have worked with and known for many years, joined us as our interim CFO. He, along with Ramesh Murthy, our new Chief Accounting Officer; and Hector Ruiz, our new VP of Global Strategy, Tax Counsel and Treasury, will drive the necessary finance process, infrastructure and systems to transition us from a private company to a public company, or as we say, move from little P to big P. To guide our brand and develop our commercialization and go-to-market strategy, we have brought in Mark Aikman as our Chief Marketing Officer, Automotive. Over the next 4 to 6 quarters, we will be focused on completing the build-out of our executive team in a disciplined manner."  Ex. 2 at 4-5.<br><br>• "Due to the expansion of our derivatives and the best return on capital, it was decided by our Board to deemphasize the originally stated contract engineering services line."  *Id.* at 5.<br><br>• In response to a question about deemphasizing engineering services, Aquila stated: "[I]f you can find a partnership or something like that, it can make sense. And we'll continue to look at things."  *Id.* at 9.<br><br>• "So, look, as we've kind of been navigating through going public, we're obviously bringing people with extreme public company experience. . . . But we've been bringing in people that, one, we know and they have worked together, as I mentioned in my comments. . . .If you look back at the history of the team that is now more and more coming into play, they've been --they never missed consensus."  *Id.* at 10. |

10

| Exhibit Nos. | Statements |
|---|---|
|  | • "I think the more maturity of this team would not be that presumptuous. We'd only announced what is contracted. But yes, I think they had the opportunities, but they weren't at our standard of representation to the public market." *Id.* at 17. |
| Ex. 3 (May 17, 2021 Form 10-Q) | • Exhibit 3 states: "The SEC has also informed the Company that the investigation does not mean that it has concluded that anyone has violated the law, and does not mean that it has a negative opinion of any person, entity or security. We intend to provide the requested information and cooperate fully with the SEC investigation." Ex. 3 at 17. |
| Ex. 4 (August 18, 2020 Conference Call Tr. filed with SEC)<br><br>Ex. 5 (August 18, 2020 Investor Presentation attached to Form 8-K) | • Exhibits 4 and 5 contain the statements in the sections titled "Forward Looking Statements." These statements include: "Forward-looking statements may be identified by the use of words such as 'estimate,' 'plan,' 'project,' 'forecast,' 'intend,' 'will,' 'expect,' 'anticipate,' 'believe,' 'seek,' 'target' or other similar expressions that predict or indicate future events or trends that are not statements of historical matters." These statements also include: "These forward-looking statements are subject to a number of risks and uncertainties, including risks relating to the uncertainty of the projected financial information with respect to Canoo" and "risks related to "Canoo's go-to-market strategy and subscription business . . ." Exs. 4 at 17; 5 at 2.<br><br>• During his presentation of Slide 37 of Exhibit 5 in the August 18, 2020 conference call, Balciunas stated: "We've been targeting specifically technology companies, passenger OEMs, delivery OEMs, and then autonomous driving companies as potential partners. Currently in our pipeline, we have $120 million of projected revenue in 2021, which consists of a couple of projects that are in the advanced stages of negotiation." Exs. 4 at 8.<br><br>• During his presentation of Slide 37 in Exhibit 5 at the August 18, 2020 conference call, Balciunas also stated: "On the bottom half of the page are a couple of case studies. Most importantly, is with Hyundai . . . . This is a multiple-phase partnership and we currently are in the first phase in doing |

11

| Exhibit Nos. | Statements |
|---|---|
| | some contract engineering work that leverages our existing technology, but we're tailoring it to Hyundai's specifications. With the potential opportunity to move forward into future phases . . . ." *Id.*<br><br>• Exhibit 5 states that descriptions of Canoo's business partnership with Hyundai were "subject to negotiation and execution of definitive agreements . . . which have not been completed . . . and remain subject to change." Ex. 5 at 2. |
| Ex. 6 (September 18, 2020 Form S-4)<br><br>Ex. 7 (October 23 2020 Am. No. 1 to Form S-4)<br><br>Ex. 8 (November 25, 2020 Am. No. 2 to Form S-4)<br><br>Ex. 9 (December 4, 2020 Prospectus) | • Exhibits 6-9 contain the statements in the sections titled "Cautionary Note Regarding Forward-Looking Statements" and "Risk Factors." Exs. 6-7 at 35-80; 8-9 at 37-83.<br><br>• The "Cautionary Note Regarding Forward-Looking Statements" sections in Exhibits 6-9 state: "any statements that refer to projections, forecasts or other characterizations of future events or circumstances, including any underlying assumptions, are forward-looking statements." The sections also state that words such as "expect", "project", and "potential" identify forward-looking statements, and that forward-looking statements are subject to numerous "risks and uncertainties" and that "factors that could cause actual results to differ include . . . the ability of Canoo to execute its business model . . . ." Exs. 6-7 at 35-36; 8-9 at 37-38.<br><br>• The "Risk Factors" sections in Exhibits 6-9 state that Canoo "currently expects to add . . . contract engineering revenue in 2021 and 2022, which may occur later or not at all." Exs. 6 at 42; 7 at 43; 8-9 at 45.<br><br>• Exhibit 6 and 7 state that one of the "positive factors" supporting the SPAC merger is "Favorable Opportunities for Revenue and Earnings Growth Due to Secular Growth Trends in the EV Industry and Canoo's Unique Multi-Pronged Go-to-Market Strategy," which also includes a bullet point that states "B2B Engineering and Licensing Opportunities." Exs. 6 at 104; 7 at 105. |

12

| Exhibit Nos. | Statements |
|---|---|
| | • The last paragraph in the Section "Engineering and Technology Services" in Exhibit 6 states: "We are in discussions with some of the most prominent companies pursuing this technology.  These potential partnerships provide revenue opportunities as well as the ability to remain at the forefront of innovation in this space, while strengthening ties with future potential industry leaders." Exs. 6 at 170; 7 at 172.<br><br>• Tony Aquila's Letter Agreement with Canoo dated November 25, 2020 referenced and quoted in paragraphs 191 and 192 of the AC states that Tony Aquila's "Private Company Equity Awards" would not vest until at the earliest, "the first anniversary of October 19, 2020."  Ex. 8 at A-1. The Letter Agreement further states that Aquila's "Public Company Equity Awards" would not vest until at the earliest, "the first anniversary of the commencement of the Term (the "Start Date.).  *Id.*  The Letter Agreement states that the "Term" will commence at the earliest on the date that the transactions described in the Merger Agreement, dated as of August 17, 2020, . . . have been consummated."  Ex. 8 at Exhibit 10.15, p. 1.<br><br>• In the section of Exhibit 8 titled "Lock-Up Agreements" Exhibit 8 states that in connection with the Closing of the Merger, "all Canoo officers will agree, subject to certain customary exceptions, not to (a) sell, offer, to sell, contract or agree to sell . . . any shares of New Canoo Common Stock . . . until 180 days after the Closing."  Ex. 8 at 2-4, 22-23, 138, Annex J1-4, 12, 16-17.<br><br>• Exhibits 8-9 state: "During 2020, the Company's revenue was derived from the provision of consulting services on a project basis.  The Company's fixed price contracts related to these services contained a single performance obligation, which was satisfied in July 2020 when the Company provided the final report to the customer."  Exs. 8-9 at F-33. |

| Exhibit Nos. | Statements |
|---|---|
| Ex. 11 (August 25, 2020 Press Release filed with the SEC under Rule 425)<br><br>Ex. 12 (December 21, 2020 Press Release Attached to Form 8-K) | • Exhibit 11 contains the statement by Tony Aquila quoted in paragraph 84 of the AC. *Compare* AC ¶ 84 with Ex. 11.<br><br>• Exhibit 12 contains the statement by Tony Aquila quoted in paragraph 90 of the AC. *Compare* AC ¶ 90 *with* Ex. 12.<br><br>• Exhibits 11 and 12 contain the statements in the sections titled "Forward -Looking Statements. Exs. 11 at 3; 12 at pgs. 6-7. |
| Ex. 13 (August 18, 2020 Press Release Attached to Form 8-K) | • Exhibit 13 contains the statement by Daniel Hennessy quoted in paragraph 74 of the AC. *Compare* AC ¶ 74 *with* Ex. 13. |

14