Mark C. Holscher (SBN 139582)
mark.holscher@kirkland.com
KIRKLAND & ELLIS LLP
555 South Flower Street
Los Angeles, CA  90071
Telephone:  (213) 680-8400
Facsimile:  (213) 680-8500

David A. Klein (SBN 273925)
david.klein@kirkland.com
KIRKLAND & ELLIS LLP
2049 Century Park East
Los Angeles, CA  90067
Telephone:  (310) 552-4200
Facsimile:  (310) 552-5900

*Attorneys for Defendants Canoo Inc., Tony Aquila, Ulrich Kranz, and Paul Balciunas*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAMUEL BLAKE, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>CANOO INC., TONY AQUILA, ULRICH KRANZ, and PAUL BALCIUNAS,<br><br>Defendants. | Case No. 2:21-CV-02873-FMO-JPR<br><br>**(Consolidated)**<br><br>Case No. 2:21-CV-02879-FMO-JPR<br><br>Case No. 2:21-CV-03080-FMO-JPR<br><br>**DEFENDANTS CANOO INC., TONY AQUILA, ULRICH KRANZ, AND PAUL BALCIUNAS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS LEAD PLAINTIFF'S CONSOLIDATED AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>Hearing Date: September 22, 2022 (Pursuant to 8/25/22 Order, Dkt. 109)<br>Time: 10:00 a.m.<br>Judge: Hon. Fernando M. Olguin<br>Courtroom.: 6D |

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................... 1

ARGUMENT .............................................................................................................. 2

I.     THE OPPOSITION CONFIRMS THAT THE AC DOES NOT ALLEGE ANY ACTIONABLE FALSE OR MISLEADING STATEMENTS ........... 2

     A.     Alleged Omissions Do Not Render Challenged Statements Misleading .................................................................................... 2

         1.     Canoo disclosed its engineering services revenue .................. 2

         2.     Engineering Services Statements referred to potential projects ...................................................................................... 4

         3.     Subscription Statements did not refer to capital requirements 8

     B.     Decisions Made After the Challenged Statements Are Not Actionable ................................................................................. 9

         1.     The AC does not allege facts showing Canoo had de-emphasized engineering services at the time of the challenged statements ............................................................... 9

         2.     The AC does not allege admissions that Engineering Services Statements were misleading ..................................... 11

         3.     The Subscription Statements are not actionable ..................... 13

     C.     The Opposition Confirms Alleged CWs Are Unreliable ................. 15

     D.     Challenged Statements Are Non-Actionable Puffery and Opinions ........................................................................................ 16

     E.     Forward-Looking Statements Are Not Actionable .......................... 17

II.     THE AC FAILS TO ALLEGE A STRONG INFERENCE OF SCIENTER .................................................................................................. 18

     A.     Plaintiff Fails to Allege Defendants Acted with Scienter ................ 18

     B.     The Closing of the Merger Is Insufficient to Plead Scienter ........... 21

     C.     An Ongoing SEC Investigation, Two Resignations, and Temporal Proximity Do Not Establish Scienter ............................ 22

III.     THE AC FAILS TO ALLEGE INDIVIDUALS "MADE" STATEMENTS ........................................................................................... 23

IV.     THE AC FAILS TO STATE RULE 10B-5(A), 10B-5(C) OR § 20(A) CLAIMS ........................................................................................................ 25

CONCLUSION .......................................................................................................... 25

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Asher v. Baxter Int'l Inc.*,
377 F.3d 727 (7th Cir. 2004) ...........................................................................18

*Bodri v. GoPro, Inc.*,
252 F. Supp. 3d 912 (N.D. Cal. 2017)................................................................5

*Bricklayers & Masons Loc. Union No. 5 Ohio Pension Fund v.
Transocean Ltd.*,
866 F. Supp. 2d 223 (S.D.N.Y. 2012) ...............................................................16

*Casella v. Webb*,
883 F.2d 805 (9th Cir. 1989) ............................................................................16

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech.,
Inc.*,
856 F.3d 605 (9th Cir. 2017) ............................................................................16

*City of Pontiac Gen. Emps.' Ret. Sys. v. Lockheed Martin Corp.*,
875 F. Supp. 2d 359 (S.D.N.Y. 2012) ...............................................................24

*City of Roseville Emps.' Ret. Sys. v. EnergySolutions, Inc.*,
814 F. Supp. 2d 395 (S.D.N.Y. 2011) ...............................................................24

*City of Roseville Emps.' Ret. Sys. v. Sterling Fin. Corp.*,
963 F. Supp. 2d 1092 (E.D. Wash. 2013), *aff'd*, 691 F. App'x 393 (9th
Cir. 2017)..........................................................................................................23

*Curry v. Hansen Med., Inc.*,
2011 WL 3741238 (N.D. Cal. Aug. 25, 2011) ...................................................25

*Cutler v. Rancher Energy Corp.*,
2014 WL 1153054 (C.D. Cal. Mar. 11, 2014) ...................................................16

*Employees' Retirement System of Government of the Virgin Islands v.
Blanford*,
794 F.3d 297 (2d Cir. 2015) .............................................................................15

*Fecht v. Price Co.*,
  70 F.3d 1078 (9th Cir. 1995) ......................................................................7

*Feyko v. Yuhe Int'l, Inc.*,
  2013 WL 816409 (C.D. Cal. Mar. 5, 2013) ...........................................7

*Flynn v. Sientra*,
  2016 WL 3360676 (C.D. Cal. June 9, 2016)...........................................21

*Friedman v. Endo Int'l PLC*,
  2018 WL 446189 (S.D.N.Y. Jan. 16, 2018)................................14, 15

*Garcia v. J2 Glob., Inc.*,
  2021 WL 1558331 (C.D. Cal. Mar. 5, 2021) ........................................19

*Glazer Cap. Mgmt., LP v. Magistri*,
  549 F.3d 736 (9th Cir. 2008) ..................................................................20

*Hefler v. Wells Fargo & Co.*,
  2018 WL 1070116 (N.D. Cal. Feb. 27, 2018). Dkt. 104...................24

*Howard v. Everex Sys., Inc.*,
  228 F.3d 1057 (9th Cir. 2000) .................................................................18

*In re Accuray, Inc. S'holder Derivative Litig.*,
  757 F. Supp. 2d 919 (N.D. Cal. 2010 ..................................................23

*In re Banc of Cal. Sec. Litig.*,
  2017 WL 3972456 (C.D. Cal. Sep. 6, 2017) .........................................23

*In re Cadence Design Sys., Inc. Sec. Litig.*,
  692 F. Supp. 2d 1181 (N.D. Cal. 2010)................................................20

*In re Century 21-RE/MAX Real Est. Advert. Claims Litig.*,
  882 F. Supp. 915 (C.D. Cal. 1994)..........................................................16

*In re Daou Sys. Inc. Sec. Litig.*,
  411 F.3d 1006 (9th Cir. 2005) .................................................................15

*In re Fusion-io, Inc. Sec. Litig.*,
  2015 WL 661869 (N.D. Cal. Feb. 12, 2015)..........................................12

*In re Hansen Nat. Corp. Sec. Litig.*,
  527 F. Supp. 2d 1142 (C.D. Cal. 2007)................................................22

iii

*In re Immune Response Sec. Litig.*,
   375 F. Supp. 2d 983 (S.D. Cal. 2005) ..................................................................18

*In re NVIDIA Corp. Sec. Litig.*,
   768 F.3d 1046 (9th Cir. 2014) .............................................................................20

*In re Quality Sys., Inc. Sec. Litig.*,
   865 F.3d 1130 (9th Cir. 2017) .............................................................................17

*In re REMEC Inc. Sec. Litig.*,
   702 F. Supp. 2d 1202 (S.D. Cal. 2010) ...............................................................18

*In re Rigel Pharms., Inc. Sec. Litig.*,
   697 F.3d 869 (9th Cir. 2012) .................................................................................3

*In re Silicon Graphics Inc. Sec. Litig.*,
   183 F.3d 970 (9th Cir. 1999) ..........................................................................21, 25

*In re Sona Nanotech, Inc. Sec. Litig.*,
   562 F. Supp. 3d 715 (C.D. Cal. 2021)...........................................................2, 3, 4

*In re UTStarcom, Inc. Sec. Litig.*,
   617 F. Supp. 2d 964 (N.D. Cal. 2009)..................................................................23

*In re Vaxart, Inc. Sec. Litig.*,
   2021 WL 6061518 (N.D. Cal. Dec. 22, 2021) ......................................................7

*In re VeriFone Holdings, Inc. Sec. Litig.*,
   704 F.3d 694 (9th Cir. 2012) ...............................................................................18

*In re VeriFone Sec. Litig.*,
   11 F.3d 865 (9th Cir. 1993) .................................................................................25

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs. & Prods. Liab.
   Litig.*,
   2017 WL 66281 (N.D. Cal. Jan. 4, 2017)......................................................19, 23

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab.
   Litig.*,
   2017 WL 3058563 (N.D. Cal. July 19, 2017) .....................................................24

*In re Wells Fargo & Co. S'holder Derivative Litig.*,
   282 F. Supp. 3d 1074 (N.D. Cal. 2017).............................................................24

iv

*In re Wet Seal, Inc. Sec. Litig.*,
   518 F. Supp. 2d 1148 (C.D. Cal. 2007)...........................................................................25

*In re Zoom Securities Litig.*,
   2022 WL 489074 (N.D. Cal. Feb. 16, 2022)...................................................................19

*Kendall v. Odonate Therapeutics, Inc.*,
   2021 WL 3406271 (S.D. Cal. Aug. 4, 2021)......................................................................2

*Kovtun v. VIVUS, Inc.*,
   2012 WL 4477647 (N.D. Cal. Sept. 27, 2012)................................................................14

*Lipton v. Pathogenesis Corp.*,
   284 F.3d 1027 (9th Cir. 2002)........................................................................................21

*Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*,
   416 F.3d 940 (9th Cir. 2005) .........................................................................................18

*Lomingkit v. Apollo Educ. Grop. Inc.*,
   2017 WL 633148 (D. Ariz. Feb. 16, 2017) .......................................................................2

*Longo v. OSI Sys., Inc.*,
   2021 WL 1232678 (C.D. Cal. Mar. 31, 2021) ................................................................20

*M & M Hart Living Tr. v. Glob. Eagle Ent., Inc.*,
   2017 WL 5635424 (C.D. Cal. Aug. 20, 2017) ................................................................20

*Mulderrig v. Amyris, Inc.*,
   492 F. Supp. 3d 999 (N.D. Cal. 2020)............................................................................18

*Mulligan v. Impax Lab'ys, Inc.*,
   36 F. Supp. 3d 942 (N.D. Cal. 2014).........................................................................15, 16

*Nguyen v. Endologix, Inc.*,
   962 F.3d 405 (9th Cir. 2020) .......................................................................................3, 21

*No. 84 Emp.-Teamster Joint Council Pension Tr. Fund v. Am. West
   Holding Corp.*,
   320 F.3d 920 (9th Cir. 2003) .........................................................................................21

*Or. Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*,
   774 F.3d 598 (9th Cir. 2014) .........................................................................................20

*Patterson v. Hennessy*,
   2022 WL 2208893 (D. Del. June 21, 2022) ..............................................1, 10, 11

*Reed v. Amira Nature Foods Ltd.*,
   2016 WL 6571281 (C.D. Cal. July 18, 2016) ......................................................24

*S. Ferry LP #2 v. Killinger*,
   687 F. Supp. 2d 1248 (W.D. Wash. 2009) ..........................................................20

*Slayton v. Am. Express Co.*,
   604 F.3d 758 (2d Cir. 2010) ................................................................................17

*Todd v. STAAR Surgical Co.*,
   2016 WL 6699284 (C.D. Cal. Apr. 12, 2016)....................................................24

*Turocy v. El Pollo Loco Holdings, Inc.*,
   2016 WL 4056209 (C.D. Cal. July 25, 2016) .....................................................16

*Weston Fam. P'ship LLLP v. Twitter, Inc.*,
   29 F.4th 611 (9th Cir. 2022)..................................................................7, 16, 17

*Yourish v. Cal. Amplifier*,
   191 F.3d 983 (9th Cir. 1999) ..............................................................12, 13, 23

*Zucco Partners, LLC v. Digimarc Corp.*,
   552 F. 3d 981 (9th Cir. 2009) ..............................................................................23

*Zwick Partners, LP v. Quorum Health Corp.*,
   2018 WL 2933406 (M.D. Tenn. Apr. 19, 2018) ................................................24

**Statutes**

17 C.F.R. § 10b-5.................................................................................................7, 25

15 U.S.C. § 78u-5 ...................................................................................................17

**Rules**

Fed. R. Civ. P. 9(b) .................................................................................................23

Fed. R. Civ. P. 12(b)(6) ....................................................................................10, 11

**<u>INTRODUCTION</u>**

Plaintiff's Opposition confirms the AC is based on a fraud-by-hindsight theory prohibited by bedrock law and unsupported by any meaningful scienter allegations.[1] Defendants' Motion argued, among other things, that:  (1) alleged omissions do not render challenged statements misleading, including because Canoo disclosed its engineering services revenue and Engineering Services Statements repeatedly stated that it was just in discussions for potential engineering services projects; (2) Plaintiff does not allege any contemporaneous facts that contradict the challenged statements; (3) alleged statements by purported CWs do not contradict any of the challenged statements; (4) many challenged statements are non-actionable puffery, statements of opinion, and protected forward-looking statements; and (5) the absence of any allegations that Individual Defendants traded (or could have traded) stock at prices allegedly inflated by omissions negates any inference of scienter.  The Opposition offers little substantive response to these grounds for dismissal.

Plaintiff ignores most of Defendants' arguments and authority, mischaracterizes the statements in Canoo's SEC filings and March 29, 2021 earnings call alleged in the AC, and abandons the scienter theory alleged in his AC.  Further, Plaintiff claims that Canoo had de-emphasized its engineering services business and subscription model by the time of the challenged statements.  But the Opposition fails to distinguish his claims from those that a court already rejected in a related stockholder derivative action based on the same allegations Plaintiff makes here.  *See Patterson v. Hennessy*, 2022 WL 2208893, at **3-4 (D. Del. June 21, 2022) (finding March 2021 earnings call is not factual content from which Court could draw inference that challenged statements about engineering services were misleading).

The motion to dismiss should be granted.

---

[1] Undefined capitalized terms are defined in the Memorandum of Points and Authorities in Support of Defendants' Motion to Dismiss ("Mot."), Dkt. 101-1. Emphasis is added to and quotations are omitted from citations unless otherwise indicated.  "Ex." refers to Exhibits to the Declaration of David A. Klein, Dkt. 102.

# ARGUMENT

## I.    THE OPPOSITION CONFIRMS THAT THE AC DOES NOT ALLEGE ANY ACTIONABLE FALSE OR MISLEADING STATEMENTS

### A.    Alleged Omissions Do Not Render Challenged Statements Misleading

Plaintiff concedes his claims are premised on an omission theory.  He offers no defense, however, for the AC alleging 14 statements were misleading (Dkt. 85, AC, § V) by repeating conclusory allegations that the same omissions made Engineering Services Statements misleading and the same omissions made Subscription Statements misleading.  *See* Dkt. 101-1, Mot., at 4, 7-8, 10, 12.  Plaintiff's pleading strategy fails as a matter of law and his claims should be dismissed on this basis alone.[2]  The alleged omissions do not render the challenged statements misleading in any event.

### 1.    Canoo disclosed its engineering services revenue

Plaintiff concedes that the AC falsely alleged that Canoo did not disclose until March 31, 2021 that its 2020 engineering services revenue resulted from a single performance obligation completed in July 2020.  *Compare*, Dkt. 104, Opp'n, at 9 *with* Dkt. 85, AC, ¶ 122.  The AC alleges six Engineering Services Statements were false or misleading because Defendants failed to disclose this fact.  Dkt. 85, AC, ¶¶ 76-77, 79, 85-86, 88, 93-96.  Yet, Canoo disclosed it in a November 27, 2020 amended Form S-4

---

[2]  Plaintiff's argument, in a footnote, that the "reason the omissions rendered the statements false is expressly stated" though "often repeated" misses the point.  Dkt. 104, Opp'n at 8 n.2.  While "expressly stated," repeated conclusory allegations do not ***specifically*** state why alleged omissions rendered statements false.  *In re Sona Nanotech, Inc. Sec. Litig.*, 562 F. Supp. 3d 715, 724 (C.D. Cal. 2021) ("duplicative misrepresentation explanations" did not "*specifically*" allege why each statement constitutes a misrepresentation") (emphasis in original); *Lomingkit v. Apollo Educ. Grop. Inc.*, 2017 WL 633148, at *11 n.6 (D. Ariz. Feb. 16, 2017) ("Plaintiffs must *specifically* state what makes each statement false and misleading rather than what information is missing from each statement.") (emphasis in original).  Plaintiff cites one case, *Kendall v. Odonate Therapeutics, Inc.*, 2021 WL 3406271, at *5 (S.D. Cal. Aug. 4, 2021), to support his contention that "[c]ourts in this Circuit regularly deny motions to dismiss complaints with similar structure."  Dkt. 104, Opp'n at 8 n.2.  But *Kendall* found that the plaintiff "alleged the reasons why a reasonable investor would consider . . . statements and omissions to be misleading with particularity" by alleging why specific facts of patients' withdrawals from a drug study due to health problems made several positive statements about the study's progress misleading.  *Id.* **5-6.  Here, by contrast, Plaintiff's allegations are entirely conclusory.

proxy statement and a December 4, 2020 prospectus soliciting HCAC IV stockholders' votes for HCAC IV's merger with Canoo, which they approved on December 21, 2021, and in two more SEC filings in January 2021.  Dkts. 101-8-9, Exs. 8-9, 101-1 & 101-10, at F-33.[3]  Plaintiff does not dispute that the AC alleges three of these six purportedly misleading Engineering Services Statements were made in the November and December 2020 and January 2021 SEC filings that disclosed the exact information Plaintiff alleges the SEC filings failed to disclose.  *Compare* Dkts. 101-1 & 101-8-10, Exs. 1, 8-10, at F-33 *with* Dkt. 85, AC ¶¶ 86-88, 93-96, 100.  Instead, Plaintiff argues that Defendants should have disclosed the information earlier.  Dkt. 104, Opp'n, at 9.

This argument fails.  The fact that revenue derived from a performance obligation completed in July 2020 is consistent with the three earlier Engineering Services Statements made on August 18, 2020, September 18, 2020 and October 23, 2020.[4]  The "subsequent release of more extensive information" that "was not inconsistent with . . . initial statements" cannot make the earlier statements misleading.  *In re Rigel Pharms., Inc. Sec. Litig.*, 697 F.3d 869, 881 (9th Cir. 2012).[5]  Plaintiff cannot allege that Defendants "deliberately sat on . . . information before delayed public disclosure" or

---

3  These filings also stated that under GAAP, Canoo recognized revenue when it "satisfie[d] the performance obligations" of a project.  Dkt. 101-1, Mot., at 7 n.3.

4  During an August 18, 2020 investor conference, Kranz stated that Canoo's engineering services revenue stream "already exist[ed]" and Canoo was "already making money" from the revenue stream.  Dkt. 85, AC, ¶ 76.  HCAC IV's September 18, 2020 S-4 and October 23, 2021 amended S-4 stated:  Canoo's engineering services business offered a unique "opportunity" for "projected" 2021 revenue; Canoo's engineering services agreement with Hyundai exemplified OEM interest in Canoo's technology; and Canoo was "in discussions with a number of other partners and expect[ed] to be in a position to announce many more partnerships in due course."  *Id.* ¶¶ 85, 87.  None of these statements is inconsistent with Canoo's 2020 revenue resulting from an engineering services obligation completed in July 2020.

5  In *In re Sona Nanotech, Inc. Securities Litigation*, the court found that Ninth Circuit precedent indicates that omission-based securities fraud claims predicated on a defendant making a public disclosure after initial statements could be foreclosed entirely, and—even if potentially cognizable—would at a minimum require that the defendant "hid the information for a long time and only released the negative information after investors would have made investment decisions."  *Id.* (citing *Nguyen v. Endologix, Inc.*, 962 F.3d 405, 416 (9th Cir. 2020); *In re Rigel Pharms*, 697 F.3d at 881)).  Plaintiff cannot make that allegation here.

3

"hid the information for a long time." *In re Sona Nanotech*, 562 F. Supp. 3d at 726.

On the contrary, Canoo disclosed the information when it included its financial statements through Q3 2020 in the November 2020 amended S-4 only a few months after the first allegedly misleading statement on August 18, 2020.  Dkt. 102-8, Ex. 8, at F-33.  Plaintiff's suggestion that Canoo was hiding negative information about its revenue also does not make sense.  The fact that it generated $2.55 million from an engineering services performance obligation completed in July 2020 **supported**, rather than undermined, its statements that its engineering services business "offer[ed] a unique opportunity to generate immediate revenues." Dkt. 85, AC, ¶¶ 85, 87, 122.[6]

Plaintiff also argues that the timing of the disclosure somehow "supports" Plaintiff's claims because it "obscure[d] the true nature of [Defendants'] business and its long-term prospects[.]"  Dkt. 104, Opp'n, at 9 (citing Dkt. 85, AC, ¶¶ 76, 85, 87).  This argument is incoherent.  Confronted with his false allegations, Plaintiff now appears to argue that Defendants should not have disclosed the precise information his AC alleges Defendants had a duty to disclose when his AC alleges Defendants had a duty to disclose it.  Simply stating Plaintiff's argument establishes that it has no merit.

### 2. Engineering Services Statements referred to potential projects

The Engineering Services Statements did not trigger a duty to say more as they did not say Canoo was performing engineering services work for other companies at the time of the statements.  Plaintiff bases his claim on blatant mischaracterizations of the Engineering Services Statements.  Plaintiff argues that throughout the Class Period, "Defendants claimed that Canoo's . . . engineering work **would** '**generate** immediate revenues in advance of offering' its first vehicles." Dkt. 104, Opp'n, at 8 (citing Dkt.

---

[6]   Moreover, disclosure of this fact in the November and December 2020 proxy statement and prospectus soliciting stockholders' votes for the merger contradicts Plaintiff's new scienter theory that Defendant made alleged misstatements to "convince investors to approve the Merger." Dkt. 104, Opp'n at 1; *infra* § II.B.  If Defendants were hiding the information to induce investors' approval of the merger, they would not have disclosed it until after the merger closed and certainly would not have included it in the very documents soliciting their approval.

4

85, AC, ¶¶ 10, 74, 85, 93, 95).  Plaintiff does not—and cannot—cite any statement that says that.[7]  Plaintiff does not come to grips with the fact that the challenged Engineering Services Statements consistently stated that Canoo had "potential" engineering services "opportunities" with "prospective" partners that were just still in "negotiation" or "discussions."  *See* Dkt. 101-1, Mot., at 10 n.5 (collecting statements).

Plaintiff's focus on an out-of-context distortion of Kranz's statement during the August 18, 2020 investor conference that "we are working for companies and we are already making money" is insufficient.  *See* Dkts. 104, Opp'n, at 8; 85, AC, ¶ 76. Kranz's statement must be viewed in context.  *Bodri v. GoPro, Inc.*, 252 F. Supp. 3d 912, 924 (N.D. Cal. 2017) ("A statement is misleading only if a reasonable investor, reading the statement fairly and ***in context***, would be misled.").  His statement merely contrasted Canoo's engineering services business, which was already generating revenue, with Canoo's planned revenue streams from EV vehicles, which were not yet generating revenue.  Dkt. 85, AC, ¶ 76.[8]  His statement is true.  The AC acknowledges that just weeks before his statement, Canoo completed a performance obligation on an engineering services project that generated $2.55 million of revenue.  *Id.* ¶ 122.  And

_____

[7]  Plaintiff distorts this statement to include the word "would" when the cited statements Plaintiff alleges were misleading in fact stated that Canoo's engineering services business "***offers a unique opportunity to generate*** immediate revenues in advance of the offering of [its] vehicles . . . ."  Dkt. 85, AC, ¶¶ 85, 95.  The alleged misleading statements Plaintiff cites in support of this mischaracterization stated: Canoo's "technology . . . has . . . been validated by . . . partnerships such as with Hyundai" (*id.* ¶ 74); "Canoo has already received significant OEM ***interest*** in our skateboard technology and our team's expertise . . . as is exemplified by the announcement of an agreement between Hyundai Motor Group and Canoo for the co-development of a future EV platform based on Canoo's modular technology (*id.* ¶ 85); Canoo's technology "experience and advanced progress have garnered the attention of ***prospective collaboration partners*** . . ." (*id.* ¶ 93); "[i]n February 2020, [Canoo] entered into an agreement with Hyundai Motor Group to co-develop a future EV platform based on [its] modular and scalable skateboard technology, providing further validation of [its] technical leadership" (*id.*); "The [Hyundai] agreement provides that it may be terminated for convenience by either party" (*id.*); and Canoo was "in ***discussions*** with a number of other partners and expect[ed] to be in a position to announce many more partnerships ***in due course***" (*id.* ¶ 95).

[8]  In context, he stated: "We have three phases of revenue streams.  In the first phase, we call it Engineering Services.  This is a phase that already exists today."  *Id.*

during the same conference, Balciunas stated that Canoo projected revenue in 2021 based on contracts under negotiation, not that Canoo was performing work under contracts at the time they were speaking. Dkt. 102-4, Ex. 4, at 8 ("Currently in our pipeline, we have $120 million of projected revenue in 2021, which consists of a couple of projects that are in the advanced stages of negotiation.").[9]

Plaintiff's claim that the Engineering Services Statements were false or misleading because Defendants failed to disclose that, during the Class Period, Canoo "did not work 'with or for Hyundai'" lacks any merit. Dkt. 104, Opp'n, at 9-10. Plaintiff makes no effort to explain how statements that Canoo's agreement with Hyundai "provided validation" for Canoo's technology could be misleading. *Id.* at 8. He concedes that Canoo had the agreement under which its engineering team worked on developing an EV platform based on Canoo's technology. *See* Dkt. 85, AC, ¶ 93.[10] The challenged Engineering Services Statements referencing Hyundai are true,

---

[9] In a footnote, Plaintiff also argues that Defendants "expressly stated Canoo was working for Hyundai during the Class Period." Dkt. 104, Opp'n, at 10 n.3. But Plaintiff bases this argument on distortions of Balciunas' and Kranz's statements during the August 18, 2020 conference. *Id.* Plaintiff selectively quotes Balciunas' statement that Canoo's Hyundai partnership was "a multiple-phase partnership . . . currently . . . in the first phase[,]" omitting the part explaining that it only had the "potential opportunity to move forward into future phases." *Id.* (quoting Dkt. 85, AC, ¶ 144). Recognizing his statement did not say Canoo was performing work for Hyundai at the specific moment he spoke, Plaintiff never alleged that Balciunas' statement was false or misleading. *See generally* Dkt. 85, AC, § V (identifying purportedly misleading statements but omitting Balciunas' August 18, 2020 statement). Plaintiff similarly takes out of context Kranz's statement that Canoo had "three phases of revenue streams" and the "Engineering Services . . . phase . . . already exists today" to suggest Kranz referred to potential phases of the Hyundai partnership. Dkt. 104, Opp'n, at 10 n.3 (quoting Dkt. 85, AC, ¶ 76). Kranz's statement said nothing about the Hyundai partnership. In fact, he referred to the engineering service business in relation to Canoo's EV revenue phases, which did not yet exist. *Compare* Dkt. 104, Opp'n, at 10 n.3 *with* Dkt. 85, AC, ¶ 76. Plaintiff tellingly does not address that the presentation accompanying their statements noted that descriptions of Canoo's partnership with Hyundai were "subject to negotiation and execution of definitive agreements . . . which have not been completed . . . and remain subject to change." Dkt. 102-5, Ex. 5, at 2. Nor does Plaintiff address that in the same conference, Balciunas stated that Canoo projected revenue in 2021, not 2020, based on projects under negotiation. Dkt. 102-4, Ex. 4, at 8.

[10] Indeed, the AC alleges that Bank of America issued a report after the alleged March 2021 announcement that the Hyundai collaboration was "on hold" stating that the "potential collaboration" still "was validation by a major industry player" (*id.* ¶ 136).

6

regardless of whether it performed work for Hyundai at the time of the statements.[11]

Plaintiff argues the fact that Canoo was not performing revenue-generating work for Hyundai or other companies at the time of the challenged Engineering Statements "cannot be said to be immaterial as a matter of law." Dkt. 104, Opp'n, at 11-12. This is a non-sequitur. For purposes of the Motion only, Defendants did not argue that Engineering Services Statements or alleged omissions were immaterial.[12] Defendants argued that the AC fails to adequately allege the challenged statements **were false or misleading when made**. Dkt. 101-1, Mot., at 8, 7-13. "Section 10(b) and Rule 10b-5(b) do not create an affirmative duty to disclose any and all material information." *Weston Fam. P'ship LLLP v. Twitter, Inc.*, 29 F.4th 611, 620 (9th Cir. 2022) (citation omitted). To the contrary, "[d]isclosure is required only when necessary to make statements made, in the light of the circumstances under which they were made, not misleading." *Id.* (cleaned up); *id.* at 615 ("a company can speak selectively about its business"). The

---

[11] Plaintiff's reliance on *In re Vaxart, Inc. Sec. Litig.*, 2021 WL 6061518 (N.D. Cal. Dec. 22, 2021) does not change this analysis as it is easily distinguishable. There the defendant issued a press release announcing it entered into an agreement "Enabling Production of a Billion or More COVID-19 Vaccine Doses Per Year" when it lacked FDA certifications and resources to produce a single dose. *Id.* at **1-2. The next day, the defendant issued another press release with a false headline that it had been selected for Operation Warp Speed (the federal government's COVID-19 vaccine funding program) when the government had not selected it for funding under the program. *Id.* at *2. As reflected in small print, the defendant was only selected to participate in a study organized by Operation Warp Speed. *Id.* at **2-3. Although it was true that the defendant had entered into the agreement and been selected for the study, the Court found the statements misleading. In stark contrast, Plaintiff here cannot identify any false statement that made Defendants' accurate statements misleading. Nor can Plaintiff point to anything contradicting Canoo's statements that its agreement with Hyundai validated Canoo's technology, Canoo recognized $2.55 million of revenue based on an obligation completed in July 2020, and it was engaged in discussions for potential engineering services projects.

[12] The two cases Plaintiff cites in support of this argument are inapposite. Unlike Defendants' Motion, they addressed the materiality of the allegedly false statements. Dkt. 104, Opp'n, at 11 (citing *Fecht v. Price Co.*, 70 F.3d 1078, 1080 (9th Cir. 1995); *Feyko v. Yuhe Int'l, Inc.*, 2013 WL 816409, at *5 (C.D. Cal. Mar. 5, 2013)). Plaintiff also claims "costly analysis . . . about the viability of [a] business model . . . cannot be said to be immaterial as a matter of law." *Id.* But the AC does not allege that a failure to disclose "costly analysis" rendered challenged statements misleading (*see* Dkt. 85, AC, § V), and Aquila referred in the earnings calls to spending money on analysis of Canoo's subscription model, not engineering services. *See id.* ¶¶ 112-113. This purported omission does not state a claim in any event. *See infra* § I.B.3.

Engineering Services Statements did not "foster" a misleading "impression" Canoo was performing revenue-generating work for companies at the time of the statements as they referred to "projected" 2021 revenue based on "discussions" for "potential" engineering services "opportunities."  Dkt. 104, Opp'n, at 11 (citing Dkt. 85, AC, ¶¶ 76-77, 85, 95).[13]  The challenged statements thus did not require Defendants to say whether it was performing work for other companies in every statement about this business unit.

**3.      Subscription Statements did not refer to capital requirements**

The Opposition also fails to explain how any alleged omission regarding the capital Canoo's subscription model would require made Subscription Statements misleading.  *See* Dkts. 85, AC, ¶¶ 76, 78, 80-83, 86, 97-98, 100; 101-1, Mot., at 12. Plaintiff instead relies on a highly misleading distortion of an alleged challenged statement.  Plaintiff asserts that in the January 13, 2021 S-1, Defendants "told investors the 'innovative' subscription model would 'significantly reduce [Canoo's] upfront capital investment and eliminate reoccurring fixed costs and overhead that would be required for us[] to own and operate our own assembly facility.'"  Dkt. 104, Opp'n, at 12 (quoting Dkt. 85, AC, ¶ 97). In fact, the alleged statement in the S-1 referred to Canoo's ***manufacturing plan***, not its subscription model, reducing its capital

---

[13] In addition to taking Kranz's statement at the August 2020 investor conference (Dkt. 85, AC, ¶ 76) out of context, Plaintiff relies on a slide presented in the conference that described "Contract Engineering . . . ***Opportunities***", "projected revenue in 2021E", and "***Potential*** projects".  *Id.* ¶ 77.  Presenting this slide in the conference, Balciunas stated:  "Currently in our pipeline, we have $120 million of projected revenue in 2021, which consists of a couple of projects that are in the advanced stages of ***negotiation***."  Dkt. 102-4, Ex. 4, at 8.  The other alleged misleading statements Plaintiff cites, in HCAC IV's September 18, 2020 Form S-4 and Canoo's January 13, 2021 Form S-1, said that Canoo's engineering service "business offers a unique ***opportunity*** to generate immediate revenues in advance of our first vehicle and [its] current pipeline in this area is supportive of a projected $120 million of revenue in 2021."  *Id.* ¶¶ 85, 95.  And these cited statements concluded by saying that Canoo was "in ***discussions*** with a number of other partners and expect[ed] to be in a position to announce many more partnerships ***in due course***."  *Id.* ¶¶ 85, 95. Each of these SEC filings also includes a cautionary qualification:  "Canoo currently expects to add . . . contract engineering revenue in 2021 and 2022, which ***may occur later or not at all***."  Dkts. 102-1, Ex. 1, at 8, 14; 102-6. Ex. 6, at 42.

investment.  Dkt. 85, AC, ¶ 97.[14]  Plaintiff's vague references to an "inter-connected model" (Dkt. 104, Opp'n, at 12) are unsupported by the corresponding citations to the AC, and only serve to distract from the critical point: none of the challenged Subscription Statements suggested that Canoo's subscription model would reduce its capital requirements.[15]  Plaintiff also fails to reconcile this alleged omission with Canoo's repeated disclosures that its "business plans require a significant amount of capital" in the SEC filings containing alleged misleading statements.  Dkts. 102-1, Ex. 1, 102-10, Ex. 10, at 7, 10; 102-6-7, Exs. 6-7, at 39; 102-8-9, Exs. 8-9, at 41.

**B.      Decisions Made After the Challenged Statements Are Not Actionable**

The Opposition confirms Plaintiff cannot adequately allege any challenged statements were misleading when made.  Plaintiff bases his claims on a purported inference that Canoo had abandoned engineering services and subscription prior to the challenged statements.[16]  But he focuses solely on the March 29, 2021 earnings call announcing that Canoo's Board approved de-emphasizing engineering services and subscription ***months later***.  This is insufficient as a matter of law.

**1.      The AC does not allege facts showing Canoo had de-emphasized engineering services at the time of the challenged statements**

This purported inference is precisely the inference that a court rejected in

[14] The actual statement reads: "We plan to utilize an asset-light, flexible ***manufacturing strategy*** by outsourcing our direct vehicle production operations to a . . . contract manufacturing partner for our initial vehicle programs.  In doing so, we will significantly reduce our up-front capital investment and eliminate the recurring fixed costs and overhead that would be required for us to own and operate our own assembly facility."  Dkt. 85, AC, ¶ 97.  The statement refers to outsourcing vehicle production, not offering vehicles via a subscription service.  *Id.*

[15] Plaintiff relies on one challenged Subscription Statement stating that Canoo "believe[s] the subscription model provid[es] us with a distinct opportunity for recurring revenue and a unique profit margin profile" as implicating the capital requirements.  Dkt 104, Opp'n, at 5; Dkt. 85, AC, ¶ 98.  But this statement of opinion does not imply that the subscription model did not require significant capital.

[16] *See, e.g.*, Dkt. 104, Opp'n at 15 (arguing Canoo failed to advise investors of "abandonment of" the business plan and strategy); 20 (arguing Individual Defendants were "informed of . . . significant fundamental changes"); 23 (arguing "Canoo's publicly stated business model was not true or accurate").

9

*Patterson*. 2022 WL 2208893, at **3, 4 & n.32; *see also* Dkt. 101-1, Mot., at 8-9 (citing *Patterson*). The Court should reject the same requested inference here for the same reasons. Plaintiff cannot meaningfully distinguish his claims from the claims *Patterson* rejected. Dkt. 104, Opp'n, at 11-12. Plaintiff argues that *Patterson* addressed whether a majority of Canoo's Board knowingly disseminated misleading statements while the AC "is focused on the scienter of specific executives, not the entire Board." *Id.* at 11. But *Patterson* addresses whether statements were misleading; it is not limited to scienter analysis. The court rejected the plaintiff's contention that Engineering Services Statements in Canoo's January 13, 2021 SEC Form S-1, which Plaintiff relies on here, were "false and misleading." *See Patterson*, 2022 WL 2208893, at **3, 4 & n.32. The court concluded that plaintiff's contention did not withstand scrutiny under Rule 12(b)(6)'s standards because the plaintiff failed to plead facts from which the court could infer Canoo had "abandoned its engineering services business and arrangement with Hyundai" by the time Canoo filed its January 2021 S-1. *Id.* So too here.[17]

Plaintiff also argues that *Patterson* addressed only two statements while the AC focuses on "many more . . . statements occurring over several months." Dkt. 104, Opp'n, at 12. But the statements addressed in *Patterson* are substantially similar to all of the Engineering Services Statements Plaintiff alleges were misleading.[18] Plaintiff further argues that the plaintiff in *Patterson* only relied on "the fact that Canoo had no engineering revenue in 4Q 2020" whereas, here, Plaintiff also relies on Aquila's

---

[17] Plaintiff argues that "Defendants never expressly state when the Board approved the plan to de-emphasize the model[,]" citing Aquila's March 29, 2021 announcement that "it was decided by our Board to de-emphasize the originally stated contract engineering services line." Dkt. 104, Opp'n, at 10 n.4; Dkt. 85, AC, ¶ 107. But the only inference to draw from this is that the Board's approval was in March 2021. As in *Patterson*, there are no "allegations suggesting that the board had discussed at any time prior to the S-1 the de-emphasis of the engineering services business or putting the relationship with Hyundai on hold." 2022 WL 2208893 at *4.

[18] *Compare* Dkt. 85, AC, ¶¶ 74, 76-77, 85, 93, 95 *with Patterson*, 2022 WL 220893, at *1 (quoting statements in HCAC IV's Form S-4 proxy statements and noting that Canoo's January 2021 Form S-1 "contained similar statements about the engineering services business and partnership with Hyundai"), *4 (quoting statements in S-1).

10

purported "admissions" in the March 2021 earnings call and "allegations attributable to former employees describing the true nature of Canoo's third-party engineering operations." Dkt. 104, Opp'n, at 12.[19] But the plaintiff in *Patterson* also relied on the March 2021 earnings call statements.[20] And Plaintiff here only relies on CW-1 to argue Engineering Services Statements were misleading. Dkt. 104, Opp'n, at 9. The AC fails to sufficiently allege foundation for CW-1's statements, which do not contradict any of the challenged Engineering Services Statements in any event. Dkt. 101-1, Mot., at 13-14; *infra* § I.C. The AC merely alleges CW-1 stated that during CW-1's unspecified tenure at Canoo between "late 2020 and early 2022," Canoo did not outsource engineering services work but "talked to other OEMs about possibilities." *See* Dkt. 85, AC, ¶ 170. That is consistent with the Engineering Services Statements. *Supra* § I.A.2.

**2.      The AC does not allege admissions that Engineering Services Statements were misleading**

Plaintiff fails to identify any statements by Aquila that come close to an admission that he knew Engineering Services Statements were misleading when made. *See* Dkt. 104, Opp'n, at 9-12. Plaintiff's selective summary of Aquila's March 29, 2021 earnings call statements is an attempt to plead fraud by hindsight. *Id.* at 9, 19.

Aquila did not say in the earnings call that Canoo had de-emphasized engineering services for the reasons stated in the March 29, 2021 call or ceased negotiating

[19] The court in *Patterson* specifically found that while Canoo "stated that its engineering and technology services business was 'supportive of a projected $120 million of revenue in 2021' there was nothing to suggest that Canoo was expecting to record revenue in that business in Q4 2020." *Id.* The court found that Engineering Services Statements did not suggest the "company had a steady flow of cash coming in the door for a particular business that abruptly stopped." *Id.* at *4.

[20] *See Patterson*, 2022 WL 220893, at *4 (quoting earnings call statements); *see also id.*, 2022 WL 575923, Defs.' Reply in Supp. Mot. to Dismiss, at § I.A.1 (addressing the plaintiff's reliance on Aquila's statements in earnings call). Notably, in *Patterson*, the defendants also moved under Rule 12(b)(6) to dismiss the plaintiff's Exchange Act Section 14(a) claims against all the defendants, including Aquila, Balciunas, and Kranz, which alleged misleading proxy statements for the merger. *Id.* at § II.B. For judicial efficiency, the court did not address "Defendants' additional arguments in support of dismissal, but . . . sa[id] there are other meritorious bases for dismissing . . . Plaintiff's claims." 2022 WL 2208893, at *4.

engineering services contracts when the Engineering Statements were made months earlier. *See* Dkt. 102-2, Ex. 2, at 9, 17. To the contrary, as the AC alleges, Aquila said he thought Canoo "had the opportunities" for engineering services partnerships, a "partnership . . . can make sense" and Canoo would "continue to look at things." *Id.*; Dkt. 85, AC, ¶¶ 110-111, 117. Responding to a question about the "discussions with some OEMS", Aquila stated that in hindsight it was "presumptuous" and "premature" for Canoo to announce engineering services opportunities before executed contracts. Dkt. 85, AC, ¶ 111. The fact that discussions did not ultimately lead to signed contracts is a subsequent event. Plaintiff makes no effort to distinguish nine cases cited by Defendants, which articulate the well-settled rule that liability for securities fraud cannot be imposed on the basis of subsequent events. Dkt. 101-1, Mot., at 8-10.[21]

According to the Opposition, Aquila stated that "the way Canoo discussed engineering contracts had been 'dangerous' and 'somewhat misleading.'" Dkt. 104, Opp'n, at 9 (citing Dkt. 85, AC, ¶ 114). But this is an out-of-context distortion of what Aquila said.[22] Aquila's statement cautioned against making future statements of revenue projections based on reservations for vehicle purchases. He did not refer to Canoo's past engineering services revenue projections. *See* Dkt. 85, AC, ¶ 114.

---

[21] Plaintiff attempts to distinguish only one of these cases, *In re Fusion-io, Inc. Sec. Litig.*, 2015 WL 661869, at *18 (N.D. Cal. Feb. 12, 2015), but the attempt resides in a conclusory footnote that states: "Unlike [the] sobering revelation in *Fusion-io* . . ., Aquila's admissions speak directly to the accuracy and legality of the Class Period statements." Dkt. 104, Opp'n, at n.12. That is just a mischaracterization of Aquila's statements. Plaintiff relies on *Yourish v. Cal. Amplifier*, 191 F.3d 983 (9th Cir. 1999) for the proposition that a complaint can establish a statement was false when made by alleging a later statement by a defendant along the lines of "I knew it all along." Dkt. 104, Opp'n, at 20. But in *Yourish* the Ninth Circuit affirmed dismissal, finding a later statement did not approach an "I knew it all along" admission, and emphasized: "[I]t is clearly insufficient for plaintiffs to say that [a] later, sobering revelation[] make[s] [an] earlier, cheerier statement a falsehood." 191 F.3d at 996-97.

[22] He said: "[W]e will be step-by-step building this and we will be delivering information as it is known dond contracted, not based on light rev reservation models. I think that's dangerous. I think it could be somewhat misleading." Dkt. 85, AC, ¶ 114.

12

### 3.   The Subscription Statements are not actionable

For the same reasons, Plaintiff fails to plead that the Subscription Statements were false or misleading when made.  Plaintiff cites March 29, 2021 earnings call statements explaining Canoo's decision to de-emphasize subscription, but these statements do not suggest that Defendants knew the model was financially unsustainable or infeasible at the time of challenged statements.  Dkt. 104, Opp'n, at 12-13.  Plaintiff only cites Aquila's statements explaining that when he "took [his] role, [Canoo] spent a lot of money analyzing the weight that [subscription would] have on the balance sheet."  *Id.* at 13 (citing Dkt. 85, AC, ¶ 113).  But this does not constitute an admission that Aquila knew any challenged statements were misleading when made as Plaintiff appears to argue.  *See id.* at 20 (citing *Yourish*, 191 F.3d at 996).

Indeed, the Opposition only cites Subscription Statements made on August 18, 2020—two months ***before*** Aquila assumed his role as Canoo's Executive Chairman. *Id.* at 12.[23]  In support of his argument, Plaintiff offers another distortion of Aquila's earnings call statements.  Plaintiff asserts that "Aquila acknowledged 'without a doubt' he would have changed the plan 'based on [his] experience' if he had been 'more involved earlier.'"  *Id.* at 13 (citing Dkt. 85, AC, ¶¶ 110, 113).  This mischaracterizes Aquila's statement that he would "have changed the sequence of top hats and use cases . . . based on [his] experience without a doubt . . . ."  Dkt. 85, AC, ¶ 113.  His statement referred to Canoo's EV designs, not its subscription model.[24] In any event, internal

---

[23]  Plaintiff also cites an alleged December 22, 2020 statement by Aquila that Canoo was "committed" to its "go-to-market opportunities."  *Id.* at 12 (citing Dkt. 85, AC, ¶ 72).  This statement, however, says nothing about the subscription model, and is inactionable puffery.  *See* Dkt. 101-1, Mot., at 15-16; *infra* § I.D.

[24]  Plaintiff argues that his statement implies "he would have developed top hats for B2B sales initially rather than consumer-focused subscription model top hats."  Dkt. 104, Opp'n, at 13 n.7.  The alleged statement is not sufficient to draw that inference. Regardless, the argument does not address the AC's fatal deficiency:  it does not allege specific facts supporting a reasonable inference that when the Subscription Statements were made, Canoo had abandoned the subscription model or Defendants knew that the model was not sustainable or feasible.

analysis or debate after Aquila assumed his role does not state a securities fraud claim.[25]

Plaintiff cannot identify any particularized allegations in the AC to support his conclusory argument that "Defendants misled investors by . . . concealing the ongoing internal analysis as to [the model's] fundamental viability."  Dkt. 104, Opp'n, at 13 (quoting *Friedman v. Endo Int'l PLC*, 2018 WL 446189, at *6 (S.D.N.Y. Jan. 16, 2018)).  There is nothing in the AC that suggests Canoo had decided to de-emphasize the subscription model when the challenged Subscription Statements were made.[26] Further, the only challenged Subscription Statement made after Aquila assumed his role as Chairman stated that Canoo's EVs "***are initially intended*** to be made available to consumers via an innovative subscription business model."  Dkt. 85, AC, ¶¶ 97, 100.[27] This statement does not imply subscription would be an exclusive method of offering vehicles to consumers forever and Canoo would not consider alternatives.   The

---

[25] Plaintiff's attempt to distinguish *Kovtun v. VIVUS, Inc.*, 2012 WL 4477647, at *18 (N.D. Cal. Sept. 27, 2012) fails. Dkt. 104, Opp'n, at 11 n.5. Plaintiff argues that the internal debate there involved employees whereas here "top executives" had "substantial doubt" about the "viability" of Canoo's business model. Plaintiff, however, does not allege any facts to support his argument. Rather, Plaintiff alleges a single executive, Aquila, said months after the challenged statements that Canoo analyzed the subscription model at some point after he took his role. *See id.* at 13.

[26] Plaintiff cites a single out-of-circuit case to support this argument, but *Friedman* strongly supports dismissal. The *Friedman* court dismissed the complaint, finding allegations that an executive's statements describing changes to a business after purported misstatements came "nowhere near suggesting, let alone proving, that . . . the defendant company had a secret plan to fundamentally and drastically change" the business. 2018 WL 446189, at *6. The court concluded that the plaintiff's allegations, like Plaintiff's allegations here, reflected a "fraud by hindsight" pleading approach that is counter to black-letter law. *Id.* On this basis alone, the court held that the complaint should be dismissed. *Id.* The court noted that in any event, "it is well established that a company has no . . . duty to disclose changes to its business plans . . . ." *Id.* The court also noted that to state a securities fraud claim based on a narrow exception, "a plaintiff must allege facts plausibly establishing that a company had stated its intention to adhere exclusively to a particular strategy and then changed its strategy without informing investors." *Id.* The court found plaintiff's failure to allege such a statement was another ground for dismissal. *Id.*

[27] Plaintiff points to Aquila's investment in Canoo in July 2020 and an August 25, 2020 announcement of his candidacy for the Board. Dkt. 104, Opp'n, at 13 n.8; Dkt. 85, AC, ¶¶ 62, 185. But neither implies he had a "role" at Canoo before he became Chairman in October 2020 or that Defendants had abandoned the subscription model or knew it was not feasible when Subscription Statements were made.

14

statement implies that it reflected Canoo's existing plan.[28]

### C.  The Opposition Confirms Alleged CWs Are Unreliable

The Opposition's defense of Plaintiff's allegations regarding CWs fails.  Plaintiff does not dispute that the AC fails to identify CW-1's job, and thus cannot demonstrate that CW-1's job duties related to engineering services.  *See* Dkt. 104, Opp'n, at 24.  Plaintiff likewise offers no response to the dispositive point that CW-1 does not help Plaintiff plead falsity since Plaintiff does not identify any alleged misstatement that Canoo was performing engineering services work for another company during CW-1's tenure.  *Compare id. with supra* I.A.2.  Plaintiff concedes that he cannot allege CW-2 has any knowledge about Canoo's subscription model during the relevant time as CW-2 left Canoo over a year before the first challenged statement.  Dkt. 104, Opp'n, at 24; Dkt. 85, AC, ¶ 172.  Plaintiff also argues vague allegations that CW-2 stated Canoo's subscription model changed over a year before the first challenged statement is somehow "consistent with allegations showing substantial doubt as to its public Class Period model . . . ."  *Id.*  That purported link is a quintessential unreasonable inference.[29]

---

[28] The Opposition focuses on alleged statements during the August 18, 2020 investor conference two months before Aquila assumed his role as Chairman (Dkt. 104, Opp'n, at 12) to apparently argue that Canoo "hyped a specific plan, thereby inducing investors to believe that alternative plans were excluded."  *Id.* at 13 (quoting *Friedman*, 2018 WL 446189, at *6).  Tellingly, with the exception of one statement, the AC did not identify those alleged statements as allegedly misleading.  *See* Dkt. 85, AC, § V (omitting *id.* ¶¶ 151, 152).  Those alleged statements do not help Plaintiff state a claim, given the statements were made before Aquila assumed his executive role and the analysis he referenced in the March 2021 earnings call.  Thus, even under Plaintiff's theory, he cannot identify purported omissions about the model's viability that made the August 2020 statements misleading when made.

[29] The cases Plaintiff cites to argue the AC alleges foundation for CWs are readily distinguishable.  Dkt. 104, Opp'n, at 23-24.  *Compare In re Daou Sys. Inc. Sec. Litig.*, 411 F.3d 1006, 1016 (9th Cir. 2005) (identifying witness as "Regional Vice President of Sales" responsible for reporting "sales status/backlog and forecast/pipeline information") and *Mulligan v. Impax Lab'ys, Inc.*, 36 F. Supp. 3d 942, 962 (N.D. Cal. 2014) (exact titles used by the company) *with, e.g.*, Dkt. 85, AC, ¶ 168 ("[CW-1] was a head executive for a department at Canoo . . .").  And unlike the witnesses in *Employees' Retirement System of Government of the Virgin Islands v. Blanford*, CW-2 did not merely neglect to "link" his or her statements to "specific quarters," 794 F.3d 297, 307 (2d Cir. 2015), but rather was not employed by Canoo during the Class Period and thus cannot comment on its business during that period.

15

**D.    Challenged Statements Are Non-Actionable Puffery and Opinions**

Many of the challenged statements are not actionable for the additional reason that they are puffery or opinions. *See* Dkt. 101-1, Mot., at 14-16. Plaintiff appears to argue that the statements cited in the Motion as inactionable puffery are actionable because they are purportedly anchored in misrepresentations of existing facts and based on detail and specificity. *See* Dkt. 104, Opp'n, at 15-16. But the statements at issue are textbook examples of puffery and Plaintiff makes no serious attempt to argue that these statements are combined with any misrepresentation of specific material facts. *Compare* Dkt. 101-1, Mot., at 15 (identifying Dkt. 85, AC, ¶¶ 84, 86, 90 as puffery); *with* Dkt. 104, Opp'n, at 15-16 (omitting any citations to Dkt. 85, AC, ¶¶ 84, 86, 90).[30] Under Ninth Circuit law, puffery is inactionable—period. *Twitter, Inc.*, 29 F.4th at 619.

Plaintiff identifies a series of statements of opinion that Defendants did not argue were puffery. *See* Dkt. 104, Opp'n, at 16. To base a securities fraud claim on a statement of opinion, however, a plaintiff relying on an omission theory (as Plaintiff is here) must allege "facts going to the basis for the issuer's opinion . . . whose omission makes the opinion statement at issue misleading to a reasonable person reading the statement fairly and in context." *City of Dearborn Heights Act 345 Police & Fire Ret.*

---

[30] Unlike the statements Defendants identified as puffery, the cases Plaintiff cites involved definitive, specific statements of fact or statements integral to a misrepresentation of specific material facts. *Compare* Dkt. 85, AC, ¶¶ 84 ("uniquely positioned"), 86 ("positive factors"), 90 ("excited about our go-to-market opportunities") *with Casella v. Webb*, 883 F.2d 805, 808 (9th Cir. 1989) (statement that an investment was a "sure thing" made with "specific misrepresentations of fact as to the future profitability of . . . the investment[.]"); *Cutler v. Rancher Energy Corp.*, 2014 WL 1153054, at *7 (C.D. Cal. Mar. 11, 2014) (statement that company had received Goldman Sachs financing); *Bricklayers & Masons Loc. Union No. 5 Ohio Pension Fund v. Transocean Ltd.*, 866 F. Supp. 2d 223, 243 (S.D.N.Y. 2012) (statement that defendant oil drilling company "conducted 'extensive' training and safety programs"); *In re Century 21-RE/MAX Real Est. Advert. Claims Litig.*, 882 F. Supp. 915, 926 (C.D. Cal. 1994) (statement that real estate agents "out sell other real estate agents 3 to 1" could support false advertising, not a securities fraud, claim); *Mulligan v. Impax Lab'ys, Inc.*, 36 F. Supp. 3d 942, 966-67 & n.2 (N.D. Cal. 2014) (statement that defendant responded to an FDA inquiry was not puffery, but statement that defendant was "confident" in its response to inquiry was puffery) *Turocy v. El Pollo Loco Holdings, Inc.*, 2016 WL 4056209, at *9 (C.D. Cal. July 25, 2016) (statement that lower store sales was due to New Year's holiday was not puffery, but statement that menu offers 'great value'" was puffery).

16

*Sys. v. Align Tech., Inc.*, 856 F.3d 605, 615 (9th Cir. 2017). Plaintiff ignores this test in the Opposition and alleges no such facts. *See* Dkt. 104, Opp'n, at 16. Therefore, challenged statements that are corporate puffery or expressions of opinion are not actionable. *See* Dkt. 85, AC, ¶¶ 81-82, 84, 86, 90, 98.

### E.   Forward-Looking Statements Are Not Actionable

Many challenged statements are also not actionable for the independent reason that they are forward-looking. Plaintiff incorrectly claims that only five challenged statements are forward looking. *See* Dkt. 104, Opp'n, at 14. In fact, 11 out of 14 challenged statements are forward-looking and do not address present operations. *See* Dkt. 85, AC, ¶¶ 76-77, 80-82, 84-85, 87, 90, 95, 97-98, 100.[31]   Plaintiff argues the PSLRA's safe-harbor does not protect the challenged forward-looking statements because Defendants were aware of facts at the time of the statements that seriously undermined the accuracy of the statements. *See* Dkt. 104, Opp'n, at 15. Plaintiff, however, fails to allege any particularized facts Defendants knew at the time of the statement that caused Defendants to believe the subscription model was not viable or that Canoo would not meet projections for engineering services revenue. *Supra* § I.A.[32] The forward-looking statements are thus not actionable under the safe-harbor. *Twitter*, 29 F.4th at 620; 15 U.S.C. § 78u-5.

The forward-looking statements are inactionable under the safe-harbor for the independent reason that meaningful cautionary language accompanied the statements. Plaintiff's argument to the contrary lacks merit. *See* Dkt. 104, Opp'n, at 15. Plaintiff argues the cautionary statements did not advise investors that Aquila questioned and

---

[31]   The portion of Kranz's August 18, 2020 statement stating that the "consumer vehicle . . . ***will be*** on subscription" is forward-looking. *See* Dkt. 85, AC, ¶ 76.

[32]   Plaintiff cites *In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130, 1142 (9th Cir. 2017) for the proposition that the safe-harbor does not protect knowingly false statements about current or past facts, but the case is not on point as Plaintiff fails to plead with particularity that Defendants knowingly made misleading statements. Another case Plaintiff cites, *Slayton v. Am. Express Co.*, 604 F.3d 758, 772-73 (2d Cir. 2010), does not help him as the court there dismissed plaintiff's claim for failure to plead particular facts demonstrating that a misleading statement was knowingly made.

"systematically dismantled" Canoo's business strategy "once he had control." *Id.* But the AC does not contain any well-pled facts showing that at the time of the statements, Aquila had "dismantled" Canoo's business strategy. And the cautionary statements directly relate to the reasons he cited for de-emphasizing subscription (executing the model with capital). Canoo's cautionary disclosures that its plans required significant capital were not limited to the January 2021 S-1. *Compare* Dkts. 104, Opp'n, 15, *with* 102-6-7, Exs. 6-7, at 39; 104-8, Ex. 8, at 41. Plaintiff's claim that Canoo did not caution that the subscription model required capital cannot hold up against repeated disclosures of this as a risk factor. The cautionary statements that "expect[ed] . . . contract engineering revenue in 2021 and 2022 . . . may occur later or not at all" likewise directly relate to Canoo's engineering services revenue projection. Dkt. 101-1, Mot., at 17 n.8.[33]

## II.    THE AC FAILS TO ALLEGE A STRONG INFERENCE OF SCIENTER

### A.    Plaintiff Fails to Allege Defendants Acted with Scienter

The Court should dismiss the AC for the independent reason that it fails to adequately plead scienter. Rather than point to any facts showing that Defendants deliberately made allegedly misleading statements, Plaintiff recycles his flawed falsity arguments. Dkt. 104, Opp'n, at 19-20.[34] Thus, for the same reasons that Plaintiff fails

---

[33] The cases Plaintiff cites are distinguishable as they involve statements regarding current, not future, business conditions and cautionary language that did not fully address the risks associated with the forward-looking statements. *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 954 (9th Cir. 2005) (cash increase was misleadingly referred to as a "fact" that already occurred); *Asher v. Baxter Int'l Inc.*, 377 F.3d 727, 734-35 (7th Cir. 2004) ("[t]he major risks [Defendant] objectively faced when it made its forecasts were exactly those that, according to the complaint, came to pass, yet the cautionary statement mentioned none of them"); *Mulderrig v. Amyris, Inc.*, 492 F. Supp. 3d 999, 1019 (N.D. Cal. 2020) (forward looking aspects of the challenged statements were premised on alleged false representations of current revenues); *In re REMEC Inc. Sec. Litig.*, 702 F. Supp. 2d 1202, 1234 (S.D. Cal. 2010) (statement that "the relocation of [the defendant's] manufacturing to China was 'on plan'" described a current business condition).

[34] In support of his argument that Defendants made misstatements with deliberate recklessness, Plaintiff cites inapposite cases involving allegations that established defendants knowingly made false statements. Dkt. 104, Opp'n, at 19, 22 (citing *Howard v. Everex Sys., Inc.*, 228 F.3d 1057, 1064 (9th Cir. 2000); *In re Immune Response Sec. Litig.*, 375 F. Supp. 2d 983, 1023 (S.D. Cal. 2005); *In re VeriFone Holdings, Inc. Sec. Litig.*, 704 F.3d 694, 698 (9th Cir. 2012)).

18

to allege any misleading statement, his scienter arguments fail. *Supra* § I.

Plaintiff also relies on Aquila's statement during the earnings call that he had "concerns" about the engineering services business line and started "analysis" at some unspecified point after becoming Chairman on October 19, 2020. Dkts. 104, Opp'n, at 19; 85, AC, ¶¶ 31, 110. But this statement does not mean that the Board decided to de-emphasize engineering services at the time of the Engineering Services Statements months before the earnings call. Indeed, Plaintiff challenges Engineering Services Statements as early as August 18, 2020—two months **before** Aquila took any role at Canoo. *See* Dkt. 85, AC, ¶¶ 74, 76-77, 80-82. And, given that Canoo only projected engineering services in 2021, not 2020 (*supra* §§ I.A.1-2), Plaintiff cannot draw a reasonable inference that Canoo had abandoned engineering services by pointing to a drop in revenue after Aquila invested in Canoo in July 2020. Dkt. 104, Opp'n, at 19.[35]

Aquila's statements referring to "analysis" do not come close to meeting the particularized pleading standards that govern Plaintiff's claims.[36] The AC does not allege any specific contemporaneous facts regarding the referenced "analysis" or a single specific, contemporaneous fact contradicting Canoo's statements that it was in discussions with a number of potential engineering services partners and its pipeline

---

[35] The cases Plaintiff cites in support of his argument that Aquila's apology during the March 2021 earnings call is indicative of scienter are inapposite. Dkt. 104, Opp'n, at 19-20. In *In re Zoom Securities Litig.*, 2022 WL 489074, at **3-4 (N.D. Cal. Feb. 16, 2022), Zoom's CEO apologized for incorrect statements that Zoom had a secure encryption feature when it did not. In *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, 2017 WL 66281, at **13-15 (N.D. Cal. Jan. 4, 2017), the former Volkswagen CEO apologized to Congress for its emissions scandal involving false emissions-compliance pronouncements for 11 million vehicles and admitted he knew of the non-compliance. In stark contrast, Aquila apologized for refocusing a previously announced business plan. Dkt. 85, AC, ¶ 113.

[36] Plaintiff cites one case, *Garcia v. J2 Glob., Inc.*, 2021 WL 1558331, at *16 (C.D. Cal. Mar. 5, 2021), in support of his conclusory assertion that "Aquila's 'analysis' demonstrates he and the other Defendants were 'aware of undisclosed facts tending seriously to undermine' the accuracy of their other positive statements regarding the benefits of their engineering services business." Dkt. 104, Opp'n, at 19. But in *Garcia*, the court found the plaintiff failed to plead particularized facts showing that the defendants "knew of undisclosed facts that would undermine" alleged misstatements. *See* 2021 WL 1558331, at *16. So too here.

19

was supportive of projected engineering services revenue in 2021. *See* Dkt. 101-1, Mot., at 19-20 (collecting cases). Nor does the AC allege any particularized factual allegations regarding Individual Defendants' knowledge.

Recognizing that his insufficient arguments centered solely on Aquila's March 29, 2021 statements, Plaintiff also argues that by virtue of their executive roles, Balciunas and Kranz "would at the least have been fully informed of these significant fundamental changes to Canoo's operations." *See* Dkt. 104, Opp'n, at 20.[37] This argument fails in the absence of any specific factual allegations showing Canoo had made changes at the time of challenged statements. *Supra* §§ I.B.1-2. The argument also fails as a matter of law, given that Plaintiff does not allege any specific facts showing what role Aquila, Kranz, or Balciunas played in allegedly shaping changes or what they knew and when about the alleged changes. Having failed to establish scienter as to any Individual Defendant, Plaintiff may not impute scienter to Canoo.[38]

---

[37] The two cases Plaintiff cites in support of his argument, Dkt. 104, Opp'n, at 20, contained detailed allegations of knowledge missing here. *In re Cadence Design Sys., Inc. Sec. Litig.*, 692 F. Supp. 2d 1181, 1189-90 (N.D. Cal. 2010) (finding specific facts showing officer was involved in contract negotiation and knew at the time of the alleged misstatements that the company had reframed contract revenue in a way that violated accounting principles); *S. Ferry LP #2 v. Killinger*, 687 F. Supp. 2d 1248, 1259-62 (W.D. Wash. 2009) (on remand finding scienter only for executives who had themselves stated that they knew about the contested facts and not for executives who had no access to the relevant data).

[38] *See* Dkt. 101-1, Mot., at 23 n.23; *see also In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1063 (9th Cir. 2014) (finding failure to plead scienter as to any individual was also a failure to plead scienter as to the corporate defendant); *Cf. Longo v. OSI Sys., Inc.*, 2021 WL 1232678, at *8 (C.D. Cal. Mar. 31, 2021) (finding scienter when detailed pleadings established senior officer was directly involved in negotiations for contract obtained by corruption but did not reveal such information to the market). To the extent Plaintiff argues in a footnote with no analysis that he may impute scienter from Canoo to Individual Defendants, the argument has no merit. Dkt. 104, Opp'n, at 17 n.10. The cases cited in the footnote refer to imputing scienter to individuals where "a company's public statements [are] so important and so dramatically false that they would create a strong inference that at least *some* corporate officials knew of the falsity upon publication." *Or. Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*, 774 F.3d 598 (9th Cir. 2014) at 607-08 (citing *Glazer Cap. Mgmt., LP v. Magistri*, 549 F.3d 736, 744 (9th Cir. 2008)); *M & M Hart Living Tr. v. Glob. Eagle Ent., Inc.*, 2017 WL 5635424, at *12 (C.D. Cal. Aug. 20, 2017)). Plaintiff does not come close to making that showing here given his failure to plead any false statements, let alone "dramatically false" statements, and the cases he cites found no such showing.

20

**B.     The Closing of the Merger Is Insufficient to Plead Scienter**

Plaintiff effectively concedes that he did not (and cannot) allege any insider trading in the face of disclosures regarding Lock-Up Agreements precluding trades at allegedly inflated prices. *See* Dkt. 101-1, Mot., at 20-22. Thus, Plaintiff mostly abandons the theory alleged in the AC that the Individual Defendants engaged in a scheme intended to artificially inflate the price of Canoo's stock. *See* Dkt. 104, Opp'n, at 21. Plaintiff tellingly does not attempt to distinguish the recent on point Ninth Circuit decision Defendants cited at length, *Nguyen v. Endologix, Inc.* In *Nguyen*, the Ninth Circuit found a similar theory wholly illogical due to the absence of any allegations defendants sought to profit from the scheme. 962 F.3d at 415.[39] Plaintiff offers a new theory not alleged in the AC that is as illogical as the abandoned theory.

Under Plaintiff's new theory, Defendants allegedly made misleading statements to obtain shareholder approval of the merger. Dkt. 104, Opp'n, at 21.[40] This new theory fails because Plaintiff does not allege any particular facts to support it. *Lipton v. Pathogenesis Corp.*, 284 F.3d 1027, 1038 (9th Cir. 2002) ("These generalized assertions of motive, without more, are inadequate to meet the heightened pleading requirements of *Silicon Graphics*."). Plaintiff does not cite a single factual allegation to support his

---

[39] Plaintiff cites *No. 84 Emp.-Teamster Joint Council Pension Tr. Fund v. Am. West Holding Corp.*, 320 F.3d 920, 944 (9th Cir. 2003), for the proposition that insider trading is not necessary to plead scienter. But there, unlike here, the defendants engaged in insider trading and officers who did not trade received options due to stock price performance before the price dropped. *Id.* at 940, 944. Plaintiff also cites *Flynn v. Sientra*, 2016 WL 3360676, at *15 (C.D. Cal. June 9, 2016). There, unlike here, the plaintiff alleged with particularity that defendants knew of manufacturing problems, but did not disclose the problems to complete a stock offering to preserve their shares' value and raise capital to avoid a default on loans. *Id.* Unlike Canoo's voluntary disclosure of the de-emphasis of engineering services and subscription, the defendants in *Flynn* only disclosed the manufacturing problems after regulatory action at manufacturing facilities became public. *Id.* at *3.

[40] Plaintiff contends Defendants were motivated to keep Canoo's trading price above $10 per share, the initial HCAC IV SPAC stock price, to help consummate the merger. *Id.* That is not the theory alleged in the AC, which focused on the Individual Defendants' stock ownership rather than the price initial HCAC IV investors paid for its stock. *See* Dkt. 85, AC, § XIII. The shifting theory reflects Plaintiff's failure to plead any meaningful scienter allegations.

21

conclusory assertion that "Defendants could not have consummated the Merger . . . without making these statements." Dkt. 104, Opp'n, at 23. And the AC's allegations contradict the theory. Plaintiff alleges Defendants made the same allegedly misleading statements in the January 2021 S-1 *after the merger closed*. *See* Dkt. 104, Opp'n, at 21 (citing Dkt. 85, AC, ¶¶ 55-56, 68-73). Why would Defendants continue to make allegedly misleading statements after the purported purpose of making the allegedly misleading statements had been fulfilled, and when they knew the allegedly withheld information would become known to the investing public only a short time later?

The only purported "indicia" of scienter alleged in the AC that the Opposition regurgitates are alleged stock incentive awards ("Earnout Shares") in the Individual Defendants' employment contracts contingent on Canoo's stock price reaching certain prices for defined periods. Dkt. 104, Opp'n, at 22 (citing Dkt. 85, AC, ¶¶ 201-204). Plaintiff, however, concedes that the price never rose to meet the conditions for Earnout Shares. *Id.* Plaintiff does not—and cannot—explain why the Individual Defendants would engage in a scheme to "inflate" Canoo's stock price and then make "shocking revelations" (Dkt. 85, AC, ¶ 106) they allegedly knew would negatively affect the stock price before they could ever profit from the allegedly "inflated" price.

### C.  An Ongoing SEC Investigation, Two Resignations, and Temporal Proximity Do Not Establish Scienter

Plaintiff argues that an ongoing SEC investigation contributes to an inference of scienter. *See* Dkt. 104, Opp'n, at 20-21. But "[t]he mere existence of an investigation cannot support any inferences of wrongdoing or fraudulent scienter on the part of a company or its senior management." *In re Hansen Nat. Corp. Sec. Litig.*, 527 F. Supp. 2d 1142, 1162 (C.D. Cal. 2007) (cleaned up). Plaintiff also argues that the resignations of Kranz and Balciunas within the same period as the SEC investigation support a scienter inference. Dkt. 104, Opp'n, at 21. But they resigned in April 2021, months after the allegedly misleading statements and before the SEC investigation. Dkt. 85, AC, ¶¶ 105, 168, 176. Unlike the cases Plaintiff cites in support of his argument, he

does not allege any facts here showing that the resignations occurred under suspicious circumstances. "[A] plaintiff must allege sufficient information to differentiate between a suspicious change in personnel and a benign one." *Zucco Partners, LLC v. Digimarc Corp.*, 552 F. 3d 981, 1002 (9th Cir. 2009). "Mere conclusory allegations that a financial manager resigns or retires during the class period or shortly before the corporation issues its restatement, without more, cannot support a strong inference of scienter." *Id.*[41] Plaintiff makes no showing that the resignations were not benign.

Plaintiff also argues that the temporal proximity between the alleged false statements and the purported corrective disclosures "increases" the inference that statements were false when made. Dkt. 104, Opp'n, at 21 (citing *Yourish*, 191 F.3d at 997). But temporal proximity cannot on its own establish a strong inference of scienter. *Yourish*, 191 F.3d at 997 ("[W]e have never allowed the temporal proximity between the two, *without more*, to satisfy the requirements of Rule 9(b)."). In *Yourish*, the court affirmed the dismissal of a complaint because there were "no other adequately pleaded allegations for the temporal proximity to bolster." *Id.* Here, as in *Yourish*, there are no adequately pled scienter allegations that alleged temporal proximity could bolster.

## III.   THE AC FAILS TO ALLEGE INDIVIDUALS "MADE" STATEMENTS

Plaintiff argues the AC's identification of at least one allegedly misleading

---

[41]   *See also City of Roseville Emps.' Ret. Sys. v. Sterling Fin. Corp.*, 963 F. Supp. 2d 1092, 1138 (E.D. Wash. 2013), *aff'd*, 691 F. App'x 393 (9th Cir. 2017) (allegation of "sudden and forced" departure was not enough to establish scienter, even when the company announced a cease-and-desist order from the FDIC the next day, as there were no facts to suggest that the departures were "the result of wrongdoing or fraudulent conduct"); *In re Accuray, Inc. S'holder Derivative Litig.*, 757 F. Supp. 2d 919, 932 (N.D. Cal. 2010) ("[T]here is nothing suspicious about the timing of his resignation, even though it occurred weeks after Accuray's August, 2008 backlog revision."). *Cf. In re Banc of Cal. Sec. Litig.*, 2017 WL 3972456, at *8 (C.D. Cal. Sep. 6, 2017) (alleging SEC investigation and the resignation occurred on "the very same day"); *In re Volkswagen "Clean Diesel" Mktg.*, 2017 WL 66281, at **14-15 (alleging "mass resignations, firings, and suspensions of Volkswagen's top management" after high level officials admitted company was "dishonest"); *In re UTStarcom, Inc. Sec. Litig.*, 617 F. Supp. 2d 964, 975-76 (N.D. Cal. 2009) (alleging that resignations were contemporaneous with "the Company's financial restatements and the initiation of internal and SEC investigations" such that "the timing of Defendants' departures might suggest that the Company believed Defendants had been involved in wrongdoing with respect to corporate finances").

statement attributable to each Individual Defendant somehow permits group pleading for all the allegedly misleading statements in corporate SEC filings.[42]  Courts within the Ninth Circuit have largely concluded that group pleading is not compatible with the PSLRA's requirements.  "The Central District of California, in particular, appears to be unanimous in this conclusion."  *Reed v. Amira Nature Foods Ltd.*, 2016 WL 6571281, at *10 (C.D. Cal. July 18, 2016).  Plaintiff's group pleading is impermissible.[43]

---

[42]  The case Plaintiff cites for this incorrect proposition is inapposite as the plaintiff there alleged defendants signed documents and served on committees whose responsibilities afforded knowledge about statements in public filings.  Dkt. 104, Opp'n, at 17 (citing *In re Wells Fargo & Co. S'holder Derivative Litig.*, 282 F. Supp. 3d 1074, 1095 (N.D. Cal. 2017)).  Plaintiff here points to only two Individual Defendants' signatures on the January 2021 S-1, one of 12 SEC filings alleged to contain misleading statements.  Plaintiff notably does not attempt to distinguish his group pleading from the group pleading that the court rejected in *Hefler v. Wells Fargo & Co.*, 2018 WL 1070116 (N.D. Cal. Feb. 27, 2018).  Dkt. 104, Opp'n, at 16-18.  In *Wells Fargo*, the court found that the Plaintiff failed to plead "specific facts" that individual defendants "had ultimate authority over the alleged misstatements" in the defendant's releases and SEC filings.  2018 WL 1070116, at *9.  The same is true here.  The additional cases Plaintiff cites are distinguishable as each contains specific allegations showing control over alleged misstatements in addition to a defendant's executive role.  *See City of Pontiac Gen. Emps.' Ret. Sys. v. Lockheed Martin Corp.*, 875 F. Supp. 2d 359, 375 (S.D.N.Y. 2012) (executive had knowledge statements were false as head of "division whose misconduct is at the heart of plaintiff's claims"); *City of Roseville Emps.' Ret. Sys. v. EnergySolutions, Inc.*, 814 F. Supp. 2d 395 (S.D.N.Y. 2011) (individual defendants signed SEC filings); *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, 2017 WL 3058563, at *8 (N.D. Cal. July 19, 2017) (individual defendants had authority to correct filings); *Todd v. STAAR Surgical Co.*, 2016 WL 6699284, at *12 (C.D. Cal. Apr. 12, 2016) (individual defendant's unique role as liaison between company and FDA was sufficient to establish he was responsible for "any statements concerning FDA regulatory compliance"); *Zwick Partners, LP v. Quorum Health Corp.*, 2018 WL 2933406, *3-4 (M.D. Tenn. Apr. 19, 2018) (signatures on quarterly reports).

[43]  For example, Plaintiff argues that the Individual Defendants made the alleged misstatements because "as founders, officers and directors of Canoo . . . [they] controlled the content of the Company's press releases announcing the Merger Agreement with HCAC and touting its proposed benefit."  Dkt. 104, Opp'n at 18. Yet eight of the alleged misleading statements were made before Aquila had any executive role at Canoo.  *See* Dkt. 85, AC, ¶¶ 74, 76, 77, 80, 81, 82, 85-86.  Plaintiff's reliance on an excerpt of an HCAC IV SEC filing submitted with his Opposition is unavailing. Dkt. 104, Opp'n, at 18.  Indeed, only one alleged misleading statement falls within the sections of this filing that the Opposition claims "attribute[] Canoo with direct responsibility over many of the relevant statements."  *See* Dkt. 105-1, Ex. A.  And this section does not attribute Canoo's management with direct responsibility over it as it merely states "all references in this section to 'we,' 'us,' or 'our' refer to Canoo and its subsidiaries[.]"  *See id.* at 163.

24

**IV.    THE AC FAILS TO STATE RULE 10b-5(a), 10b-5(c) or § 20(a) CLAIMS**

Plaintiff argues that he stated claims for violations of Rules 10b-5(a), 10b-5(c), and §20(a) based on alleged misstatements issued to complete the merger.  *See* Dkt. 104, Opp'n, at 24-25.  Accordingly, since Plaintiff has failed to adequately allege that Defendants made any misstatements or scienter, *see supra* §§ I-III, Plaintiff's claims under Rules 10b-5(a), 10b-5(c) fall with his Rule 10b-5(b) claim.  Absent a primary violation under Section 10(b) or adequate allegations that the Individual Defendants were "controlling persons," Plaintiff's Section 20(a) should be dismissed as well.[44]

## CONCLUSION

Plaintiff's theories are contrary to Canoo's actual disclosures and unsupported by any particularized, contemporaneous factual allegations.  For the foregoing reasons, Defendants respectfully submit that the AC fails to state a claim and should be dismissed with prejudice.

 DATED:  September 8, 2022

Respectfully submitted,

Kirkland & Ellis LLP

*/s/ David A. Klein*

David A. Klein

*Attorneys for Defendants*

---

[44] The Court should grant the Motion with prejudice.  Plaintiff's conclusory footnote requesting leave to amend does not explain how he could cure the AC's myriad deficiencies.  Dkt. 104, Opp'n at 25 n.13.  It relies solely on the Court's ruling regarding judicial notice of a conference transcript that the AC did not reference.  *Id.*  Plaintiff cannot explain how that transcript, which contradicts Plaintiff's claims, could support leave to amend.  The Ninth Circuit has recognized "dismissal with prejudice was appropriate" for a complaint that was amended where the plaintiff "failed to set forth any facts which he could add to save his complaint."  *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 991 (9th Cir. 1999), *superseded by statute on other grounds as recognized in Burbrink v. Campbell*, 734 F. App'x 416, 418 (9th Cir. 2018); *see also In re VeriFone Sec. Litig.*, 11 F.3d 865, 872 (9th Cir. 1993) (similar).  Moreover, Plaintiff filed the AC after consolidation and requesting additional time to file, yet failed to cure deficiencies.  *See In re Wet Seal, Inc. Sec. Litig.*, 518 F. Supp. 2d 1148, 1181 (C.D. Cal. 2007) (pre-consolidation complaints were prior complaints for determining whether leave to amend is warranted).  And Plaintiff has set forth no facts he could add after filing two oppositions to two motions to dismiss.  Thus, unlike the sole case Plaintiff cites to support his request for leave to amend, there is ample basis here to find "amendment would be futile." *Curry v. Hansen Med., Inc.*, 2011 WL 3741238, at *2 (N.D. Cal. Aug. 25, 2011).