# Exhibit 16

**UNITED STATES OF AMERICA**
**Before the**
**SECURITIES AND EXCHANGE COMMISSION**

**SECURITIES ACT OF 1933**
**Release No. 11217 / August 4, 2023**

**SECURITIES EXCHANGE ACT OF 1934**
**Release No. 98052 / August 4, 2023**

**ADMINISTRATIVE PROCEEDING**
**File No. 3-21544**

|  |  |
|---|---|
| **In the Matter of** <br><br> **CANOO INC.** <br><br> **Respondent.** | **ORDER INSTITUTING CEASE-AND-DESIST PROCEEDINGS PURSUANT TO SECTION 8A OF THE SECURITIES ACT OF 1933 AND SECTION 21C OF THE SECURITIES EXCHANGE ACT OF 1934, MAKING FINDINGS, AND IMPOSING A CEASE-AND-DESIST ORDER** |

**I.**

The Securities and Exchange Commission ("Commission") deems it appropriate that cease-and-desist proceedings be, and hereby are, instituted pursuant to Section 8A of the Securities Act of 1933 ("Securities Act") and Section 21C of the Securities Exchange Act of 1934 ("Exchange Act"), against Canoo Inc. ("Canoo" or "Respondent").

**II.**

In anticipation of the institution of these proceedings, Respondent has submitted an Offer of Settlement (the "Offer"), which the Commission has determined to accept. Solely for the purpose of these proceedings and any other proceedings brought by or on behalf of the Commission, or to which the Commission is a party, and without admitting or denying the findings herein, except as to the Commission's jurisdiction over it and the subject matter of these proceedings, which are admitted, Respondent consents to the entry of this Order Instituting Cease-and-Desist Proceedings Pursuant to Section 8A of the Securities Act of 1933 and Section 21C of the Securities Exchange Act of 1934, Making Findings, and Imposing a Cease-and-Desist Order ("Order"), as set forth below.

## III.

On the basis of this Order and Respondent's Offer, the Commission finds[1] that:

### Summary

1.      Canoo, which designs and produces electric vehicles ("EVs"), became a publicly-traded company through a "SPAC" transaction in late 2020. From August 2020 through March 2021 in materials filed with the Commission and sent to investors, Canoo made material misrepresentations regarding its projected fiscal year 2021 and 2022 revenues. These misstatements occurred during and after the transaction through which Canoo became publicly traded, which occurred in December 2020 when it merged into a special purpose acquisition company (the "SPAC Company"). Specifically, Canoo—which generated only $2.6 million of revenue in 2020—stated that its pipeline of engineering services projects would generate $120 million of revenue in 2021 and $250 million in 2022 without having a reasonable basis for those projected amounts. In July 2020, Canoo's internal "pipeline" identified two potential projects as the entire basis of the 2021 revenue projection, as well as the basis of over 70% of its 2022 revenue projection. By August 2020, however, both potential projects were paused or considered unviable, and no other potential projects were likely to generate near-term engineering services-related revenue. Canoo nevertheless continued to include these revenue projections in its submissions and filings with the Commission until March 2021.

2.      Additionally, in October 2020 a former senior executive at Canoo ("Former Executive") received—but did not disclose—a payment of approximately $1 million from Canoo's then owners related to his work at Canoo. This caused Canoo to make inaccurate filings with the Commission from September 2020 until April 2021 regarding compensation that was paid to its executives.

3.      Based on the foregoing and the conduct described below, Canoo violated Sections 17(a)(2) and (3) of the Securities Act, and Sections 13(a) and 14(a) of the Exchange Act and Rules 12b-20, 13a-1, 13a-11, 14a-3, and 14a-9 thereunder.

### Respondent

4.      Canoo is a Delaware corporation founded in 2017 with its principal place of business in Torrance, California. Canoo's primary business is design and production of EVs. From its founding in 2017 until December 2020, Canoo was privately held. Canoo announced a SPAC merger in August 2020, and became publicly traded on December 21, 2020. Canoo's common stock is registered with the Commission pursuant to Section 12(b) of the Exchange Act and is listed on the Nasdaq Global Select Market under the ticker GOEV.

---

[1]      The findings herein are made pursuant to Respondent's Offer of Settlement and are not binding on any other person or entity in this or any other proceeding.

**Facts**

**Canoo's Background and SPAC Transaction**

5.      Canoo was founded in November 2017 as "Evelozity" for the purpose of developing and bringing to market EVs. The company was initially privately held and funded by three individuals ("Initial Owners"), who invested approximately $325 million into Canoo. Beginning in 2019, however, Canoo's Initial Owners encouraged Canoo's management to seek other funding sources, and management engaged in several unsuccessful attempts to raise capital. By spring 2020, Canoo's cash on hand was low, and the company entered into a low cash burn mode for several months to preserve operating capital.

6.      In late June 2020, SPAC Company connected with Canoo to discuss a possible deal. The two parties signed an NDA in early July 2020 and began to exchange data and information. On July 17, 2020, the two parties signed an exclusive letter of intent for Canoo to merge into SPAC Company. Canoo and SPAC Company publicly announced the deal on August 18, 2020.

7.      The SPAC merger was completed on December 21, 2020, and Canoo began to trade on the Nasdaq Global Select Market under the ticker GOEV.

**Canoo's Engineering Pipeline and Revenue Projections**

8.      Between June and December 2020, Canoo developed and used a "Business Development Pipeline" of potential engineering services projects for Canoo to pursue. The purpose of the pipeline was to identify third parties that Canoo could provide engineering services to—and potentially generate revenue from.

9.      Beginning in July 2020, Canoo began to associate revenue projections with the engineering services pipeline: $120 million in fiscal year 2021 and $250 in fiscal year 2022. These represented 100% of Canoo's 2021 projected revenue and 75% of its 2022 projected revenue. Contemporaneous documents and communications demonstrate the projections were—by July 2020—derived almost exclusively from potential partnerships with two third-party companies: a European carmaker ("European Auto OEM") (original equipment manager) and a tech-focused company ("Tech Strategic"). The potential projects involved contract engineering and vehicle sales.

10.     Canoo maintained an Excel spreadsheet titled "Canoo Operating Model," which included the company's financial forecasts. A version from early July 2020 included the 2021 $120 million projection—attributing $100 million to the European Auto OEM and $20 million of the projection to the Tech Strategic. It also included 2022 revenue projections of $250 million, $230 million of which was attributed to the European Auto OEM and Tech Strategic.

11.     However, by mid-August 2020, discussions with the European Auto OEM and Tech Strategic indicated that the projects were unlikely to produce revenue in 2021 and 2022. The European Auto OEM project (which in the Canoo Operating Model constituted $100 million of the 2021 revenue projections and $150 of the 2022 revenue projections) hit significant hurdles by July 2020, when the European Auto OEM told Canoo that the work proposed was too costly and would be "barely acceptable" even if costs could be shared with other parties. Between July and November

3

2020, the European Auto OEM continued to reject Canoo's proposals, and finally in November 2020, it told Canoo a project was "unworkable." Canoo and the European Auto OEM never finalized an agreement.

12.     Also in August 2020, the Tech Strategic informed Canoo that the potential project would be paused because the scope of the required work had expanded, Canoo's proposal no longer made sense, and the Tech Strategic was considering other companies to partner with to develop electric vehicles. By October 2020, an internal Canoo tracking document showed the Tech Strategic project was on "hold."

13.     Although Canoo was in discussions with other companies about potential engineering services projects, none of the talks were in advanced stages and none supported revenue projections of $120 million in 2021 or $250 million in 2022.

14.     In early December 2020, Canoo began to pause or cancel negotiations with remaining potential engineering services partners.

15.     On December 14, 2020, Canoo held an internal Budget Review meeting, the purpose of which was to perform budgeting work for the following year and plan out cash burn. The slide deck attached to the meeting summary stated that Canoo would have "$0M expected revenue during 2021."

### Canoo's Statements Regarding its Projected Engineering Services Revenue

16.     At the same time that Canoo's discussions with possible strategic partners broke down, Canoo made a number of statements to investors projecting significant revenue for these future periods. Beginning with the first investor presentation that Canoo furnished to the Commission as an 8-K attachment on August 18, 2020 (the "August 18 Investor Presentation"), Canoo consistently emphasized the revenue-generating potential of its engineering services model. Defined as "[e]lectric vehicle concept design and engineering services for auto OEMs and other Strategics," Canoo claimed that its engineering services model was part of a "multi-phased approach to generate revenue" with the ability to generate revenue "today." Accordingly, Canoo touted that it had a "phased, de-risked go to market strategy resulting in immediate revenues" and that engineering services would "generate revenue that reduces the Company's overall execution risk."

17.     The August 18 Investor Presentation also stated that Canoo had "$120 million of projected revenue in 2021E" attributable to its pipeline of projects. It specifically called out—among others—"Delivery Contract Engineering" for the "European Auto OEM" and "Contract Engineering & Vehicle Sales" for the "Tech Strategic."

18.     On September 18, 2020, SPAC Company filed a Form S-4 with the Commission (the "September 18th S-4") that included information about Canoo's engineering services business—information provided by Canoo. Specifically, the September 18th S-4 stated that Canoo's current engineering services pipeline of projects was "supportive of a projected $120 million of revenue in 2021." The September 18th S-4 also included a $250 million projection for engineering services in 2022.

19.     Similar or identical statements regarding Canoo's 2021 and 2022 engineering services revenues appeared in numerous filings made with the Commission, including October 23, 2020 and November 25, 2020 amendments to SPAC Company's September 18th S-4, a September 24, 2020 Analyst Day Presentation (attached to a Form 8-K), a December 4, 2020 prospectus, Canoo's January 13, 2021 Form S-1 (the January 13th S-1"), and a January 25, 2021 prospectus. The September 18th S-4 registered 190,000,000 shares of common stock to be sold "[a]s soon as practicable after this registration statement becomes effective and on completion of the business combination." The January 13th S-1 registered 209,147,314 shares of common stock and 1,842,106 warrants to be sold "[f]rom time to time after the effective date of [the] registration statement."

20.     Despite the fact that discussion and negations with any potential engineering services partners had effectively ended by early December 2020, Canoo did not update its projections until March 2021, when, in preparation for filing its first Form 10-K as a public company, new leadership removed Canoo's engineering revenue projections from its public filings.

### Canoo Concealed Material Information from the SPAC Company and Misled Investors Regarding Potential Engineering Services Projects

21.     Pursuant to § 7.01(d) of the merger agreement between Canoo and the SPAC Company, Canoo was required to "promptly inform [SPAC Company]" of any material fact included in the registration statement that was no longer true. Despite this, Canoo did not communicate the negative engineering updates or their associated negative impact on 2021 and 2022 projected revenue to the SPAC Company.

### Undisclosed Payments to the Former Executive

22.     On November 8, 2019, two of Canoo's Initial Owners provided the Former Executive with a signed agreement to pay the Former Executive up to $1 million in exchange for his agreeing to remain in his role at Canoo. Between October 22 and 29, 2020, the two Initial Owners wired the Former Executive a combined $915,048. Discussing the payment, one of the Initial Owners wrote to the Former Executive, "we will honor our words to pay you" so that you "do your best in helping the company to complete the SPAC deal."

23.     On September 6, 2020, the Former Executive signed a Directors' and Executive Officers' Questionnaire in preparation for the SPAC Company's Form S-4 submission to the Commission, which represented among other things: (1) he did not have any contract or other arrangement (whether written or unwritten) relating to his employment at Canoo or the SPAC Company; (2) his compensation, cash and non-cash, earned with respect to the last fiscal year was $722,771.95; and, (3) his only other compensation was the payment of life insurance premiums by Canoo or SPAC Company and $36 from the Employee Assistance Program.

24.     Canoo and the SPAC Company subsequently made several filings with the Commission—the September 18th S-4 and October 23 and November 25 amendments, the December 4, 2020 prospectus, the January 13th S-1, and an April 29, 2021 proxy filing—that contained materially misstated executive compensation information regarding the Former Executive and that did not disclose the Former Executive's arrangement with Canoo's two Initial Owners, and,

after the payments were received in October 2020, also did not disclose the payments totaling $915,048.

## Violations

25.     As a result of the conduct described above, Canoo violated Section 17(a)(2) of the Securities Act, which makes it unlawful, in the offer or sale of securities, to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, and Section 17(a)(3) of the Securities Act, which, in the offer or sale of securities, proscribes any transaction, practice or course of business which operates or would operate as a fraud or deceit upon a purchaser of securities..

26.     Also as a result of the conduct described above, Canoo violated Section 13(a) of the Exchange Act and Rules 12b-20, 13a-1, and 13a-11 thereunder, which prohibit issuers from filing reports, including Forms 10-K and 8-K, that contain materially false or misleading information.

27.     In addition, as a result of the conduct described above, Canoo violated Section 14(a) of the Exchange Act and Rules 14a-3 and 14a-9 thereunder, which together prohibit solicitation of a proxy without furnishing the information specified by Schedule 14A, and the use of proxy statements containing materially false or misleading statements or omissions of material fact necessary to make statements made not misleading. No showing of scienter is required to establish violations of Section 14(a) of the Exchange Act and Rules 14a-3 and 14a-9 thereunder. *Gerstle v. Gamble-Skogmo, Inc.*, 478 F.2d 1281, 1299-1300 (2d Cir. 1973).

## Canoo's Remedial Efforts

28.     In determining to accept the Offer, the Commission considered remedial acts promptly undertaken by Respondent and cooperation afforded the Commission staff.

## IV.

In view of the foregoing, the Commission deems it appropriate and in the public interest to impose the sanctions agreed to in Respondent's Offer.

Accordingly, it is hereby ORDERED that:

A.     Pursuant to Section 21C of the Exchange Act and Section 8A of the Securities Act, Respondent cease and desist from committing or causing any violations and any future violations Sections 17(a)(2) and(3) of the Securities Act and Sections 13(a), and 14(a) of the Exchange Act and Rules 12b-20, 13a-1, 13a-11, 14a-3, and 14a-9 thereunder.

B.     Respondent shall pay a civil penalty of $1,500,000 to the Securities and Exchange Commission. The Commission may distribute civil money penalties collected in this proceeding if, in its discretion, the Commission orders the establishment of a Fair Fund pursuant to 15 U.S.C. § 7246, Section 308(a) of the Sarbanes-Oxley Act of 2002.  The Commission will hold funds paid

pursuant to this paragraph in an account at the United States Treasury pending a decision whether the Commission, in its discretion, will seek to distribute funds or, subject to Exchange Act Section 21F(g)(3), transfer them to the general fund of the United States Treasury. Payments shall be made in the following installments: $375,000 by August 31, 2023, $375,000 by October 31, 2023, $375,000 by January 31, 2024, and $375,000 and post order interest accrued by April 30, 2024. Payments shall be applied first to post order interest, which accrues pursuant to 31 U.S.C. 3717. Prior to making the final payment set forth herein, Respondent shall contact the staff of the Commission for the amount due. If Respondent fails to make any payment by the date agreed and/or in the amount agreed according to the schedule set forth above, all outstanding payments under this Order, including post-order interest, minus any payments made, shall become due and payable immediately at the discretion of the staff of the Commission without further application to the Commission.

Payment must be made in one of the following ways:

(1)     Respondent may transmit payment electronically to the Commission, which will provide detailed ACH transfer/Fedwire instructions upon request;

(2)     Respondent may make direct payment from a bank account via Pay.gov through the SEC website at http://www.sec.gov/about/offices/ofm.htm; or

(3)     Respondent may pay by certified check, bank cashier's check, or United States postal money order, made payable to the Securities and Exchange Commission and hand-delivered or mailed to:

Enterprise Services Center
Accounts Receivable Branch
HQ Bldg., Room 181, AMZ-341
6500 South MacArthur Boulevard
Oklahoma City, OK 73169

Payments by check or money order must be accompanied by a cover letter identifying Canoo as a Respondent in these proceedings, and the file number of these proceedings; a copy of the cover letter and check or money order must be sent to Nicholas Heinke, Associate Regional Director, Division of Enforcement, Securities and Exchange Commission, 1961 Stout Street, Suite 1700, Denver, CO 80294.

C.      Regardless of whether the Commission in its discretion orders the creation of a Fair Fund for the penalties ordered in this proceeding, amounts ordered to be paid as civil money penalties pursuant to this Order shall be treated as penalties paid to the government for all purposes, including all tax purposes. To preserve the deterrent effect of the civil penalty, Respondent agrees that in any Related Investor Action, it shall not argue that it is entitled to, nor shall it benefit by, offset or reduction of any award of compensatory damages by the amount of any part of Respondent's payment of a civil penalty in this action ("Penalty Offset"). If the court in any Related Investor Action grants such a Penalty Offset, Respondent agrees that it shall, within 30 days after entry of a final order granting the Penalty Offset, notify the Commission's counsel in this action and pay the

amount of the Penalty Offset to the Securities and Exchange Commission.  Such a payment shall not be deemed an additional civil penalty and shall not be deemed to change the amount of the civil penalty imposed in this proceeding.  For purposes of this paragraph, a "Related Investor Action" means a private damages action brought against Respondent by or on behalf of one or more investors based on substantially the same facts as alleged in the Order instituted by the Commission in this proceeding.

By the Commission.


Vanessa A. Countryman
Secretary