# Exhibit 17

CHRISTOPHER E. MARTIN (AZ Bar. No 018486)
martinc@sec.gov
SECURITIES AND EXCHANGE COMMISSION
1961 Stout Street, Suite 1700
Denver, Colorado 80294-1961
Telephone:   (303) 844-1000
Facsimile:   (303) 297-3529

Local Counsel
Charles E. Canter (Cal. Bar No. 263197)
canterc@sec.gov
SECURITIES AND EXCHANGE COMMISSION
444 S. Flower Street, Suite 900
Los Angeles, California 90071
Telephone:   (323) 965-3998
Facsimile:   (213) 443-1904

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, <br><br> Plaintiff, <br><br> v. <br><br> ULRICH KRANZ and PAUL BALCIUNAS, <br><br> Defendants. | Case No. 23-cv-06332 <br><br> **COMPLAINT AND JURY DEMAND** |

Plaintiff Securities and Exchange Commission (the "SEC"), for its Complaint against Defendants Ulrich Kranz ("Kranz") and Paul Balciunas ("Balciunas") (collectively "Defendants"), alleges as follows:

## JURISDICTION AND VENUE

1.     The SEC brings this action pursuant to authority conferred on it by Section 20(b) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77t(b)] and Sections 21(d) and 21(e) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C.

Complaint

§§ 78u(d) and 78u(e)]. The Court has jurisdiction over this action pursuant to Sections 20(b), 20(d), 20(e), and 22(a) of the Securities Act [15 U.S.C. §§ 77t(b), 77t(d), 77t(e), and 77v(a)] and Sections 21(d), 21(e), and 27(a) of the Exchange Act [15 U.S.C. §§ 78u(d), 78u(e), and 78aa(a)].

2.      Defendants, directly or indirectly, made use of the means or instruments of transportation or communication in interstate commerce, the means or instrumentalities of interstate commerce, or of the mails, in connection with the acts, practices, and courses of business set forth in this Complaint.

3.      Venue lies in this Court pursuant to Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)] and Section 27(a) of the Exchange Act [15 U.S.C. § 78aa(a)]. Defendants reside in the Central District of California. Certain of the acts, practices, transactions, and courses of business alleged in this Complaint also occurred within this judicial district, including that Defendants worked for Canoo Inc. ("Canoo" or the "Company"), which has its principal place of business within this judicial district in Torrance, California.

## SUMMARY

4.      This action involves improper conduct by defendants Ulrich Kranz, the former Chief Executive Officer of Canoo, a company that designs and produces electric vehicles ("EVs"), and Paul Balciunas, Canoo's former Vice President of Corporate Strategy and Chief Financial Officer. The Defendants' improper conduct relates to Canoo's disclosure, proxy, and reporting failures concerning hundreds of millions of dollars of unreasonable revenue projections, and with respect to Kranz specifically, nearly $1 million of undisclosed executive compensation. These failures began while Canoo was in the process of raising hundreds of millions of dollars from the investing public as part of a December 2020 transaction whereby Canoo merged into another company to become publicly traded.

5.      From August 2020 until March 2021, Canoo's financial projections, which it provided to investors and the SEC with both Kranz and Balciunas's awareness,

Complaint

included projected revenue for providing engineering services to other companies of $120 million for 2021 and $250 million for 2022. Kranz and Balciunas should have known that these projections were unreasonable because they had information showing that significant projects on which Canoo based its 2021 and 2022 revenue projections were unlikely to materialize.

6. On March 29, 2021, approximately three months after successfully raising hundreds of millions of dollars from the investing public, under the direction of Canoo's new Executive Chairman, Canoo announced that it would "deemphasize the originally stated contract engineering services line," and removed its revenue projections from its public filings. The day after Canoo announced it would not achieve any of the projected engineering services revenue, Canoo's stock price dramatically decreased by approximately 21%.

7. Additionally, in November 2019, Kranz entered into an agreement with two individuals who were significant investors in Canoo to receive up to $1 million in compensation related to his work at Canoo. In October 2020, Kranz received over $900,000 from these two individuals. As CEO of Canoo, Kranz was required to disclose compensation he received related to his work at Canoo. He failed to do so, which caused Canoo to make inaccurate executive compensation disclosures from September 2020 until April 2021.

8. By engaging in the conduct described in this Complaint, the Defendants are liable as follows and unless enjoined are likely to continue to violate the federal securities laws.

   a. Kranz violated Section 17(a)(3) of the Securities Act [15 U.S.C. § 77q(a)(3)] and Section 14(a) of the Exchange Act [15 U.S.C. § 78n(a)] and Rules 14a-3 and 14a-9 thereunder [17 C.F.R. §§ 240.14a-3 and 240.14a-9], and aided and abetted Canoo's violations of Section 13(a) of the Exchange Act [15 U.S.C. § 78m(a)] and Rules 12b-20, 13a-1, and 13a-11 thereunder [17 C.F.R. §§ 240.12b-20, 240.13a-1, and

Complaint

240.13a-11].

b. Defendant Balciunas violated Section 14(a) of the Exchange Act [15 U.S.C. § 78n(a)] and Rule 14a-3 thereunder [17 C.F.R. § 240.14a-3] and aided and abetted Canoo's violations of Section 13(a) of the Exchange Act [15 U.S.C. § 78m(a)] and Rule 13a-11 thereunder [17 C.F.R. § 240.13a-1].

9. The SEC seeks a final judgment: (a) permanently enjoining Defendants from violating the federal securities laws alleged in this Complaint; (b) ordering Balciunas to disgorge any ill-gotten gains he received, with prejudgment interest thereon, pursuant to Exchange Act Sections 21(d)(5) and (d)(7) [15 U.S.C. §§ 78u(d)(5) and 78u(d)(7)]; (c) ordering Kranz to pay civil money penalties pursuant to Section 20(d) of the Securities Act, [15 U.S.C. § 77t(d)], and ordering both Defendants to pay civil money penalties pursuant Section 21(d)(3) of the Exchange Act, [15 U.S.C. § 78u(d)(3)]; (d) prohibiting both Defendants pursuant to the Court's equitable authority from acting as officers or directors of any issuer that has a class of securities registered pursuant to Section 12 of the Exchange Act [15 U.S.C. § 78l] or that is required to file reports pursuant to Section 15(d) of the Exchange Act [15 U.S.C. § 78o(d)]; and (e) ordering any other and further relief the Court may deem just and proper.

## DEFENDANTS

10. **Ulrich Kranz** resides in Manhattan Beach, California. Kranz was the CEO of Canoo beginning in August 2019 and the "Special Advisor to the Executive Chairman" of Canoo beginning in October 2020. He resigned from Canoo in April 2021.

11. **Paul Balciunas** resides in Los Angeles, California. Balciunas was the Vice President of Corporate Development and CFO of Canoo from July 2020 until he resigned in March 2021.

## RELEVANT ENTITIES

12. **Canoo Inc.** is a Delaware corporation that designs and produces EVs. Its

Complaint

principal place of business is Torrance, California. Canoo registered its common stock with the SEC pursuant to Section 12(b) of the Exchange Act and the Nasdaq Global Security Market Company lists the Company's stock under the ticker "GOEV."

13. Canoo's predecessor, the **"SPAC Company"** was a Delaware corporation and special purpose acquisition company ("SPAC") that merged with Canoo on December 21, 2020, and thereafter ceased to exist independently. Until December 21, 2020, the SPAC Company filed the SEC filings discussed in this Complaint. After that date, Canoo made the relevant SEC filings.

## FACTS

### I. Canoo Background and the SPAC Transaction

14. Kranz and others founded Canoo as a private company in November 2017 for the purpose of developing and bringing to market EVs. Initially, three individuals (the "Initial Owners") funded the Company. Beginning in 2019, the Initial Owners encouraged Canoo's management to seek other funding sources, and management engaged in several unsuccessful attempts to raise capital. By spring 2020, Canoo's cash on hand was low, and the Company entered into a low cash burn mode for several months to preserve operating capital.

15. In late June 2020, the SPAC Company and Canoo discussed a possible deal to raise a substantial amount of capital for Canoo. The two parties signed an NDA in early July 2020 and exchanged data and information. On July 17, 2020, the two parties signed an exclusive letter of intent for Canoo to merge into the SPAC Company. Canoo and the SPAC Company publicly announced the deal on August 18, 2020, whereby the Company expected to receive approximately $629 million of gross proceeds, with approximately $306 million of this amount coming from SPAC Company investors and the remaining approximately $323 million coming from a fully committed common stock transaction (a private investment in public equity, or "PIPE", transaction) from institutional investors.

Complaint

16. Canoo completed the SPAC merger on December 21, 2020, and the next day began to trade on the Nasdaq Global Select Market under the ticker GOEV. On December 22, 2020, Canoo's common stock price closed at $18.89 a share.

17. Canoo's common stock presently trades for less than a dollar a share.

**II. Canoo's Engineering Services Pipeline and Projections**

18. Between June and December 2020, Canoo developed a pipeline of potential engineering services projects for the company to pursue. The purpose of the pipeline was to identify third parties that Canoo could provide engineering services to and generate revenue from providing such services.

19. Beginning in July 2020, Canoo began to project engineering services revenue of $120 million in fiscal year 2021 and $250 million in fiscal year 2022. This projected engineering services revenue represented 100% of Canoo's total 2021 projected revenue and 75% of its total 2022 projected revenue.

20. Certain internal Canoo documents and communications show that, by July 2020, Canoo's revenue projections came almost exclusively from potential engineering services partnerships with two third-party companies: a European carmaker and original equipment manager ("European Auto OEM"), and a technology-focused company ("Tech Strategic").

21. Canoo maintained an Excel spreadsheet titled "Canoo Operating Model," which included the Company's financial forecasts. A version from early July 2020 included the 2021 $120 million projection—attributing $100 million to the European Auto OEM and $20 million to Tech Strategic. It also included 2022 revenue projections of $250 million, $230 million of which Canoo attributed to the European Auto OEM and Tech Strategic collectively.

22. Kranz and Balciunas were responsible for Canoo's engineering services "pipeline" of potential projects and associated revenue projections. Kranz was the primary contact for several of Canoo's potential revenue-generating business partners,

Complaint

and his expertise with those relationships (and in the auto industry in general) was key to the development of the pipeline.

23. By mid-August 2020, discussions with the European Auto OEM and Tech Strategic indicated that the projects were unlikely to produce revenue in 2021 and 2022. The European Auto OEM project (which in the Canoo Operating Model constituted $100 million of the 2021 revenue projections and $150 of the 2022 revenue projections) hit significant hurdles by July 2020, when the European Auto OEM told Canoo—in an email that Kranz and Balciunas received—that the work proposed was too costly and would be "barely acceptable" even if costs could be shared with other parties. Between July and November 2020, the European Auto OEM continued to reject Canoo's proposals, and in November 2020 told Canoo a project was "unworkable." Canoo and the European Auto OEM never finalized an agreement.

24. Kranz and Balciunas received notice of these developments in July 2020 through November 2020 either directly from the European Auto OEM, or in updates from a junior Canoo employee.

25. Also in August 2020, Tech Strategic informed Canoo—in a phone conversation with Kranz and email sent to Balciunas—that the potential project would be paused because the scope of the required work had expanded, Canoo's proposal no longer made sense, and Tech Strategic was considering other companies to partner with to develop EVs. By October 2020, an internal Canoo tracking document showed the Tech Strategic project was on "hold."

26. In early December 2020, Canoo paused or cancelled negotiations with certain potential engineering services customers. Kranz and Balciunas were aware of these decisions, having been included in relevant email conversations during early December 2020.

27. Although Canoo was in discussions with other companies about potential engineering services projects in late 2020 and early 2021, none of the talks were in

Complaint

advanced stages. Kranz and Balciunas were aware of the status of Canoo's potential engineering services projects during late 2020 and early 2021.

### III. Canoo's Misstatements Regarding Projected Revenue

28. During and after the time that Canoo's discussions with possible engineering services customers broke down, which Kranz was directly aware of, Canoo made a number of false and misleading statements to investors projecting significant revenue for these future periods and emphasizing the revenue-generating potential of its engineering services model.

29. In the initial investor presentation that Canoo furnished to potential and eventual investors and the SEC as an attachment to its Form 8-K filed on August 18, 2020 (the "August Presentation"), Canoo claimed that its engineering services model was part of a "multi-phased approach to generate revenue" with the ability to generate revenue "today." Canoo stated that it had a "phased, de-risked go to market strategy resulting in immediate revenues" and that engineering services would "generate revenue that reduces the Company's overall execution risk."

30. The August Presentation also stated that Canoo had "$120 million of projected revenue in 2021" attributable to its engineering services projects. It specifically called out—among others—"Delivery Contract Engineering" for the "European Auto OEM" and "Contract Engineering & Vehicle Sales" for the "Tech Strategic."

31. Kranz and Balciunas helped prepare and present the August Presentation.

32. On September 18, 2020, SPAC Company filed a Form S-4 with the SEC (the "Form S-4") that included information about projected engineering services revenue initially calculated in the July 2020 version of Canoo's Operating Model—information that Kranz, Balciunas, and others at Canoo provided. The Form S-4 stated that Canoo's current engineering services pipeline of projects was "supportive of a projected $120 million of revenue in 2021," and included a $250 million projection for engineering services revenue in 2022.

Complaint

33. The Form S-4 registered 190,000,000 shares of common stock to be sold "[a]s soon as practicable after this registration statement becomes effective and on completion of the business combination."

34. Kranz and Balciunas were involved in preparing the July 2020 Canoo Operating Model that included information supporting the Form S-4's statements about Canoo's engineering services pipeline and revenue projections, knew that the SPAC Company was preparing, and ultimately filed, the Form S-4, and knew that the Form S-4 included statements regarding Canoo's engineering services pipeline and revenue projections.

35. Similar or identical statements regarding Canoo's 2021 and 2022 engineering services revenues appeared in numerous other filings made with the SEC and provided to the investing public. These filings include: October 23, 2020 and November 25, 2020 amendments to the Form S-4, a September 24, 2020 Analyst Day Presentation (attached to a Form 8-K), a December 4, 2020 prospectus, Canoo's January 13, 2021 Form S-1 (the "Form S-1"), and a January 25, 2021 prospectus.

36. The Form S-1 registered 209,147,314 shares of common stock and 1,842,106 warrants to be sold "[f]rom time to time after the effective date of [the] registration statement."

37. Kranz and Balciunas were involved in preparing the July 2020 Canoo Operating Model that formed the basis for these SEC filings' statements about Canoo's engineering services pipeline and revenue projections. Both knew that the SPAC Company was preparing and ultimately filed with the SEC statements regarding Canoo's engineering services pipeline and revenue projections.

38. Canoo did not update its projections in its SEC filings until March 2021, when, in preparation for filing its first Form 10-K as a public company, Canoo removed the engineering revenue projections from its public filings. In particular, on March 29, 2021, Canoo announced that it would "deemphasize the originally stated contract engineering services line," and removed its revenue projections from its public filings.

Complaint

The day after Canoo announced it would not achieve any of the projected engineering services revenue, Canoo's stock price decreased by approximately 21%.

39. Each of these statements regarding revenue projections was false and misleading because, during and while Canoo made these statements, discussions with the two primary relationships driving these projections (the European Auto OEM and the Tech Strategic) indicated that the projects were unlikely to produce revenue in 2021 and 2022.

40. Kranz and Balciunas knew or should have known that the statements were false. Given the status of the potential partnerships with the European Auto OEM and Tech Strategic at the time Canoo made the statements, it was unreasonable for Kranz and Balciunas to cause Canoo to project engineering services revenue of $120 million for 2021 and $250 million for 2022. Both Kranz and Balciunas knew or should have known that these two potential partnerships formed the basis for Canoo's 2021 and 2022 revenue projections, and both Kranz and Balciunas knew or should have known of the negative developments with the two potential partnerships that made the revenue projections unreasonable.

41. The statements regarding Canoo's revenue projections were material to investors who would want accurate revenue projections when making investment decisions about Canoo.

## IV. Kranz's Undisclosed Arrangement and Compensation

42. On November 8, 2019, two of Canoo's Initial Owners provided Kranz with a signed agreement to pay him up to $1 million in exchange for his agreeing to remain in his role at Canoo. One of the Initial Owners explained to Kranz, "[w]e will honor our words to pay you" so that you "do your best in helping the company to complete the SPAC deal."

43. Between October 22 and 29, 2020, the two Initial Owners wired Kranz $915,048.

Complaint

44.     On September 6, 2020, Kranz signed a Directors' and Executive Officers' Questionnaire ("Questionnaire") in preparation for the SPAC Company's filing its Form S-4. The Questionnaire represented, among other things that: (1) Kranz did not have any contract or other arrangement (whether written or unwritten) relating to his employment at Canoo or the SPAC Company; (2) his compensation, cash and non-cash, earned with respect to the last fiscal year was $722,771.95; and, (3) his only other compensation was the payment of life insurance premiums by Canoo or the SPAC Company and $36 from the Employee Assistance Program (his "Other Compensation").

45.     Kranz did not disclose the arrangement with the Initial Owners or the payment from the Initial Owners on the Questionnaire (or through any other means) to Canoo or the SPAC Company.

46.     Canoo's Form S-4 and October 23 and November 25, 2020 amendments, December 4, 2020 prospectus, Form S-1, and April 29, 2021 proxy filing listed Kranz' compensation as $722,771.95 and also listed the Other Compensation.

47.     The statements about Kranz's compensation were false and misleading. Those filings did not disclose Kranz's arrangement with Canoo's two Initial Owners, and, after the payments were received in October 2020, also did not disclose the payments totaling $915,048.

48.     Kranz should have known that the statements about his executive compensation in Canoo's SEC filings were false and misleading. Kranz knew about his arrangement with and payments from two of the Initial Owners and should have known that Canoo would use the information about his compensation, including the information requested in the Questionnaire, in its SEC filings. Kranz acted unreasonably by not providing Canoo with the required information about the arrangement and payments.

49.     Item 402 of Regulation S-K requires that public companies disclose certain compensation information for named executive officers. Section (a)(2) provides:

Complaint

> All compensation covered. This Item requires clear, concise and understandable disclosure of all plan and non-plan compensation awarded to, earned by, or paid to the named executive officers … by any person for all services rendered in all capacities to the registrant and its subsidiaries, unless otherwise specifically excluded from disclosure in this Item.

The disclosure requirements of Regulation S-K apply to registration statements under the Securities Act and Exchange Act, annual and other reports, and "any other documents required to be filed under the Exchange Act, to the extent provide in the forms and rules under that Act."

50. Canoo was required to disclose complete and accurate information regarding Kranz' executive compensation pursuant to Item 402 of Regulation S-K and such information was material to investors who were making investment decisions about Canoo. Reasonable investors would want to receive accurate information about a CEO's arrangements and payments related to the CEO's employment at a public company.

## V. Kranz Engaged in a "Practice or Course of Business" that Defrauded Investors.

51. Kranz engaged in a practice or course of business that defrauded investors in connection with Canoo's false and misleading statements regarding its projected revenues and Kranz's compensation.

52. Kranz also engaged in conduct that operated as a fraud upon investors when he failed to inform the SPAC Company that information in the Form S-4 was no longer accurate.

53. Pursuant to Section 7.01(d) of the merger agreement between Canoo and the SPAC Company, Canoo was required to "promptly inform [SPAC Company]" of any material fact included in the Form S-4 that was no longer accurate.

54. Kranz, on behalf of pre-merger Canoo, signed the merger agreement.

55. Kranz did not communicate the negative engineering services updates—notably, the developments involving the European Auto OEM and the Tech Strategic—

Complaint

or their negative impact on Canoo's projected 2021 and 2022 engineering services revenue to SPAC Company.

56. Kranz's also did not disclose the arrangement with the Initial Owners or the payment from the Initial Owners on the Questionnaire or, through any other means.

57. Kranz was negligent in taking these actions.

**VI. Kranz and Balciunas Violated Section 14(a) of the Exchange Act and Rule 14a-3 Thereunder; Kranz Also Violated Rule 14a-9.**

58. Section 14(a) of the Exchange Act and its related rules govern disclosure in materials used to solicit shareholders' votes in annual or special meetings held for the election of directors and the approval of other corporate action. Exchange Act Rule 14a-3 requires that each person solicited through a proxy solicitation must be provided with certain statements and information. Exchange Act Rule 14a-9 prohibits the solicitation of proxies by false or misleading statements.

59. Kranz violated Section 14(a) and each of these rules in connection with Canoo's false and misleading statements regarding projected revenues in 2021 and 2022, identified above, and Canoo's false and misleading statements regarding his compensation, also identified above.

60. As detailed above, Kranz's actions violating these provisions include: being involved in preparing the materials that supported false and misleading statements in the SEC filings regarding Canoo's engineering services pipeline and revenue projections, preparing and presenting the August Presentation, and not disclosing, on the Questionnaire or otherwise, the arrangement with the Initial Owners or the payment from the Initial Owners.

61. Kranz was negligent in taking these actions.

62. As a result of his actions, Canoo made statements, identified above, in materials used to solicit shareholders' votes in annual or special meetings held for the election of directors and the approval of other corporate action that failed to furnish the

Complaint

information required by Rule 14a-3 and that were false and misleading, in violation of Rule 14a-9.

63. Balciunas violated Section 14(a) and Rules 14a-3 in connection with Canoo's false and misleading statements regarding projected revenues in 2021 and 2022, identified above.

64. As detailed above, Balciunas's actions violating these provisions include: helping prepare the materials that supported false and misleading statements in the SEC filings regarding Canoo's engineering services pipeline and revenue projections and preparing and presenting the August Presentation.

65. Balciunas was negligent in taking these actions.

66. As a result of his actions, Canoo made statements, identified above, in materials used to solicit shareholders' votes in annual or special meetings held for the election of directors and the approval of other corporate action that failed to furnish the information required by Rule 14a-3.

**VII.** **Kranz and Balciunas Aided and Abetted Canoo's Violations of Section 13(a) of the Exchange Act and Rule 13a-11 Thereunder; Kranz Also Aided and Abetted Canoo's Violations of Rules 12b-20 and 13a-1.**

67. Section 13(a) of the Exchange Act and Rules 13a-1 and 13a-11 thereunder require the periodic reporting of information by companies with publicly traded securities, such as Canoo. Public companies must file periodic reports with the SEC, including annual reports (pursuant to Rule 13a-1) and current reports including Forms 8-K (pursuant to Rule 13a-11). Those reports must be factually accurate and not omit information that would otherwise make the information in the reports not misleading. Additionally, Exchange Act Rule 12b-20 provides that, in addition to the information expressly required to be included in a report, the company shall add such further material information as may be necessary to make the required statements, in light of the circumstances under which they are made, not misleading.

Complaint

68.     As alleged above, Canoo made multiple statements in annual and current reports that were false and misleading.

69.     For the reasons detailed above, Kranz assisted Canoo's false and misleading statements in current reports regarding projected revenues in 2021 and 2022, and Canoo's false and misleading statements in Canoo's 2021 annual report regarding his compensation. Among other things, Kranz helped prepare the July 2020 Canoo Operating Model that formed the basis for the false and misleading statements in the SEC filings regarding Canoo's engineering services pipeline and revenue projections and did not disclose, on the Questionnaire or otherwise, the arrangement with the Initial Owners or the payment from the Initial Owners on the Questionnaire.

70.     For the reasons detailed above, Balciunas assisted Canoo's false and misleading statements in current reports regarding projected revenues in 2021 and 2022. Among other things, Balciunas helped prepare the July 2020 Canoo Operating Model that formed the basis for the false and misleading statements in the SEC filings regarding Canoo's engineering services pipeline and revenue projections.

## VIII.  Balciunas Obtained Ill-Gotten Gains.

71.     Balciunas received a bonus of $7,500 in connection with the completion of the merger between Canoo and the SPAC Company, which occurred on December 21, 2020.

### CLAIMS FOR RELIEF

### FIRST CLAIM

**Violations of Section 17(a)(3) of the Securities Act [15 U.S.C. § 77q(a)(3)]**

**(Kranz)**

72.     The SEC re-alleges and incorporates by reference paragraphs 1 through 71 as though fully set forth herein.

73.     Kranz has, by engaging in the conduct set forth above, directly or indirectly, in the offer or sale of securities, by use of means or instrumentalities of interstate commerce or of the mails, engaged in transactions, practices, or courses of

Complaint

business which operated or would operate as a fraud or deceit upon purchasers of securities.

74.     By reason of the foregoing, Kranz violated, and, unless restrained and enjoined, will continue to violate, Section 17(a)(3) of the Securities Act.

## SECOND CLAIM

**Violations of Section 14(a) of the Exchange Act and Rules 14a-3 and 14a-9 Thereunder [15 U.S.C. § 78n(a) and 17 C.F.R. §§ 240.14a-3, 240.14a-9]**

**(Kranz)**

75.     The SEC re-alleges and incorporates by reference paragraphs 1 through 71 as though fully set forth herein.

76.     As a result of the conduct alleged herein, Kranz directly or indirectly, by use of mails, or the means or instrumentalities of interstate commerce or any facility of a national securities exchange, solicited proxies without furnishing each person solicited a proxy statement containing the information specified by the proxy rules, and used proxy statements containing statements which, at the time and in light of the circumstances under which they are made, were false or misleading with respect to a material fact, or omitted to state material facts necessary to make the statement therein not misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

77.     By reason of the foregoing, Kranz violated and, unless restrained and enjoined, will again violate Section 14(a) of the Exchange Act [15 U.S.C. § 78n(a)] and Rules 14a-3 and 14a-9 thereunder [17 C.F.R. §§ 240.14a-3, 240.14a-9].

## THIRD CLAIM

**Violations of Section 14(a) of the Exchange Act and Rule 14a-3 Thereunder [15 U.S.C. § 78n(a) and 17 C.F.R. §§ 240.14a-3]**

**(Balciunas)**

78.     The SEC realleges and incorporates by reference paragraphs 1 through 71 as through fully set forth herein.

Complaint

79. As a result of the conduct alleged herein, Balciunas, directly or indirectly, by use of mails, or the means or instrumentalities of interstate commerce or any facility of a national securities exchange, solicited proxies without furnishing each person solicited a proxy statement containing the information specified by the proxy rules.

80. By reason of the foregoing, Balciunas violated and, unless restrained and enjoined, will again violate Section 14(a) of the Exchange Act [15 U.S.C. § 78n(a)] and Rule 14a-3 thereunder [17 C.F.R. § 240.14a-3].

## FOURTH CLAIM

**Aiding and Abetting Canoo's Violations of Section 13(a) of the Exchange Act and Rules 12b-20, 13a-1, and 13a-11 Thereunder [15 U.S.C. § 78m(a) and 17 C.F.R. §§ 240.12b-20, 240.13a-1, and 240.13a-11]**

**(Kranz)**

81. The SEC realleges and incorporates by reference paragraphs 1 through 71 as though fully set forth herein.

82. Canoo, which is an issuer of securities registered pursuant to Section 12 of the Exchange Act, filed materially false and misleading annual and current reports with the SEC in violation of Section 13(a) of the Exchange Act and Rules 12b-20, 13a-1, and 13a-11 thereunder.

83. As a result of the conduct alleged herein, Kranz aided and abetted Canoo's violations of Section 13(a) of the Exchange Act and Rules 12b-20, 13a-1, and 13a-11 thereunder by knowingly or recklessly providing substantial assistance to Canoo.

84. By reason of the foregoing, Kranz, directly or indirectly, aided and abetted and, unless restrained and enjoined, will again aid and abet violations of Section 13(a) of the Exchange Act [15 U.S.C. § 78m(a)] and Rules 12b-20, 13a-1, and 13a-11 thereunder [17 C.F.R. §§ 240.12b-20, 240.13a-1, and 240.13a-11].

Complaint

## FIFTH CLAIM

<mark>**Aiding and Abetting Canoo's Violations of Section 13(a) of the Exchange Act and Rule 13a-11 Thereunder [15 U.S.C. § 78m(a) and 17 C.F.R. § 240.13a-11]**</mark>
**(Balciunas)**

85. The SEC realleges and incorporates by reference paragraphs 1 through 71 as though fully set forth herein.

86. Canoo, which is an issuer of securities registered pursuant to Section 12 of the Exchange Act, filed materially false and misleading annual and current reports with the SEC in in violation of Section 13(a) of the Exchange Act and Rule and 13a-11 thereunder.

87. As a result of the conduct alleged herein, Balciunas aided and abetted Canoo's violations of Section 13(a) of the Exchange Act and Rule 13a-11 thereunder by knowingly or recklessly providing substantial assistance to Canoo.

88. By reason of the foregoing, Balciunas, directly or indirectly, aided and abetted and, unless restrained and enjoined, will again aid and abet violations of Section 13(a) of the Exchange Act [15 U.S.C. § 78m(a)] and Rule 13a-11 thereunder [17 C.F.R. § 240.13a-11].

## RELIEF SOUGHT

**WHEREFORE,** the SEC respectfully requests that this Court:

### I.

Find that the Defendants committed the violations alleged in this Complaint;

### II.

Enter an injunction, in a form consistent with Rule 65 of the Federal Rules of Civil Procedure, permanently restraining and enjoining each of the Defendants from violating, directly or indirectly, the laws and rules they are alleged to have violated in this Complaint;

### III.

Pursuant to Sections 21(d)(5) and 21(d)(7) of the Exchange Act [15 U.S.C.

Complaint

§§ 78u(d)(5) and 78u(d)(7)], order Defendant Balciunas to disgorge all ill-gotten gains, together with pre-judgment interest, derived from the activities set forth in this Complaint;

**IV.**

Order Kranz to pay civil money penalties pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and both Defendants to pay civil money penalties pursuant to Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)]; and

**V.**

Issue an order, pursuant to the Court's equitable powers, barring Defendants from acting as officers or directors of any issuer that has a class of securities registered pursuant to Section 12 of the Exchange Act [15 U.S.C. § 78l] or that is required to file reports pursuant to Section 15(d) of the Exchange Act [15 U.S.C. § 78o(d)].

**VI.**

Grant such other and further relief as this Court may deem just and proper.

**JURY DEMAND**

The SEC demands a trial by jury on all claims so triable.

Respectfully submitted, August 4, 2023.

_s/ Charles E. Canter_
Charles Canter
Local Counsel

Christopher E. Martin

*Attorneys for Plaintiff*
*Securities and Exchange Commission*

Complaint