POMERANTZ LLP
Jennifer Pafiti (SBN 282890)
Jeremy A. Lieberman (pro hac vice)
Murielle J. Steven Walsh (pro hac vice)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone:  (212) 661-1100
jpafiti@pomlaw.com
jalieberman@pomlaw.com
mjsteven@pomlaw.com

*Co-Lead Counsel for Lead Plaintiff & the Proposed Class*

— additional counsel on signature page —

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SAMUEL BLAKE, Individually and On Behalf of All Others Similarly Situated,<br><br>             Plaintiffs,<br><br>  v.<br><br>CANOO INC., TONY AQUILA, ULRICH KRANZ, and PAUL BALCIUNAS,<br><br>             Defendants. | **Case No. 2:21-CV-02873-FMO-JPR**<br><br>(**Consolidated**)<br><br>Case No. 2:21-CV-02879-FMO-JPR<br>Case No. 2:21-CV-03080-FMO-JPR<br><br>**LEAD PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE CONSOLIDATED THIRD AMENDED CLASS ACTION COMPLAINT** |

OPPOSITION TO MOTION TO DISMISS:
Consol. Case No. 2:21-CV-02873 FMO JPR

# TABLE OF CONTENTS

INTRODUCTION ..............................................................................................................1

STATEMENT OF FACTS ...............................................................................................2

    A.    Background ..........................................................................................2

    B.    Defendants misrepresented Canoo's business. ....................................2

    C.    Defendants misled investors after Canoo began trading.......................5

    D.    Canoo announced it was abandoning its business plan...........................5

    E.    The SEC confirmed Defendants' fraud. ...............................................6

ARGUMENT ...................................................................................................................6

    A.    Applicable Legal Standards and Governing Law ................................6

    B.    The TAC Sufficiently Alleges Falsity....................................................7

        1.    Defendants made materially misleading statements concerning Canoo's engineering services Pipeline. .....................................7

            a.    The SEC settlement documents are relevant. ..................8

            b.    None of the false statements are forward-looking..........10

        2.    Defendants made material misrepresentations about Canoo's go-to-market strategy. .............................................................12

        3.    None of the identified statements are opinions or puffery. ......14

        4.    Defendants' pre-Class Period statements are relevant and actionable. ......................................................................15

    C.    The TAC Adequately Alleges Scienter..................................................16

        1.    Kranz and Balciunas knew facts contradicting their claims.....16

        2.    Aquila's admissions and the core operations doctrine support a strong inference of scienter......................................................17

        3.    Plaintiff's motive allegations also support scienter. .................19

        4.    Balciunas' resignation and the SEC's investigation support scienter. ..............................................................................20

        5.    The lack of stock trading allegations and the lock-up agreements do not negate scienter. ...........................................21

    D.    The Totality of the Allegations Demonstrates Scienter.......................22

    E.    The TAC Adequately Alleges the Individual Defendants Were Makers of the False Statements....................................................................22

i

OPPOSITION TO MOTION TO DISMISS:
Consol. Case No. 2:21-CV-02873 FMO JPR

F.      The TAC Sufficiently Alleges a §20(a) Claim. ...................................23

CONCLUSION ...........................................................................................................23

L.R. 11-6.2 CERTIFICATE OF COMPLIANCE .....................................................25

OPPOSITION TO MOTION TO DISMISS:
Consol. Case No. 2:21-CV-02873 FMO JPR

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abdo v. Fitzsimmons*,
2018 WL 11220494 (N.D. Cal. May 22, 2018)..................................................22

*Anderson v. Peregrine Pharmas., Inc.*,
2013 WL 4780059 (C.D. Cal. Aug. 23, 2013) ...........................................16, 17

*Anschutz Corp. v. Merrill Lynch & Co. Inc.*,
785 F. Supp. 2d 799 (N.D. Cal. 2011)...............................................................8

*Azar v. Yelp, Inc.*,
2018 WL 6182756 (N.D. Cal. Nov. 27, 2018) .................................................18

*Berson v. Applied Signal Tech., Inc.*,
527 F.3d 982 (9th Cir. 2008) ...........................................................................18

*Borteanu v. Nikola Corp.*,
2023 WL 1472852 (D. Ariz. Feb. 2, 2023) ......................................................15

*Broderick v. PricewaterhouseCoopers LLP*,
169 F. App'x 496 (9th Cir. 2006)....................................................................20

*City of N. Miami Beach Police Officers' & Firefighters' Ret. Plan v.
Nat'l Gen. Holdings Corp.*,
2021 WL 212337 (S.D.N.Y. Jan. 21, 2021), *aff'd sub nom. Town
of Davie Police Officers Ret. Sys. v. City of N. Miami Beach Police
Officers' & Firefighters' Ret. Plan*, 2021 WL 5142702 (2d Cir.
Nov. 5, 2021) .....................................................................................................9

*City of Sunrise Firefighters' Pension Fund v. Oracle Corp.*,
527 F.Supp.3d 1151 (N.D. Cal. 2021)..............................................................21

*Cutler v. Kirchner*,
696 F. App'x 809 (9th Cir. 2017)....................................................................11

*Davoli v. Costco Wholesale Corp.*,
    854 F. App'x 116 (9th Cir. 2021) ........................................................................19

*E. Ohman J v. NVIDIA Corp.*,
    81 F.4th 918 (9th Cir. 2023) .................................................................................7

*Erica P. John Fund, Inc. v. Halliburton Co.*,
    563 U.S. 804 (2011).................................................................................................7

*ESG Cap. Partners, LP v. Stratos*,
    828 F.3d 1023 (9th Cir. 2016) .............................................................................16

*Fecht v. Price Co.*,
    70 F.3d 1078 (9th Cir. 1995) ...............................................................................13

*Feyko v. Yuhe Int'l, Inc.*,
    2013 WL 816409 (C.D. Cal. Mar. 5, 2013)........................................................13

*Flynn v. Sientra, Inc.*,
    2016 WL 3360676 (C.D. Cal. June 9, 2016) ......................................................21

*Friedman v. Endo Int'l PLC*,
    2018 WL 446189 (S.D.N.Y. Jan. 16, 2018) .......................................................14

*Ganino v. Citizens Utils. Co.*,
    228 F.3d 154 (2d Cir. 2000) ..................................................................................7

*Glazer Cap. Mgmt., L.P. v. Forescout Techs., Inc.*,
    63 F.4th 747 (9th Cir. 2023) .......................................................................*passim*

*Glazer Cap. Mgmt., LP v. Magistri*,
    549 F.3d 736 (9th Cir. 2008) ...........................................................................9, 18

*Hefler v. Wells Fargo & Co.*,
    2018 WL 1070116 (N.D. Cal. Feb. 27, 2018) .....................................................22

*In re 2U, Inc. Sec. Class Action*,
    2021 WL 3418841 (D. Md. Aug. 5, 2021) ..........................................................10

*In re Alphabet, Inc. Sec. Litig.*,
    1 F.4th 687 (9th Cir. 2021), *cert. denied sub nom. Alphabet Inc. v.
    Rhode Island*, 142 S. Ct. 1227 (2022) .........................................................11, 21

OPPOSITION TO MOTION TO DISMISS:
Consol. Case No. 2:21-CV-02873 FMO JPR

*In re Amgen Sec. Litig.*,
  544 F. Supp. 2d 1009 (C.D. Cal. 2008) ................................................................23

*In re Apple Inc. Sec. Litig.*,
  2020 WL 6482014 (N.D. Cal. Nov. 4, 2020) .......................................................19

*In re Banc of Cal. Sec. Litig.*,
  2017 WL 3972456 (C.D. Cal. Sept. 6, 2017) .......................................................20

*In re Boeing Sec. Litig.*,
  40 F. Supp. 2d 1160 (W.D. Wash. 1998) .............................................................21

*In re Cyclink Sec. Litig.*,
  178 F. Supp. 2d 1077 (N.D. Cal. 2001) .................................................................8

*In re Downey Sec. Litig.*,
  2009 WL 2767670 (C.D. Cal. Aug. 21, 2009) .....................................................21

*In re Fastly, Inc. Sec. Litig.*,
  2021 WL 5494249 (N.D. Cal. Nov. 23, 2023) .....................................................17

*In re Fusion-io, Inc. Sec. Litig.*,
  2015 WL 661869 (N.D. Cal. Feb. 12, 2015) ........................................................17

*In re Hansen Nat. Corp. Sec. Litig.*,
  527 F. Supp. 2d 1142 (C.D. Cal. 2007) ...............................................................23

*In re Immune Response Sec. Litig.*,
  375 F. Supp. 2d 983 (S.D. Cal. 2005)..................................................................16

*In re Montage Tech. Grp. Ltd. Sec. Litig.*,
  78 F. Supp. 3d 1215 (N.D. Cal. 2015)..................................................................18

*In re Quality Sys., Inc. Sec. Litig.*,
  865 F.3d 1130 (9th Cir. 2017) ..............................................................................10

*In re Splunk Inc. Sec. Litig.*,
  592 F. Supp. 3d 919 (N.D. Cal. 2022)..................................................................10

*In re Stac Elecs. Sec. Litig.*,
  89 F.3d 1399 (9th Cir. 1996) ..................................................................................7

v
OPPOSITION TO MOTION TO DISMISS:
Consol. Case No. 2:21-CV-02873 FMO JPR

*In re UBS Auction Rate Sec. Litig.*,
    2010 WL 2541166 (S.D.N.Y. June 10, 2010) ........................................................9

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*,
    2017 WL 66281 (N.D. Cal. Jan. 4, 2017).............................................................20

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*,
    328 F. Supp. 3d 963 (N.D. Cal. 2018)..................................................................23

*In re XL Fleet Corp. Sec. Litig.*,
    2022 WL 493629 (S.D.N.Y. Feb. 17, 2022) .......................................................10

*In re Zoom Sec. Litig.*,
    No. 20-CV-02353-JD, 2022 WL 484974 (N.D. Cal. Feb. 16, 2022).................17

*Ingram v. VIVUS, Inc.*,
    591 F. App'x 592 (9th Cir. 2015)........................................................................13

*Khoja v. Orexigen Therapeutics, Inc.*,
    899 F.3d 988 (9th Cir. 2018) ..............................................................................23

*Kovtun v. VIVUS, Inc.*,
    2012 WL 4477647 (N.D. Cal. Sept. 27, 2012) ...................................................13

*Lipton v. Pathogenesis Corp.*,
    284 F.3d 1027 (9th Cir, 2002) ............................................................................20

*Livid Holdings Ltd v. Salomon Smith Barney, Inc.*,
    416 F.3d 940 (9th Cir. 2005) ..............................................................................10

*Matrixx Initiatives, Inc. v. Siracusano*,
    563 U.S. 27 (2011).................................................................................................6

*May v. KushCo Holdings, Inc.*,
    2020 WL 6587533 (C.D. Cal. Sept. 25, 2020) ...................................................21

*Mulligan v. Impax Lab'ys, Inc.*,
    36 F. Supp. 3d 942 (N.D. Cal. 2014)...................................................................14

OPPOSITION TO MOTION TO DISMISS:
Consol. Case No. 2:21-CV-02873 FMO JPR

*Nguyen v. Endologix, Inc.*,
  962 F.3d 405 (9th Cir. 2020) ......................................................................21, 22

*Oaktree Principal Fund V, LP v. Warburg Pincus LLC*,
  2017 WL 3187688 (C.D. Cal. Jan. 17, 2017) .....................................................22

*Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*,
  575 U.S. 175 (2015)..............................................................................................14

*Prodanova v. H.C. Wainwright & Co., LLC*,
  993 F.3d 1097 (9th Cir. 2021) ......................................................................17, 18

*Red Oak Fund, L.P. v. Digirad Corp.*,
  2013 WL 5740103 (Del. Ch. Oct. 23, 2013) ......................................................13

*Reed v. Amira Nature Foods, Ltd.*,
  2016 WL 6571281 (C.D. Cal. July 18, 2016).....................................................22

*Schueneman v. Arena Pharms., Inc.*,
  840 F.3d 698 (9th Cir. 2016) ..............................................................................16

*ScripsAmerica, Inc. v. Ironridge Glob. LLC*,
  119 F. Supp. 3d 1213 (C.D. Cal. 2015) ................................................................9

*Sgarlata v. Paypal Holdings, Inc.*,
  2018 WL 6592771 (N.D. Cal. Dec. 13, 2018).....................................................23

*Shenwick v. Twitter, Inc.*,
  282 F. Supp. 3d 1115 (N.D. Cal. 2017)...............................................................11

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007)...........................................................................................6, 16

*Veltex Corp. v. Matin*,
  2010 WL 11549762 (C.D. Cal. June 25, 2010).....................................................9

*Washtenaw Cnty. Empls. Ret. Sys. v. Celera Corp.*,
  2012 WL 3835078 (N.D. Cal. Sept. 4, 2012).....................................................11

*Wochos v. Tesla, Inc.*,
  985 F.3d 1180 (9th Cir. 2021) .............................................................................12

*Yourish v. Cal. Amplifier*,
    191 F.3d 983 (9th Cir. 1999) ............................................................................17

**Statutes**

15 U.S.C. § 78t(a) .........................................................................................7, 23

Private Securities Litigation Reform Act of 1995 ...............................................6, 10

Securities Exchange Act of 1934 ...............................................................6, 7, 9, 23

**Rules and Regulations**

Fed. R. Civ. P. 9(b) ...............................................................................................6

OPPOSITION TO MOTION TO DISMISS:
Consol. Case No. 2:21-CV-02873 FMO JPR

Lead Plaintiff Vladi Shaulov ("Lead Plaintiff" or "Shaulov") submits this opposition to the Motion to Dismiss (the "Motion") the Consolidated Third Amended Class Action Complaint (ECF No. 125) ("TAC") filed by Defendants Canoo Inc. ("Canoo" or the "Company"), Tony Aquila, Ulrich Kranz, and Paul Balciunas (collectively, "Defendants").[1]

## **INTRODUCTION**

Defendants orchestrated a scheme to take Canoo public by merging (the "Merger") with Hennessy Capital Acquisition Corp. IV ("HCAC"), a special purpose acquisition company ("SPAC"). Defendants sold investors on the promise of a unique business model, which included engineering services they claimed was generating "immediate" pre-sale revenue that "de-risked" the business, and an asset-light subscription sales model that provided high margins while removing barriers for consumers looking for electric vehicles. Defendants repeatedly claimed that their current engineering services pipeline supported revenues of $120 million for 2021. However, *their own internal documents* show that no later than December 14, 2020, Defendants knew that Canoo expected "$0 revenues" for 2021. As Defendants later admitted, their entire business model was under intense review no later than September 2020, *months* before the merger was effectuated. As Aquila belatedly admitted, the Class Period statements were "premature," "aggressive," "presumptuous" and did not meet the "standard of representation to the public markets."

Defendants' string of misrepresentations enabled them to obtain shareholder approval for the Merger on December 21, 2020 and to file for a required shelf offering on January 13, 2021. Kranz was paid an undisclosed $1 million bonus tied

---

[1] Unless otherwise indicated, internal quotation marks and citations are omitted, and emphasis is added.

1

OPPOSITION TO MOTION TO DISMISS:
Consol. Case No. 2:21-CV-02873 FMO JPR

to closing the deal, and Balciunas received a $7,500 bonus. Defendants continued to mislead the market until March 29, 2021, when they unexpectedly announced Canoo were deemphasizing its contract engineering division and jettisoning its subscription model. Canoo's stock price cratered as a result.

The TAC cures any prior deficiencies identified by the Court and is replete with allegations raising a cogent and compelling inference that Defendants materially misled investors. Defendants' Motion speaks in broad generalizations, failing to adequately identify the statements they challenge. As set forth herein, the TAC alleges actionable securities fraud, and the Motion should be denied in full.

## STATEMENT OF FACTS

### A.    Background

HCAC became a publicly traded SPAC on March 5, 2019. ¶44.[2] The SPAC's purpose was to merge with a private company such that the resulting business combination would be publicly traded. ¶¶42, 62. HCAC had until September 2020 to complete a merger, or it would be required to cash out its investors at roughly their initial investment. ¶46. A month before the deadline, HCAC announced it had identified a merger target and requested an extension. ¶¶48-49. The target, Canoo, was a pre-market electric vehicle manufacturer. ¶¶40-41. Its officers were Kranz (CEO), Balciunas (CFO), and Aquila was an investor slated to serve on its Board. ¶¶33-35. The Merger was subject to HCAC shareholder approval. ¶¶50, 53.

### B.    Defendants misrepresented Canoo's business.

On August 18, 2020, HCAC filed with the SEC a proxy statement explaining the proposed Merger. An accompanying investor presentation encouraged HCAC

---

[2] Cites to "¶" refer to the TAC.

OPPOSITION TO MOTION TO DISMISS:
Consol. Case No. 2:21-CV-02873 FMO JPR

investors to approve the Merger by emphasizing Canoo's unique go-to-market strategy featuring three revenue streams. ¶50.

The first key component was engineering services revenue. ¶¶50, 69-70. During an August 18, 2020 investor call, Kranz stated that engineering services was "already making money," and Balciunas said it "is a very important part of our overall strategy and it's a great way for us to pool revenues early and de-risk the Company's strategy as a whole." ¶¶64-65. Balciunas added: "*Currently* in our pipeline, we have $120 million of projected revenue in 2021, which consists of a couple of projects that are in the advanced stages of negotiation." ¶66. The expected revenue was attributed to a "European Auto OEM" and a "Tech Strategic." ¶68.

Internal documents and communications obtained in the SEC investigation show that by this time talks with the European Auto OEM and Tech Strategic indicated that the projects were unlikely to produce revenue in 2021. ¶145. The European Auto OEM had informed Canoo its proposed project was too expensive, and Tech Strategic told Canoo the scope of the work no longer made sense. *Id.*

In September 2020, Aquila, who had concerns about the viability of the business from day one, initiated a multi-million-dollar "deep dive" into its viability. ¶52. This included reviewing Canoo's "various market penetration strategies (like selling its Skateboard Technology as a standalone product versus selling a full vehicle versus offering a monthly subscription model)." ¶170.

On September 15, 2020, Kranz and Balciunas participated in an industry conference call where Kranz reiterated Canoo's commitment to the business model and repeated claims about engineering services generating immediate revenues. ¶73. The accompanying presentation claimed that "significant contract revenue [is] expected in 2021." ¶74. On September 18, 2020, HCAC filed a Form S-4 urging shareholders to vote in favor of the Merger because of Canoo's go-to-market

3

OPPOSITION TO MOTION TO DISMISS:
Consol. Case No. 2:21-CV-02873 FMO JPR

strategy, its three-pronged business approach, and its engineering services pipeline. ¶53.

On October 19, 2020, Aquila became Chairman. ¶160. By that time, Canoo's internal documents showed the Tech Strategic project was "on hold." ¶145. Through November 2020, Canoo's proposals to the European Auto OEM were repeatedly rejected as "unworkable." ¶145. Yet, on October 27, 2020 and November 27, 2020, HCAC filed amendments to its Form S-4 containing nearly identical misrepresentations about Canoo's business plan. ¶54.

On December 4, 2020, HCAC filed its Definitive Proxy for the Merger, describing again in nearly identical terms Canoo's go-to-market strategy, saying: engineering services "offers a unique opportunity to generate immediate revenues in advance of the offering of our first vehicles" that would be offered "through a consumer subscription model." ¶¶77-81, 85. It also represented that the subscription model would 1) result in "a compelling return on equity, recurring and consistent cash flow and an estimated margin of approximately four times that of a one-time sale"; and 2) "help reduce the barriers to entry for consumers looking to drive an EV" while providing Canoo with a "distinct opportunity for recurring revenue and a unique profit margin profile." ¶¶82, 86. According to Canoo, the "subscription business further benefits from [Canoo's] asset-light model" of using third-party manufacturers. ¶¶83-84, 87.

However, by early December 2020, Canoo had begun ending negotiations with potential engineering services partners. ¶¶145-46. A slide presented at an internal budget review meeting on December 14, 2020 showed "*$0M expected revenue during 2021*." ¶145. Around that time, Canoo concluded its "deep dive" and received "several reports" with "detailed analysis" on the issues. ¶¶169-71.

OPPOSITION TO MOTION TO DISMISS:
Consol. Case No. 2:21-CV-02873 FMO JPR

**C.   Defendants misled investors after Canoo began trading.**

On December 21, 2020, shareholders approved the Merger, and Canoo's stock began trading. ¶90. In a press release announcing the Merger's closure, Aquila expressed commitment to Canoo's go-to-market strategy. ¶91. The following day, Canoo filed an 8-K referring investors to the Definitive Proxy, which contained misleading descriptions of Canoo's business plan and pipeline. ¶57. The Merger raised $629 million in gross proceeds. ¶15.

On January 13, 2021, Canoo filed a preliminary prospectus in support of a shelf offering required under the Merger's terms. ¶96. On January 25, 2021, Canoo filed its definitive prospectus. ¶110. Both documents repeated nearly identical misrepresentations regarding Canoo's supposed current pipeline and reaffirmed Canoo's commitment to their stated business plan. ¶¶96-110. Defendants, however, knew or recklessly disregarded that the revenue projections were baseless and that there were substantial doubts about Canoo's business plan. *See* ¶¶145-57.

**D.   Canoo announced it was abandoning its business plan.**

On March 29, 2021, Canoo announced its fourth quarter and full year 2020 financial results and held an investor conference call. ¶¶18, 111–12. Aquila unexpectedly led the earnings call, informing investors that Balciunas had resigned and Kranz could not participate. ¶113. Aquila then informed investors Canoo was "deemphasiz[ing]" engineering services (¶116) and planned to construct a mega microfactory instead of utilizing contract manufacturing. ¶117. Aquila also revealed Canoo was dumping the subscription model to instead focus on business-to-business sales. ¶118.

When pressed by analysts, Aquila admitted the new plan was "a contradiction" and that investors were "showed a different model." ¶¶121, 127. He also admitted to his long-held doubts about the business plan and disclosed the deep

5

OPPOSITION TO MOTION TO DISMISS:
Consol. Case No. 2:21-CV-02873 FMO JPR

dive. ¶¶121, 125. Aquila admitted that Canoo's prior public statements "weren't at our standard of representation to the public markets." ¶123.

Canoo's stock price nose-dived 21%, with some analysts cutting target prices by more than half. *See, e.g.*, ¶¶133–37, 183.

**E.     The SEC confirmed Defendants' fraud.**

An SEC investigation ensued, and on March 30, 2023, Canoo announced it had reached a settlement in principle with the SEC. ¶¶140-41. On August 4, 2023, the SEC issued an Order detailing findings from its multi-year investigation. ¶¶144-47. The SEC found Canoo made false and misleading statements to investors projecting significant revenue for future periods and emphasizing the revenue-generating potential of engineering services. *See* ¶146. The same day, the SEC filed a Complaint against Kranz and Balciunas, alleging that they had direct awareness through internal corporate documents and communications of Canoo's engineering services pipeline collapse and that they had accepted undisclosed executive compensation and improper bonuses for completing the Merger. ¶¶144-57.

## ARGUMENT

**A.     Applicable Legal Standards and Governing Law**

To survive a motion to dismiss, a complaint "need only allege 'enough facts to state a claim to relief that is plausible on its face.'" *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 45 n.12 (2011). The court must accept all well-pled factual allegations as true, draw all reasonable inferences in plaintiff's favor, and determine whether the plaintiff may be entitled to relief under any reasonable reading of the complaint. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 320-22 & n.4 (2007).

Exchange Act claims are subject to a heightened pleading standard under Rule 9(b) and the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), and

to state a 10(b) claim, a complaint must allege "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 810 (2011).

Materiality "necessarily depends on all relevant circumstances of the particular case." *Ganino v. Citizens Utils. Co.*, 228 F.3d 154, 162 (2d Cir. 2000). It is reversible error to dismiss a complaint on materiality grounds unless the alleged misstatements "are so obviously unimportant to a reasonable investor that reasonable minds could not differ on the question of their importance." *Id.*; *In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1405 (9th Cir. 1996).

A Section 20 claim requires an underlying 10(b) claim and an allegation that the defendant controlled the 10(b) violator. 15 U.S.C. § 78t(a).

## B. The TAC Sufficiently Alleges Falsity.

"Falsity is alleged when a plaintiff points to defendant's statements that directly contradict what the defendant knew at the time." *E. Ohman J v. NVIDIA Corp.*, 81 F.4th 918, 928 (9th Cir. 2023). For pleading purposes, "[f]alsity is subject to a particularity requirement and the *reasonable inference* standard of plausibility set out in *Twombly* and *Iqbal*." *Glazer Cap. Mgmt., L.P. v. Forescout Techs., Inc.*, 63 F.4th 747, 766 (9th Cir. 2023) (emphasis in original).

### 1. Defendants made materially misleading statements concerning Canoo's engineering services Pipeline.

The TAC plausibly alleges that Defendants repeatedly assured investors that Canoo's current engineering services pipeline was supportive of $120 million in 2021, when they knew that was untrue. ¶¶66, 81, 98, 145-46. Kranz and Balciunas were personally responsible for the pipeline and communicated by both phone and

7

OPPOSITION TO MOTION TO DISMISS:
Consol. Case No. 2:21-CV-02873 FMO JPR

email with potential partners. ¶150. As a result of these communications, Defendants knew (i) by mid-August 2020, discussions with the two companies forming the basis for the $120 million in 2021 revenue were collapsing; (ii) by October 2020, Canoo's internal spreadsheet tracking the potential pipeline showed the Tech Strategic project was on "hold"; and (iii) in November 2020, Tech Strategic continued to reject Canoo's proposals and the European Auto OEM told Canoo a project was "unworkable." ¶¶75, 145. By early December 2020, discussions with alternative third parties were paused or cancelled. ¶145. On December 14, 2020, Canoo held an internal Budget Review meeting that included a slide show stating Canoo would have "*$0M expected revenue during 2021*." ¶145.

Yet, Canoo continued to emphasize engineering services and the $120 million in expected revenues. *See* ¶81 (Definitive Proxy touting Canoo's engineering services pipeline) ¶92 (December 22, 2020 Form 8-K referring investors to statements from the Definitive Proxy); ¶98 (January 13, 2021 Prospectus stating "our current pipeline in [engineering services] is supportive of a projected $120 million of revenue in 2021"). These claims are in direct contradiction to known facts.

### a.    The SEC settlement documents are relevant.

The TAC's allegations are derived from Canoo's internal documents and communications, which the SEC relied upon in concluding that Canoo had made materially misleading statements and violated the federal securities laws. *See, e.g.*, ¶¶150. Defendants do not and cannot dispute the authenticity of Canoo's own internal documents, which are inherently reliable.

Thus, Defendants' suggestion that Plaintiffs may not rely on the SEC Order is baseless. Courts routinely find that "[r]egulatory investigations and settlements may be relevant to issues in [the] case," *Anschutz Corp. v. Merrill Lynch & Co. Inc.*, 785 F. Supp. 2d 799, 821 (N.D. Cal. 2011); *In re Cyclink Sec. Litig.*, 178 F. Supp.

OPPOSITION TO MOTION TO DISMISS:
Consol. Case No. 2:21-CV-02873 FMO JPR

2d 1077, 1083 (N.D. Cal. 2001) ("The court concludes that these allegations, especially when combined with the other transactions detailed in the SEC complaint, provide strong circumstantial evidence that [defendant] was deliberately reckless or acted with conscious misconduct . . . ."); *City of N. Miami Beach Police Officers' & Firefighters' Ret. Plan v. Nat'l Gen. Holdings Corp.*, 2021 WL 212337, at *5 (S.D.N.Y. Jan. 21, 2021) ("[A]llegations derived from the consent orders are thus akin to those taken from 'news clippings or public testimony,' which other courts have persuasively explained are valid sources to draw from."), *aff'd sub nom. Town of Davie Police Officers Ret. Sys. v. City of N. Miami Beach Police Officers' & Firefighters' Ret. Plan*, 2021 WL 5142702 (2d Cir. Nov. 5, 2021).

Defendants' authority does not support otherwise. *See* ECF No. 130-1 ("Br.") at 8. In *Glazer Cap. Mgmt., LP v. Magistri*, 549 F.3d 736, 748-49 (9th Cir. 2008), the Court rejected the plaintiff's argument that settlement agreements "create[d] a strong inference of scienter" because the admissions "were largely legal conclusions" and there was "nothing in either settlement agreement that would support the conclusion that [defendant] had actual knowledge of the violations."[3] Here, the SEC cites documents and communications showing Defendants' actual knowledge of facts contradicting their public statements.

---

[3] *See also ScripsAmerica, Inc. v. Ironridge Glob. LLC*, 119 F. Supp. 3d 1213, 1263 (C.D. Cal. 2015) (SEC order not probative because it related to allegations of acting as an unregistered broker dealer and made no mention of fraud or market manipulation); *Veltex Corp. v. Matin*, 2010 WL 11549762, at *2 (C.D. Cal. June 25, 2010) (SEC allegations not probative of scienter because they pertained to the preparation of a Rule 504 letter for a different client, not the Rule 504 letters at issue in the case); *In re UBS Auction Rate Sec. Litig.*, 2010 WL 2541166, at *19 n.11 (S.D.N.Y. June 10, 2010) (failing to allege actionable false statements because the "deceptive" practices were fully disclosed, which was not inconsistent with an SEC settlement regarding those practices under §15(c) of the Exchange Act).

OPPOSITION TO MOTION TO DISMISS:
Consol. Case No. 2:21-CV-02873 FMO JPR

### b.    None of the false statements are forward-looking.

Defendants argue that their claims were inactionable forward-looking statements protected by the PSLRA safe harbor. Not so. Defendants repeatedly claimed their "current" pipeline "is" supportive of $120 million for 2021, which is an actionable statement of current fact. *See Forescout*, 63 F.4th at 774 (statement that pipeline was "large, healthy and continuing to grow" was not forward-looking ); *In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130, 1144 (9th Cir. 2017) (growing pipeline statement was misleading because it was undermined by witness accounts); *In re XL Fleet Corp. Sec. Litig.*, 2022 WL 493629, at *4 (S.D.N.Y. Feb. 17, 2022) ("[T]he Complaint alleges, with particularity, facts showing that the pipeline figures were exaggerated and inflated without sufficient basis"); *In re 2U, Inc. Sec. Class Action*, 2021 WL 3418841, at *10–11 (D. Md. Aug. 5, 2021) (statements about pipeline were materially misleading by omitting "any reference to the negative enrollment projections").

Even if Defendants' pipeline statements were considered forward-looking, the safe harbor does not protect them because Defendants had "actual knowledge" the statements were misleading, and the statements were not accompanied by sufficient cautionary language. *In re Splunk Inc. Sec. Litig.*, 592 F. Supp. 3d 919, 946 (N.D. Cal. 2022); *see also In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d at 1149 (a forward-looking statement "not accompanied by adequate cautionary language" will be protected under the safe harbor "if the speaker did not have 'actual knowledge' that the statement was false or misleading").

The Ninth Circuit requires a "stringent showing" before dismissal on the pleadings is warranted under the cautionary language prong of the PSLRA safe harbor. *See Livid Holdings Ltd v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 947-48 (9th Cir. 2005). Risk warnings must be clear enough that "reasonable minds could

not disagree that the challenged statements were not misleading." *Shenwick v. Twitter, Inc.*, 282 F. Supp. 3d 1115, 1133 (N.D. Cal. 2017). In "the context of the safe harbor: cautionary language is not 'meaningful' if it discusses as a mere *possibility* a risk that has already materialized." *Forescout*, 63 F.4th at 781.

Here, Defendants only made generalized statements about "risks and *uncertainties*," which they claim include "factors that *could* cause actual results to differ includ[ing] the ability of Canoo to execute its business model." Br. at 12-13. Defendants also said that "Canoo *currently expects* to add contract engineering revenue in 2021 and 2022, which may occur later or not at all." *Id.* at 13. Each warning is meaningless because at the time, Defendants did not expect to add contract engineering revenue in 2021 or 2022. *See Cutler v. Kirchner*, 696 F. App'x 809, 813 (9th Cir. 2017); *Washtenaw Cnty. Empls. Ret. Sys. v. Celera Corp.*, 2012 WL 3835078, at *4 (N.D. Cal. Sept. 4, 2012) ("[S]afe harbor cannot protect cautionary statements made with superior knowledge that some of the potential perils identified have in fact been realized.").

Canoo's warnings were repeated nearly *verbatim* from August 2020 through January 2021 despite receiving additional material adverse information about the viability of engineering services and the overall business model, bolstering the conclusion the warnings were not meaningful. *E.g.*, ECF Nos. 131-1 at iii-iv, 4-5, 7-40; 131-6 at 35-80; 131-7 at 35-80; 131-8 at 37-83; 131-9 at 37-83; 131-10 at iii-iv, 4-5, 7-40; *Forescout*, 63 F.4th at 780 ("Our conclusion is bolstered by the fact that Defendants did not meaningfully update the risk disclosure after the May 8, 2020, phone call to reflect the new development that Advent was reconsidering the transaction."); *In re Alphabet, Inc. Sec. Litig.*, 1 F.4th 687, 702 (9th Cir. 2021) (failure to update risk factors bolstered finding that statements were misleading), *cert. denied sub nom. Alphabet Inc. v. Rhode Island*, 142 S. Ct. 1227 (2022).

OPPOSITION TO MOTION TO DISMISS:
Consol. Case No. 2:21-CV-02873 FMO JPR

Defendants' reliance on *Wochos v. Tesla, Inc.*, 985 F.3d 1180, 1192 (9th Cir. 2021) is misplaced. *See* Br. at 11-12, 14. In *Tesla*, the Ninth Circuit recognized that "any announced 'objective' for 'future operations' *necessarily* reflects an implicit assertion that the goal is achievable based on current circumstances." *Tesla*, 985 F.3d at 1192 (emphasis in original). The Ninth Circuit further stated that "one cannot declare a goal without implicitly or explicitly stating that it is achievable." *Id.* Defendants' representations that Canoo's "current pipeline" was supportive of future revenue falsely indicated to investors that the goal was "achievable" but, by mid-December 2020, internal documents indicated the pipeline had collapsed to $0.

### 2. Defendants made material misrepresentations about Canoo's go-to-market strategy.

The TAC also sufficiently alleges that Defendants' statements about their "go-to-market" strategy were false when made. On December 22, 2020, months after Defendants had begun an undisclosed deep dive into the strategy's viability, Defendants referred investors to claims in the Definitive Proxy that Canoo "has established a multi-faceted go-to-market strategy … substantially expanding its total addressable markets and providing the upside of multiple growth opportunities while diversifying its business and limiting risk exposure to any single source of revenue." ¶¶78, 79, 92. Defendants continued to tout engineering services as a key component of their business plan as late as January 25, 2021, even though Canoo's engineering service pipeline had collapsed by December 2020. ¶110.

Investors were blindsided by the dramatic change. Throughout the Class Period, Defendants emphasized the importance of the plan and their commitment to it, while only warning investors of boilerplate risks relating to the plan's *execution*. Such warnings were a far cry from disclosing that Canoo was spending tens of millions of dollars to evaluate its viability. Indeed, the market's shocked reaction

12

OPPOSITION TO MOTION TO DISMISS:
Consol. Case No. 2:21-CV-02873 FMO JPR

shows investors were not apprised of the specific risks of change. *See* ¶133 (analyst reporting "4Q2020 Results Were OK; Complete Change In Direction Was Not"); ¶135 (the change "reflects a departure from its prior approach, which the company called an 'asset-light, flexible manufacturing strategy'"); ¶137 (BoA analyst: "the change introduces further risk around the company's ability to execute in a timely fashion").

Contrary to Defendants' suggestion, Canoo's radical change in business strategy did not need to be a board ratified *fait accomplis* to trigger disclosure duties. Br. at 19. Defendants knew the pipeline collapsed and that day one concerns compelled a deep dive into the business strategy well before the March 2021 call. Given this knowledge, Defendants were obligated to disclose the investigation[4] into Canoo's business given Aquila's day one concerns or refrain from continuing to reaffirm their commitment to the business strategy. They did neither.[5]

---

[4] The omitted facts in *Red Oak Fund, L.P. v. Digirad Corp.*, 2013 WL 5740103, at *17 (Del. Ch. Oct. 23, 2013) – where the court held the company did not have to disclose that the board was considering whether to adopt a plan to protect net losses for tax purposes because such discussions constituted a "day-to-day" corporate function – are hardly comparable to here, where there was a deep dive into the fundamental viability of Canoo's business model.

[5] *Kovtun v. VIVUS, Inc.*, 2012 WL 4477647, at *18 (N.D. Cal. Sept. 27, 2012) is distinguishable because there was no indication that the lower-level employees engaging in discussions about safety issues reported the issues to the individual defendants. *Id.* Thus, on review, the Ninth Circuit found the complaint did "not give rise to a plausible inference that it is substantially likely that a reasonable investor would have viewed that information as significantly altering the total mix of information the defendants made available about [the drug's] safety." *Ingram v. VIVUS, Inc.*, 591 F. App'x 592, 593 (9th Cir. 2015). It is well-settled that "[m]ateriality is rarely appropriate to decide at the motion to dismiss stage." *Feyko v. Yuhe Int'l, Inc.*, 2013 WL 816409, at *5 (C.D. Cal. Mar. 5, 2013); *Fecht v. Price Co.*, 70 F.3d 1078, 1080 (9th Cir. 1995) (materiality assessments are "peculiarly ones for the trier of fact").

13

OPPOSITION TO MOTION TO DISMISS:
Consol. Case No. 2:21-CV-02873 FMO JPR

*Forescout* is instructive. In *Forescout*, defendants stated that they "look forward to completing our pending" merger with an acquiring company and "[w]e [are] currently expect the merger" to close. *Forescout*, 63 F.4th at 763, 779. Before making the statement, the defendants had received notice from the acquiring company that it "was considering not closing the merger." *Id.* at 779. The Ninth Circuit held defendants' statements were misleading because they omitted that the acquiror was "reconsidering." *Id.* The court further found that it did not matter whether Defendants still believed the merger could close because their public statements did not "fairly align[]" with the information "in the issuer's possession at the time." *Id.* Here, Defendants similarly created an expectation that Canoo was committed to a specific, three-pronged business strategy while concealing facts that did not fairly align with those claims. *See also Friedman v. Endo Int'l PLC*, 2018 WL 446189, at \*6 (S.D.N.Y. Jan. 16, 2018) (finding duty to disclose where a company "'hyped' a specific plan, thereby inducing investors to believe that alternative plans were excluded").

### 3. None of the identified statements are opinions or puffery.

Defendants lump together several statements they incorrectly claim are inactionable opinions and/or puffery but do little to explain their contention. Br. at 14-15. Opinion statements, even if literally accurate, may be rendered misleading by the omission of a material fact. *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175, 186-87 (2015); *Mulligan v. Impax Lab'ys, Inc.*, 36 F. Supp. 3d 942, 966 (N.D. Cal. 2014) ("[T]here is a difference between enthusiastic statements amounting to general puffery and opinion-based statements that are anchored in misrepresentations of existing facts.").

Further, attaching a moniker of "we believe," "we currently expect," or "we look forward to" does not allow a speaker to create an affirmative impression" that

14
OPPOSITION TO MOTION TO DISMISS:
Consol. Case No. 2:21-CV-02873 FMO JPR

fails to "fairly align with information in the issuers possession at the time." *Forescout*, 63 F.4th at 778-79.

The statements Defendants claim are inactionable (*see* Br. at 14-15): 1) emphasize the importance of engineering services revenue and Canoo's ability to de-risk its business plan by generating revenue before selling a single vehicle (¶¶65, 78-79, 81, 92); 2) tout the benefits of the subscription model, including claims that it expanded the addressable market and created the opportunity to generate revenue after the initial sale (¶¶72, 78-79, 86-87, 92, 101-05, 107-08); and 3) express commitment to the plan. ¶91. Defendants used these misrepresentations to sell the Merger and the shelf-offering to investors, who relied on said statements to assess the risk and benefits of investing. ¶79. Even if considered opinions, the statements identified concrete benefits of the strategy but failed to accurately convey Canoo's collapsed pipeline or their lack of commitment to the strategy.

### 4. Defendants' pre-Class Period statements are relevant and actionable.

The pre-Class Period statements commenced Defendants' campaign to dupe investors into approving the Merger. ¶¶64-75. These statements themselves are misleading and are, at minimum, relevant to damages. *See, e.g.*, *Borteanu v. Nikola Corp.*, 2023 WL 1472852, at *4-6 (D. Ariz. Feb. 2, 2023) (statements made before shares are offered to public because "inflation caused by the company's misstatement is 'baked into the security price'"). Moreover, Defendants pre-Class Period misrepresentations contained within the Definitive Proxy were specifically referred to and adopted in Defendants' SEC filings during the Class Period. ¶¶92, 96, 110. Accordingly, Plaintiff has adequately alleged falsity.

OPPOSITION TO MOTION TO DISMISS:
Consol. Case No. 2:21-CV-02873 FMO JPR

**C.    The TAC Adequately Alleges Scienter.**

Scienter encompasses not only "intent to deceive, manipulate, or defraud, but also deliberate recklessness." *Schueneman v. Arena Pharms., Inc.*, 840 F.3d 698, 705 (9th Cir. 2016). In evaluating scienter, "the court's job is not to scrutinize each allegation in isolation" but to assess them all "holistically" and determine whether they "collectively[] give rise to a strong inference of scienter." *Tellabs Inc.*, 551 U.S. at 326. "The inference that the defendant acted with scienter need not be irrefutable . . . or even the most 'plausible of competing inferences.'" *Id.* at 324. Rather, the plaintiff need only "provide a narrative of fraud—facts which, if true, substantiate an explanation at least as plausible as a nonfraudulent alternative." *ESG Cap. Partners, LP v. Stratos*, 828 F.3d 1023, 1035 (9th Cir. 2016).

**1.    Kranz and Balciunas knew facts contradicting their claims.**

Kranz and Balciunas made statements "when they knew facts suggesting the statements were inaccurate or misleadingly incomplete," which "is classic evidence of scienter." *In re Immune Response Sec. Litig.*, 375 F. Supp. 2d 983, 1022 (S.D. Cal. 2005); *see also Anderson v. Peregrine Pharmas., Inc.*, 2013 WL 4780059, at *8 (C.D. Cal. Aug. 23, 2013) ("[C]ourts in the Ninth Circuit have found scienter adequately alleged when the complaint supported an inference that the defendants had actual knowledge of facts contradicting statements.").

The TAC alleges with specificity that Defendants knew Canoo's engineering services was unlikely to produce any revenue in either 2021 or 2022 when they told investors the current pipeline supported $120 million in 2021 revenue. ¶¶10-11. At all times, Kranz and Balciunas knew Canoo expected to derive its revenue "almost exclusively" from two companies: European Auto OEM and Tech Strategic as they were in direct contact with both. ¶¶145, 150. Yet in July 2020, European Auto OEM emailed them to advise that "Canoo's proposed work was too costly and in August

16

OPPOSITION TO MOTION TO DISMISS:
Consol. Case No. 2:21-CV-02873 FMO JPR

2020, Tech Strategic informed them that "the proposed project was being paused." ¶150. Between July and November 2020, European Auto OEM repeatedly notified Kranz and Balciunas it was rejecting Canoo's proposals, and in November 2020 informed them the project was unworkable. ¶150. By early December 2020, Kranz and Balciunas knew that Canoo had paused or cancelled negotiations with other potential engineering services Customers and internal forecasts showed $0 expected revenue. *Id*. These allegations demonstrate scienter.[6]

### 2.    Aquila's admissions and the core operations doctrine support a strong inference of scienter.

Aquila's admitted he had concerns about Canoo's business model from the start and apologized for "presumptuous" public statements that did not meet the standards for public disclosure. ¶¶9, 120-27. This is compelling evidence of his scienter. *See In re Zoom Sec. Litig.*, 2022 WL 484974, at *3-4 (N.D. Cal. Feb. 16, 2022) (finding CEO's apology for misuse of term, coupled with allegations regarding his role and knowledge of issue supported scienter); *see also Yourish v. Cal. Amplifier*, 191 F.3d 983, 996 (9th Cir. 1999) (finding "a complaint can establish that a statement was false when made by alleging [a] later statement by the defendant along the lines of 'I knew it all along'").[7]

In addition, Defendants' roles in Canoo's core operations supports their scienter. "The core operations theory . . . presumes that 'corporate officers have knowledge of the critical core operation of their companies.'" *Prodanova v. H.C.*

---

[6] *In re Fastly, Inc. Sec. Litig.*, 2021 WL 5494249, at *16 (N.D. Cal. Nov. 23, 2023) is inapposite because, unlike here, there were no allegations supporting the defendants' actual knowledge of the falsity of their statements.

[7] Unlike defendants' "sobering revelation" in *In re Fusion-io, Inc. Sec. Litig.*, 2015 WL 661869, at *18 (N.D. Cal. Feb. 12, 2015), that a prior opportunity could not be completed because it became "too expensive," Aquila's admissions speak directly to the inaccuracy of the Class Period statements. *See* ¶123.

OPPOSITION TO MOTION TO DISMISS:
Consol. Case No. 2:21-CV-02873 FMO JPR

*Wainwright & Co., LLC*, 993 F.3d 1097, 1111 (9th Cir. 2021). Core operations allegations can "support a strong inference of scienter" when: (1) "they, along with other allegations, support a cogent and compelling inference of scienter," (2) "they are themselves particular and suggest that the defendants had actual access to the disputed information," and (3) "the nature of the relevant fact is of such prominence that it would be absurd to suggest that management was without knowledge of the matter." *Prodanova*, 993 F.3d at 1111; *See also Magistri,* 549 F.3d at 744 ("[T]here could be circumstances in which a company's public statements were so important and so dramatically false that they would create a strong inference that at least *some* corporate officials knew of the falsity upon publication."); *Azar v. Yelp, Inc*., 2018 WL 6182756, at *20 (N.D. Cal. Nov. 27, 2018) (allegations showing that local advertising program was "a central component of Yelp's operations" and was "prominent enough that it would be absurd to suggest that top management was unaware of the" adverse facts).[8]

It would be absurd to suggest that Aquila – a board member and CEO of the Company – was unaware of the pipeline issues. Beginning in December 2020, he was in charge of "the Company's long-term strategy and product and business roadmap," Canoo expected to derive its revenue "almost exclusively" from potential partnerships with European Auto OEM and Tech Strategic, and communications and internal documents showed that the pipeline had collapsed before the Class Period.

---

[8] *See also Berson v. Applied Signal Tech., Inc.*, 527 F.3d 982, 987, 989 (9th Cir. 2008) (finding it "hard to believe that [the CEO and CFO] would not have known about stop-work orders that allegedly halted tens of millions of dollars of the company's work"); *In re Montage Tech. See also In re Montage Tech. Grp. Ltd. Sec. Litig.*, 78 F. Supp. 3d 1215, 1227 (N.D. Cal. 2015) ("it would be absurd to suggest" that management did not know their largest distributor was a related party, where, *inter alia*, their transactions accounted for 71% of the company's revenue, they shared a phone number and office space, and former employees understood it to be part of the company).

18
OPPOSITION TO MOTION TO DISMISS:
Consol. Case No. 2:21-CV-02873 FMO JPR

¶¶145, 150, 160. Given Aquila's responsibilities, as well as the significance of the pipeline projects to the Company's prospective revenue, it would be absurd to suggest that Aquila was not aware of, or did not have access to information concerning, the pipeline collapse. [9]

It also defies logic that Defendants were oblivious to a multi-million-dollar investigation into the Company's business strategy triggered by Aquila's "serious concerns." *See, e.g.*, ¶52. If Kranz and Balciunas (the CEO and CFO) did not know about an investigation that costs tens of millions of dollars conducted by a "world-leading business consulting firm" analyzing all aspects of Canoo's go-to-market strategy, the only inference to be drawn is they were willfully blind. *See Davoli v. Costco Wholesale Corp.*, 854 F. App'x 116, 117 n.1 (9th Cir. 2021) (describing "willful blindness" as "a species of deliberate recklessness").

### 3. Plaintiff's motive allegations also support scienter.

Motive to defraud is not required to prove scienter. *See In re Apple Inc. Sec. Litig.*, 2020 WL 6482014, at *13 (N.D. Cal. Nov. 4, 2020). However, compelling motives are alleged here. Completing the Merger was necessary to "raise hundreds of millions of dollars for cash strapped Canoo and allow it to become a publicly traded company, thereby giving Defendants – who controlled Canoo – access to more capital-raising options and creating liquidity for their substantial stock holdings." ¶8. Kranz personally stood to gain $1 million upon consummation of the Merger,[10] and Balciunas also received a bonus. ¶¶153, 156. Each of them also stood

---

[9] Contrary to Defendants' contention that the Court already rejected the deep dive allegations (Br. at 16), the Court did not even mention it, let alone in the context of evaluating scienter. ECF No. 113. Regardless, the TAC adds significant new details regarding the timing and materiality of the deep dive.

[10] Plaintiffs alleged this payment "motivated him to ensure the merger closed." TAC at 37; ¶153 ("'We will honor our words to pay you' so that you 'do your best in

OPPOSITION TO MOTION TO DISMISS:
Consol. Case No. 2:21-CV-02873 FMO JPR

to profit from incentive awards tied to stock price levels. ¶¶164-68.[11] Defendants were motivated to misrepresent Canoo's prospects after the Merger to effectuate the shelf offering, which they were obligated to commence promptly and which "consist[ed] largely of stock held by insiders and early investors." ¶¶17, 58. These allegations, together with allegations that the Individual Defendants knew or deliberately disregarded facts contradicting Defendants' false statements, support scienter.[12]

### 4. Balciunas' resignation and the SEC's investigation support scienter.

Balciunas resigned the same week the Company revealed it was abandoning its previously hyped go-to market strategy and was soon followed by an SEC investigation. ¶¶4, 113, 140. This further bolsters the compelling inference of fraud, particularly given Aquila's admissions. *See In re Banc of Cal. Sec. Litig.*, 2017 WL 3972456, at *8 (C.D. Cal. Sept. 6, 2017) (resignation that overlapped with an announcement of an SEC investigation was "one more piece to the scienter puzzle"); *see also In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 2017 WL 66281, at *14-15 (N.D. Cal. Jan. 4, 2017) (resignations combined with apologies evidence of scienter).

---

helping the company complete the SPAC.'"). *Broderick v. PricewaterhouseCoopers LLP*, 169 F. App'x 496, 499 (9th Cir. 2006), where the plaintiffs "offer[ed] no evidence indicating PWC possessed the required mental state," is therefore inapposite.

[11] The fact that Canoo's stock did not reach the level to trigger the stock incentive awards before the fraud was revealed does not negate that the stock incentive awards still provided them with some motivation to complete the merger.

[12] Defendants' reliance on *Lipton v. Pathogenesis Corp.*, 284 F.3d 1027, 1038 (9th Cir, 2002) is unavailing because, unlike here, the complaint in that case relied solely on "generalized assertions of motive, without more."

OPPOSITION TO MOTION TO DISMISS:
Consol. Case No. 2:21-CV-02873 FMO JPR

### 5. The lack of stock trading allegations and the lock-up agreements do not negate scienter.

Insider selling allegations "are not needed where, as here, other allegations in the complaint raise a strong inference of scienter." *In re Alphabet, Inc. Sec. Litig.*, 1 F.4th at 707; *see also Flynn v. Sientra, Inc.*, 2016 WL 3360676, at \*15 (C.D. Cal. June 9, 2016) ("Defendants' suggestion that the lack of insider stock sales . . . negates scienter is contrary to controlling case law.").[13] Defendants contend it would be illogical to inflate Canoo's stock and then reveal corrective information before they could sell their own shares (Br. 16-17), but these allegations are entirely logical because concealing information to "buy time" or "avoid or delay" the impact of the concealed information is probative of scienter. *In re Alphabet, Inc. Sec. Litig.*, 1 F. 4th at 706-07; *see also In re Boeing Sec. Litig.*, 40 F. Supp. 2d 1160, 1175-76 (W.D. Wash. 1998) (inferring scienter where defendants "conceal[ed] the true extent of its production problems" to keep the company's stock attractive to shareholders voting to approve the merger). Further, Kranz and Balciunas personally profited. ¶153.

Defendants' reliance on *Nguyen v. Endologix, Inc.*, 962 F.3d 405, 415 (9th Cir. 2020) is unavailing because, unlike here, the complaint had no allegations explaining why the defendants "would rather keep the stock price high for a time and then face the inevitable fallout." *See City of Sunrise Firefighters' Pension Fund v. Oracle Corp.*, 527 F.Supp.3d 1151, 1185 (N.D. Cal. 2021) (distinguishing *Nguyen* because unlike in *Nguyen*, the plaintiff alleged the defendants engaged in a fraudulent scheme to buy themselves time). Moreover, unlike in *Nguyen*, the TAC

---

[13] Defendants' cases are unpersuasive. *See May v. KushCo Holdings, Inc.*, 2020 WL 6587533, at \*9 (C.D. Cal. Sept. 25, 2020) (finding absence of stock sale allegations "undercut" scienter allegations, not negated them); *In re Downey Sec. Litig.*, 2009 WL 2767670, at \*7-14 (C.D. Cal. Aug. 21, 2009) (because allegations did not support an inference of scienter, there was no strong inference of scienter for the lack of stock sales to negate).

alleges Defendants knew information contradicting their public statements. *See Nguyen*, 962 F.3d at 419.

### D.     The Totality of the Allegations Demonstrates Scienter.

Defendants' effort to address the totality of the allegations is little more than a claim that they did nothing wrong because the Board had not approved any changes until after the statements were made. Br. at 19. This Defendants' argument ignores the most compelling narrative drawn from the allegations: that Defendants had access to information contradicting their public statements and intentionally concealed it.

### E.     The TAC Adequately Alleges the Individual Defendants Were Makers of the False Statements.

The TAC is not based on improper group pleading (Br. at 19-20) because it alleges each Defendants' role in the fraud.[14] *E.g.*, ¶¶64-67, 72-73, 91, 96. The TAC goes beyond corporate titles and alleges Aquila and Balciunas signed SEC filings (¶96); Kranz and Balciunas made misrepresentations during investor calls (¶¶64-67); and per the SEC's investigation, Kranz and Balciunas knowingly supplied misleading information about Canoo to HCAC for incorporation into their SEC filings (¶152), adequately identifying Defendants as the makers of the statements. *See, e.g.*, *Abdo v. Fitzsimmons*, 2018 WL 11220494, at *10 (N.D. Cal. May 22, 2018) ("[O]ne who signs a document is the maker of statements within that document.");[15] *Oaktree Principal Fund V, LP v. Warburg Pincus LLC*, 2017 WL 3187688, at *6

---

[14] Accordingly, Defendants' reliance on *Reed v. Amira Nature Foods, Ltd.*, 2016 WL 6571281 (C.D. Cal. July 18, 2016), is unpersuasive.

[15] Defendants' own authority supports this. *See Hefler v. Wells Fargo & Co.*, 2018 WL 1070116, at *9 (N.D. Cal. Feb. 27, 2018) (plaintiffs failed to adequately allege "ultimate authority" where, *inter alia*, they failed to allege the defendants "signed any SEC filings").

OPPOSITION TO MOTION TO DISMISS:
Consol. Case No. 2:21-CV-02873 FMO JPR

(C.D. Cal. Jan. 17, 2017) ("Carney may be liable as the 'maker' of all his statements on the May 2013 call . . . .").

### F.    The TAC Sufficiently Alleges a §20(a) Claim.

By alleging a primary violation of §10(b) and Defendants' control over Canoo, Plaintiff also alleges a control person claim. *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1018 (9th Cir. 2018). A defendants' status as an officer or director is "indicative of control." *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 328 F. Supp. 3d 963, 981 (N.D. Cal. 2018). Further, "an officer or director who has signed financial statements containing materially false or misleading statements qualifies as a control person." *In re Amgen Sec. Litig.*, 544 F. Supp. 2d 1009, 1037 (C.D. Cal. 2008). Here, Kranz, Aquila, and Balciunas were officers and/or directors of Canoo who controlled the preparation and release of false statements contained in press releases and SEC filings, as well as statements made during investor calls. ¶¶ 33-35, 64-67, 72-73, 150-52.[16] Aquila and Balciunas also signed SEC filings containing misstatements. ¶96. These allegations are sufficient to survive a motion to dismiss.[17]

### CONCLUSION

For the foregoing reasons, the Court should deny Defendants' Motion.

Dated: January 4, 2024                    Respectfully submitted,

                                          **POMERANTZ LLP**

                                          By: */s/ Murielle J. Steven Walsh*
                                          Jeremy A. Lieberman (*pro hac vice*)

---

[16] Unlike in *Sgarlata v. Paypal Holdings, Inc.*, 2018 WL 6592771, at *8 (N.D. Cal. Dec. 13, 2018), the TAC alleges far more than title and authority allegations.

[17] *In re Hansen Nat. Corp. Sec. Litig.*, 527 F. Supp. 2d 1142, 1163 (C.D. Cal. 2007) is distinguishable because Plaintiffs rely on more than Defendants' titles to support control person liability.

Murielle J. Steven Walsh (*pro hac vice*)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
jalieberman@pomlaw.com
mjsteven@pomlaw.com

Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

**HOLZER & HOLZER, LLC**

By: */s/ Corey D. Holzer*
Corey D. Holzer (*pro hac vice*)
Marshall P. Dees (*pro hac vice*)
211 Perimeter Center Parkway
Suite 1010
Atlanta, Georgia 30346
Telephone: (770) 392-0090
Facsimile: (770) 392-0029
cholzer@holzerlaw.com
mdees@holzerlaw.com

*Co-Lead Counsel for Lead Plaintiff & the Proposed Class*

OPPOSITION TO MOTION TO DISMISS:
Consol. Case No. 2:21-CV-02873 FMO JPR

## L.R. 11-6.2 CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Lead Plaintiff, certifies that this brief contains 6,944 words, which complies with the word limit of L.R. 11-6.1.

Dated: January 4, 2023                          */s/ Murielle J. Steven Walsh*
                                                 Murielle J. Steven Walsh