Mark C. Holscher (SBN 139582)
mark.holscher@kirkland.com
KIRKLAND & ELLIS LLP
555 South Flower Street
Los Angeles, CA 90071
Telephone: (213) 680-8400
Facsimile: (213) 680-8500

David A. Klein (SBN 273925)
david.klein@kirkland.com
KIRKLAND & ELLIS LLP
2049 Century Park East
Los Angeles, CA 90067
Telephone: (310) 552-4200
Facsimile: (310) 552-5900

*Attorneys for Defendants Canoo Inc., Tony Aquila, Ulrich Kranz, and Paul Balciunas*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAMUEL BLAKE, Individually and on Behalf of All Others Similarly Situated,<br><br>        Plaintiffs,<br><br>  v.<br><br><br>CANOO INC., TONY AQUILA, ULRICH KRANZ, and PAUL BALCIUNAS,<br><br>        Defendants. | Case No. 2:21-CV-02873-FMO-JPR<br><br>**(Consolidated)**<br><br>Case No. 2:21-CV-02879-FMO-JPR<br><br>Case No. 2:21-CV-03080-FMO-JPR<br><br>**DEFENDANTS CANOO INC., TONY AQUILA, ULRICH KRANZ, AND PAUL BALCIUNAS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS LEAD PLAINTIFF'S CONSOLIDATED THIRD AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>Hearing Date: February 22, 2024<br>(Pursuant to Briefing Schedule, *see* Dkt. 127)<br>Time: 10:00 a.m.<br>Judge: Hon. Fernando M. Olguin<br>Courtroom: 6D |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................1

I.    THE TAC DOES NOT ALLEGE ANY ACTIONABLE FALSE OR
      MISLEADING STATEMENTS ......................................................................2

      A.    SEC Settlements Are Not Probative of Plaintiff's Claims ................2

      B.    Forward-Looking Statements Are Not Actionable ...........................3

      C.    Decisions Made After the Challenged Statements Are Not
            Actionable ........................................................................................9

      D.    Challenged Statements of Opinion and Puffery Are Not
            Actionable ......................................................................................12

II.   THE TAC FAILS TO ALLEGE A STRONG INFERENCE OF
      SCIENTER ....................................................................................................14

      A.    Plaintiff Fails to Allege Defendants Acted with Scienter ...............14

      B.    The TAC Does Not Allege Admissions That Support a Strong
            Inference of Scienter ......................................................................15

      C.    The Core Operations Doctrine Does Not Establish Scienter ...........16

      D.    The Closing of the Merger Is Insufficient to Plead Scienter ...........17

      E.    Balciunas's Resignation Does Not Establish Scienter ....................19

III.  THE TAC'S GROUP PLEADING IS IMPERMISSIBLE .........................19

IV.   PLAINTIFF FAILS TO STATE A SECTION 20(a) CLAIM....................19

CONCLUSION...................................................................................................20

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Anschutz Corp. v. Merrill Lynch & Co. Inc.*,
  785 F. Supp. 2d 799 (N.D. Cal. 2011)................................................3

*Azar v. Yelp, Inc.*,
  2018 WL 6182756 (N.D. Cal. Nov. 27, 2018) ..................................17

*Berson v. Applied Signal Tech., Inc.*,
  527 F.3d 982 (9th Cir. 2008) ...........................................................17

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*,
  856 F.3d 605 (9th Cir. 2017) ............................................................12

*City of N. Miami Beach Police Officers' & Firefighters' Ret. Plan v. Nat'l Gen. Holdings Corp.*,
  2021 WL 212337 (S.D.N.Y. Jan. 21, 2021) .......................................3

*City of Sunrise Firefighters' Pension Fund v. Oracle Corp.*,
  527 F.Supp.3d 1151 (N.D. Cal. 2021) .............................................19

*Cutler v. Kirchner*,
  696 F. App'x 809 (9th Cir. 2017)......................................................8

*Davoli v. Costco Wholesale Corp.*,
  854 F. App'x 116 (9th Cir. 2021)....................................................17

*Fecht v. Price Co.*,
  70 F.3d 1078 (9th Cir. 1995) ...........................................................11

*Feyko v. Yuhe Int'l, Inc.*,
  2013 WL 816409 (C.D. Cal. Mar. 5, 2013) ......................................11

*Flynn v. Sientra*,
  2016 WL 3360676 (C.D. Cal. June 9, 2016)....................................17

*Friedman v. Endo Int'l PLC*,
  2018 WL 446189 (S.D.N.Y. Jan. 16, 2018)...............................10, 11

*Glazer Capital Management, LP v. Forescout Technologies, Inc.*,
  63 F. 4th 747 (9th Cir. 2023)....................................................*passim*

*Glazer Capital Management, LP v. Magistri*,
  549 F.3d 736 (9th Cir. 2008) ..................................................2, 17, 18

*In re 2U, Inc. Sec. Class Action*,
  2021 WL 3418841 (D. Md. Aug. 5, 2021).........................................6

*In re Alphabet, Inc. Sec. Litig.*,
  1 F.4th 687 (9th Cir. 2021)....................................................8, 17, 19

*In re Banc of Cal. Sec. Litig.*,
  2017 WL 3972456 (C.D. Cal. Sep. 6, 2017) ..................................................19

*In re Boeing Sec. Litig.*,
  40 F. Supp. 2d 1160 (W.D. Wash. 1998) .....................................................19

*In re Cutera Sec. Litig.*,
  610 F.3d 1103 (9th Cir. 2010) ...............................................................7, 9

*In re Cyclink Sec. Litig.*,
  178 F. Supp. 2d 1077 (N.D. Cal. 2001) .........................................................3

*In re Fastly, Inc. Secs. Litig.*,
  2021 WL 5494249 (N.D. Cal. Nov. 23, 2021). ........................................14, 16

*In re Fusion-io, Inc. Sec. Litig.*,
  2015 WL 661869 (N.D. Cal. Feb. 12, 2015) ..................................................16

*In re Montage Tech. Grp. Ltd. Sec. Litig.*,
  78 F. Supp. 3d 1215 (N.D. Cal. 2015) ..........................................................17

*In re Quality Systems, Inc. Securities Litigation*,
  865 F.3d 1130 (9th Cir. 2017) ...........................................................6, 7, 8

*In re Splunk Inc. Sec. Litig.*,
  592 F. Supp. 3d 919 (N.D. Cal. 2022) ........................................................5, 7

*In re UBS Auction Rate Sec. Litig.*,
  2010 WL 2541166 (S.D.N.Y. June 10, 2010) ................................................2, 3

*In re Volkswagen "Clean Diesel" Mktg.*,
  2017 WL 66281 (N.D. Cal. Jan. 4, 2017) .....................................................19

*In re XL Fleet Corp. Sec. Litig.*,
  2022 WL 493629 (S.D.N.Y. Feb. 17, 2022) ....................................................6

*In re Zoom Sec. Litig.*,
  2022 WL 484974 (N.D. Cal. Feb. 16, 2022) ..................................................15

*Ingram v. VIVUS, Inc.*,
  591 F. App'x 592 (9th Cir. 2015) ..............................................................11

*Kmiec v. Powerwave Techs Inc.*,
  2013 WL 12114821 (C.D. Cal. May 16, 2013) ..................................................9

*Kovtun v. VIVUS, Inc.*,
  2012 WL 4477647 (N.D. Cal. Sept. 27, 2012), *aff'd sub nom. Ingram
  v. VIVUS, Inc.*, 591 F. App'x 592 (9th Cir. 2015)......................................11, 16

*Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*,
  416 F.3d 940 (9th Cir. 2005) ...................................................................8

*Mulligan v. Impax Lab'ys, Inc.*,
  36 F. Supp. 3d 942 (N.D. Cal. 2014)...........................................................12

*Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*,
    575 U.S. 175 (2015)...................................................................................13

*Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*,
    759 F.3d 1051 (9th Cir. 2014) .............................................................5, 7, 16

*Prodanova v. H.C. Wainwright & Co., LLC*,
    993 F.3d 1097 (9th Cir. 2021) ...................................................................17

*Red Oak Fund, L.P. v. Digirad Corp.*,
    2013 WL 5740103 (Del. Ch. Oct. 23, 2013) ...............................................10

*ScripsAmerica, Inc. v. Ironridge Glob. LLC*,
    119 F. Supp. 3d 1213 (C.D. Cal. 2015) .........................................................2

*Shenwick v. Twitter, Inc.*,
    282 F. Supp. 3d 1115 (N.D. Cal. 2017) .........................................................8

*Veltex Corp. v. Matin*,
    2010 WL 11549762 (C.D. Cal. June 25, 2010) ..............................................2

*Washtenaw Cnty. Empls. Ret. Sys. v. Celera Corp.*,
    2012 WL 3835078 (N.D. Cal. Sept. 4, 2012)..................................................9

*Weston Fam. P'ship LLLP v. Twitter, Inc.*,
    29 F.4th 611 (9th Cir. 2022) ...............................................................11, 12

*Wochos v. Tesla, Inc.*,
    985 F.3d 1180 (9th Cir. 2021) ........................................................*passim*

*Yourish v. Cal. Amplifier*,
    191 F.3d 983 (9th Cir. 1999) .....................................................................16

*Zucco Partners, LLC v. Digimarc Corp.*,
    552 F. 3d 981 (9th Cir. 2009) ....................................................................19

**Statutes**

15 U.S.C. § 78u-5(i)(1)(A) ...............................................................................4

15 U.S.C. § 78u-5(i)(1)(B) ...............................................................................4

15 U.S.C. § 78u-5(i)(1)(C)................................................................................4

15 U.S.C. § 78u-5(i)(1)(D) ...............................................................................4

15 U.S.C. § 78u-5(c)(1)(A)(i) ...........................................................................7

15 U.S.C. § 78o...............................................................................................2

**Rules**

17 C.F.R. § 240.10b-5......................................................................................2

17 C.F.R. § 10b-5(b) ......................................................................................11

# **INTRODUCTION**

The Opposition (Dkt. 135, "Opp'n") confirms the TAC is barred by the PSLRA's safe harbor, based on a prohibited fraud-by-hindsight theory, and unsupported by meaningful scienter allegations.[1]  Defendants' Motion argued, among other things, that: (1) Plaintiff relies on allegations in documents related to SEC settlements that are not probative of his claims, including because the SEC's claims are not subject to the safe harbor, are unrelated to any change in business strategy, and do not require scienter; (2) challenged statements are protected forward-looking statements under the safe harbor; (3) Plaintiff does not allege contemporaneous facts that contradict statements regarding Canoo's business strategy; (4) statements are non-actionable puffery and opinions; and (5) the absence of allegations that Individual Defendants traded (or could have traded) stock at prices allegedly inflated by omissions negates any scienter inference.  The Opposition offers little substantive response to these grounds for dismissal.

Plaintiff ignores relevant holdings in cited authority, mischaracterizes statements in Canoo's SEC filings and March 29, 2021 earnings call, and offers no cogent explanation for shifting scienter theories.  Plaintiff fails to refute that challenged revenue projection statements addressed in the SEC's claims were forward-looking and accompanied by meaningful cautionary language.  Plaintiff fails to distinguish his claim regarding analysis of Canoo's business plan from the one previously dismissed. Plaintiff bases his scienter arguments on allegations taken from SEC settlement documents without citing a single case where a court relied on such documents to find scienter.  Plaintiff does not identify any of the detailed allegations necessary to meet the stringent requirements for pleading scienter. And Plaintiff does not request leave to amend to file a fourth amended complaint.

The motion to dismiss should be granted without leave to amend.

---

[1]  Undefined capitalized terms are defined in the Memorandum of Points and Authorities in Support of Defendants' Motion to Dismiss ("Mot."), Dkt. 130-1. Emphasis is added to record citations unless otherwise indicated.  "Ex." refers to Exhibits to the Declaration of David A. Klein, Dkt. 131.

## I.    THE TAC DOES NOT ALLEGE ANY ACTIONABLE FALSE OR MISLEADING STATEMENTS

### A.    SEC Settlements Are Not Probative of Plaintiff's Claims

Plaintiff does not dispute that: the SEC Order and Complaint did not allege violations of Section 10(b) of the Exchange Act and Rule 10b-5; the SEC's claims do not require the scienter showing necessary to plead a civil securities fraud claim; the SEC's claims did not address Canoo's analysis or decision to de-emphasize parts of its business model; and the PSLRA's safe harbor does not apply to the SEC's claims.

Plaintiff fails to meaningfully distinguish cases dismissing securities fraud claims brought against defendants who settled related SEC claims.  Mot. 8.  Plaintiff argues that *Glazer Capital Management, LP v. Magistri*, 549 F.3d 736, 748-49 (9th Cir. 2008) included admissions to legal conclusions, suggesting that it would be appropriate to consider a settlement with particularized factual allegations in determining whether scienter has been alleged.  Opp'n 9.  But courts have expressly held that "[t]here is no authority suggesting that the allegations in an SEC order, which are unproved and contested, can properly be considered evidence of scienter."  *ScripsAmerica, Inc. v. Ironridge Glob. LLC*, 119 F. Supp. 3d 1213, 1263 (C.D. Cal. 2015).  Plaintiff argues that *ScripsAmerica* is distinguishable because there, the SEC alleged violations of Section 15(a) of the Exchange Act, not a securities fraud claim.  Opp'n 9.  Plaintiff ignores that the SEC Order and Complaint here also did not allege claims that require a showing of scienter, and *ScripsAmerica* rejected relying on an SEC order because "it is well settled that allegations from other complaints or documents, which are unproved and contested, may not be used to establish facts to demonstrate scienter."  *ScripsAmerica*, 119 F. Supp. 3d at 1262-63.  Plaintiff also ignores that courts have not found SEC settlements probative given that, like the settlements here, defendants settled without admitting or denying the allegations.  *Veltex Corp. v. Matin*, 2010 WL 11549762, at *3 (C.D. Cal. June 25, 2010); *In re UBS Auction Rate Sec. Litig.*, 2010

WL 2541166, at *19 n.11 (S.D.N.Y. June 10, 2010).[2]

Plaintiff does not cite authority that supports his reliance on settlements.  Opp'n 9.  In *Anschutz Corp. v. Merrill Lynch & Co. Inc.*, 785 F. Supp. 2d 799, 821 (N.D. Cal. 2011), the court denied a motion to strike allegations regarding regulatory settlements because they "may be relevant . . . to the issue of notice sufficient to trigger the statute of limitations."  The court qualified that it was "not ruling that [they] are admissible or may otherwise be relied on in support of any future motions."  *Id.* at 821 n.20.  Ultimately, the court did not rely upon the settlements when assessing the defendant's motion to dismiss.  *Id.* at 811-20.  In *In re Cyclink Sec. Litig.*, 178 F. Supp. 2d 1077, 1081-83 (N.D. Cal. 2001), unlike here, the plaintiff independently detailed allegations of GAAP violations sufficient to show scienter.[3]

Plaintiff tellingly does not cite any case where a court relied on information in an SEC complaint or settlement documents to find scienter.  Even if the Court considered the SEC's allegations regarding Canoo's engineering services revenue projection, those allegations cannot state a claim.

## B.    Forward-Looking Statements Are Not Actionable

Nearly all challenged statements are inactionable forward-looking statements.  TAC ¶¶64, 66-74, 79-88, 91-92, 98, 100-103, 105-106, 108.  Plaintiff argues that three Engineering Services Statements regarding projected revenue were misleading.  Opp'n 7 (citing TAC ¶¶66, 81, 98).  Plaintiff makes no attempt to argue that the safe harbor does not protect Subscription Statements and Manufacturing Statements.   Instead,

---

[2]    Plaintiff disregards that both courts rejected reliance on SEC settlements because defendants settled without admitting or denying allegations.  Opp'n 9 n.3.  Plaintiff also ignores that the *UBS* court recognized that it is inappropriate to rely on an SEC settlement order implicating a different section of the Exchange Act and declined to do so.  *UBS*, 2010 WL 2541166, at *19 n.11.

[3]    In *City of N. Miami Beach Police Officers' & Firefighters' Ret. Plan v. Nat'l Gen. Holdings Corp.*, 2021 WL 212337, at *5 (S.D.N.Y. Jan. 21, 2021), the court held that consent orders and complaints involving a third-party, not the defendant, could be used, noted that allegations based on those documents (unlike Plaintiff's allegations here) were "pleaded elsewhere in the complaint drawing from other sources[,]" and dismissed the complaint.  *Id.* at *6-11.

Plaintiff argues that two of these three Engineering Services Statements are not forward-looking and that the safe harbor does not protect those statements if they are.  Plaintiff distorts the statements, and neither argument has merit.

**1.  Plaintiff Fails to Refute That Statements Are Forward-Looking**

Plaintiff argues that "Defendants repeatedly claimed their 'current' pipeline 'is' supportive of $120 million for 2021, which is an actionable statement of current fact." Opp'n 10.  Plaintiff omits the word "projected," which makes clear that the challenged statements are forward-looking. The statement in Canoo's December 2020 S-4 and January 2021 S-1 reads: "Canoo's engineering and technology services business offers a unique opportunity to generate immediate revenues in advance of the offering of our first vehicles and our current pipeline in this area is supportive of a ***projected*** $120 million of revenue in 2021."  TAC ¶¶81, 98; Ex. 9 at 174; Ex. 1 at 79.[4]

The statements about Canoo's "pipeline" cannot be divorced from the projection and thus fall within the safe harbor's protections.  They are part of the revenue projection or assumptions underlying the projection.  The PSLRA's definition of "forward-looking statement" includes "a statement containing a projection of revenues," "a statement of the plans and objectives of management for future operations," "a statement of future economic performance," and "any statement of the assumptions underlying or relating to" such statements.  15 U.S.C. § 78u-5(i)(1)(A)-(D).  In *Wochos v. Tesla, Inc.*, the Ninth Circuit held that for a challenged statement to be deemed a "mixed" statement of current facts with a forward-looking statement, the non-forward-looking aspects of the statement must be "separable" from the forward-looking aspects and independently actionable.  985 F.3d 1180, 1190 (9th Cir. 2021) (holding "mixed" statements are "statements that combine non-actionable forward-

---

[4]   The only other forward-looking Engineering Services Statement Plaintiff cites is in an August 2020 investor call transcript: "Currently in our pipeline, we have $120 million of projected revenue in 2021, which consists of a couple of projects that are in the advanced stages of negotiation.  Overall, we have seven projects in our pipeline . . . ."  TAC ¶66; Ex. 4 at 8.  Plaintiff does not attempt to argue that this is not forward-looking.

looking statements with separable—and actionable—non-forward-looking statements"); *In re Splunk Inc. Sec. Litig.*, 592 F. Supp. 3d 919, 936 (N.D. Cal. 2022) (same).

Here, Plaintiff cannot show that the portion of the challenged statement that he argues is a current fact is "separable" from the forward-looking portions. The phrase "our current pipeline in this area is supportive of" is a statement underlying or relating to the phrase "a projected $120 million of revenue in 2021." TAC ¶¶81, 98. "That phrase is, therefore, intertwined with the forward-looking portions of the statements and, as such, falls within the definition of a forward-looking statement." *Splunk*, 592 F. Supp. 3d at 937. The statement is a quintessential forward-looking statement. *Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1058 (9th Cir. 2014) ("[C]lassic growth and revenue projections[] . . . are forward-looking on their face.").

Plaintiff fails to distinguish *Tesla*. In *Tesla*, the Ninth Circuit held that statements that Tesla was "on track" to produce 5,000 vehicles per week were forward-looking. *Tesla*, 985 F.3d at 1192. Plaintiff asserts that reliance on *Tesla* is misplaced because there the court recognized that "any announced 'objective' for 'future operations' *necessarily* reflects an implicit assertion that the goal is achievable based on current circumstances." Opp'n 12 (quoting *Tesla*, 985 F.3d at 1192). Likewise, any statement containing a revenue projection also necessarily reflects an implicit assertion that the projection is based on a current pipeline or current circumstances. The court reasoned that a statement that a company is "on track" to achieve an objective was merely an alternative way of declaring the objective itself. *Tesla*, 985 F. 3d at 1192. A statement that a current pipeline supports the revenue projection is similarly an alternative way of declaring the revenue projection. As the Ninth Circuit explained, "[t]he statutory safe harbor would cease to exist if it could be defeated simply by showing that a statement has the sort of features that are inherent in *any* forward-looking statement." *Id.* at 1190. The statement that Canoo's "current pipeline is supportive of a projected $120 million in 2021" is not a concrete factual assertion about a specific present or past circumstance

that goes beyond projected revenue in the future.  *See id.*

Plaintiff's reliance on *Glazer Capital Management, LP v. Forescout Technologies, Inc.*, 63 F. 4th 747 (9th Cir. 2023) is misplaced.  There, the Ninth Circuit found that a statement that "the pipeline was large, healthy, and continuing to grow" was not forward-looking because it described past and current conditions.  *Id.* at 774. That statement was not inextricably intertwined with a revenue projection.  The court found several other "sales pipeline statements" like the Engineering Statements here were "forward-looking because they constitute 'statement[s] of future economic performance.'"  *Id.* (citations omitted).

Plaintiff's reliance on *In re Quality Systems, Inc. Securities Litigation*, 865 F.3d 1130 (9th Cir. 2017) is equally unavailing.  The statements at issue there were "[o]ur pipeline continues to build to record levels" and "there's nothing out of character in the pipeline that we're reporting today versus what we have seen there the past couple of years."  *Id.* at 1143.  These standalone statements were not a predicate to or intertwined with forward-looking projections.  Instead, they affirmed that current sales were comparable to those in the past.[5]

### 2.    The Safe Harbor Protects the Forward-Looking Statements

Plaintiff argues that "[e]ven if [the] pipeline statements were considered forward-looking, the safe harbor does not protect them because Defendants had 'actual knowledge' the statements were misleading."  Opp'n 10.  But "where a defendant has made a sufficient showing that a challenged forward-looking statement was accompanied by meaningful cautionary statements, a plaintiff cannot defeat invocation of § 21E's safe harbor merely by alleging . . . that the company knew that the announced forward-looking objective was unlikely to be achieved."  *Tesla*, 985 F.3d

---

[5]   The out-of-circuit cases Plaintiff cites are also inapposite.  Opp'n 10; *In re XL Fleet Corp. Sec. Litig.*, 2022 WL 493629, at *6 n.1 (S.D.N.Y. Feb. 17, 2022) (no reliance on safe harbor and no discussion of forward-looking statements); *In re 2U, Inc. Sec. Class Action*, 2021 WL 3418841, at *14 (D. Md. Aug. 5, 2021) (the safe harbor did not protect forward-looking statements unaccompanied by cautionary statements).

at 1190; *In re Quality Sys.*, 865 F.3d at 1141 ("[A] defendant will not be liable for a false or misleading statement if it is forward-looking and *either* is accompanied by cautionary language *or* is made without actual knowledge that it is false or misleading."); *In re In re Cutera Sec. Litig.*, 610 F.3d 1103, 1111-113 (9th Cir. 2010) (same).[6]

Plaintiff incorrectly argues that the relevant cautionary statements are insufficient. Opp'n 10-11. Cautionary statements "identifying important factors that could cause actual results to differ materially from those in the forward-looking statement" are meaningful. 15 U.S.C. § 78u-5(c)(1)(A)(i). For revenue projections, the Ninth Circuit has held that cautionary language stating that forward-looking statements are subject to "risks and uncertainties" is sufficiently meaningful. *Intuitive*, 759 F.3d at 1059 (cautionary statements accompanying "classic [revenue] projections" sufficient as they cautioned, "[a]ctual results may differ" due to "risks and uncertainties."); *Cutera*, 610 F.3d at 1112 (cautionary statement that "ability to continue increasing sales performance worldwide could cause variance in the results" sufficient for revenue projection).

Here, the cautionary statements are more meaningful than those the Ninth Circuit has held to be sufficient for revenue projections. Canoo's SEC filings state that forward-looking statements are subject to numerous "risks, uncertainties and assumptions that could cause actual results to differ materially from those projected," including "our ability to execute our business model, including market acceptance of our planned [services]" and "competitive factors." Exs. 1 at iv; 9 at 38 (similar).[7] Moreover, the cautionary language identifies "other risks and uncertainties", including "those under the section entitled '*Risk Factors.*'" Ex. 3 at 5. The "Risk Factors"

---

[6] Plaintiff cites *Splunk*, 592 F.Supp. 3d at 946, but there, the defendants did not identify any cautionary language.

[7] The August 18, 2020 transcript and presentation identify similar forward-looking statements and cautionary language. Ex. 4 at 17; Ex. 5 at 2.

statements that "expect[ed] contract engineering revenue in 2021 and 2022 . . . may occur later or not at all" directly relate to Canoo's engineering services revenue projection.  Ex. 1 at 14; Ex. 9 at 45.

Plaintiff's reliance on *Forescout* for the proposition that "cautionary language is not 'meaningful' if it discusses as a mere *possibility* a risk that has already materialized" is misplaced.  Opp'n 11.  The court held that for a statement that defendant expected its merger to close, a generic disclosed risk that the transaction is not consummated was not meaningful because it had been alerted that the other party was considering not closing.  *Forescout*, 63 F.4th at 780.  Here, Plaintiff challenges Canoo's statement of a revenue projection, not an expectation to close a particular transaction.

*Forescout*, in fact, supports dismissal.  The Ninth Circuit held that meaningful cautionary language accompanied the forward-looking sales pipeline statements asserting that deals were still expected to close and revenue guidance could be met even if those deals did not close.  *Id.* at 774.  That cautionary language stated, "these forward-looking statements involve risks and uncertainties including fluctuations in our quarterly results of operations and increasing competition."  *Id*.  Canoo's cautionary statements are similar to those that the Ninth Circuit found sufficient in *Forescout*.[8]

Plaintiff's argument that cautionary language is meaningless because Defendants did not expect to add engineering revenue in 2021 or 2022, Opp'n 11, is irrelevant and unsupported.  The Ninth Circuit has instructed that "if a forward looking statement is identified as such and accompanied by meaningful cautionary statements, then the state of mind of the individual making the statement is irrelevant, and the statement is not

---

[8]  Plaintiff cites other inapplicable cases that do not concern the safe harbor or involve non-forward-looking statements.  *Shenwick v. Twitter, Inc.*, 282 F. Supp. 3d 1115, 1133 (N.D. Cal. 2017) (no discussion of safe harbor); *Cutler v. Kirchner*, 696 F. App'x 809, 813 (9th Cir. 2017) (addressing whether risk disclosures were misleading, not safe harbor); *In re Alphabet, Inc. Sec. Litig.*, 1 F.4th 687, 702 (9th Cir. 2021) (addressing whether risk factors were misleading, not safe harbor); *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 954 (9th Cir. 2005) (cash increase misleadingly referred to as "fact"); *In re Quality Sys.*, 865 F.3d at 1148 (non-forward-looking statements).

actionable regardless of the plaintiff's showing of scienter." *Cutera*, 610 F.3d at 1112.[9] And Plaintiff does allege particularized facts to show that Defendants did not expect to add revenue at the time of challenged statements. *See Infra* §II.A; *see also Tesla*, 985 F.3d at 1194 (allegations that employees told Elon Musk that production goal was impossible did not show "Defendants *knew* their year-end goal was *impossible* to achieve" and therefore "there is no basis for concluding that any of their cautionary statements were supposedly deficient on that ground.").

## C.    Decisions Made After the Challenged Statements Are Not Actionable

Plaintiff cannot adequately allege any challenged statements about Canoo's strategy were misleading when made. Plaintiff relies on two statements in the December 4, 2020 Proxy/Prospectus that state "Canoo has established a multi-faceted go-to-market strategy." Opp'n 12 (citing TAC ¶¶78-79). Plaintiff cites an allegation that a December 22, 2020 Form 8-K referred investors to the December 2020 Proxy. Opp'n 12 (citing TAC ¶92). And, although the TAC does not specify any alleged misleading statement in Canoo's January 25, 2021 Prospectus, Plaintiff notes that it included engineering services as a component of Canoo's business plan. Opp'n 12 (citing TAC ¶110).[10] Plaintiff makes no effort to explain how these statements could be misleading when made.

Plaintiff notes that Canoo announced a strategy change ***months later*** in a March 29, 2021 earnings call. Opp'n 12. This is insufficient as a matter of law. Plaintiff does not distinguish six cases, articulating the well-settled rule that securities fraud liability cannot be imposed based on subsequent events. Mot. 9-11.

---

[9]    Plaintiff cites *Washtenaw Cnty. Empls. Ret. Sys. v. Celera Corp.*, 2012 WL 3835078, at *4 (N.D. Cal. Sept. 4, 2012), but the case contains no analysis of cautionary statements and at least one court has found that the Ninth Circuit has "directly rejected [its] reading of the PSLRA." *Kmiec v. Powerwave Techs Inc.*, 2013 WL 12114821, at *3 (C.D. Cal. May 16, 2013).

[10]    Paragraph 110 of the TAC is just a conclusory allegation that "[o]n January 25, 2021, Canoo filed the Definitive Prospectus . . ., which contained each of the false or misleading statements . . . in the January 13, 2021 Prospectus." TAC ¶110.

Plaintiff argues that the supposed status of Canoo's engineering services pipeline and a "deep dive into the business strategy" triggered a duty "to disclose the investigation" or not refer to its strategy. Opp'n 13. But nothing in the TAC suggests Canoo had decided to change its strategy when the challenged statements were made. Plaintiff does not cite any case that supports his conclusory assertion that Canoo had a duty to disclose analysis of its strategy. Nor does he identify any particularized allegations to support his conclusory assertions that Canoo was evaluating the strategy's "viability" or that Defendants knew the strategy was not viable at the time of challenged statements. Plaintiff argues that "[c]ontrary to Defendants' suggestion, Canoo's radical change in business strategy did not need to be a board ratified *fait accomplis* to trigger disclosure duties." Opp'n 13. Relevant authority holds otherwise.[11]

Plaintiff asserts "Defendants created an expectation that Canoo was committed to a specific, three-pronged business strategy while concealing facts that did not fairly align with those claims." Opp'n 14. Plaintiff cites *Friedman v. Endo Int'l PLC*, 2018 WL 446189, at *6 (S.D.N.Y. Jan. 16, 2018), but *Friedman* supports dismissal. The court found an executive's alleged statements describing business changes after purported misstatements came "nowhere near suggesting, let alone proving, that . . . the defendant company had a secret plan to fundamentally and drastically change" the business. *Id.* The court concluded that such allegations, like those here, reflected a "fraud by hindsight" pleading approach counter to black-letter law. *Id.* On this basis alone, the court held that the complaint should be dismissed but in any event, "it is equally well established that a company has no . . . duty to disclose changes to its business plans[.]" *Id.* The court also noted that to state a securities fraud claim based

---

[11] *See Red Oak Fund, L.P. v. Digirad Corp.*, 2013 WL 5740103, at *17 (Del. Ch. Oct. 23, 2013) ("A possible decision that might be reached several weeks away is far too speculative for the Court to require disclosure, even during a proxy contest."). Plaintiff contends that in *Red Oak*, whether to adopt a plan constituted a "day-to-day" corporate function. Opp'n 13 n. 4. But any analysis of Canoo's strategy similarly constitutes "inner workings" that the court found inappropriate for disclosure. *Red Oak*, 2013 WL 5740103, at *17.

on a narrow exception, "a plaintiff must allege facts plausibly establishing that a company had stated its intention to adhere exclusively to a particular strategy and then changed its strategy without informing investors." *Id.* The court found plaintiff's failure to allege such a statement supported dismissal. *Id.*

Here, Plaintiff does not identify any statement that implies Canoo would not consider alternatives. Challenged statements imply that the strategy reflected Canoo's existing plan. *See, e.g.*, TAC ¶¶83-84 (Canoo "**plans** to utilize an asset-light, flexible manufacturing strategy"); *id.* ¶100 (lifestyle and sport vehicle "**initially intended** to be made available to consumers via an innovative subscription business model."). The December 22, 2020 Form 8-K specifically cautions that "**changes in the Company's strategy**, future operations[,] prospects **and plans** among other factors could cause actual results to differ." Ex. 14 at 5.

Plaintiff vaguely references Aquila's "concerns." Opp'n 13. But internal analysis after Aquila assumed his role as Chairman in October 2020 (TAC ¶33) cannot state a claim. *See Kovtun v. VIVUS, Inc.*, 2012 WL 4477647, at *18 (N.D. Cal. Sept. 27, 2012), *aff'd sub nom. Ingram v. VIVUS, Inc.*, 591 F. App'x 592 (9th Cir. 2015).[12]

Plaintiff relies on *Forescout* despite obvious factual distinctions. Opp'n 14. There, plaintiffs contended Forescout's statements that it expected its merger with Advent to close were misleading given two communications from Advent. *Forescout*,

---

[12] Plaintiff asserts *Kovtun* is distinguishable because there was no indication that safety issues were reported to individual defendants, and thus on review, the Ninth Circuit found the complaint failed to allege a material omission. Opp'n 14 n.5. But the lower court also found that the undisclosed fact of "internal debates" was not an omission that rendered "an existing statement of fact false or misleading." *Kovtun*, 2012 WL 4477647, at * 12-13, 18. The Ninth Circuit did not rely on whether issues were reported to individual defendants in concluding that the complaint did not adequately allege materially misleading statements or omissions. *Ingram*, 591 F. App'x at 593. Plaintiff cites two cases that addressed the materiality of allegedly false statements. Opp'n 14 n.5; *Fecht v. Price Co.*, 70 F.3d 1078, 1080 (9th Cir. 1995); *Feyko v. Yuhe Int'l, Inc.*, 2013 WL 816409, at *5 (C.D. Cal. Mar. 5, 2013)). For purposes of the Motion only, however, Defendants did not argue that alleged omissions were immaterial. "Section 10(b) and Rule 10b-5(b) do not create an affirmative duty to disclose any and all material information." *Weston Fam. P'ship LLLP v. Twitter, Inc.*, 29 F.4th 611, 620 (9th Cir. 2022).

63 F.4th at 778-79.  The first was a letter stating that Advent was "assess[ing] conditions to closing." *Id.* at 779.  The court ruled that Forescout did not mislead investors by failing to disclose this letter because it was consistent with a review of conditions resulting in a closing of the merger. *Id.*  The court found that a later phone call in which Advent said that it was considering not closing the merger was inconsistent with Forescout's statements. *Id.*  The alleged analysis of Canoo's business plan is akin to the letter, not the call, in *Forescout*.  Plaintiff does not allege any particularized contemporaneous facts showing that the "deep dive" was not a review that could have resulted in the Board deciding to maintain the existing plan.

### D.    Challenged Statements of Opinion and Puffery Are Not Actionable

Many of the challenged statements are also not actionable because they are puffery or opinions.  TAC ¶¶65, 72, 78-79, 81, 86-87, 91-92, 101-105, 107-108. Plaintiff does not explain how any of these statements are not opinions or puffery and notes that "[t]here is a difference between enthusiastic statements amounting to general puffery and opinion-based statements that are anchored in misrepresentations of existing facts."  Opp'n 14-15 (quoting *Mulligan v. Impax Lab'ys, Inc.*, 36 F. Supp. 3d 942, 966 (N.D. Cal. 2014)).  Statements at issue are textbook examples of puffery and Plaintiff does not argue that they are combined with any misrepresentation of specific material facts. Mot. 15 (identifying TAC ¶¶72, 91 as puffery); *see also id.* 15 n.7. Puffery is inactionable—period. *Twitter*, 29 F.4th at 619.

Plaintiff appears to concede that statements are opinions, but argues they failed to "convey Canoo's collapsed pipeline or [Defendants'] lack of commitment to the strategy."  Opp'n 15.  But a plaintiff relying on an omission theory must allege "facts going to the basis for the issuer's opinion . . . whose omission makes the opinion statement at issue misleading to a reasonable person reading the statement fairly and in context." *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 615 (9th Cir. 2017).  Plaintiff ignores this test and alleges no such facts. Instead, Plaintiff summarizes opinions and states in a conclusory fashion that they are

"misrepresentations." Opp'n 15. Pleading under an omission theory, however, is "no small task" and cannot be accomplished "merely by means of conclusory assertions." *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175, 194 (2015). Plaintiff cannot identify any opinion that did not "fairly align with information in the [issuer's] possession at the time." Opp'n 15 (quoting *Forescout*, 63 F.4th at 79).

Plaintiff asserts that four statements "emphasize the importance of engineering services revenue and Canoo's ability to de-risk its business plan by generating revenue before selling a single vehicle." Opp'n 15 (citing TAC ¶¶65, 78-79, 81). First, on August 18, 2020, before Aquila became Chairman and before Plaintiff alleges Canoo began alleged analysis (TAC ¶¶33, 169), Balciunas stated that engineering services revenue was an "important part of our overall strategy and . . . a great way to pool revenues early and de-risk the Company's strategy." TAC ¶65. Second, the December 2020 Poxy/Prospectus stated that the business "offers a unique opportunity" to generate revenues in advance of the first vehicle offering. TAC ¶81. Both are true. As of August 2020, Canoo had generated $2.55 million from engineering services completed in July 2020 and entered an agreement with Hyundai. Ex. 9 at 174, F-33; TAC ¶111. In context, the two other statements referencing Canoo's "multi-faceted go-to-market strategy" do not directly refer to engineering services.[13]

Plaintiff asserts that other opinion statements "tout[ed] the benefits of the subscription model, including claims that it expanded the addressable market and created the opportunity to generate revenue . . ." Dkt. 135, Opp'n, at 15. Plaintiff does

---

[13] The sentence before the challenged statement that "Canoo has established a multi-faceted go-to-market strategy targeting both business-to-consumer ('B2C') and business-to-business ('B2B') opportunities . . . diversifying its business and . . . revenue" (TAC ¶79) refers to "EV sales" rather engineering services. Ex. 9 at 25. A similar statement appears in the section of the Proxy/Prospectus describing "Canoo's Product Offerings." Ex. 9 at 173. It refers to Canoo's B2B and B2C vehicle offerings. Ex. 9 at 173-179. Likewise, the challenged statement that "Canoo has established a multi-faceted go-to-market strategy targeting both B2B and B2C channels" (TAC ¶78) does not directly refer to the engineering services business.

not identify any alleged contemporaneous facts that contradicts statements about the benefits of the subscription model.

## II.    THE TAC FAILS TO ALLEGE A STRONG INFERENCE OF SCIENTER

### A.    Plaintiff Fails to Allege Defendants Acted with Scienter

The Court should dismiss the TAC for the independent reason that it fails to adequately plead scienter.  Plaintiff recycles allegations in the SEC Complaint and Order rather than point to independent alleged facts showing that Defendants deliberately made allegedly misleading statements.  Opp'n 16-17.  But allegations from the SEC Order and Complaint may not be used to establish scienter.  *Supra* §I.A.  Even if the Court considered the SEC's allegations, they do not meet the stringent requirements for pleading scienter.

There are no particularized allegations that Defendants knew that Canoo could never meet the engineering services revenue projection or could not backfill any lost opportunities.[14]  Instead, Plaintiff relies on allegations in the SEC Order that in November 2020, a European Auto OEM told Canoo a project would not work and another Tech Strategic project was "on hold."  TAC ¶145 (citing SEC Order ¶12).  Plaintiff also relies on an allegation in the SEC Complaint that by early December 2020, Kranz and Balciunas knew that Canoo had paused or canceled negotiations with "certain other potential engineering services customers."  Opp'n 17; TAC ¶150 (citing SEC Complaint ¶26); Ex. 17 ¶26.  There are no allegations that Canoo had decided to de-emphasize engineering services at that time or particularized facts showing that Defendants knew that Canoo could not meet the projection with the Tech Strategic or other potential partners.[15]

---

[14]  Plaintiff fails to distinguish *In re Fastly, Inc. Secs. Litig.*, 2021 WL 5494249, at *16 (N.D. Cal. Nov. 23, 2021).  Opp'n 17 n.6.  There, as here, "Defendants' statements were forward-looking, and plaintiff therefore must establish that defendants could 'never' meet the projections they laid out."  *In re Fastly*, 2021 WL 549429, at *16 (quoting *Tesla*, 985 F.3d at 1192).

[15]  The SEC Order includes a conclusory assertion that "[a]lthough Canoo was in discussions with other companies about potential engineering services projects, none

Plaintiff distorts unparticularized allegations in the SEC Order and Complaint. Plaintiff asserts that "Kranz and Balciunas knew that . . . internal forecasts showed $0 expected revenue." Opp'n 17. But the TAC only refers to the SEC's allegation that "[o]n December 14, 2020, Canoo held an internal Budget Review meeting, the purpose of which was to perform budgeting work for the following year" and a "slide deck attached to the meeting summary stated that Canoo would have '$0M expected revenue during 2021.'" TAC ¶145; Ex. 16 ¶15. Neither the SEC Order nor SEC Complaint alleges Individual Defendants attended the meeting, saw that document or any similar estimate, or agreed with the estimate at that time. Ex. 16 ¶15; Ex. 17 (no mention of Budget meeting or $0 forecast).

## B. The TAC Does Not Allege Admissions That Support a Strong Inference of Scienter

Plaintiff fails to identify or allege any admission by Aquila that he knew Engineering Services Statements were misleading when made. Opp'n 17. Plaintiff's selective summary of Aquila's March 2021 earnings call statements is an attempt to plead fraud by hindsight.[16]

Aquila did not say in the earnings call that Canoo had de-emphasized engineering services or ceased negotiating potential agreements when the Engineering Statements were made months earlier. Ex. 2 at 9, 17. Aquila said he thought Canoo "had the opportunities" for engineering services partnerships, a partnership "can make sense" and Canoo would "continue to look at things." Id. at 9, 17. Responding to a question about "discussions with some OEMS," Aquila stated that in hindsight it was "presumptuous" and "premature" for Canoo to announce opportunities before executed

---

of the talks were in advanced stages and none supported revenue projections of $120 million in 2021 or $250 million in 2022." Ex. 16, SEC Order, ¶13; TAC ¶145. This does not allege that Defendants knew the projection was impossible.

[16] Plaintiff cites an inapposite case to argue Aquila's apology during the call is indicative of scienter. In *In re Zoom Sec. Litig.*, 2022 WL 484974, at *3-4 (N.D. Cal. Feb. 16, 2022), Zoom's CEO apologized for incorrect statements that Zoom had a secure encryption feature when it did not. In contrast, Aquila apologized for refocusing a previously announced plan, not the revenue projection. Ex. 2 at 14.

contracts. *Id.* at 17.  The fact that discussions did not ultimately lead to signed contracts is a subsequent event, and Plaintiff does not specifically allege any facts showing that Aquila knew at the time of any challenged statements that the opportunities would not meet the projection.  Again, Plaintiff makes no effort to distinguish numerous cases, which articulate the well-settled rule that liability for securities fraud cannot be imposed on the basis of subsequent events.[17]

## C.    The Core Operations Doctrine Does Not Establish Scienter

Recognizing that his insufficient arguments centered solely on Aquila's March 2021 statements, Plaintiff also argues that "Defendants' roles in Canoo's core operations supports their scienter."  Opp'n 17.  Plaintiff's reliance on the "core operations theory of scienter" fails.  *Intuitive*, 759 F.3d at 1062.  "Proof under this theory is not easy.  A plaintiff must produce either specific admissions by one or more corporate executives of detailed involvement in the minutia of a company's operations, such as data monitoring or witness accounts demonstrating that executives had actual involvement in creating false reports."  *Id*.  Plaintiff fails to identify either to support this "rare inference of scienter" as to Aquila.  *Fastly*, 2021 WL 5494249, at *16.  There are also no detailed allegations about Aquila's actual exposure to information regarding Canoo's projected engineering services revenue.  *Kovtun*, 2012 WL 4477647, at *19 ("However, the 'core operations' inference standing alone will generally not support a strong inference of scienter").

With respect to Canoo's "analysis" of its business plan, this argument fails given that Plaintiff does not specifically allege any contemporaneous facts regarding the

---

[17]  Plaintiff attempts to distinguish *In re Fusion-io, Inc. Sec. Litig.*, 2015 WL 661869, at *18 (N.D. Cal. Feb. 12, 2015) by mischaracterizing Aquila's statements. Opp'n 17 n.6.  Plaintiff relies on *Yourish v. Cal. Amplifier*, 191 F.3d 983 (9th Cir. 1999) to argue that a complaint can establish a statement was false when made by alleging a defendant's later statement along the lines of "I knew it all along."  Opp'n 17.  But the *Yourish* court affirmed dismissal, finding a later statement was not an "I knew it all along" admission, and emphasized: "[I]t is clearly insufficient for plaintiffs to say that [a] later, sobering revelation[] make[s] [an] earlier, cheerier statement a falsehood."  191 F.3d at 996-97.

analysis, what role Individual Defendants played in allegedly shaping changes, or what they knew and when about the alleged changes.[18]  Having failed to establish scienter as to any Individual Defendant, Plaintiff may not impute scienter to Canoo.

### D.    The Closing of the Merger Is Insufficient to Plead Scienter

Plaintiff effectively concedes that he did not (and cannot) allege any insider trading in the face of disclosures regarding Lock-Up Agreements precluding trades at allegedly inflated prices.  Mot. 16-18.  Thus, Plaintiff mostly abandons the alleged theory that Individual Defendants engaged in a scheme intended to artificially inflate the price of Canoo's stock.  Opp'n 19-20.[19]  Under his new theory, Plaintiff alleges Defendants made misleading statements to obtain shareholder approval of the merger and Defendants would benefit from the merger.  *Id.* at 19.  The Ninth Circuit, however, has held that "evidence of a personal profit motive on the part of officers and directors contemplating a merger is insufficient to raise a strong inference of scienter." *Magistri*, 549 F.3d at 748.

---

[18]  The cases plaintiff cites either did not find scienter based on the core operations doctrine or included additional facts establishing scienter missing here.  *See Prodanova v. H.C. Wainwright & Co., LLC*, 993 F.3d 1097, 1111 (9th Cir. 2021) (no scienter); *Magistri*, 549 3d at 744 (no scienter and no application of doctrine); *Azar v. Yelp, Inc.*, 2018 WL 6182756, at *17-20 (N.D. Cal. Nov. 27, 2018) (explicit statements showing actual knowledge and suspicious stock sales); *Berson v. Applied Signal Tech., Inc.*, 527 F.3d 982, 987-89 (9th Cir. 2008) (loss of millions from stop-work orders on existing, not potential, contracts and witness allegations about impact); *In re Montage Tech. Grp. Ltd. Sec. Litig.*, 78 F. Supp. 3d 1215, 1226 (N.D. Cal. 2015) (allegations establishing knowledge of affiliate transactions); *Davoli v. Costco Wholesale Corp.*, 854 F. App'x 116, 117 (9th Cir. 2021) (no scienter).

[19]  Plaintiff cites *Flynn v. Sientra*, 2016 WL 3360676, at *15 (C.D. Cal. June 9, 2016), for the proposition that insider trading is not necessary to plead scienter.  There, however, the plaintiff alleged with particularity that defendants knew of manufacturing problems but did not disclose them to complete a stock offering to preserve their shares' value and raise capital to avoid a default on loans.  *Id.*  Unlike Canoo's voluntary disclosure of the de-emphasis of engineering services and subscription, the defendants in *Flynn* only disclosed the problems after regulatory action at facilities became public.  *Id.* at *3.  Plaintiff also cites *Alphabet*, 1 F.4th at 706-07.  But there, unlike here, the complaint alleged with particularity that a memo informed senior Google executives of several software glitches and provided them with "a clear decision on whether to disclose those problems."  The court thus found this evidence sufficient to infer that Alphabet intentionally did not disclose this information in SEC filings.  *Id.* at 706.

Plaintiff's flawed allegations also do not withstand scrutiny. Plaintiff asserts that the merger gave Defendants liquidity for "their substantial stock holdings." Opp'n 19. But the TAC does not contain any specific allegations that Kranz and Balciunas had "substantial stock holdings." Relying on allegations from the SEC Order and Complaint about an undisclosed payment from Canoo's former owners to Kranz, Plaintiff asserts that "Kranz personally stood to gain $1 million upon consummation of the Merger." *Id*. But Plaintiff alleges that the agreement under which former owners agreed to pay Kranz was signed on November 19, 2019, months before the merger was announced on August 18, 2020 and the payment was made between October 20 and 29, 2020 months before the merger closed. TAC ¶¶50, 90, 153-54.

The other purported "indicia of scienter" are alleged stock incentive awards ("Earnout Shares") contingent on Canoo's stock price reaching certain prices for defined periods. Opp'n 20. Plaintiff, however, concedes that the price never rose to meet the conditions for Earnout Shares. *Id*. Plaintiff does not—and cannot—explain why the Individual Defendants would engage in a scheme to "inflate" Canoo's stock price and then make "shocking revelations" (TAC ¶106) they allegedly knew would negatively affect the stock price before they could ever profit from the allegedly "inflated" price.

Plaintiff argues that Defendants concealed information to "buy time" or "avoid or delay" the impact of the disclosure. Opp'n 21. This does not make sense. Plaintiff does not cite any factual allegation that Defendants could not have closed the merger in December 2021 without making the challenged statements. Nor does he explain why Defendants would continue to make allegedly misleading statements in January 2021 SEC filings after the purported purpose of such statements had been fulfilled.[20]

---

[20] *Cf. Alphabet*, 1 F.4th at 707 ("[D]ecision to conceal was calculated to 'buy time' by avoiding putting Google in the spotlight alongside the Facebook-Cambridge Analytica scandal and at the time of heightened public and regulatory scrutiny."); *In re Boeing Sec. Litig.*, 40 F. Supp. 2d 1160, 1175-76 (W.D. Wash. 1998) (specific allegations about Boeing's need to control the price of its stock to consummate merger because merger partner insisted on and received a 21% premium for its

### E.     Balciunas's Resignation Does Not Establish Scienter

Plaintiff argues that Balciunas's resignation supports a scienter inference.  Opp'n 20.  But he resigned in April 2021, months after the allegedly misleading statements and before the SEC investigation.  TAC ¶¶35, 140.  "[A] plaintiff must allege sufficient information to differentiate between a suspicious change in personnel and a benign one."  *Zucco Partners, LLC v. Digimarc Corp.*, 552 F. 3d 981, 1002 (9th Cir. 2009).  "Mere conclusory allegations that a financial manager resigns or retires during the class period or shortly before the corporation issues its restatement, without more, cannot support a strong inference of scienter."  *Id.*[21]  Plaintiff makes no showing that the resignation was not benign.

## III.     THE TAC'S GROUP PLEADING IS IMPERMISSIBLE

Plaintiff argues that identification of at least one challenged statement attributable to each Individual Defendant permits the TAC's group pleading for all challenged statements.  Opp'n 19-20.  None of Plaintiff's cited authority permits that type of group pleading.  Mot. 19-20.  Accordingly, Plaintiff cannot hold Individual Defendants liable for alleged misstatements they did not make.

## IV.     PLAINTIFF FAILS TO STATE A SECTION 20(a) CLAIM

Absent a primary violation under Section 10(b), Plaintiff's Section 20(a) claim should also be dismissed.  Plaintiff's Section 20(a) claim also fails against Individual Defendants given inadequate allegations that they were "controlling persons" as to each challenged statement.  Opp'n 23.

---

shareholders); *City of Sunrise Firefighters' Pension Fund v. Oracle Corp.*, 527 F.Supp.3d 1151, 1185 (N.D. Cal. 2021) ("Plaintiff does not allege . . . a fraud scheme to cover up the inevitable reveal of a critical problem.").

[21]  *Cf. In re Banc of Cal. Sec. Litig.*, 2017 WL 3972456, at *8 (C.D. Cal. Sep. 6, 2017) (alleging SEC investigation and the resignation occurred on "the very same day"); *In re Volkswagen "Clean Diesel" Mktg.*, 2017 WL 66281, at *14-15 (N.D. Cal. Jan. 4, 2017) (alleging "mass resignations, firings, and suspensions of Volkswagen's top management" after high level officials admitted company was "dishonest").

1

### CONCLUSION

Recognizing that amendment would be futile, the Opposition does not request leave to amend.  For the foregoing reasons, Defendants respectfully submit that the TAC fails to state a claim and should be dismissed with prejudice.

DATED:  February 1, 2024                Respectfully submitted,

Kirkland & Ellis LLP

*/s/ David A. Klein*
David A. Klein

*Attorneys for Defendants*

L.R. 11-6.2 Certificate of Compliance.

The undersigned, counsel of record for Defendants Canoo Inc., Tony Aquila, Ulrich Kranz, and Paul Balciunas, certifies that this brief contains 6,991 words, which complies with the word limit of L.R. 11-6.1.

DATED:  February 1, 2024                Respectfully submitted,

Kirkland & Ellis LLP

*/s/ David A. Klein*
David A. Klein

*Attorneys for Defendants*