**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SAMUEL BLAKE, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>CANOO INC., et al.,<br><br>Defendants. | Case No. CV 21-2873 FMO (DMKx)<br><br>**ORDER RE: MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** |

Having reviewed and considered all the briefing filed with respect to lead plaintiff's Renewed Unopposed Motion for Entry of an Order Preliminarily Approving Settlement and Establishing Notice Procedures (Dkt. 179, "Motion"), and the oral argument presented at the hearings on July 30, 2026, and October 21, 2026, the court concludes as follows.

**BACKGROUND**

On April 2, 2021, Samuel Blake brought this action for violation of the federal securities laws against: Tony Aquila ("Aquila"), Ulrich Kranz ("Kranz"), Paul Balciunas ("Balciunas" and together with Aquila and Kranz, "Individual Defendants"), and Canoo Inc. ("Canoo") (together with Individual Defendants, "defendants"). (See Dkt. 1, Complaint). On February 18, 2022, the court consolidated this action with Kojak v. Canoo Inc., et al., Case No. 21-2879 FMO (JPRx), and Tyler v. Canoo Inc., et al., Case No. CV 21-3080 FMO (JPRx), (see Dkt. 70, Court's Order of February 18, 2022, at 16), and appointed Vladi Shaulov ("Shaulov" or "plaintiff") as lead plaintiff, and Pomerantz LLP and Holzer & Holzer LLC as co-lead counsel. (See id.).

On September 8, 2023, plaintiff filed the operative Consolidated Third Amended Class Action Complaint for Violations of the Federal Securities Laws (Dkt. 125, "TAC") against the same defendants,[1] (see id. at ¶¶ 32-35), asserting claims for violations of: (1) § 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78j, et seq., as well as Rule 10b-5, 17 C.F.R. § 240.10b-5; and (2) § 20(a) of the Exchange Act, 15 U.S.C. §§ 78t, et seq. (See id. at ¶¶ 202-19). Plaintiff filed this action "on behalf . . . of all those who purchased or otherwise acquired [Canoo's] securities during the Class Period[,] . . . and who were damaged upon the revelation of the alleged corrective disclosures." (Id. at ¶¶ 1, 185). The Class Period runs from December 21, 2020 through March 29, 2021. (See id. at ¶ 1). The gist of plaintiff's action is that defendants issued materially false and misleading statements in connection with Canoo's merger with a special purpose acquisition company, Hennessy Capital Acquisition Corp. IV ("Hennessy"), and a post-merger shelf offering of Canoo stock. (See id. at ¶ 2).

On December 21, 2020 – the beginning of the class period – Canoo announced that the merger had been completed, and Canoo's stock began trading that day on the NASDAQ at $19.20. (Dkt. 125, TAC at ¶¶ 56, 90). On March 29, 2021 – the end of the class period – Canoo held its first public conference call to discuss its quarterly results for 2020. (Id. at ¶ 18). Canoo's stock, which was trading at $12.46 when the markets opened that day, fell to $9.64 at the market's open on March 30, 2021, and reached a low of $8.52. (Id. at ¶ 22). On April 29, 2021, the Securities and Exchange Commission ("SEC") announced it was investigating Canoo and its merger with Hennessy. (Id. at ¶ 23).

The TAC alleges that defendants made false or misleading statements to investors regarding Canoo's phased go-to-market strategy, which featured three revenue streams. (See Dkt. 125, TAC at ¶¶ 10-14, 50, 64). The statements at issue fall into three categories: (1) statements regarding Canoo's revenue stream relating to "engineering services" ("Engineering Services Statements"); (2) statements regarding Canoo's plan to offer its first vehicles through a

[1] After Canoo filed a Notice of Suggestion of Bankruptcy, (see Dkt. 146), plaintiff dismissed it from this action without prejudice. (See Dkt. 149, Notice of Dismissal).

subscription-based model ("Subscription Statements"); and (3) statements regarding Canoo's "asset-light, low-cost, flexible manufacturing strategy" ("Manufacturing Statements"). (See id. at ¶¶ 10-14, 20 & 64).

On October 22, 2025, the court granted in part and denied in part defendants' motion to dismiss the TAC. (See Dkt. 153, Court's Order of October 22, 2025, at 29). The court granted the motion as to the Manufacturing Statements and the Subscription Statements. (See id.). On November 26, 2025, the Individual Defendants filed their Answer to the TAC, (see Dkt. 157), and on April 22, 2026, the parties filed a stipulation to stay the action pending settlement approval, (see Dkt. 162), stating that the parties had reached an agreement in principle to settle the case. (See id.). The settlement was contingent on the court in the Canoo bankruptcy case approving the payment of funds under certain insurance policies toward the settlement amount. (See id.).

On June 30, 2026, lead plaintiff filed a motion for preliminary approval, (see Dkt. 167), which the court denied on July 30, 2026. (See Dkt. 176, Court's Order of July 30, 2026). The parties subsequently executed an Amended Stipulation and Agreement of Settlement, (Dkt. 179-3, "Agreement"), and plaintiff filed the instant Motion. (See Dkt. 179, Motion).

The parties have defined the settlement class as "all persons and entities who purchased or otherwise acquired publicly traded Canoo common stock and/or warrants from December 21, 2020 through and including March 29, 2021." (Dkt. 179-3, Agreement at ¶ 1(ll)). Pursuant to the settlement, Kranz's and Balciunas's ("Settling Defendants")[2] insurers will pay a non-reversionary gross settlement amount of $20 million, (see id. at ¶¶ 1(kk), 1(qq) & 13), which will be used to pay class members, notice and administration costs, taxes, attorney's fees and litigation expenses, and an award for Shaulov. (See id. at ¶ 9). The Agreement provides that lead counsel will apply for payment of attorney's fees, litigation expenses, and plaintiff's costs and expenses, (see id. at ¶ 16), and the Notice of (I) Pendency of Class Action and Proposed Settlement; (II) Settlement Fairness Hearing; and (III) Motion for an Award of Attorneys' Fees, Reimbursement of Litigation

[2] Aquila is not a Settling Defendant but is a party to the Settlement Agreement. (See Dkt. 179-3, Agreement at ¶¶ 1 n. 1 & 1(qq)).

Expenses, and An Award to Lead Plaintiff (Dkt. 179-5, "Notice"), states that lead counsel "will apply to the Court for an award of attorneys' fees . . . in an amount not to exceed 33⅓% of the Settlement Fund[,]" and litigation expenses "in an amount not to exceed $250,000." (Id. at ¶¶ 5, 61). The Notice also explains that counsel will seek "reimbursement of the reasonable costs and expenses incurred by Lead Plaintiff directly related to his representation of the Settlement Class, in an amount not to exceed $15,000." (Id. at ¶ 5). With respect to notice and administration costs, the Agreement provides that such costs will not exceed $400,000. (Dkt. 179-3, Agreement at ¶ 14); (Dkt. 179-5, Notice at ¶ 5); (Dkt. 179-2, Joint Declaration in Support of Motion for Order Preliminarily Approving Settlement ("Joint Decl.") at ¶ 14). The net settlement amount will be paid on a pro rata basis to all participating class members based on each authorized claimant's "recognized loss." (See Dkt. 179-3, Agreement at ¶ 21); (Dkt. 179-5, Notice at ¶¶ 33, 41-48); (Dkt. 179-1, Lead Plaintiff's Memorandum of Points and Authorities in Support of Renewed Unopposed Motion ("Memo") at 20).

In the Motion, lead plaintiff seeks an order: (1) preliminarily approving the proposed settlement agreement; (2) certifying the proposed settlement classes; (3) appointing Shaulov as class representative; (4) appointing Pomerantz LLP and Holzer & Holzer LLC as class counsel; (5) appointing Epiq Class Action & Claims Solutions, Inc. ("Epiq") as the settlement administrator; (6) approving and ordering dissemination of the proposed class notice program; and (7) scheduling a final approval hearing. (See Dkt. 179, Motion at 2); (Dkt. 179-1, Memo); (see also Dkt. 179-3, Agreement); (Dkt. 179-2, Joint Decl. at ¶ 14) (stating that lead counsel have requested that the court approve the retention of Epiq); (Dkt. 179-4, [Proposed] Order Preliminarily Approving Settlement and Providing for Notice ("Proposed Order") at ¶ 9).

## LEGAL STANDARDS

I. CLASS CERTIFICATION.

At the preliminary approval stage, the court "may make either a preliminary determination that the proposed class action satisfies the criteria set out in Rule 23 . . . or render a final decision

as to the appropriateness of class certification."[3] Smith v. Wm. Wrigley Jr. Co., 2010 WL 2401149, *3 (S.D. Fla. 2010) (citation and footnote omitted); see also Sandoval v. Roadlink USA Pac., Inc., 2011 WL 5443777, *2 (C.D. Cal. 2011) (citing Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 620, 117 S.Ct. 2231, 2248 (1997) ("Parties seeking class certification for settlement purposes must satisfy the requirements of Federal Rule of Civil Procedure 23[.]"). In the settlement context, a court must pay "undiluted, even heightened, attention" to the class certification requirements. Amchem, 521 U.S. at 620, 117 S.Ct. at 2248; accord In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig., 895 F.3d 597, 606 (9th Cir. 2018). "Such attention is of vital importance, for a court asked to certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold." Amchem, 521 U.S. at 620, 117 S.Ct. at 2248.

A party seeking class certification must first demonstrate that: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). Courts refer to these requirements by the following shorthand: "numerosity, commonality, typicality and adequacy of representation[.]" Mazza v. Am. Honda Motor Co., Inc., 666 F.3d 581, 588 (9th Cir. 2012), overruled on other grounds by Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC, 31 F.4th 651 (9th Cir. 2022) (en banc). In addition to fulfilling the four prongs of Rule 23(a), the proposed class must meet at least one of the three requirements listed in Rule 23(b).[4] See Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338,

---

[3] All "Rule" references are to the Federal Rules of Civil Procedure.

[4] Rule 23(b) is satisfied if:

> (1) prosecuting separate actions by or against individual class members would create a risk of:
>
> > (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or
> >
> > (B) adjudications with respect to individual class members that, as a practical

345, 131 S.Ct. 2541, 2548 (2011).

"Before it can certify a class, a district court must be satisfied, after a rigorous analysis, that the prerequisites of both Rule 23(a) and" the applicable Rule 23(b) provision have been satisfied. Olean Wholesale, 31 F.4th at 664 (internal quotation marks omitted); see Dukes, 564 U.S. at 345, 131 S.Ct. at 2548. A plaintiff "must prove the facts necessary to carry the burden of establishing that the prerequisites of Rule 23 are satisfied by a preponderance of the evidence." Olean Wholesale, 31 F.4th at 665. However, Rule 23(b)(3) issues regarding manageability are "not a concern in certifying a settlement class where, by definition, there will be no trial." In re Hyundai and Kia Fuel Econ. Litig., 926 F.3d 539, 556-57 (9th Cir. 2019) (en banc).

II. FAIRNESS OF CLASS ACTION SETTLEMENT.

Rule 23 provides that "[t]he claims, issues, or defenses of a certified class – or a class proposed to be certified for purposes of settlement – may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e). "The primary concern of [Rule 23(e)] is the protection of th[e] class members, including the named plaintiffs, whose rights may not have been given due regard by the negotiating parties." Officers for Just. v. Civ. Serv. Comm'n of the City & Cnty. of San Francisco, 688 F.2d 615, 624 (9th Cir. 1982). Whether to approve a class action settlement is

---

> matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;
>
> (2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or
>
> (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
>
> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(1)-(3).

"committed to the sound discretion of the trial judge." Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992) (internal quotation marks omitted).

Approval of a class action settlement requires a two-step process – preliminary approval and the dissemination of notice to the class, followed by a later final approval. See Spann v. J.C. Penney Corp. ("Spann II"), 314 F.R.D. 312, 319 (C.D. Cal. 2016). "[T]he showing at the preliminary approval stage – given the amount of time, money, and resources involved in, for example, sending out . . . class notice[] – should be good enough for final approval." Id.; see also 4 Newberg on Class Actions § 13:10 (6th ed. 2024) ("[S]ending notice to the class costs money and triggers the need for class members to consider the settlement, actions which are wasteful if the proposed settlement [is] obviously deficient from the outset."). The court may grant preliminary approval and direct notice in a reasonable manner to all class members who would be bound by the settlement if the parties provide sufficient information to show that the court will likely be able to: (1) "approve the proposal under Rule 23(e)(2);" and (2) "certify the class for purposes of judgment on the [settlement] proposal." Fed. R. Civ. P. 23(e)(1)(B); see Macy v. GC Servs. Ltd. P'ship, 2019 WL 6684522, *1 (W.D. Ky. 2019) ("The standard for preliminary approval was codified in 2018, with Rule 23 now providing for notice to the class upon the parties' showing that the court will likely be able to approve the proposed settlement under the final-approval standard contained in Rule 23(e)(2).") (internal quotation marks omitted); 4 Newberg on Class Actions § 13:10 (6th ed. 2024) ("In 2018, Congress codified this approach into Rule 23. Rule 23(e)(1)(B) now sets forth the grounds for the initial decision to send notice of a proposed settlement to the class[.]").

"At this stage, the court may grant preliminary approval of a settlement and direct notice to the class if the settlement: (1) appears to be the product of serious, informed, non-collusive negotiations; (2) has no obvious deficiencies; (3) does not improperly grant preferential treatment to class representatives or segments of the class; and (4) falls within the range of possible approval." Spann II, 314 F.R.D. at 319 (internal quotation marks omitted); see Bronson v. Samsung Elecs. Am., Inc., 2019 WL 5684526, *7 (N.D. Cal. 2019) (same); see also 2018 Adv. Comm. Notes to Rule 23(e)(1) Amendments (The types of information that should be provided to

the court in deciding whether to send notice – i.e., that it will likely approve the settlement under Rule 23(e)(2) and certify the class for purposes of settlement – "depend on the specifics of the particular class action and proposed settlement." "[G]eneral observations" as to the types of information that should be provided include, but are not limited to, the following: (1) "the extent and type of benefits that the settlement will confer on the members of the class" and if "funds are . . . left unclaimed, the settlement agreement ordinarily should address the distribution of those funds"; (2) "information about the likely range of litigated outcomes, and about the risks that might attend full litigation"; (3) "[i]nformation about the extent of discovery completed in the litigation or in parallel actions"; (4) "information about the existence of other pending or anticipated litigation on behalf of class members involving claims that would be released under the proposal"; (5) "[t]he proposed handling of an award of attorney's fees under Rule 23(h)"; (6) "any agreement that must be identified under Rule 23(e)(3)"; and (7) "any other topic that [the parties] regard as pertinent to the determination whether the proposal is fair, reasonable, and adequate.").

## DISCUSSION

I. CLASS CERTIFICATION.

A. Rule 23(a) Requirements.

1. **Numerosity**.

A putative class may be certified only if it "is so numerous that joinder of all members is impracticable[.]" Fed. R. Civ. P. 23(a)(1). "Although the size of the class is not the sole determining factor, . . . where a class is large in numbers, joinder will usually be impracticable." A.B. v. Hawaii State Dep't of Educ., 30 F.4th 828, 835 (9th Cir. 2022) (internal quotation marks omitted). "As a general matter, courts have found that numerosity is satisfied when class size exceeds 40 members[.]" Slaven v. BP Am., Inc., 190 F.R.D. 649, 654 (C.D. Cal. 2000); accord Tait v. BSH Home Appliances Corp., 289 F.R.D. 466, 473 (C.D. Cal. 2012).

Here, the class is so numerous that joinder is impracticable. While plaintiff does not set forth the number of class members, he notes that "[w]here, as here, 'the exact size of the proposed class is unknown, but general knowledge and common sense indicate it is large, the numerosity requirement is satisfied.'" (See Dkt. 179-1, Memo at 5) (quoting Wang v. Dada Nexus

Ltd., 2025 WL 1722997, *3 (C.D. Cal. 2025)). In the context of this securities case, the court agrees that the numerosity requirement is met.

2. **Commonality**.

The commonality requirement is satisfied if "there are questions of law or fact common to the class[.]" Fed. R. Civ. P. 23(a)(2). Proof of commonality under Rule 23(a) is "less rigorous" than the related predominance standard under Rule 23(b)(3). See Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998), overruled on other grounds as recognized by DZ Reserve v. Meta Platforms, Inc., 96 F.4th 1223, 1238 (9th Cir. 2024); Mazza, 666 F.3d at 589 (same). Commonality requires plaintiffs to demonstrate that their claims "depend upon a common contention . . . [whose] truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Dukes, 564 U.S. at 350, 131 S.Ct. at 2551; see Wolin v. Jaguar Land Rover N. Am., LLC, 617 F.3d 1168, 1172 (9th Cir. 2010) (The commonality requirement demands that "class members' situations share a common issue of law or fact, and are sufficiently parallel to insure a vigorous and full presentation of all claims for relief.") (internal quotation marks omitted). "The plaintiff must demonstrate the capacity of classwide proceedings to generate common answers to common questions of law or fact that are apt to drive the resolution of the litigation." Mazza, 666 F.3d at 588 (internal quotation marks omitted). "This does not, however, mean that every question of law or fact must be common to the class; all that Rule 23(a)(2) requires is a single significant question of law or fact." Abdullah v. U.S. Sec. Assocs., Inc., 731 F.3d 952, 957 (9th Cir. 2013) (emphasis and internal quotation marks omitted); see Mazza, 666 F.3d at 589 (characterizing commonality as a "limited burden[,]" stating that it "only requires a single significant question of law or fact"). "The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." Hanlon, 150 F.3d at 1019.

This case involves common class-wide questions that are apt to drive the resolution of the litigation. For example, common questions include whether: (1) defendants' statements were false or misleading; (2) defendants acted with scienter; and (3) defendants' misleading statements or omissions caused the losses suffered by the proposed settlement class. (See Dkt. 179-1,

Memo at 6 & 8). Under the circumstances, the court finds that plaintiff has satisfied the commonality requirement. See, e.g., Vinh Nguyen v. Radient Pharms. Corp., 287 F.R.D. 563, 569 (C.D. Cal. 2012) (finding commonality based in part on whether defendants "made statements to the investing public during the Class Period that misrepresented and/or omitted material facts[,]" "whether misstatements and omissions were made with the required scienter[,]" and "whether members of the Class sustained damages"); In re Zillow Grp., Inc. Sec. Litig., 2020 WL 6318692, *4 (W.D. Wash. 2020) ("Plaintiffs' allegations that investors were defrauded by the same misrepresentations over the same period of time and suffered similar losses as a result are sufficient to fulfill Rule 23's commonality requirement.").

3. **Typicality**.

"Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought." Ellis v. Costco Wholesale Corp., 657 F.3d 970, 984 (9th Cir. 2011) (internal quotation marks omitted). To demonstrate typicality, the class representative's claims must be "reasonably co-extensive with those of absent class members[,]" although "they need not be substantially identical." Hanlon, 150 F.3d at 1020; see Ellis, 657 F.3d at 984 ("Plaintiffs must show that the named parties' claims are typical of the class."). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." Ellis, 657 F.3d at 984 (internal quotation marks omitted).

Here, plaintiff's claims are typical of the claims of the class. Shaulov's claims arise from the same nucleus of facts as those of the class and are based on the same legal theory, i.e., that defendants violated the securities laws and applicable regulations by making false and misleading statements. See, e.g., Tanne v. Autobytel, Inc., 226 F.R.D. 659, 667 (C.D. Cal. 2005) ("Here, [lead plaintiff's] claims are typical because, just like other class members, he: (1) purchased or acquired Autobytel securities during the Class period, (2) at prices alleged to be artificially inflated by defendants' materially false and misleading statements and/or omissions, and (3) suffered damage as a result."); Brown v. NFL Players Ass'n., 281 F.R.D. 437, 442 (C.D. Cal. 2012)

(typicality requirement satisfied where plaintiff's claims were based on "the same event or practice or course of conduct that [gave] rise to the claims of other class members and . . . are based on the same legal theory") (internal quotation marks omitted); Spann v. J.C. Penney Corp. ("Spann I"), 307 F.R.D. 508, 519 (C.D. Cal. 2015), modified, 314 F.R.D. 312 (C.D. Cal. 2016) ("[P]laintiff's claims are based on the same facts and the same legal and remedial theories as the claims of the rest of the class members."). Additionally, the court is not aware of any facts that would subject plaintiff "to unique defenses which threaten to become the focus of the litigation." Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992) (internal quotation marks omitted); (see Dkt. 179-1, Memo at 6) ("No evidence exists that Lead Plaintiff's claims are atypical or that a unique defense applies to his claims."). In short, plaintiff has satisfied the typicality requirement.

4. **Adequacy of Representation**.

"The named Plaintiffs must fairly and adequately protect the interests of the class." Ellis, 657 F.3d at 985 (citing Fed. R. Civ. P. 23(a)(4)). "To determine whether [the] named plaintiffs will adequately represent a class, courts must resolve two questions: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" Id. (internal quotation marks omitted). "Adequate representation depends on, among other factors, an absence of antagonism between representatives and absentees, and a sharing of interest between representatives and absentees." Id.

Here, Shaulov has no individual claims separate from the class claims, (see, generally, Dkt. 125, TAC), and does not appear to have any conflicts of interest with the absent class members. (See Dkt. 179-1, Memo at 6); see, e.g., Barbosa v. Cargill Meat Sols. Corp., 297 F.R.D. 431, 442 (E.D. Cal. 2013) ("[T]here is no apparent conflict of interest between the named Plaintiffs' claims and those of the other Class Members' – particularly because the named Plaintiffs have no separate and individual claims apart from the Class."). Thus, "[t]he adequacy-of-representation requirement is met here because Plaintiff[] ha[s] the same interests as the absent Class Members[.]" See Barbosa, 297 F.R.D. at 442.

Finally, as noted earlier, adequacy "also factors in competency and conflicts of class

counsel." Amchem, 521 U.S. at 626 n. 20, 117 S.Ct. at 2251 n. 20. Having reviewed the declaration filed by class counsel and their firm resumes, (see Dkt. 179-2, Joint Decl.); (Dkt. 50-5, Pomerantz LLP Firm Resume); (Dkt. 50-6, Holzer & Holzer LLC Firm Resume), the court is persuaded that there are no issues as to the adequacy of representation. See Barbosa, 297 F.R.D. at 443 ("There is no challenge to the competency of the Class Counsel, and the Court finds that Plaintiffs are represented by experienced and competent counsel who have litigated numerous class action cases.").

B. Rule 23(b) Requirements.

Certification under Rule 23(b)(3) is proper "whenever the actual interests of the parties can be served best by settling their differences in a single action." Hanlon, 150 F.3d at 1022 (internal quotation marks omitted). The rule requires two different inquiries, specifically a determination as to whether: (1) "questions of law or fact common to class members predominate over any questions affecting only individual members[;]" and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3); see Spann II, 314 F.R.D. at 322-23 (same).

1. **Predominance**.

"[T]he general rule [is] that predominance is easier to satisfy in the settlement context." Jabbari v. Farmer, 965 F.3d 1001, 1006 (9th Cir. 2020). "To determine whether a class satisfies the [predominance] requirement, a court pragmatically compares the quality and import of common questions to that of individual questions." Id. at 1005. "[T]he predominance analysis under Rule 23(b)(3) focuses on the relationship between the common and individual issues in the case, and tests whether the proposed class is sufficiently cohesive to warrant adjudication by representation." Abdullah, 731 F.3d at 964 (internal quotation marks omitted); see also Amchem, 521 U.S. at 623, 117 S.Ct. at 2249 ("The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."). "If a common question will drive the resolution [of the litigation], even if there are important questions affecting only individual members, then the class is sufficiently cohesive to warrant adjudication by representation." Jabbari, 965 F.3d at 1005 (internal quotation marks omitted); see Abdullah,

731 F.3d at 964 ("Rule 23(b)(3) requires [only] a showing that questions common to the class predominate, not that those questions will be answered, on the merits, in favor of the class.") (internal quotation marks omitted) (brackets in original). Finally, the class damages must be sufficiently traceable to plaintiffs' liability case. See Comcast Corp. v. Behrend, 569 U.S. 27, 35, 133 S.Ct. 1426, 1433 (2013).

For the reasons discussed above, see supra at § I.A.2., the court is persuaded that common questions predominate over individual questions. See Amchem Prods., Inc., 521 U.S. at 625, 117 S.Ct. at 2250 ("Predominance is a test readily met in certain cases alleging . . . securities fraud[.]"); Hefler v. Wells Fargo & Co., 2018 WL 4207245, *4 (N.D. Cal. 2018) ("Whether Defendants' statements were false, material, made with the requisite scienter, and caused the class members' losses are significant aspects of the case and susceptible to common proof."); see also Tyson Foods, Inc. v. Bouaphakeo, 577 U.S. 442, 453, 136 S.Ct. 1036, 1045 (2016) ("When one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members.") (internal quotation marks omitted). Finally, the relief sought applies to all class members and is traceable to plaintiff's liability case. See Comcast, 569 U.S. at 35, 133 S.Ct. at 1433. In short, the court is persuaded that "[a] common nucleus of facts and potential legal remedies dominates this litigation." Hanlon, 150 F.3d at 1022.

2. **Superiority**.

"The superiority inquiry under Rule 23(b)(3) requires determination of whether the objectives of the particular class action procedure will be achieved in the particular case" and "necessarily involves a comparative evaluation of alternative mechanisms of dispute resolution." Hanlon, 150 F.3d at 1023 (internal citation omitted). Rule 23(b)(3) provides a list of four non-exhaustive factors relevant to superiority. See Fed. R. Civ. P. 23(b)(3)(A)-(D).

The first factor considers "the class members' interests in individually controlling the prosecution or defense of separate actions[.]" Fed. R. Civ. P. 23(b)(3)(A). "This factor weighs against class certification where each class member has suffered sizeable damages or has an

emotional stake in the litigation." Barbosa, 297 F.R.D. at 444. Here, Shaulov does not assert any claims for emotional distress, nor is there any indication that the amount of damages any individual class member could recover is significant or substantially greater than the potential recovery of any other class member. (See, generally, Dkt. 125, TAC). The alternative method of resolution – pursuing individual claims for a relatively modest amount of damages – would likely never be brought, as "litigation costs would dwarf potential recovery." Hanlon, 150 F.3d at 1023; see Leyva v. Medline Indus., Inc., 716 F.3d 510, 515 (9th Cir. 2013) ("In light of the small size of the putative class members' potential individual monetary recovery, class certification may be the only feasible means for them to adjudicate their claims. Thus, class certification is also the superior method of adjudication."); In re VeriSign, Inc. Sec. Litig., 2005 WL 7877645, *9 (N.D. Cal. 2005) ("Class actions are particularly well-suited in the context of securities litigation, wherein geographically dispersed shareholders with relatively small holdings would otherwise have difficulty in challenging wealthy corporate defendants."). In short, "there is no evidence that Class members have any interest in controlling prosecution of their claims separately nor would they likely have the resources to do so." Munoz v. PHH Corp., 2013 WL 2146925, *26 (E.D. Cal. 2013).

The second factor is "the extent and nature of any litigation concerning the controversy already begun by or against class members[.]" Fed. R. Civ. P. 23(b)(3)(B). "[O]ther pending litigation is evidence that individuals have an interest in controlling their own litigation." 4 Newberg on Class Actions § 4:70 (6th ed. 2024) (emphasis omitted). Here, there is no indication that any class member is involved in any other litigation concerning the claims in this case. (See, generally, Dkt. 179-1, Memo at 9-10); see Barbosa, 297 F.R.D. at 444 ("The Court does not have any information that litigation concerning this controversy is currently being pursued by or against the class members; thus, this factor is neutral.").

The third factor is "the desirability or undesirability of concentrating the litigation of the claims in the particular forum[,]" and the fourth factor is "the likely difficulties in managing a class action." See Fed. R. Civ. P. 23(b)(3)(C)-(D). As noted above, "[i]n the context of settlement . . . the third and fourth factors are rendered moot and are irrelevant." Barbosa, 297 F.R.D. at 444; see Amchem, 521 U.S. at 620, 117 S.Ct. at 2248 ("Confronted with a request for settlement-only

class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, . . . for the proposal is that there be no trial.") (citation omitted); In re Hyundai, 926 F.3d at 556-57 ("The criteria for class certification are applied differently in litigation classes and settlement classes. In deciding whether to certify a litigation class, a district court must be concerned with manageability at trial. However, such manageability is not a concern in certifying a settlement class where, by definition, there will be no trial.").

The only factors in play here weigh in favor of class treatment. Further, the filing of separate suits by potentially hundreds or thousands of class members, "would create an unnecessary burden on judicial resources." Barbosa, 297 F.R.D. at 445. Under the circumstances, the court finds that the superiority requirement is satisfied.

II. FAIRNESS, REASONABLENESS, AND ADEQUACY OF THE PROPOSED SETTLEMENT.

A. The Settlement is the Product of Arm's-Length Negotiations.

Pursuant to Rule 23(e)(2)(B), the court must evaluate whether the settlement was negotiated at arm's length. Here, the settlement was the result of arms-length negotiations under the guidance of a mediator. (See Dkt. 179-2, Joint Decl. at ¶ 5). The parties exchanged mediation briefs, (see id.); (Dkt. 179-1, Memo at 13) and pursed discovery while engaging in negotiations. (See Dkt. 179-1, Memo at 13). Although the parties did not reach an agreement at the mediation session, they remained in contact with the mediator and exchanged supplemental briefs. (See Dkt. 179-2, Joint Decl. at ¶ 5). The parties ultimately accepted a "double-blind Mediator's Proposal to settle the action[.]" (Id.).

Based on the record before the court, the court is persuaded that the parties thoroughly investigated and considered their own and the opposing party's positions. The parties had a sound basis for measuring the terms of the settlement against the risks of continued litigation, and there is no evidence that the settlement is the product of fraud or overreaching by, or collusion between, the negotiating parties. See, e.g., Spann II, 314 F.R.D. at 323-25 (finding no evidence that a class action settlement was the product of fraud or collusion between the parties); Rodriguez v. W. Publ'g Corp., 563 F.3d 948, 965 (9th Cir. 2009) (affirming final approval of class

action settlement where there was "no evidence of fraud, overreaching, or collusion").

B. The Amount Offered in Settlement Falls Within a Range of Possible Judicial Approval and is a Fair and Reasonable Outcome for Class Members.

1. **Recovery for Class Members.**

As noted above, class members will share in a non-reversionary gross settlement amount of $20 million. (See Dkt. 179-3, Agreement at ¶¶ 1(kk), 1(qq) & 13). Plaintiff's damages expert estimates that the total maximum damages available would be approximately $182.2 million. (See Dkt. 179-11, Declaration of Zachary Nye, PH.D at ¶¶ 17-18); (Dkt. 179-2, Joint Decl. at ¶ 6). Thus, the settlement represents a recovery of approximately 11% of the maximum recoverable damages. (See Dkt. 179-1, Memo at 15-16); (Dkt. 179-2, Joint Decl. at ¶ 6). This amount, according to plaintiff, is "well above the median percentage of recoveries in securities class action settlements." (Dkt. 179-1, Memo at 15-16); see In re ImmunityBio, Inc. Sec. Litig., 2025 WL 1686263, *8 (S.D. Cal. 2025) ("As a percentage of estimated damages, the Settlement Amount [representing 8% of estimated damages] is well above the median percentage of the recovery level for investor losses in securities class action settlements.").

Plaintiff also contends that the settlement amount is adequate given the risks and costs of further litigation. (See Dkt. 179-1, Memo at 14-16). In particular, with respect to proving loss causation and damages, plaintiff acknowledges that the court granted in part defendants' motion to dismiss the TAC, specifically dismissing the claims as to the Manufacturing Statements and the Subscription Statements, (see id. at 14-15); (Dkt. 153, Court's Order of October 22, 2025, at 29), and note that defendants could argue that plaintiff must "disaggregate losses attributable to the Subscription and Manufacturing Statements," as well as Balciunas's resignation, from the losses attributable to the allegedly fraudulent Engineering Services Statements. (See Dkt. 179-1, Memo at 14-15); see, e.g., In re Celera Corp. Sec. Litig., 2015 WL 1482303, *5 (N.D. Cal. 2015) ("As with any securities litigation case, it would be difficult for Lead Plaintiff to prove loss causation and damages at trial.").

Under the circumstances, the court is persuaded that the settlement is fair, reasonable, and adequate, particularly when viewed in light of the litigation risks and the costs, and delay of trial

and appeal. See Fed. R. Civ. P. 23(e)(1)(B)(i) & (e)(2)(C)(i); 2018 Adv. Comm. Notes to Rule 23(e)(1) (noting the types of information that should be provided to the court deciding whether to grant preliminary approval includes, among other things: (1) "the extent and type of benefits that the settlement will confer on the members of the class"; and (2) "information about the likely range of litigated outcomes, and about the risks that might attend full litigation"). Here, given the significant risks of litigation coupled with the delays associated with continued litigation, the court is persuaded that the settlement benefits to the class fall within the range of reasonableness. See, e.g., In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 459 (9th Cir. 2000) (holding that "the [s]ettlement amount of almost $2 million was roughly one-sixth of the potential recovery, which, given the difficulties in proving the case, [was] fair and adequate"); Vataj v. Johnson, 2021 WL 5161927, *6 (N.D. Cal. 2021) (finding that $10 million settlement that represented "2% aggregate recovery [was] consistent with the 2–3% average recovery that the parties identified in other securities class action settlements"); In re Uber FCRA Litig., 2017 WL 2806698, *7 (N.D. Cal. 2017) (granting preliminary approval of settlement that was worth "7.5% or less" of the expected value); see also Linney v. Cellular Alaska P'ship, 151 F.3d 1234, 1242 (9th Cir. 1998) ("The fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved.") (internal quotation marks omitted).

2. **Release of Claims.**

The court must also consider whether the settlement contains an overly broad release of liability. See 4 Newberg on Class Actions § 13:15 (6th ed. 2024) ("Beyond the value of the settlement, courts have rejected preliminary approval when the proposed settlement contain[s] obvious substantive defects such as . . . overly broad releases of liability."); see, e.g., Fraser v. Asus Comput. Int'l, 2012 WL 6680142, *3 (N.D. Cal. 2012) (denying preliminary approval of proposed settlement that provided defendant a "nationwide blanket release" in exchange for payment "only on a claims-made basis[,]" without the establishment of a settlement fund or any other benefit to the class).

Here, class members who do not exclude themselves from the settlement will release

> all claims and causes of action of every nature and description, whether known or unknown claims, whether arising under federal, state, common, or foreign law, that: (i) were asserted in the Third Amended Complaint filed in the Action or (ii) could have been asserted in any forum that arise out of or relate to the same allegations, facts, representations, or omissions set forth in the Action and that relate to, or are in connection with, the purchase, acquisition, holding, disposition, or sale of Canoo's common stock and/or warrants during the Settlement Class Period.

(Dkt. 179-3, Agreement at ¶ 1(ii)).[5] The Release also contains a waiver of rights under California Civil Code § 1542 and similar statutes.[6] (See id. at ¶ 4). With the understanding that, under the release, settlement class members are not giving up any claims unrelated to those asserted in the TAC, the court finds that the release adequately balances fairness to absent class members and recovery for the class with defendants' business interest in ending this litigation. See Fraser, 2012 WL 6680142, at *4 (recognizing defendant's "legitimate business interest in 'buying peace' and moving on to its next challenge" as well as the need to prioritize "[f]airness to absent class member[s]").

C. The Settlement Agreement Does Not Improperly Grant Preferential Treatment to the Class Representative.

Pursuant to Rule 23(e)(2)(D), the court must evaluate whether the settlement "treats class members equitably relative to each other." The Ninth Circuit has "repeatedly held that reasonable incentive awards to class representatives are permitted," In Re Apple Inc. Device Performance Litig., 50 F.4th 769, 785 (9th Cir. 2022) (internal quotation marks omitted), and has instructed "district courts to scrutinize carefully the awards so that they do not undermine the adequacy of

---

[5] Defendants' Releasees inlcude Canoo, defendants, and related persons. (See Dkt. 179-3, Agreement at ¶ 1(o)).

[6] Section 1542 of the California Civil Code provides in relevant part: "A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party."

the class representatives." Radcliffe v. Experian Info. Sols. Inc., 715 F.3d 1157, 1163 (9th Cir. 2013). The court must examine whether there is a "significant disparity between the incentive awards and the payments to the rest of the class members" such that it creates a conflict of interest. See id. at 1165 (noting that the court cast doubt, but did not rule on, "whether class representatives could be expected to fairly evaluate whether awards ranging from $26 to $750 is a fair settlement value when they would receive $5,000 incentive awards."). "In deciding whether [an incentive] award is warranted, relevant factors include the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation." Cook v. Niedert, 142 F.3d 1004, 1016 (7th Cir. 1998).

Here, the Notice states that counsel will seek "reimbursement of the reasonable costs and expenses incurred by Lead Plaintiff directly related to his representation of the Settlement Class, in an amount not to exceed $15,000."[7] (Dkt. 179-5, Notice at ¶ 5); (see also Dkt. 179-3, Agreement at ¶ 16) (providing for counsel to apply for reimbursement of lead plaintiff's costs and expenses). The court will defer ruling on the appropriate award to lead plaintiff until final approval.

D. Class Notice and Notification Procedures.

Upon settlement of a certified class, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal[.]" Fed. R. Civ. P. 23(e)(1)(B). Rule 23(c)(2) requires the "best notice that is practicable under the circumstances, including individual notice" of particular information. See Fed. R. Civ. P. 23(c)(2)(B) (enumerating notice requirements for classes certified under Rule 23(b)(3)).[8]

---

[7] Section 78u-4 of Title 15 provides: "The share of any final judgment or of any settlement that is awarded to a representative party serving on behalf of a class shall be equal, on a per share basis, to the portion of the final judgment or settlement awarded to all other members of the class. Nothing in this paragraph shall be construed to limit the award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class to any representative party serving on behalf of a class." 15 U.S.C. § 78u-4(a)(4).

[8] The Private Securities Litigation Reform Act of 1995 ("PSLRA") also imposes notice requirements. See 15 U.S.C. § 78u-4(a)(7) (enumerating notice requirements); Cheng Jiangchen v. Rentech, Inc., 2019 WL 5173771, *8 (C.D. Cal. 2019).

"The standard for the adequacy of a settlement notice in a class action under either the Due Process Clause or the Federal Rules is measured by reasonableness." Wal-Mart Stores, Inc. v. Visa U.S.A., Inc., 396 F.3d 96, 113 (2d Cir. 2005), superseded by rule on other grounds by, Moses v. N.Y. Times Co., 79 F.4th 235, 243 (2d Cir. 2023); Low v. Trump Univ., LLC, 881 F.3d 1111, 1117 (9th Cir. 2018) ("The yardstick against which we measure the sufficiency of notices in class action proceedings is one of reasonableness.") (internal quotation marks omitted). A class action settlement notice "is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." Churchill Vill., L.L.C. v. Gen. Elec., 361 F.3d 566, 575 (9th Cir. 2004) (internal quotation marks omitted); see also Gooch v. Life Invs. Ins. Co. of Am., 672 F.3d 402, 423 (6th Cir. 2012) (noting settlement notices "are sufficient if they inform the class members of the nature of the pending action, the general terms of the settlement, that complete and detailed information is available from the court files, [and] that any class member may appear and be heard at the hearing[.]") (internal quotation marks omitted). The notice should provide sufficient information to allow class members to decide whether they should accept the benefits of the settlement, opt out and pursue their own remedies, or object to the terms of the settlement but remain in the class. See In re Integra Realty Res., Inc., 262 F.3d 1089, 1111 (10th Cir. 2001) ("The standard for the settlement notice under Rule 23(e) is that it must 'fairly apprise' the class members of the terms of the proposed settlement and of their options.") (internal quotation marks omitted).

Here, the Notice describes the nature of the action and the claims alleged. (See Dkt. 179-5, Notice at ¶¶ 1,11-12); see also Fed. R. Civ. P. 23(c)(2)(B)(i) & (iii). It provides the definition of the class, (see Dkt. 179-5, Notice at ¶ 20); see also Fed. R. Civ. P. 23(c)(2)(B)(ii), and explains the terms of the settlement, including the settlement amount, the distribution of that amount, and the release, as well as the proposed attorney's fees and expenses. (See Dkt. 179-5, Notice at ¶¶ 2-5, 17, 28-30, 41-48). The Notice lays out the class members' options under the settlement: they may remain in the class, object to the settlement but still remain in the class, or exclude themselves from the settlement. (See id. at p. 4-5 & ¶¶ 25-27, 31); see also Fed. R. Civ. P. 23(c)(2)(B)(v) & (vi). Finally, the Notice explains the procedures for objecting to the settlement

and provides information about the Final Fairness Hearing.[9] (See Dkt. 179-5, Notice at ¶¶ 27, 67-75).

Epiq will provide notice by mail and/or email to class members, (see Dkt. 179-12, Declaration of Cameron R. Azari Regarding Notice Plan ("Azari Decl.") at ¶¶ 19, 23); (Dkt. 179-1, Memo at 29), which will be accompanied by a Proof of Claim Form. (See Dkt. 179-3, Agreement at ¶ 20); (Dkt. 179-5, Notice at ¶¶ 20, 31); (Dkt. 179-4, Proposed Order at ¶ 9); (Dkt. 179-6, Proof of Claim and Release Form). Epiq will also make reasonable efforts to give notice to brokers and other nominees who purchased or otherwise acquired Canoo stock and/or warrants during the class period for the benefit of another person or entity. (See Dkt. 179-4, Proposed Order at ¶ 13). In addition, Epiq will publish a Summary Notice, (see Dkt. 179-3, Agreement at ¶¶ 1(ss), 20); (Dkt. 179-7, Summary Notice), and establish a settlement website, where the notice will be posted. (See Dkt. 179-12, Azari Decl. at ¶¶ 19, 28-29).

Based on the foregoing, the court finds there is no alternative method of distribution that would be more practicable, or any more reasonably likely to notify the class members. In addition, the court finds that the procedure for providing notice and the content of the Notice constitute the best practicable notice to class members and comply with the requirements of due process.

E. Summary.

The court's preliminary evaluation of the settlement does not disclose grounds to doubt its fairness "such as unduly preferential treatment of class representatives or segments of the class, inadequate compensation or harms to the classes, . . . or excessive compensation for attorneys." Manual for Complex Litig. § 21.632 at 321 (4th ed. 2023); see also Spann II, 314 F.R.D. at 323 (same).

---

[9] The Notice also complies with the PSLRA. See 15 U.S.C. § 78u-4(a)(7). In addition to the above information, the Notice provides (1) the estimated gross average recovery of $0.27 per eligible security, (see Dkt. 179-5, Notice at ¶ 3); (2) the estimated average net recovery of $0.17 per eligible security, (see id.); and (3) the estimated average cost of $.10 per eligible security. (See id. at ¶ 5); (see also Dkt. 179-1, Memo at 27-28).

## CONCLUSION

Based on the foregoing, IT IS ORDERED THAT:

1. Lead Plaintiff's Renewed Unopposed Motion for Entry of an Order Preliminarily Approving Settlement and Establishing Notice Procedures **(Document No. 179)** is **granted** upon the terms and conditions set forth in this Order.

2. The court preliminarily certifies the class, as defined in ¶ 1(ll) of the Settlement Agreement, (Dkt. 179-3, Agreement), for the purposes of settlement.

3. The court preliminarily appoints lead plaintiff Vladi Shaulov as class representative for settlement purposes.

4. The court preliminarily appoints Pomerantz LLP and Holzer & Holzer LLC as class counsel for settlement purposes.

5. The court preliminarily finds that the terms of the settlement are fair, reasonable, and adequate, and comply with Rule 23(e) of the Federal Rules of Civil Procedure.

6. The court approves the form, substance, and requirements of the proposed notice plan. (See Dkt. 179-5, Notice); (Dkt. 179-7, Summary Notice). The proposed manner of notice of the settlement set forth in the settlement Agreement constitutes the best notice practicable under the circumstances and complies with the requirements of due process.

7. The court appoints Epiq as settlement administrator. Epiq shall complete dissemination of class notice, in accordance with the proposed notice plan, no later than **December 17, 2026**.

8. Plaintiff shall file a motion for attorney's fees and costs, as well as any payment to plaintiff, no later than **January 19, 2027**, and notice it for hearing for the date of the final approval hearing set forth below.

9. Any class member who wishes to either (a) object to the settlement, including the requested attorney's fees, costs, and payment to plaintiff, or (b) exclude him or herself from the settlement, must file his or her objection to the settlement or request exclusion no later than **March 5, 2027**, in accordance with the notice plan and this Order.

10. Plaintiff shall, no later than **April 19, 2027**, file and serve a motion for final approval of the settlement and a response to any objections to the settlement. The motion shall be noticed

for hearing for the date of the final approval hearing set forth below.

11. Defendants may file and serve a memorandum in support of final approval of the settlement Agreement and/or in response to objections no later than **April 26, 2027**.

12. Any class member who wishes to appear at the final approval (fairness) hearing, either on his or her own behalf or through an attorney, to object to the settlement, including the requested attorney's fees, costs or payment to plaintiff, shall, no later than **May 6, 2026**, file with the court a Notice of Intent to Appear at Fairness Hearing.

13. A final approval (fairness) hearing is hereby set for **May 27, 2027**, at **10:00 a.m.** in Courtroom 6D of the Mendez Courthouse, to consider the fairness, reasonableness, and adequacy of the Settlement Agreement as well as the award of attorney's fees and costs to class counsel, and award to plaintiff.

14. All proceedings in the Action, other than proceedings necessary to carry out or enforce the settlement Agreement or this Order, are stayed pending the final fairness hearing and the court's decision whether to grant final approval of the settlement.

Dated this 2nd day of November, 2026.

/s/
Fernando M. Olguin
United States District Judge